# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ) | **No. 1:17-cv-02433 (RJL)** |
| ) | |
| ) | |
| Plaintiff,     ) | |
| ) | |
| v.              ) | **DEMAND FOR JURY TRIAL** |
| ) | |
| Defendants.  ) | |
| ) | **FILED UNDER SEAL** |
| ) | **PURSUANT TO 31 U.S.C. § 3730** |
| ) | |
| ) | |

# RELATOR'S SECOND AMENDED COMPLAINT

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES and STATE OF TEXAS
*ex rel.* TERRI R. WINNON,

                Plaintiffs,

v.

RAMIRO LOZANO [a/k/a RAMIRO G.
LOZANO, RAMIRO LOZANO, JR.,
RAMIRO G. LOZANO, JR.]; JAY W.
BALENTINE; RJ MERIDIAN CARE
ALTA VISTA, LLC; RJ MERIDIAN
CARE OF ALICE, LTD; RJ MERIDIAN
CARE OF GALVESTON, LLC; RJ
MERIDIAN CARE OF HEBBRONVILLE,
LTD.; RJ MERIDIAN CARE OF SAN
ANTONIO, LTD.; RJ MERIDIAN CARE
OF SAN ANTONIO III, LLC; SPANISH
MEADOWS OF KATY, LTD; EMPIRE
SPANISH MEADOWS, LTD; PAUL A.
LENZ; JAVIER A. JOVER; MIGUEL A.
MOLINAS; FRANCIS GUMBEL; DIANA
CARUBBA; RONALDO FACTORIZA;
and REHABCARE GROUP EAST, LLC,

                Defendants.

**No. 1:17-cv-02433 (RJL)**

**DEMAND FOR JURY TRIAL**

**FILED UNDER SEAL
PURSUANT TO 31 U.S.C. § 3730**

## RELATOR TERRI R. WINNON'S SECOND AMENDED COMPLAINT

1.    Terri R. Winnon ("Relator" or "Mrs. Winnon") brings this action against Defendants on behalf of the United States of America and the State of Texas through the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3729, *et seq.* ("False Claims Act" or "FCA"), and the Texas Medicaid Fraud Prevention Law, TEX. HUM. RES. CODE ANN. § 36.001, *et seq.* ("TMFPL"). Relator seeks to recover all available damages, penalties, and remedies against Defendants for their violations of federal and state law detailed herein.

## INTRODUCTION

2.      This is an action under the False Claims Act and the TMFPL to recover damages and civil penalties from Defendants for knowingly submitting, or causing to be submitted, false claims to government health care programs, including, but not limited to, Medicare and the Texas Medicaid program, and for knowingly offering, paying, soliciting, and/or accepting remuneration in exchange for medical referrals in violation of federal and state law.

3.      During the period from January 2009 through at least 2016 ("Relevant Period"), Defendants Ramiro Lozano ("Lozano") and Jay W. Balentine ("Balentine") owned, controlled, and/or operated a number of health care facilities throughout Texas referred to generally as skilled nursing facilities ("SNFs"), assisted living facilities ("ALFs"), and/or independent living facilities ("ILFs").  Lozano and/or Balentine owned, controlled, and/or operated these health care facilities through the following defendant entities:   RJ Meridian Care Alta Vista, LLC; RJ Meridian Care of Alice, LTD; RJ Meridian Care of Galveston, LLC; RJ Meridian Care of Hebbronville, LTD; RJ Meridian Care of San Antonio, LTD.; RJ Meridian Care of San Antonio III, LLC; Spanish Meadows of Katy, LTD; and Empire Spanish Meadows, LTD (together, "Defendant Facilities"). All of the Defendant Facilities were enrolled as Medicare and Texas Medicaid providers during the Relevant Period.

4.      Lozano and Balentine also owned, controlled, and/or operated a convoluted array of other entities, including additional companies that owned the real estate upon which Defendant Facilities operated.  Some of the Defendant Facilities paid rent to these other entities owned, controlled, and/or operated by Lozano and Balentine.  As explained below, Lozano and Balentine also organized and used separate entities to purchase interests in assets such as planes and a yacht named *Estancia*.  *See* Partial Organizational Chart attached hereto as **Exhibit A**.

5.      During the Relevant Period, Lozano, Balentine, and/or Defendant Facilities paid, or caused to be paid, remuneration to a number of referral sources in the form of sham medical directorships and gifts.  Some of the Defendant Facilities claimed to have multiple "medical directors" who were paid remuneration each month without records and itemized invoices justifying these payments.  Internal operating records of one Defendant Facility in particular— Empire Spanish Meadows, LTD operating in Brownsville, Texas—establish that four of its simultaneous "medical directors" were also provided numerous "marketing" gifts.  This Defendant Facility also directed similar "marketing" gifts to local hospital discharge personnel. The personnel and the physicians receiving the remuneration were in a position to refer patients to, or cause referrals to, Defendant Facilities.  As described in detail below, the following physicians and entities, or employees and agents of these physicians and entities, in the Brownsville, Texas area received unlawful remuneration from Empire Spanish Meadows, LTD:[1]

 i.  Dr. Diana Carubba in Brownsville, Texas;

 ii.  Dr. Ronaldo Factoriza in Brownsville, Texas;

 iii.  Dr. Francis Gumbel in Brownsville, Texas;

 iv.  Dr. Paul A. Lenz in Brownsville, Texas;

 v.  Dr. Miguel A. Molinas in Brownsville, Texas; and

 vi.  Dr. Javier A. Jover in Brownsville, Texas.

---

[1] Because Lozano and Balentine owned, operated, and/or controlled the Defendant Facilities, additional Defendant Facilities may have engaged in similar unlawful practices in order to solicit and obtain patient referrals.

These physicians named directly above are collectively referred to herein as "Defendant Referral Sources."[2]

6.      Lozano, Balentine, and/or Defendant Facilities knowingly and willfully paid, or caused and/or allowed to be paid, remuneration to referral sources in order to induce referrals of Medicare and Medicaid patients in violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b) ("AKS"), the Physician Self-Referral Law, 42 U.S.C. § 1395nn ("Stark Law"), the TMFPL, the Texas Human Resource Code – Medical Assistance Program, TEX. HUM. RES. CODE ANN. § 32.039(b) ("MAP"), and the Texas Patient Solicitation Act, TEX. OCC. CODE ANN. § 102.001, *et seq.* ("TPSA") (TMFPL, MAP, and TPSA referred to collectively as "Texas Law"). In turn, and as a direct result, Lozano, Balentine, Defendant Facilities, and/or Defendant Referral Sources submitted, or caused to be submitted, false claims to government health care programs for services rendered to illegally referred patients.

7.      In addition, Lozano, Balentine, and/or Defendant Facilities knowingly submitted, or caused to be submitted, false claims to government health care programs, including Medicare and Texas Medicaid, as a result of inflated resource utilization group levels ("RUGs") used to classify the intensity and extent of care necessary for patients at Defendant Facilities.  As detailed below, Defendant Facilities frequently billed the highest and most-expensive RUG codes without justification and at great expense to taxpayers.  As further detailed below, one of

---

[2] The recipients of unlawful remuneration are not limited to Defendant Referral Sources.  As described below, Lozano, Balentine, and/or Defendant Facilities provided remuneration to, or caused or allowed remuneration to be provided to, other recipients not yet named as defendants, including, but not limited to, personnel at Solara Hospital in Brownsville, Texas; South Texas Rehabilitation Hospital in Brownsville, Texas; Valley Baptist Health System in Brownsville and/or Harlingen, Texas; and Valley Regional Medical Center in Brownsville, Texas.

the Defendant Facilities so frequently billed Medicare at the highest-paying RUG code (the "RUX" code) that this one facility by itself accounted for approximately 1% of all 2014 RUX days submitted to Medicare Part A across all SNF facilities in the entire country and approximately 7% of all 2014 RUX days across all Texas SNFs. In addition, the number of days of costly "ultra high" therapy per beneficiary at that facility was nearly two times the national average.

8.      Defendant RehabCare Group East, LLC (previously known as RehabCare Group East, Inc.) is owned and controlled by RehabCare Group, Inc., a division of Kindred Healthcare, Inc., (together, "RehabCare"). RehabCare contracted with some of the Defendant Facilities to provide therapy services to their patients. As detailed below, RehabCare frequently claimed, without justification, to provide the highest and most-expensive levels of care in invoices billed to some of the Defendant Facilities. Those Defendant Facilities then, without appropriately checking the veracity of these RehabCare invoices or fully reviewing the necessary medical documentation, passed along inflated claims to Medicare. As a result, RehabCare knowingly caused false claims to be submitted through some of the Defendant Facilities.

9.      Finally, Lozano and/or Defendant Facilities knowingly submitted, or caused to be submitted, false statements and/or false claims through Medicare Cost Reports that contained inappropriate expenses that should not have been attributed to Defendant Facilities. By way of example, some of these expenses included costs associated with the upkeep of a yacht named *Estancia* owned in part by Lozano and Balentine as well as payments to at least one pilot who flew a plane or planes owned at least in part by Lozano and Balentine.

10.     Mrs. Winnon was a math teacher who was hired by Lozano in January 2009 to serve as his assistant. Although Mrs. Winnon had no experience in SNF operations or health

care accounting, she had a natural aptitude for numbers, as well as strong administrative skills, and she taught herself fundamental accounting principles.  She worked her way up to Executive Assistant/Controller for Lozano.

11.     Over time, Mrs. Winnon began to notice anomalies with the companies' finances as well as trends related to services rendered at various Defendant Facilities.  Once she became more familiar with the SNF business and health care, Mrs. Winnon became concerned about certain practices by Lozano, Balentine, and Defendant Facilities.  She raised those concerns to Lozano.  Raising those concerns over a period of time resulted in her termination.   Relator brings this action to recover the damages suffered as a result of Defendants' unlawful conduct as well as for all applicable civil penalties.

## PARTIES

### Plaintiffs

12.     Relator Terri R. Winnon is an individual citizen of the United States of America residing in Conroe, Texas.  Mrs. Winnon has direct, first-hand, and independent knowledge of conduct giving rise to this lawsuit.  Mrs. Winnon is a former employee of companies controlled by Defendants Lozano and Balentine.  She received W2s from at least two different Defendant Facilities:  RJ Meridian Care of Alice, LTD and Empire Spanish Meadows, LTD.  Mrs. Winnon served as the Executive Assistant to Defendant Lozano and eventually served as both his Executive Assistant and Controller for his various companies.  During the regular course of her employment, she had access to information as part of her job duties and responsibilities that supports the claims brought herein.  Mrs. Winnon attempted to raise concerns to Lozano related to Defendant Facilities' conduct.  Ultimately, on February 19, 2016, Lozano fired Mrs. Winnon. Relator alleges that Defendants submitted and/or caused to be submitted false statements and

claims to the United States and Texas for the reimbursement of goods or services that were not necessary, not lawfully provided, not performed in accordance with applicable requirements, and/or which were tainted by unlawful inducements in violation of the False Claims Act and Texas Law.   Relator further alleges that Lozano, Balentine, Defendant Facilities, and/or Defendant Referral Sources violated Texas Law, as described herein, related to the offer and acceptance of unlawful remuneration, regardless of whether a claim was submitted to Texas Medicaid or any other payor.

13.    The United States of America is a Plaintiff and real party in interest as set forth in the False Claims Act.  Relator seeks recovery on behalf of the United States for amounts paid by the United States Treasury and the Department of Health and Human Services as a result of false claims submitted, or caused to be submitted, by Defendants, as well as all applicable enhancements and penalties.

14.    The State of Texas is a Plaintiff and real party in interest as set forth under Texas Law.  Relator seeks recovery on behalf of the State of Texas for amounts paid by Texas Medicaid as a result of false claims submitted, or caused to be submitted, by Defendants, as well as all applicable enhancements and penalties.

**Defendants Lozano and Balentine**

15.    Defendant Ramiro Lozano a/k/a Ramiro G. Lozano, a/k/a Ramiro Lozano, Jr., a/k/a Ramiro G. Lozano, Jr., is a resident of Texas who can be served at 25009 Oakhurst Drive, Spring, Texas 77386-1975, at his place of abode, or wherever else he may be found.

16.    Defendant Jay W. Balentine is a resident of Texas who can be served at 2001 Terminal Drive, Galveston, Texas 77554, at his place of abode, or wherever else he may be found.

**Defendant Facilities**

17.    Defendant RJ Meridian Care Alta Vista, LLC, a skilled nursing facility primarily doing business in San Antonio, Texas [NPI #: 1396073474] and from time-to-time doing business as "Meridian Care Monte Vista," is a Texas limited liability company whose members are Lozano and Balentine.  It can be served through its registered agent, RJ Meridian Care Management Company, LLC, 25132 Oakhurst Drive, Suite 207, Spring, Texas 77386.

18.    Defendant RJ Meridian Care of Alice, LTD, a skilled nursing facility primarily doing business in Alice, Texas [NPI #: 1336392687] and from time-to-time doing business as "Meridian Care of Alice," is a Texas limited partnership whose partners are RJ Meridian Care Management Company, LLC (General Partner), Lozano, and Balentine.  It can be served through its registered agent, Ramiro G. Lozano, Jr., 25009 Oakhurst Drive, Spring, Texas 77386.

19.    Defendant RJ Meridian Care of Galveston, LLC, a skilled nursing facility and independent living facility primarily doing business in Galveston, Texas [NPI #: 1679898803] and from time-to-time doing business as "The Meridian" and/or "RJMC Galveston," is a Texas limited liability company whose members are Lozano and Balentine.  It can be served through its registered agent, Ramiro Lozano, Jr., 25009 Oakhurst Drive, Spring, Texas 77386.

20.    Defendant RJ Meridian Care of Hebbronville, LTD., a skilled nursing facility primarily doing business in Hebbronville, Texas [NPI #: 1104085422] and from time-to-time doing business as "Meridian Care of Hebbronville," is a Texas limited partnership whose general partner is RJ Meridian Care Management Company, LLC.  It can be served through its registered agent, Ramiro Lozano, 25132 Oakhurst Drive, Spring, Texas 77386.

21.    Defendant RJ Meridian Care of San Antonio, LTD., a skilled nursing facility primarily doing business in San Antonio, Texas [NPI #: 1578545893] and from time-to-time

doing business as "Meridian Care," is a Texas limited partnership whose general partner is RJ Realty Group, LLC.  It can be served through its registered agent, Ramiro Lozano, 31102 Kensington Park Drive, Spring, Texas 77386.

22.     Defendant RJ Meridian Care of San Antonio III, LLC, a skilled nursing facility primarily doing business in San Antonio, Texas [NPI #: 1760775522] and from time-to-time doing business as "Meridian Care at Grayson Square," is a Texas limited liability company whose members are Lozano and Balentine.  It can be served through its registered agent, Ramiro G. Lozano, Jr., 25009 Oakhurst Drive, Spring, Texas 77386-1975.

23.     Defendant Spanish Meadows of Katy, LTD, a skilled living facility primarily doing business in Katy, Texas [NPI #: 1396727517] and from time-to-time doing business as "Spanish Meadows Nursing & Rehab," is a Texas limited partnership whose general partner is RGL Empire Group, L.L.C.  It can be served through its registered agent, Ramiro Lozano, Jr., 25009 Oakhurst Drive, Spring, Texas 77386.

24.     Defendant Empire Spanish Meadows, LTD, a skilled nursing facility and independent living facility primarily doing business in Brownsville, Texas [NPI #: 1033191127] and from time-to-time doing business as "Spanish Meadows," is a Texas limited partnership whose general partner is RL Spanish Meadows, L.L.C.  It can be served through its registered agent, Ramiro G. Lozano, Jr., 25009 Oakhurst Drive, Spring, Texas 77386.

**Defendant Referral Sources**

25.     Defendant Dr. Diana Carubba is an individual resident of Texas with a medical practice principally located at 130 Uptown Avenue, Brownsville, Texas 78520.  She may be served at that location, at her place of abode, or wherever else she may be found.

26.     Defendant Dr. Ronaldo Factoriza is an individual resident of Texas with a medical practice principally located at 680 Paredes Line Road, Brownsville, Texas 78521.  He may be served at that location, at his place of abode, or wherever else he may be found.

27.     Defendant Dr. Francis Gumbel is an individual resident of Texas with a medical practice principally located at 26 South Coria Street #B, Brownsville, Texas 78520.  He may be served at that location, at his place of abode, or wherever else he may be found.

28.     Defendant Dr. Paul A. Lenz is an individual resident of Texas with a medical practice principally located at 3302 Boca Chica Boulevard, Brownsville, Texas 78521.  He may be served at that location, at his place of abode, or wherever else he may be found.

29.     Defendant Dr. Miguel A. Molinas is an individual resident of Texas with a medical practice principally located at 5235 Southmost Boulevard, Suite A, Brownsville, Texas 78521.  He may be served at that location, at his place of abode, or wherever else he may be found.

30.     Defendant Dr. Javier A. Jover is an individual resident of Texas with a medical practice principally located at 1740 Boca Chica Boulevard, Brownsville, Texas 78520.  He may be served at that location, at his place of abode, or wherever else he may be found.

**Defendant RehabCare**

31.     Defendant RehabCare Group East, LLC is a Delaware limited liability company doing business in Texas with a principal office location in Louisville, Kentucky.  It can be served through its registered agent, C T Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

**RESPONDEAT SUPERIOR AND VICARIOUS LIABILITY**

32.     Defendant Facilities are affiliated entities governed and controlled by the same individuals and whose operations are inextricably intertwined.   Defendant Facilities share common management, finances, control, and supervision.   Defendant Facilities are vicariously liable for the actions and omissions of their executives, employees, and agents.

33.     Defendant Referral Sources and Defendant RehabCare are similarly liable for the actions and omissions of their executives, employees, and agents.

**JURISDICTION AND VENUE**

34.     This Court has subject matter jurisdiction over these claims brought under the False Claims Act, 31 U.S.C. §§ 3279, *et seq.*, pursuant to 31 U.S.C. §§ 3730 and 3732, 28 U.S.C. § 1331, and 28 U.S.C. § 1345.   This Court has supplemental jurisdiction to entertain the Texas Law causes of action under 28 U.S.C. § 1367(a) and 31 U.S.C. § 3732(b).

35.     This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) because that section of the False Claims Act authorizes nationwide service of process, implicating the National Contacts Test for personal jurisdiction, and because some or all of Defendants engage in interstate commerce with the United States Department of Health and Human Services ("HHS"), which is headquartered in this district at 200 Independence Avenue, S.W., Washington, D.C.

36.     Venue is proper in this district pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1391(b) and 1395(a) because at least some of Defendants transact business in this District and/or with HHS, which is headquartered in this district at 200 Independence Avenue, S.W., Washington, D.C.

37.    Relator is not aware of any public disclosures of the allegations and transactions contained herein that bar jurisdiction under 31 U.S.C. § 3730.

38.    A copy of this Complaint is being served upon the Attorney General for the United States, the United States Attorney's Office for the District of Columbia, and the Texas Office of the Attorney General.  A written disclosure statement setting forth all material evidence and information Relator possesses has previously been submitted as required by 31 U.S.C. § 3730(b)(2).  *See* Fed. R. Civ. P. 4(d)(4).

39.    Mrs. Winnon is the original source of the information forming the basis of this action because she possesses direct and independent knowledge of the non-public information upon which the allegations herein are based.  *See* 31 U.S.C. § 3730(e)(4)(B).  Mrs. Winnon acquired non-public information from approximately January 2009 through February 19, 2016, that is independent from and materially adds to any publicly disclosed information relating to Defendants' violations of the False Claims Act and Texas Law described herein.  Mrs. Winnon's first-hand knowledge is derived from, among other things, internal memoranda, emails, reports, claims submissions data, and correspondence, both verbal and written, with Lozano and other employees in her positions as Executive Assistant and Controller.

40.    Mrs. Winnon has complied with all conditions precedent to bringing this action.

## LEGAL FRAMEWORK

### A.    The Medicare Program

41.    In 1965, Congress enacted The Health Insurance Program for the Aged and Disabled through Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 *et seq*., ("Medicare").  Medicare is a federal health care program providing benefits to persons who are over the age of 65 and some under that age who are blind or disabled.  Medicare is administered

by the Centers for Medicare & Medicaid Services ("CMS"), a federal agency under HHS. Individuals who receive benefits under Medicare are referred to as Medicare "beneficiaries."

42.     Medicare is a "Federal health care program," as defined in the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(f).

43.     The Medicare Program includes various "Parts," which refer to the type of service or item covered.  For purposes of this action, the primary components at issues are Parts A and B.  Medicare Part A authorizes payment of federal funds for skilled nursing facility care. Medicare Part B also covers certain services provided in nursing facilities, including some physician services, laboratory services, diagnostic services, and radiology services.

44.     Medicare reimburses only reasonable and necessary medical products and services furnished to Medicare beneficiaries and excludes from payment services that are not reasonable and necessary. 42 U.S.C. § 1395y(a)(1)(A); 42 C.F.R. § 411.115(k). Providers must also assure that they provide medical services to Medicare beneficiaries "economically and only when, and to the extent, medically necessary." 42 U.S.C. § 1320c-5(a)(1).  *See* Medicare Provider Reimbursement Manual attached hereto as **Exhibit B**.

45.     Under Medicare Part A, contractors serve as "fiscal intermediaries," administering Medicare in accordance with rules developed by CMS.

46.     Under Medicare Part B, the federal government contracts with insurance companies and other organizations known as "carriers" to handle payment for physicians' services in specific geographic areas. These private insurance companies, or "Medicare Carriers," are charged with and responsible for accepting Medicare claims, determining coverage, and making payments from the Medicare Trust Fund.

47.    The principal function of both intermediaries and carriers is to make payments for Medicare services and to audit claims for those services to ensure that federal funds are spent properly. CMS contracts out to carriers to review, approve, and pay Medicare claims received from health care providers. Given that it is neither realistic nor feasible for CMS or its contractors to review medical documentation before paying each claim, payment is generally made under Medicare in reliance upon the provider's enrollment obligations as well as certifications on Medicare claim forms that services in question were "medically indicated and necessary for the health of the patient."  In other words, Medicare and Medicaid are "trust-based" systems.

48.    To participate in Medicare, providers must ensure that their services are provided economically and are medically necessary.  Medicare will only reimburse costs for medical services that are necessary for the prevention, diagnosis, or treatment of a specific illness or injury.

49.    Certification attestations on Medicare enrollment forms, claim submissions, and Medicare Cost Reports play an important role in ensuring the integrity of the Medicare Program. *See* 42 C.F.R. § 413.24(f)(4)(iv).

50.    Medicare enters into agreements with providers to establish their eligibility to participate in Medicare.  Providers complete a Medicare Enrollment Application (often called a Form CMS-855A) whereby the providers must certify compliance with certain federal requirements, including specifically the Anti-Kickback Statute and the Stark Law.  *See* Medicare Enrollment Application (attached hereto as **Exhibit C**) § 15.  Among other things, providers agree as follows:

> I agree to abide by the Medicare laws, regulations and program instructions that apply to this provider.  The Medicare laws, regulations, and program instructions

15

are available through the Medicare contractor. I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction comply with such laws, regulations, and program instructions (including, but not limited to, the Federal anti-kickback statute and the Stark Law), and on the provider's compliance with all applicable conditions of participation in Medicare.

*Id.* All providers participating in Medicare share these obligations, including Defendants.

51.     The Medicare Enrollment Application also summarizes the False Claims Act in a separate section explaining the penalties for falsifying information in the application to "gain or maintain enrollment in the Medicare program." *Id.* § 14.

52.     For individual claim submissions, SNFs bill Medicare Part A utilizing Form CMS-1450 (also called the UB-40).[3]   Similar to other CMS forms, Form CMS-1450 contains crucial certification language, including the following:

THE SUBMITTER OF THIS FORM UNDERSTANDS THAT MISREPRESENTATION OR FALSIFICATION OF ESSENTIAL INFORMATION AS REQUESTED BY THIS FORM MAY SERVE AS THE BASIS FOR CIVIL MONETARY PENALTIES AND ASSESSMENTS AND MAY UPON CONVICTION INCLUDE FINES AND/OR IMPRISONMENT UNDER FEDERAL AND/OR STATE LAW(S).

53.     In addition, Medicare-certified SNFs, which include the individual Defendant Facilities, are required to annually submit a cost report to a Medicare Administrative Contractor (MAC). "The cost report contains provider information such as facility characteristics, utilization data, cost and charges by cost center (in total and for Medicare), Medicare settlement

---

[3]   CMS, *SNF Billing Requirements* (Dec. 2018), https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNProducts/Downloads/SNFSpellIllnesschrt.pdf.

data, and financial statement data."[4]  Since 1996 two different CMS Forms have been utilized

for SNF cost reports: CMS Form 2540-10 (2011-2020); and CMS Form 2540-96 (1996-2012).[5]

54.    As further detailed below, from 2009 through at least 2016, Defendants illegally

caused taxpayer funds to be paid from Medicare and Texas Medicaid  pursuant to (1) violations

of the Anti-Kickback Statute, the Stark Law, and Texas Law and/or (2) as a result of upcoded

and unsubstantiated SNF claims.

55.    In addition, from 2009 through at least 2016, Lozano, Balentine, and/or

Defendant Facilities improperly coded and attributed expenses on Form CMS 2540-10,

Worksheet, Worksheet S-2 and Worksheet S-3 on Medicare Cost Reports.[6]  Various line items

were unjustifiably inflated (for example, revenues, maintenance,  and employees), some of

which were associated with expenses related to Defendants Lozano's and Balentine's yacht,

*Estancia*, as well as pilot expenses associated with one or more of their airplanes.

### B.    Texas Medicaid Program

56.    The Grants to States for Medical Assistance Programs pursuant to Title XIX of

the Social Security Act, 42 U.S.C. §§ 1396 *et seq.*, administered in the State of Texas as the

Texas Medicaid Program ("Texas Medicaid"), is a health care benefit program jointly funded and

administered by the State of Texas and the United States.  CMS administers Medicaid on the

---

[4] *See* CMS, *Cost Reports*,
https://www.cms.gov/Research-Statistics-Data-and-Systems/Downloadable-Public-Use-Files/Cost-Reports/ (last visited Jan. 30, 2020).

[5] *See id.*

[6] *See* CMS, *Medicare Prover Reimbursement Manual*,  https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/Downloads/R7PR241.pdf (Aug. 19, 2016).

federal level. Medicaid helps pay for reasonable and necessary medical procedures and services provided to individuals who are deemed eligible under state low-income programs.

57. Texas Medicaid is a "Federal health care program," as defined in the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(f), in that it is a State health care program as defined in 42 U.S.C. § 1320a-7(h).

58. The United States funds, on average, fifty to sixty percent of each Texas Medicaid payment made to Medicaid providers. This federal share is known as the Federal Medical Assistance Percentage (FMAP).

59. Compliance with the Anti-Kickback Statute and the Stark Law is a condition precedent for payment for both Medicare and Medicaid.

**C.    Veterans Affairs Health Benefits and TRICARE**

60. The Department of Veterans Affairs (VA) administers health benefit programs and pays for certain medical services. For instance, one of those programs is the Civil Health and Medical Program of the Department of Veterans Affairs, also known as "CHAMPVA," which provides health insurance coverage to dependents of veterans with disabilities or who are deceased.

61. TRICARE is a separate health benefit program administered by the Department of Defense, which covers certain military service members, military retirees, and families of service members and retirees.

62. TRICARE and VA health benefit programs such as CHAMPVA are "Federal health care programs," as defined in the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(f).

### D.    Fraud and Abuse Statutes

63.    According to the HHS-Office of the Inspector General ("HHS-OIG"), "The five most important Federal fraud and abuse laws that apply to physicians are the False Claims Act (FCA), the Anti-Kickback Statute (AKS), the Physician Self-Referral Law (Stark law), the Exclusion Authorities, and the Civil Monetary Penalties Law (CMPL)."[7]  At least three of these fundamental fraud and abuse laws, as well as Texas Law, are at issue in this action.

### (i)    The False Claims Act

64.    The False Claims Act imposes liability to the United States upon any individual who, or entity that, "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(1)(A); or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," § 3729(a)(1)(B); or conspires to commit a violation of the False Claims Act, § 3729(a)(1)(C). Further, Section 3729(a)(1)(G), known as the "reverse false claims" provision, imposes liability upon any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." *Id.* § 3729(a)(1)(G).

65.    "Knowingly" is defined to include actual knowledge, reckless disregard, and deliberate ignorance. *Id.* § 3729(b)(1).  The False Claims Act does not require proof of specific intent to defraud in order to establish a violation. *Id.*

---

[7] HHS-OIG, *A Roadmap for New Physicians, Fraud & Abuse Laws*, https://oig.hhs.gov/compliance/physician-education/01laws.asp (last visited Jan. 30, 2020).

66.    Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, as amended, and 28 C.F.R. § 85.5, the applicable per-false-claim penalty under the False Claims Act assessed after January 29, 2018 is a minimum of $11,181 up to a maximum of $22,363.

**(ii)    The Anti-Kickback Statute**

67.    The Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b), is a criminal statute that makes it illegal for individuals or entities to knowingly and willfully solicit or receive "any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind . . . in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program."  42 U.S.C. § 1320a-7b(b)(1).

68.    The Anti-Kickback Statute also makes it illegal for individuals or entities to knowingly and willfully offer or pay "any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to induce such person . . . to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program."  42 U.S.C. § 1320a-7b(b)(2).

69.    The Anti-Kickback Statute further prohibits the solicitation, receipt, offer, and payment of any remuneration in exchange for referrals of individuals for services or items reimbursed in whole or in part by a Federal health care program.  42 U.S.C. § 1320a-7b(b).  A "Federal health care program" includes any program providing health benefits that is funded directly, in whole or in part, by the United States, including, among others, Medicare, Medicaid, VA health benefits, and TRICARE.  *See id.* § 1320a-7b(f).

70.     Payments of remuneration to induce patient referrals for services reimbursed with federal health care funds constitute illegal remuneration under the Anti-Kickback Statute. Violation of the Anti-Kickback Statute is a felony punishable by fines and imprisonment.  42 U.S.C. § 1320a-7b(b)(2).

71.     The Anti-Kickback Statute arose out of Congress's concern that health care decisions would be inappropriately induced through the payment of remuneration (*i.e.*, things of value), which would undermine the goals of ensuring fair competition for federal funds and providing the highest quality of health care to patients in a market driven by quality of care, not financial incentives.  To protect the Medicare and Medicaid programs, among other federal health care programs, Congress enacted a prohibition against the payment of kickbacks in any form.  Congress has strengthened the Anti-Kickback Statute on multiple occasions since its enactment to ensure that kickbacks masquerading as legitimate transactions do not evade the statute's reach.

72.     As amended by the Patient Protection and Affordable Care Act of 2010 ("ACA"), Pub. L. No. 111-148, § 6402(f), the Anti-Kickback Statute provides that "a claim that includes items or services resulting from a violation of this section constitutes a false or fraudulent claim for purposes of [the False Claims Act]."  42 U.S.C. § 1320a-7b(g).  According to the ACA's legislative history, this amendment to the Anti-Kickback Statute was intended to clarify "that all claims resulting from illegal kickbacks are considered false claims for the purpose of civil actions under the False Claims Act, even when the claims are not submitted directly by the wrongdoers themselves."  155 Cong. Rec. S10854.  In other words, compliance with the Anti-Kickback Statute is material to the government's payment decisions.

73.    HHS-OIG has promulgated "safe harbor" regulations that identify payment practices that are not subject to the Anti-Kickback Statute because such practices are unlikely to result in fraud or abuse. *See* 42 C.F.R. § 1001.952. Safe harbor protection is afforded only to those arrangements that meet all of the specific conditions set forth in the safe harbor. Defendants' conduct does not fall within any safe harbor.

74.    Compliance with the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b), is a condition of payment under federal health care programs, and providers participating in the Medicare and Medicaid programs must agree to comply with the Anti-Kickback Statute and certify such compliance.

### (iii)    The Stark Law

75.    The Stark Law was enacted by Congress to address the overutilization of services by physicians who stood to profit from referring patients to facilities in which they had a financial interest—so-called "self-referrals." The Stark Law, as well as the regulations promulgated thereunder, prohibits physicians who have a "financial relationship" with an entity from making a "referral" to that entity for the furnishing of certain "designated health services" that may be reimbursed by the United States under the Medicare Program. 42 U.S.C. § 1395nn(a)(1); 42 C.F.R. § 411.353(a). An entity may not submit for payment a Medicare claim for services rendered pursuant to a prohibited referral. 42 U.S.C. § 1395nn(a)(1)(B); 42 C.F.R. § 411.353(b).

76.    The Stark Law defines "designated health services" to include a variety of services, including clinical laboratory services, physical therapy, occupational therapy, and durable medical equipment and supplies. 42 U.S.C. § 1395nn(h)(6). Although "designated health services" generally do not include services reimbursed by Medicare Part A as part of a

composite rate (*i.e.*, the Part A per diem for a SNF patient), covered services that are reimbursed by Medicare Part B fall outside the composite rate and are considered "designated health services." 42 C.F.R. § 411.351.

77.     The Stark Law and its implementing regulations define a "financial relationship" to include "a compensation arrangement" in which "remuneration" is paid by an entity to a referring physician "directly or indirectly, overtly or covertly, in cash or in kind." 42 U.S.C. §§ 1395nn(a)(2), (h)(1); 42 C.F.R. § 411.354(a)(2).

78.     The Stark Law also applies to certain indirect compensation arrangements between physicians and entities providing designated health services. *See* 42 C.F.R. § 411.354(c)(2).

79.     The Stark Law and its regulations provide that certain enumerated arrangements do not constitute a "financial relationship." *See* 42 U.S.C. §§ 1395nn(b)-(e); 142 C.F.R. § 411.357.

80.     Importantly for this action, certain "personal service arrangements" do not constitute a "financial arrangement" and are excepted from the Stark Law's coverage only if very specific requirements are met.   42 U.S.C. §§ 1395nn(d).   Among other things, these compensation arrangements—such as medical directorships—must be "set out in writing," "signed by the parties," and specify the services covered. *Id.*   Additionally, all compensation paid to the physician must be "set in advance," cannot exceed fair market value, and cannot be "determined in a matter that takes into account the volume or value of any referrals or other business generated between the parties." *Id.*

81.     Also, when a physician initiates a service and personally performs it, that action does not constitute a referral under the Stark Law. 42 U.S.C. § 1395nn(h)(5); 42 C.F.R. § 411.351.

82.    By law, the United States may not pay a claim for a designated health service referred or provided in violation of the Stark Law.  42 U.S.C. § 1395nn(g)(1).  Additionally, entities must reimburse any payments that are mistakenly made by the United States.  42 C.F.R. § 411.353(d).

**(iv)    Texas Law**

83.    Texas Law also applies to the conduct at issue by Defendants detailed in this action.

84.    As defined above, Texas Medicaid Fraud Prevention Law, TEX. HUM. RES. CODE ANN. § 36.001, *et seq*. ("TMFPL"), the Texas Human Resource Code – Medical Assistance Program, TEX. HUM. RES. CODE ANN. § 32.039(b) ("MAP"), and the Texas Patient Solicitation Act, TEX. OCC. CODE ANN. § 102.001, *et seq*, ("TPSA") apply to certain conduct pertaining to the solicitation of patients as well as the submission of claims for reimbursement by Texas Medicaid.

85.    The TMFPL, among other things, specifies certain "unlawful acts" in Section 36.002 of the Texas Human Resources Code.  These unlawful acts include knowingly making or causing to be made a false statement or misrepresentation of material fact that permits a person to receive an unauthorized or greater benefit or payment under Texas Medicaid, § 36.002(1), and knowingly concealing or failing to disclose information that permits a person to receive an authorized or greater benefit or payment under Texas Medicaid, § 36.002(2).

86.    Section 36.101 of the TMFPL authorizes a private right of action for violations of Section 36.002, and Section 36.110 establishes a right to an award to the private plaintiff.

87.    TMFPL § 36.002(13) prohibits a person from knowingly engaging in conduct that constitutes a violation under Section 32.039(b) of the Texas Human Resources Code,

Chapter 32 - Medical Assistance Program (MAP).  MAP § 32.039, entitled "DAMAGES AND PENALTIES," contains a series of enumerated violations, including prohibitions that closely mirror the prohibitions contained in the Anti-Kickback Statute.  *See* MAP § 32.039(b)(1-b) – (1-f).

88.    However, not all actionable violations require any connection to Texas Medicaid.  In particular, MAP § 32.039(b)(1-a) makes it a violation for any person to engage in conduct that violates Section 102.001 of the Texas Occupations Code—the TPSA referenced above.

89.    Section 102.001 of the TSPA, entitled "SOLICITING PATIENTS; OFFENSE," provides in relevant part that a "person commits an offense if the person knowingly offers to pay or agrees to accept, directly or indirectly, overtly or covertly any remuneration in cash or in kind to or from another for securing or soliciting a patient or patronage for or from a person licensed, certified, or registered by a state health care regulatory agency."  Like the Anti-Kickback Statute, it is a crime to violate the TSPA.  Importantly, the TSPA does not tie the unlawful conduct to reimbursement by any federal or state health care programs—penalties under the TMFPL are recoverable for violations of the TSPA regardless of the payor involved.

90.    Under Section 36.052 of the TMFPL, a person committing an unlawful act is liable for up to two times the amount of any payment or value provided under Texas Medicaid, interest on the amount of any payment or value provided under Texas Medicaid, and a civil penalty tied to the False Claims Act.  TMFPL § 36.052(1)—(4).  The applicable per-unlawful-act penalty under the TMFPL assessed after January 29, 2018 is a minimum of $11,181 up to a maximum of $22,363, per defendant.  *Id.* § 36.052(3)(B); 28 C.F.R. § 85.5.

91.    Section 36.110 of the TMFPL entitles a private plaintiff to recover up to 30 percent of the proceeds recovered in the action.

## DEFENDANTS' UNLAWFUL CONDUCT

92.    Relator sets forth and details the unlawful conduct forming the basis of this action by category of conduct and by specifying the identities of Defendants involved in each category of conduct.  Mrs. Winnon discovered information and evidence supporting these allegations during her time working with Lozano, Balentine, and Defendant Facilities.

### A.    Unlawful Inducements, Financial Arrangements, and Referrals (Lozano, Balentine, Defendant Facilities, and Defendant Referral Sources)

93.    Lozano, Balentine, and/or Defendant Facilities offered and paid, or allowed to be offered and paid, unlawful remuneration and kickbacks, including to Defendant Referral Sources, in violation of the Anti-Kickback Statute, the Stark Law, and Texas Law.  These violations resulted in unlawful referrals and unlawful false claims being submitted by Lozano, Balentine, and/or Defendant Facilities to Federal health benefit programs, including, but not limited to, Medicare and Medicaid.

94.    As an initial matter, Lozano, Balentine, and/or Defendant Facilities recognized that Medicare beneficiaries were lucrative, even offering or permitting employee bonuses to be paid to certain employees for increasing the number (also called the "census") of Medicare patients in a facility.  For instance, effective January 1, 2015, one employee, A.M., had a sliding bonus scale that increased if the average Medicare patient census increased.  According to an email from Lozano dated February 1, 2016, employee A.M. received a $1,000 bonus in April 2016 for hitting a Medicare census goal.

95.    There are two important prerequisites for Medicare coverage of SNF services: (1) the SNF services must be ordered by a referring physician; and (2) a Medicare beneficiary is

required to be admitted to the SNF within 30 days of discharge from an inpatient hospital stay that lasted at least three consecutive days.[8]

96.     Recognizing that a doctor's referral is a critical component in obtaining SNF patients and being reimbursed, Lozano, Balentine, and/or some or all of Defendant Facilities orchestrated and/or permitted the utilization of sham medical director arrangements to funnel remuneration to referring physicians.

97.     Lozano was personally involved in some of Defendant Facilities' relationships with physicians.  Relator recalls Lozano speaking about attending dinners with doctors.  After one of those dinners in Brownsville, Texas, Relator recalls Lozano returning to the corporate office in Spring, Texas and stating that he was hopeful that he had secured an additional doctor. In one conversation, Lozano stated that he had to keep his doctors "happy."

98.     Defendant Facilities arranged to pay certain physicians as "medical directors." However, as shown below, the amounts paid to these "medical directors," at least during the time period addressed, remained static from month-to-month.  The only way for static monthly remuneration to reflect the fair market value of any services provided by the physicians would be for the medical directors to provide the exact same amount of work each month for Defendant Facilities—an extremely unlikely feat.

99.     In fact, Relator does not recall ever seeing a written agreement with any "medical director."  Relator does recall seeing an invoice from a "medical director," which stated nothing substantive except the amount owed—no details of the work performed or the time required for the performance of that work.

---

[8]  CMS, *SNF Billing Requirements* (Dec. 2018), https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNProducts/Downloads/SNFSpellIllnesschrt.pdf.

100.    A series of these "medical director" invoices, dated monthly from July 1, 2015 through December 2015, arrived at The Meridian SNF in Galveston, Texas from Inpatient Consultants of Texas, PLLC in Houston, Texas.  Each invoice lacked any detail about the services provided or the time required to provide any services.  Instead, they contained a line item reading "Medical Directorship Services" and the physician's name.  Each monthly invoice was for $2,500.  Interestingly, each of these monthly invoices from the prior six-month period was stamped with a red stamp reading "RECEIVED JAN 20 2016," and all but one of the invoices were stamped as being "entered" by the facility on January 20, 2016.

101.    On July 15, 2014, the following email exchange (Subject: Copy of Medical Director's Contract) occurred between Mrs. Winnon and Meridian Care/Spanish Meadow employees:

> **From E.V. to S.E.:** "Sally, Do u have a copy of our contract with Dr. Soria? If u do, kindly make me a copy for the survey ready binder."

> **From S.E. to E.V.:** "nope"

> **From E.V. to T. Winnon and D.T.:** "Hi, Sorry but we also need a copy of our Medical Director's contract/agreement. I cannot find a copy and Dr. Soria himself does not have a copy as well. Since we cut hin (sic) a check every month, there must be something that we go by to ensure that he gets it. Thank you so much for all these (sic) assistance. We are just preparing for our annual fullbook and I have been trying to ensure that all our docs are in place."

> **From T. Winnon to E.V.:** "No luck finding a copy here – contracts are supposed to be maintained at the facility. But I can give you the next best thing…. I created a blank one for your use. You'll just need to verify rate and get some signatures."

102.    The following account detail establishes the static payments made to Defendants Gumbel, Jover, Lenz, and Molinas for purportedly serving as "co-medical directors" of Empire Spanish Meadows in Brownsville, Texas.

**6:55 PM**
**07/13/15**
**Accrual Basis**

### Empire Spanish Meadows
# Medical Director Detail
#### January 2013 through May 2015

| Date | Name | Memo | Detail | Monthly Total |
|------|------|------|--------|---------------|
| **4103011 · NH - Medical Director Consultant** | | | | |
| 01/31/2013 | Gumbel M.Ds,P.A. Francis | SERVICE: MEDICAL DIRECTOR SERVICE 010113-013113 | 1,500.00 | |
| 01/31/2013 | Lenz MD, Paul A | SERVICE: MEDICAL DIRECTOR SERVICE 010113-013113 | 1,200.00 | |
| 01/31/2013 | Molinas M.D., P.A., Miguel A. | SERVICE: MEDICAL CO-DIRECTOR SERVICE 010113-013113 | 2,000.00 | 4,700.00 |
| 02/28/2013 | Gumbel M.Ds,P.A. Francis | SERVICE: MEDICAL DIRECTOR | 1,500.00 | |
| 02/28/2013 | Lenz MD, Paul A | SERVICE: MEDICAL DIRECTOR | 1,200.00 | |
| 02/28/2013 | Molinas M.D., P.A., Miguel A. | SERVICE: MEDICAL CO DIRECTOR SERVICE | 2,000.00 | 4,700.00 |
| 03/31/2013 | Gumbel M.Ds,P.A. Francis | SERVICE: MOTHLY MEDICAL DIRECTOR | 1,500.00 | |
| 03/31/2013 | Lenz MD, Paul A | SERVICE: MEDICAL DIRECTOR SERVICE | 1,200.00 | |
| 03/31/2013 | Molinas M.D., P.A., Miguel A. | SERVICE: MEDICAL CO-DIRECTOR SERVICE | 2,000.00 | 4,700.00 |
| 04/30/2013 | Gumbel M.Ds,P.A. Francis | SERVICE: MONTHLY MEDICAL DIRECTOR DOS 040113-043013 | 1,500.00 | |
| 04/30/2013 | Lenz MD, Paul A | SERVICE: MEDICAL DIRECTOR SERVICE DOS 040113-043013 | 1,200.00 | |
| 04/30/2013 | Molinas M.D., P.A., Miguel A. | SERVICE: MEDICAL CO-DIRECTOR SERVICE DOS 040113-043013 | 2,000.00 | 4,700.00 |
| 05/31/2013 | Gumbel M.Ds,P.A. Francis | SERVICE: MONTHLY MEDICAL DIRECTOR SERVICE | 1,500.00 | |
| 05/31/2013 | Lenz MD, Paul A | SERVICE: MEDICAL DIRECTOR SERVICE | 1,200.00 | |
| 05/31/2013 | Molinas M.D., P.A., Miguel A. | SERVICE: MEDICAL CO-DIRECTOR SERVICE | 2,000.00 | 4,700.00 |
| 06/30/2013 | Gumbel M.Ds,P.A. Francis | SERVICE: MONTHLY MEDICAL DIRECTOR DOS 060113-063013 | 1,500.00 | |
| 06/30/2013 | Lenz MD, Paul A | SERVICE: MEDICAL DIRECTOR SERVICE 060113-063013 | 1,200.00 | |
| 06/30/2013 | Molinas M.D., P.A., Miguel A. | SERVICE: MONTHLY CO DIRECTOR SERVICE DOS 060113-063013 | 2,000.00 | 4,700.00 |
| 07/31/2013 | Gumbel M.Ds,P.A. Francis | SERVICE: MONTHLY MEDICAL DIRECTOR DOS 070113-073113 | 1,500.00 | |
| 07/31/2013 | Lenz MD, Paul A | SERVICE: MEDICAL DIRECTOR SERVICE DOS 070113-073113 | 1,200.00 | |
| 07/31/2013 | Molinas M.D., P.A., Miguel A. | SERVICE: MEDICAL CO-DIRECTOR SERVICE DOS 070113-073113 | 2,000.00 | 4,700.00 |
| 08/30/2013 | Gumbel M.Ds,P.A. Francis | SERVICE: MONTHLY MEDICAL DIRECTOR DOS 080113-083013 | 1,500.00 | |
| 08/30/2013 | Molinas M.D., P.A., Miguel A. | SERVICE: MONTHLY CO DIRECTOR SERVICE DOS 080113-083013 | 2,000.00 | |
| 08/31/2013 | Lenz MD, Paul A | SERVICE: MEDICAL DIRECTOR SERVICE DOS 080113-083113 | 1,200.00 | 4,700.00 |
| 09/02/2013 | Gumbel M.Ds,P.A. Francis | SERVICE: MONTHLY MEDICAL DIRECTOR DOS 090113-093013 | 1,500.00 | |
| 09/30/2013 | Lenz MD, Paul A | SERVICE: MEDICAL DIRECTOR SERVICES | 1,200.00 | |
| 09/30/2013 | Molinas M.D., P.A., Miguel A. | SERVICE: MEDICAL CO-DIRECTOR SERVICE DOS 090113-093013 | 2,000.00 | 4,700.00 |
| 10/31/2013 | Gumbel M.Ds,P.A. Francis | SERVICE: MEDICAL DIRECTOR SERVICE 100113-103113 | 1,500.00 | |
| 10/31/2013 | Lenz MD, Paul A | SERVICE: MEDICAL DIRECTOR SERVICE 100113-103113 | 1,200.00 | |
| 10/31/2013 | Molinas M.D., P.A., Miguel A. | SERVICE: MEDICAL CO DIRECTOR SERVICE DOS 100113-103113 | 2,000.00 | 4,700.00 |
| 11/30/2013 | Gumbel M.Ds,P.A. Francis | SERVICE: MONTHLY MEDICAL DIRECTOR DOS 110113-113013 | 1,500.00 | |
| 11/30/2013 | Lenz MD, Paul A | SERVICE: MEDICAL DIRECTOR SERVICE 110113-113013 | 1,200.00 | |
| 11/30/2013 | Molinas M.D., P.A., Miguel A. | SERVICE: MEDICAL CO DIRECTOR SERVICE DOS 110113-113013 | 2,000.00 | 4,700.00 |
| 12/31/2013 | Gumbel M.Ds,P.A. Francis | SERVICE: MONTHLY MEDICAL DIRECTOR- DECEMBER | 1,500.00 | |
| 12/31/2013 | Lenz MD, Paul A | SERVICE: MEDICAL DIRECTOR SERVICE - DECEMBER | 1,200.00 | |
| 12/31/2013 | Molinas M.D., P.A., Miguel A. | SERVICE: MEDICAL CO DIRECTOR SERVICE - DECEMBER | 2,000.00 | 4,700.00 |
| 01/31/2014 | Gumbel M.Ds,P.A. Francis | SERVICE: MONTHLY MEDICAL DIRECTOR  - JANUARY 2014 | 1,500.00 | |
| 01/31/2014 | Lenz MD, Paul A | SERVICE: MEDICAL DIRECTOR SERVICES - JANUARY 2014 | 1,200.00 | |
| 01/31/2014 | Molinas M.D., P.A., Miguel A. | SERVICE: MONTHLY CO DIRECTOR SERVICE - JANUARY 2014 | 2,000.00 | 4,700.00 |
| 02/28/2014 | Gumbel M.Ds,P.A. Francis | SERVICE: MONTHLY MEDICAL DIRECTOR DOS 020114-022814 | 1,500.00 | |
| 02/28/2014 | Lenz MD, Paul A | SERVICE: MEDICAL DIRECTOR SERVICE DOS 020114-022814 | 1,200.00 | |
| 02/28/2014 | Molinas M.D., P.A., Miguel A. | SERVICE: MEDICAL CO-DIRECTOR SERVICE | 2,000.00 | 4,700.00 |
| 03/31/2014 | Gumbel M.Ds,P.A. Francis | SERVICE: MEDICAL DIRECTOR SERVICES DOS 030114-033114 | 1,500.00 | |
| 03/31/2014 | Lenz MD, Paul A | SERVICE: MEDICAL DIRECTOR SERVICE DOS 030114-033114 | 1,200.00 | |
| 03/31/2014 | Molinas M.D., P.A., Miguel A. | SERVICE: MEDICAL CO DIRECTOR SERVICE DOS 030114-033114 | 2,000.00 | 4,700.00 |
| 04/30/2014 | Gumbel M.Ds,P.A. Francis | SERVICE: MONTHLY MEDICAL DIRECTOR DOS 040114-043014 | 1,500.00 | |

6:55 PM
07/13/15
Accrual Basis

**Empire Spanish Meadows**
## Medical Director Detail
January 2013 through May 2015

| Date | Name | Memo | Detail | Monthly Total |
|------|------|------|--------|---------------|
| 04/30/2014 | Lenz MD, Paul A | SERVICE: MEDICAL DIRECTOR SERVICE DOS 040114-043014 | 1,200.00 | |
| 04/30/2014 | Molinas M.D., P.A., Miguel A. | SERVICE: MEDICAL CO DIRECTOR SERVICE DOS 040114-043014 | 2,000.00 | 4,700.00 |
| | | | | |
| 05/31/2014 | Gumbel M.Ds,P.A. Francis | SERVICE: MONTHLY MEDICAL DIRECTOR DOS 050114-053114 | 1,500.00 | |
| 05/31/2014 | Lenz MD, Paul A | SERVICE: MEDICAL DIRECTOR SERVICE DOS 050114-053114 | 1,200.00 | |
| 05/31/2014 | Molinas M.D., P.A., Miguel A. | SERVICE: MEDICAL CO-DIRECTOR SERVICE DOS 050114-053114 | 2,000.00 | 4,700.00 |
| | | | | |
| 06/30/2014 | Gumbel M.Ds,P.A. Francis | SERVICE: MONTHLY MEDICAL DIRECTOR DOS 060114-063014 | 1,500.00 | |
| 06/30/2014 | Lenz MD, Paul A | SERVICE: MEDICAL DIRECTOR SERVICE DOS 060114-063014 | 1,200.00 | |
| 06/30/2014 | Molinas M.D., P.A., Miguel A. | SERVICE: MEDICAL CO DIRECTOR SERVICE DOS 060114-063014 | 2,000.00 | 4,700.00 |
| | | | | |
| 07/31/2014 | Gumbel M.Ds,P.A. Francis | SERVICE: MONTHLY MEDICAL DIRECTOR DOS 070114-073114 | 1,500.00 | |
| 07/31/2014 | Lenz MD, Paul A | SERVICE: MEDICAL DIRECTOR SERVICE DOS 070114-073114 | 1,200.00 | |
| 07/31/2014 | Molinas M.D., P.A., Miguel A. | SERVICE: MEDICAL CO DIRECTOR SERVICE DOS 07/01/14-07/31/14 | 2,000.00 | 4,700.00 |
| | | | | |
| 08/31/2014 | Gumbel M.Ds,P.A. Francis | SERVICE: MONTHLY MEDICAL DIRECTOR DOS 080114-083114 | 1,500.00 | |
| 08/31/2014 | Lenz MD, Paul A | SERVICE: MEDICAL DIRECTOR SERVICE DOS 080114-083114 | 1,200.00 | |
| 08/31/2014 | Molinas M.D., P.A., Miguel A. | SERVICE: MEDICAL CO-DIRECTOR SERVICE DOS 080114-083114 | 2,000.00 | 4,700.00 |
| | | | | |
| 09/30/2014 | Gumbel M.Ds,P.A. Francis | SERVICE: MONTHLY MEDICAL DIRECTOR DOS 090114-093014 | 1,500.00 | |
| 09/30/2014 | Lenz MD, Paul A | SERVICE: MEDICAL DIRECTOR SERVICE DOS 090114-093014 | 1,200.00 | |
| 09/30/2014 | Molinas M.D., P.A., Miguel A. | SERVICE: MEDICAL CO-DIRECTOR SERVICE DOS 090114-093014 | 2,000.00 | 4,700.00 |
| | | | | |
| 10/31/2014 | Gumbel M.Ds,P.A. Francis | Service - medical director - October | 1,500.00 | |
| 10/31/2014 | Jover, MD., Javier A. | SERVICE: MEDICAL CO-DIRECTOR SERVICE - October | 3,000.00 | |
| 10/31/2014 | Lenz MD, Paul A | SERVICE: MEDICAL DIRECTOR SERVICE - OCTOBER | 1,200.00 | |
| 10/31/2014 | Molinas M.D., P.A., Miguel A. | SERVICE: MEDICAL CO DIRECTOR SERVICE | 2,000.00 | 7,700.00 |
| | | | | |
| 11/30/2014 | Gumbel M.Ds,P.A. Francis | SERVICE: MONTHLY MEDICAL DIRECTOR SERVICE DOS 110114-113014 | 1,500.00 | |
| 11/30/2014 | Jover, MD., Javier A. | SERVICE: MEDICAL CO-DIRECTOR SERVICE DOS 110114-113014 | 3,000.00 | |
| 11/30/2014 | Lenz MD, Paul A | SERVICE: MEDICAL DIRECTOR SERVICE DOS 110114-113014 | 1,200.00 | |
| 11/30/2014 | Molinas M.D., P.A., Miguel A. | SERVICE: MEDICAL CO-DIRECTOR SERVICE DOS 110114-113014 | 2,000.00 | 7,700.00 |
| | | | | |
| 12/31/2014 | Gumbel M.Ds,P.A. Francis | SERVICE: MONTHLY MEDICAL DIRECTOR DOS 120114-123114 | 1,500.00 | |
| 12/31/2014 | Jover, MD., Javier A. | SERVICE: MONTHLY CO-DIRECTOR SERVICE DOS 120114-123114 | 3,000.00 | |
| 12/31/2014 | Lenz MD, Paul A | SERVICE: MEDICAL DIRECTOR SERVICE DOS 120114-123114 | 1,200.00 | |
| 12/31/2014 | Molinas M.D., P.A., Miguel A. | SERVICE: MEDICAL CO DIRECTOR SERVICE DOS 120114-123114 | 2,000.00 | 7,700.00 |
| | | | | |
| 01/31/2015 | Gumbel M.Ds,P.A. Francis | SERVICE: MONTHLY MEDICAL DIRECTOR DOS 010115-013115 | 1,500.00 | |
| 01/31/2015 | Jover, MD., Javier A. | SERVICE: MEDICAL CO-DIRECTOR SERVICE DOS 010115-013115 | 3,000.00 | |
| 01/31/2015 | Lenz MD, Paul A | SERVICE: MONTHLY MEDICAL DIRECTOR DOS 010115-013115 | 1,200.00 | |
| 01/31/2015 | Molinas M.D., P.A., Miguel A. | SERVICE: MONTHLY Medical CO-DIRECTOR SERVICE DOS 010115-013115 | 2,000.00 | 7,700.00 |
| | | | | |
| 02/28/2015 | Gumbel M.Ds,P.A. Francis | SERVICE: MEDICAL DIRECTOR SERVICE DOS 020115-022815 | 1,500.00 | |
| 02/28/2015 | Jover, MD., Javier A. | SERVICE: MEDICAL CO-DIRECTOR SERVICE DOS 020115-022815 | 3,000.00 | |
| 02/28/2015 | Lenz MD, Paul A | SERVICE: MEDICAL DIRECTOR SERVICE DOS 020115-022815 | 1,200.00 | |
| 02/28/2015 | Molinas M.D., P.A., Miguel A. | SERVICE: MEDICAL CO DIRECTOR SERVICE DOS 020115-022815 | 2,000.00 | 7,700.00 |
| | | | | |
| 03/31/2015 | Gumbel M.Ds,P.A. Francis | SERVICE: MEDICAL DIRECTOR SERVICE DOS 030115-033115 | 1,500.00 | |
| 03/31/2015 | Jover, MD., Javier A. | SERVICE: MEDICAL CO-DIRECTOR SERVICE DOS 030115-033115 | 3,000.00 | |
| 03/31/2015 | Lenz MD, Paul A | SERVICE: MEDICAL DIRECTOR SERVICES DOS 030115-033115 | 1,200.00 | |
| 03/31/2015 | Molinas M.D., P.A., Miguel A. | SERVICE: MEDICAL CO-DIRECTOR SERVICE DOS 030115-033115 | 2,000.00 | 7,700.00 |
| | | | | |
| 04/30/2015 | Gumbel M.Ds,P.A. Francis | SERVICE: MONTHLY MEDICAL DIRECTOR DOS 040115-043015 | 1,500.00 | |
| 04/30/2015 | Jover, MD., Javier A. | SERVICE: MEDICAL CO-DIRECTOR SERVICE DOS 040115-043015 | 3,000.00 | |
| 04/30/2015 | Lenz MD, Paul A | SERVICE: MEDICAL DIRECTOR SERVICE DOS 040115-043015 | 1,200.00 | |
| 04/30/2015 | Molinas M.D., P.A., Miguel A. | SERVICE: MEDICAL CO-DIRECTOR SERVICE DOS 040115-043015 | 2,000.00 | 7,700.00 |
| | | | | |
| 05/31/2015 | Gumbel M.Ds,P.A. Francis | SERVICE: MONTHLY MEDICAL DIRECTOR DOS 050115-053115 | 1,500.00 | |
| 05/31/2015 | Jover, MD., Javier A. | SERVICE: MEDICAL CO-DIRECTOR SERVICE DOS 050115-053115 | 3,000.00 | |
| 05/31/2015 | Lenz MD, Paul A | SERVICE: MEDICAL DIRECTOR SERVICE DOS 050115-053115 | 1,200.00 | |
| 05/31/2015 | Molinas M.D., P.A., Miguel A. | SERVICE: MEDICAL CO-DIRECTOR SERVICE DOS 050115-053115 | 2,000.00 | 7,700.00 |
| **Total 4103011 · NH - Medical Director Consultant** | | | **160,300.00** | **160,300.00** |

103.    Defendant Jover was added as a fourth "co-medical director" in October 2014, with the other three "co-medical directors'" payments remaining unchanged.  In less than two and half years, these referral sources were paid over $160,000.

104.    By the end of 2015, Empire Spanish Meadows, according to internal financial records, added a *fifth* purported "medical director," Dr. Lorenzo R. Pelly.  It appears Dr. Pelly was paid $2,500 a month, at least during the end of 2015.[9]

105.    Empire Spanish Meadows' website apparently does not publicly list these purported medical directors.  In fact, it appears that since at least 2014 the website's "Medical Director" page has listed no medical directors, claiming instead: "More Information Coming Soon!"  *See* Screenshots over time from "Medical Director" page of website attached hereto as **Exhibit D**.

106.    According to records uncovered by Mrs. Winnon, these so-called "Medical Director" arrangements appear to date back to at least 2009.  These records are recreated in part and reflected in Table 1 below, which shows an increasing monthly outlay for "medical director" payments at most of the Defendant Facilities by 2012:

---

[9] Empire Spanish Meadows in Brownsville has or had fewer beds than Spanish Meadows in Katy.  However, based on internal records, Empire Spanish Meadows in Brownsville apparently had, based on records pertaining to 2015, five times the number of "medical directors" as Spanish Meadows in Katy.

**Table 1**

| 410301 · Medical Director Consultant | | | |
|---|---|---|---|
| **Facility** | **Monthly** | **Year** | **Report Used** |
| ESM | $3,142.20 | 2009 | 2009-2011 Consolidated PL.BS.CF |
| RJMC AV | n/a | 2009 | 2009-2011 Consolidated PL.BS.CF |
| RJMC Alice | $1,541.67 | 2009 | 2009-2011 Consolidated PL.BS.CF |
| RJMC Galveston | $0.00 | 2009 | 2009-2011 Consolidated PL.BS.CF |
| RJMC Hebb | $1,000.00 | 2009 | 2009-2011 Consolidated PL.BS.CF |
| RJMC SA | $5,000.00 | 2009 | 2009-2011 Consolidated PL.BS.CF |
| RJMC SA III | $0.00 | 2009 | 2009-2011 Consolidated PL.BS.CF |
| RJMC Katy | $0.00 | 2009 | 2009-2011 Consolidated PL.BS.CF |
| | **$10,683.87** | 2009 | 2009-2011 Consolidated PL.BS.CF |
| | | | |
| ESM | $4,075.00 | 2010 | 2009-2011 Consolidated PL.BS.CF |
| RJMC AV | $1,197.92 | 2010 | 2009-2011 Consolidated PL.BS.CF |
| RJMC Alice | $2,000.00 | 2010 | 2009-2011 Consolidated PL.BS.CF |
| RJMC Galveston | $0.00 | 2010 | 2009-2011 Consolidated PL.BS.CF |
| RJMC Hebb | $1,458.33 | 2010 | 2009-2011 Consolidated PL.BS.CF |
| RJMC SA | $5,000.00 | 2010 | 2009-2011 Consolidated PL.BS.CF |
| RJMC SA III | $0.00 | 2010 | 2009-2011 Consolidated PL.BS.CF |
| RJMC Katy | $2,929.17 | 2010 | 2009-2011 Consolidated PL.BS.CF |
| | **$16,660.42** | 2010 | 2009-2011 Consolidated PL.BS.CF |
| | | | |
| ESM | $4,633.33 | 2011 | 2009-2011 Consolidated PL.BS.CF |
| RJMC AV | $1,250.00 | 2011 | 2009-2011 Consolidated PL.BS.CF |
| RJMC Alice | $2,500.00 | 2011 | 2009-2011 Consolidated PL.BS.CF |
| RJMC Galveston | $0.00 | 2011 | 2009-2011 Consolidated PL.BS.CF |
| RJMC Hebb | $1,500.00 | 2011 | 2009-2011 Consolidated PL.BS.CF |
| RJMC SA | $5,000.00 | 2011 | 2009-2011 Consolidated PL.BS.CF |
| RJMC SA III | $541.67 | 2011 | 2009-2011 Consolidated PL.BS.CF |
| RJMC Katy | $3,562.50 | 2011 | 2009-2011 Consolidated PL.BS.CF |
| | **$18,987.50** | | |
| | | | |
| ESM | $4,700.00 | 2012 | ESM PL 6.2012 and PL Detail 8.2012 |
| RJMC AV | $1,250.00 | Jan-Jun 2012 | RJMC Consolidated Reports Jan-Jun 2012 |
| RJMC Alice | $2,500.00 | Jan-Jun 2012 | RJMC Consolidated Reports Jan-Jun 2012 |
| RJMC Galveston | $0.00 | Jan-Jun 2012 | RJMC Consolidated Reports Jan-Jun 2012 |
| RJMC Hebb | $1,500.00 | Jan-Jun 2012 | RJMC Consolidated Reports Jan-Jun 2012 |
| RJMC SA | $8,000.00 | Jan-Jun 2012 | RJMC Consolidated Reports Jan-Jun 2012 |
| RJMC SA III | $1,000.00 | Jan-Jun 2012 | RJMC Consolidated Reports Jan-Jun 2012 |
| RJMC Katy | $3,666.67 | Jan-Jun 2012 | RJMC Consolidated Reports Jan-Jun 2012 |

107.  As early as 2015, Defendant Spanish Meadows in Katy, Texas internally accounted for paying Dr. Mubarak Khawaja $2,000 a month as a "medical director" and an

additional $3,000 a month as a "nursing consultant."  An accounts payable employee, B.P., raised a question to Mrs. Winnon regarding Dr. Khawaja's simultaneous role as a "medical director" and a "nursing consultant."  B.P. pointed out that Dr. Khawaja was being paid more than other medical directors.  Mrs. Winnon flagged these issues in a report printed out for Lozano.

108.    It gets worse.  During this same period from 2013 through May 2015, Empire Spanish Meadows in Brownsville, Texas accounted for thousands of dollars (in addition to the "medical director" payments) in remuneration provided to doctors and discharge planners at local hospitals (*i.e.*, those in positions to refer patients to SNFs after the patient's required three-day hospital stay).  This remuneration took the form of, among other things, gift cards, social events, lunches, alcohol, and parties.

109.    In addition, many of these instances of inducements involved remuneration provided to discharge personnel employed by Solara Hospital, South Texas Rehabilitation Hospital, Valley Baptist Health System, and Valley Regional Medical Center.  Below in Table 2 are examples of some of these inducements according to Empire Spanish Meadows' own account records:

**Table 2**

| Date | Description |
|---|---|
| February 11, 2013 | $200 for advertisement for ballet school for daughter of Dr. Diana Carubba |
| March 25, 2013 | $424.46 for food for doctors and discharge planners |
| March 16, 2013 | $464.37 for liquor store beverages for Dr. Molina's party |
| March 29, 2013 | $187.11 for food for Dr. Gumbel and another physician's office |
| April 3, 2013 | $113.66 for food for Dr. Lenz's office |

| | |
|---|---|
| April 15, 2013 | $176.50 for food for Dr. Lenz's staff |
| April 25, 2013 | $193.66 for liquor store beverages for event at Dr. Gumbel's house |
| May 3, 2013 | $284.69 for food for Valley Baptist and other doctors |
| May 18, 2013 | $301.50 for liquor store beverages for "marketing" party for Dr. Lenz |
| May 31, 2013 | $276.41 for food for Dr. Lenz and Valley Baptist |
| June 8, 2013 | $313.89 for liquor store beverages for "marketing" Valley Regional "mixer" for case managers |
| June 17, 2013 | $691.90 for marketing meals with doctors and discharge planners |
| June 28, 2013 | $161.18 for "marketing lunch" and food for Dr. Factoriza |
| July 8, 2013 | $196.79 for "marketing lunch" and food for Dr. Factoriza |
| July 25, 2013 | $367.99 for meals for, among others, Dr. Factoriza and Dr. Gumbel |
| August 22, 2013 | $752.66 for lunch meals for, among others, Dr. Gumbel and Valley Regional |
| October 7, 2013 | $378.16 for "marketing meals" for Solara, Dr. Carubba, Dr. Factoriza, and Valley Regional |
| October 17, 2013 | $378.83 for "marketing meals" for Dr. Carubba |
| October 24, 2013 | $237.60 for "marketing meals" for Dr. Carubba and Valley Baptist |
| October 29, 2013 | $203.98 for liquor store beverages for Dr. Factoriza |
| November 14, 2013 | $284.72 for "marketing meals" for Dr. Carubba and Valley Baptist |
| November 22, 2013 | $974.80 for marketing meals, beverages, baskets for hospice and gifts |
| November 28, 2013 | $365.82 for "marketing meals" for Dr. Carubba and others |
| December 5, 2013 | $353.99 for "marketing meals" for Dr. Gumbel, Dr. Factoriza, and Valley Baptist |
| December 9, 2013 | $686.42 for marketing meals and gifts for discharge planners and doctors |
| December 12, 2013 | $432.45 for "marketing lunch meals" for, among others, Dr. Lenz and Dr. Factoriza |
| December 16, 2013 | $1,302.75 for marketing items, meals, gift for case managers and doctors |
| December 27, 2013 | $2,416.06 for liquor store "bottles" for doctor "baskets" |
| December 31, 2013 | $1,391.64 for liquor store "bottles" for "baskets for doctors" |

| | |
|---|---|
| May 20, 2014 | $854.38 for marketing meals and gifts for doctor's office and discharge planners |
| June 18, 2014 | $433.14 for Dr. Factoriza, South Texas Rehab, and Dr. Gumbel |
| July 12, 2014 | $369.25 for marketing meals and gift card for case manager |
| July 14, 2014 | $305.54 for meals for, among others, Dr. Jover, Valley Regional, and Valley Baptist |
| July 28, 2014 | $444.80 for meals for Dr. Lenz, Valley Regional, and case managers |
| October 23, 2014 | $595.77 for marketing for charge nurses and other marketing |
| November 19, 2014 | $617.72 for food for discharge planners from Solara, Valley Baptist, and others |
| November 20, 2014 | $685.24 for lunch for doctor's office, gifts for doctors and discharge personnel, and other marketing |
| December 15, 2014 | $851.58 for food for discharge planners from Valley Baptist, Valley Regional, and others |
| December 19, 2014 | $1,473.79 for liquor store "marketing gifts for doctors and discharge planners" |
| December 24, 2014 | $338.89 for liquor store "marketing gifts for discharge planners" |
| January 30, 2015 | $471.10 for food for Solara, "STRC," Valley Baptist, Valley Regional, and others |
| April 2, 2015 | $390.79 for liquor store gifts for Valley Baptist and Valley Regional discharge planners |
| May 1, 2015 | $314.62 for liquor store gifts for Valley Baptist and Valley Regional discharge planners |
| May 1, 2015 | $300.86 for liquor store gifts for Valley Baptist and Valley Regional discharge planners |
| May 21, 2015 | $502.35 for lunch with Solara personnel, gift cards for marketing, and food with Dr. Jover |

110.    As mentioned above, HHS-OIG has explained that "[t]he five most important Federal fraud and abuse laws that apply to physicians are the False Claims Act (FCA), the Anti-Kickback Statute (AKS), the Physician Self-Referral Law (Stark law), the Exclusion Authorities, and the Civil Monetary Penalties Law (CMPL)."[10]

---

[10]    HHS-OIG, *A Roadmap for New Physicians, Fraud & Abuse Laws,* https://oig.hhs.gov/compliance/physician-education/01laws.asp (last visited Jan. 30, 2020).

111.    The False Claims Act, originally enacted in 1863 and substantially amended in 1986, is a well-known statute in the health care industry.  The Deficit Reduction Act of 2005 required providers receiving $5 million or more from Medicaid to implement a written compliance policy providing procedures for detecting and preventing fraud, waste, and abuse, which also must contain "detailed information" regarding, among other things, the False Claims Act.  *See* 42 U.S.C. § 1396a(a)(68).  Defendants had, or should have had, knowledge of the False Claims Act during the Relevant Period.

112.    The Anti-Kickback Statute, originally enacted in 1972, is also a well-known statute in the health care industry.  Defendants had, or should have had, knowledge of the Anti-Kickback Statute during the Relevant Period.

113.    The Stark Law, enacted through the passage of multiple federal statutes beginning in 1989, is also a well-known statute in the health care industry.  Defendants had, or should have had, knowledge of the Stark Law during the Relevant Period.

114.    On information and belief, some of these entities had compliance policies in place pertaining specifically to the False Claims Act, the Anti-Kickback Statute, and/or the Stark Law during the Relevant Period.

115.    For example, Brownsville – Valley Regional Medical Center recognizes the potential that gifts might improperly influence business decisions and subjects its employees to a policy entitled "Gifts" that currently reads, or recently read, in part:

> To avoid the appearance of impropriety when giving gifts to, or receiving gifts from, individuals who do business or are seeking to do business with the Company, employees may never use or allow gifts or other incentives to improperly influence relationships or business outcomes.

116.    In addition, providers participating in Medicare are required by federal law to implement a compliance and ethics program.  *See* 42 U.S.C. § 1320a-7j.

117.    The remuneration above is repeatedly aimed at discharge planners and physicians—those in positions to make referral choices and recommendations. These inducements are not disclosed to payors like Medicare and Texas Medicaid, which is information material to reimbursement decisions made by those payors.[11]   Taxpayers should not be funding any services based upon referrals tainted by these types of inducements.

118.    To put a finer point on the problem, a Provider Summary Report for 2014 shows that Defendant Empire Spanish Meadows alone charged Medicare more than $4.4 million that year, receiving gross reimbursement related to Medicare Part A services of more than $3 million. *See* Provider Statistical and Reimbursement System Report attached hereto as **Exhibit E**. Extrapolated out over the additional year and a half of the inducements described above, this one facility likely charged Medicare more than $10 million during this snapshotted period. The same report shows net Medicare Part A reimbursement received by all Defendant Facilities in 2014 of approximately $13 million.

119.    Lozano and Balentine profited from this reimbursement.  In or around 2011, Lozano and/or Balentine apparently purchased an eight-seat, two-engine Cessna S550 airplane, or a significant ownership interest therein, using an entity named Estancia Aviation LLC.  The manager of this company is Jay W. Balentine.  Based on research, it appears this airplane is the one with a tail number N600EA depicted in the photograph attached hereto as **Exhibit F**.

120.    In or around 2012, Lozano and Balentine apparently purchased a 109-foot custom Intermarine yacht, or a significant ownership interest therein, named *Estancia*.  Relator recalls

---

[11] This conduct is material to the government and its decisions to pay claims.  In 2017, similar kickbacks paid by nursing homes in San Diego to hospital discharge planners to induce referrals resulted in a $6.9 million settlement with DOJ as well as Deferred Prosecution Agreements with four nursing homes.  *See* https://www.justice.gov/usao-cdca/pr/san-diego-nursing-homes-owned-la-based-brius-management-pay-69-million-resolve-kickback (last visited Jan. 30, 2020).

that Lozano and Balentine made payments toward *Estancia* through RJ Meridian Care of Galveston, LLC and an entity known as RJ Meridian Care Realty Group of Katy, LLC.  Based on pictures Lozano shared with her, Relator believes *Estancia* is the yacht in the photograph attached hereto as **Exhibit F**.  Lozano directed Relator to provide accounting services for expenses related to *Estancia*, and Lozano directed the payment of approximately $500 a month to Relator out of the bank account of RJ Meridian Care Realty Group of Katy, LLC.

121.    In or around 2014, Lozano and/or Balentine apparently purchased a 12-seat, two-engine Cessna 650 airplane, or a significant ownership interest therein, using an entity named Estancia Aviation III LLC.  The manager of this company is "JWB Development Corporation," with an address at 2228 Seawall Boulevard, Galveston, Texas, 77550—the same address as the Defendant Facility known as "The Meridian."  Based on research, it appears this airplane is the one with a tail number N725RH depicted in the photograph attached hereto as **Exhibit F**.

122.    But the underlying misconduct did not end with illegal inducements to obtain SNF patients.  As detailed in the next section, once patients arrived at Defendant Facilities, claims for purported care provided to those patients were then frequently and unlawfully inflated.

### B.    Unlawful and Unsubstantiated RUG Billing
### (Lozano, Balentine, Defendant Facilities, and RehabCare)

123.    Defendant Facilities systematically overcharged for skilled nursing services by falsely claiming higher daily rates for such services than were justified and for longer periods than were justified.  These false claims have two primary aspects.  First, Defendant Facilities repeatedly and systematically assigned higher payment rates to patient beneficiaries for whom the higher level of care was not medically justified.  Second, Defendant Facilities consistently assigned higher payment rates to patient beneficiaries for a longer period of time than was medically justified for such patients.

124.    By assigning higher-than-justified payment rates for skilled nursing services and applying the higher rates for longer than necessary, Defendant Facilities received millions more in taxpayer funds than they were lawfully entitled to receive, and Lozano and Balentine both reaped the benefit.  As a result of these false claims, those Defendants padded their profit margins at the expense of American and Texas taxpayers.

**Background on the SNF Prospective Payment System**

125.    Section 4432 of the Balanced Budget Act of 1997 provided for the implementation of a per-diem prospective payment system (PPS) for SNFs, paying all costs (routine, ancillary, and capital-related) of covered SNF services furnished to beneficiaries.  In general, under the PPS applicable to SNFs, the daily payment rates were adjusted for case mix (*i.e.*, the expected resource intensity typically associated with the patient's clinical condition) and geographic variations in employee wages and other administrative costs.

126.    According to 42 CFR §§ 409.30(a)(1) and (b)(1), the Medicare Part A reimbursement to SNFs covers the following:  skilled nursing care, therapy services (*i.e.*, physical, occupational and speech therapy) and other related services.  The Medicare beneficiary is required to be admitted to the SNF within 30 days of discharge from an inpatient hospital stay that lasted at least three consecutive days.  Skilled nursing services must be ordered by a referring physician.

127.    For most of the Relevant Period, SNFs were paid under Medicare Part A for skilled nursing services under this PPS according to the calculated daily payment rates.[12]  Under

---

[12] This system was recently replaced by a new prospective payment system called the Patient-Driven Payment Model (PDPM), which became effective on October 1, 2019.  *See* CMS, *Patient Driven Payment Model*, available at https://www.cms.gov/Medicare/Medicare-Fee-for-Service-Payment/SNFPPS/PDPM (last visited Jan. 24, 2020).

this system, SNFs classified each patient beneficiary who received skilled nursing services at their facilities into a particular group, known as a resource utilization group ("RUG"), based on the patient's care and resource needs.[13]

128.    In turn, the RUG classification was used to determine the daily payment rate for each patient beneficiary in the SNF.  This payment rate was intended to cover all operating and capital costs that the SNF would be expected to incur in furnishing most SNF services to beneficiaries, with the exception of certain services billed separately under Medicare Part B.[14]

129.    The RUG classification for each patient beneficiary was determined based on three components of the patient's care and resource needs: (1) the nursing component, reflecting the intensity of nursing care the patient required based largely on the particular medical conditions affecting the patient and the patient's ability to perform certain activities of daily living ("ADLs"), such as feeding, bathing, and dressing, without professional assistance; (2) a therapy component, reflecting the amount of time for certain therapy services—in particular, occupational, speech, and/or physical therapy—the patient required on a weekly basis; and (3) a component reflecting the expected costs of wages, room and board, administrative services, and other items that vary by locality.[15]

130.    Under the most recent RUG classification system (the "RUG-IV System"), there were 66 different payment coding levels, or "RUGs," for SNF patients.  Broadly speaking, these

---

[13] HHS-OIG, *Questionable Billing by Skilled Nursing Facilities*, at i (Dec. 2010).

[14] CMS, Medicare Learning Network, *Skilled Nursing Facility Prospective Payment System*, at 3 (Dec. 2018) ("Beginning on or after July 1, 1998, for cost reporting periods, the SNF PPS per diem represents Medicare's payment for all costs of providing covered Part A SNF services (routine, ancillary, and capital-related costs), except costs associated with operating approved educational activities and services excluded from SNF Consolidated Billing.").

66 different RUGs fell into eight distinct categories, two of which applied to beneficiaries who required therapy and six of which applied to beneficiaries who required little to no therapy. The two therapy categories were labeled (1) Rehabilitation Plus Extensive Services and (2) Rehabilitation (without extensive services). The other six categories consisted of (3) Extensive Services, (4) Special Care High, (5) Special Care Low, (6) Clinically Complex, (7) Behavioral Symptoms and Cognitive Performance, and (8) Reduced Physical Function.

131.    Within each category, depending on the patient's particular care requirements, there were several different RUGs identified by a distinct code. For example, in the Rehabilitation Plus Extensive Services category, there were nine distinct RUG levels described by the following codes: RUX, RUL, RVX, RVL, RHX, RHL, RMX, RML, and RLX. In the Rehabilitation category, there were 14 distinct codes: RUA, RUB, RUC, RVA, RVB, RVC, RHA, RHB, RHC, RMA, RMB, RMC, RLA, and RLB.

132.    Among the two therapy categories (*i.e.*, Rehabilitation Plus Extensive Services and Rehabilitation), as explained above, the appropriate code varied in part based on the amount of physical, occupational, or speech therapy services required each week. In particular, there were five levels of therapy: (1) Ultra High, which required a minimum of 720 minutes of therapy per week in at least two disciplines; (2) Very High, which required between 500 and 719 minutes of therapy per week; (3) High, which required between 325 and 499 minutes of therapy per week; (4) Medium, which required between 150 and 324 minutes of therapy per week; and (5) Low, which required between 45 and 149 minutes of therapy per week.

133.    The middle letter in each of the three-letter RUG codes in the therapy categories reflected the amount of weekly therapy required for the patient. In particular, "U" stands for

---

[15] Medicare Payment Advisory Commission, *Skilled Nursing Facility Services Payment System*,

"Ultra High"; "V" stands for Very High; "H" stands for High; "M" stands for Medium; and "L" stands for low.  For example, the middle letter of the "RUX" and "RUC" codes signifies that the patient required a minimum of 720 minutes of weekly therapy.

134.    The final letter in the code reflects other factors regarding the patient's medical condition, including the patient's minimum activity of daily living (ADL) dependency score.  For example, the letter "A" signifies that the patient has an ADL score between zero and five; the letter "B" signifies that the patient has an ADL score between six and ten; and the letter "C" signifies that the patient has an ADL score between eleven and sixteen.  Meanwhile, the letters "X" and "L" refer to so-called extensive services involving complex clinical care, including tracheostomy care, ventilator or respirator care, and/or infection isolation.  The letter "L" means that a patient requires one of these services, whereas the letter "X" means the patient requires at least two of these services.

135.    Putting aside the variance based on locality, the daily payment rates are generally higher for therapy RUGs than for nontherapy RUGs, and the daily payment rates are generally higher where a greater amount of therapy time is required each week.  In addition, the daily payment rates are higher for RUGs with higher ADL scores or higher extensive-service needs than for RUGs with lower ADL scores or lower extensive-service needs.

136.    Out of all 66 RUG codes in the RUG-IV classification system, the highest paying daily rate (again disregarding the locality adjustment) applies to the "RUX" code because that code involves the highest volume of therapy and the maximum amount of ongoing nursing care compared with other RUG codes.

---

at 2–3 (Oct. 2016).

137.    Table 3 below shows the 2012 reimbursement rates in urban and rural locales.  As the table indicates, the RUX code carries the highest daily rate, followed by the RUL code.

**Table 3**

| 2012 Medicare Final Rule | | | | | | |
|---|---|---|---|---|---|---|
| Table 4:  Rug - IV Case-Mix Adjusted Federal Rates and Associated Indexes - URBAN | | | | | | |
| RUG Category | Nursing Index | Therapy Index | Nursing Component | Therapy Component | Non-Case Mix Therapy Component | Non-Case Mix Component | Total Rate |
| RUX | 2.67 | 1.87 | $428.86 | $226.25 | | $81.97 | $737.08 |
| RUL | 2.57 | 1.87 | $412.79 | $226.25 | | $81.97 | $721.01 |
| RVX | 2.61 | 1.28 | $419.22 | $154.87 | | $81.97 | $656.06 |
| RVL | 2.19 | 1.28 | $351.76 | $154.87 | | $81.97 | $588.60 |
| RHX | 2.55 | 0.85 | $409.58 | $102.84 | | $81.97 | $594.39 |
| RHL | 2.15 | 0.85 | $345.33 | $102.84 | | $81.97 | $530.14 |
| RMX | 2.47 | 0.55 | $396.73 | $66.54 | | $81.97 | $545.24 |
| RML | 2.19 | 0.55 | $351.76 | $66.54 | | $81.97 | $500.27 |
| RLX | 2.26 | 0.28 | $363.00 | $33.88 | | $81.97 | $478.85 |
| RUC | 1.56 | 1.87 | $250.57 | $226.25 | | $81.97 | $558.79 |
| RUB | 1.56 | 1.87 | $250.57 | $226.25 | | $81.97 | $558.79 |
| RUA | 0.99 | 1.87 | $159.01 | $226.25 | | $81.97 | $467.23 |
| RVC | 1.51 | 1.28 | $242.54 | $154.87 | | $81.97 | $479.38 |
| RVB | 1.11 | 1.28 | $178.29 | $154.87 | | $81.97 | $415.13 |
| RVA | 1.1 | 1.28 | $176.68 | $154.87 | | $81.97 | $413.52 |
| RHC | 1.45 | 0.85 | $232.90 | $102.84 | | $81.97 | $417.71 |
| RHB | 1.19 | 0.85 | $191.14 | $102.84 | | $81.97 | $375.95 |
| RHA | 0.91 | 0.85 | $146.16 | $102.84 | | $81.97 | $330.97 |
| RMC | 1.36 | 0.55 | $218.44 | $66.54 | | $81.97 | $366.95 |
| RMB | 1.22 | 0.55 | $195.96 | $66.54 | | $81.97 | $344.47 |
| RMA | 0.84 | 0.55 | $134.92 | $66.54 | | $81.97 | $283.43 |
| RLB | 1.5 | 0.28 | $240.93 | $33.88 | | $81.97 | $356.78 |
| RLA | 0.71 | 0.28 | $114.04 | $33.88 | | $81.97 | $229.89 |
| ES3 | 3.58 | | $575.02 | | $15.94 | $81.97 | $672.93 |
| ES2 | 2.67 | | $428.86 | | $15.94 | $81.97 | $526.77 |
| ES1 | 2.32 | | $372.64 | | $15.94 | $81.97 | $470.55 |
| HE2 | 2.22 | | $356.58 | | $15.94 | $81.97 | $454.49 |
| HE1 | 1.74 | | $279.48 | | $15.94 | $81.97 | $377.39 |
| HD2 | 2.04 | | $327.66 | | $15.94 | $81.97 | $425.57 |
| HD1 | 1.6 | | $256.99 | | $15.94 | $81.97 | $354.90 |
| HC2 | 1.89 | | $303.57 | | $15.94 | $81.97 | $401.48 |
| HC1 | 1.48 | | $237.72 | | $15.94 | $81.97 | $335.63 |
| HB2 | 1.86 | | $298.75 | | $15.94 | $81.97 | $396.66 |
| HB1 | 1.46 | | $234.51 | | $15.94 | $81.97 | $332.42 |
| LE2 | 1.96 | | $314.82 | | $15.94 | $81.97 | $412.73 |
| LE1 | 1.54 | | $247.35 | | $15.94 | $81.97 | $345.26 |
| LD2 | 1.86 | | $298.75 | | $15.94 | $81.97 | $396.66 |
| LD1 | 1.46 | | $234.51 | | $15.94 | $81.97 | $332.42 |
| LC2 | 1.56 | | $250.57 | | $15.94 | $81.97 | $348.48 |
| LC1 | 1.22 | | $195.96 | | $15.94 | $81.97 | $293.87 |
| LB2 | 1.45 | | $232.90 | | $15.94 | $81.97 | $330.81 |
| LB1 | 1.14 | | $183.11 | | $15.94 | $81.97 | $281.02 |
| CE2 | 1.68 | | $269.84 | | $15.94 | $81.97 | $367.75 |
| CE1 | 1.5 | | $240.93 | | $15.94 | $81.97 | $338.84 |
| CD2 | 1.56 | | $250.57 | | $15.94 | $81.97 | $348.48 |
| CD1 | 1.38 | | $221.66 | | $15.94 | $81.97 | $319.57 |

43

| RUG Category | Nursing Index | Therapy Index | Nursing Component | Therapy Component | Non-Case Mix Therapy Component | Non-Case Mix Component | Total Rate |
|---|---|---|---|---|---|---|---|
| CC2 | 1.29 | | $207.20 | | $15.94 | $81.97 | $305.11 |
| CC1 | 1.15 | | $184.71 | | $15.94 | $81.97 | $282.62 |
| CB2 | 1.15 | | $184.71 | | $15.94 | $81.97 | $282.62 |
| CB1 | 1.02 | | $163.83 | | $15.94 | $81.97 | $261.74 |
| CA2 | 0.88 | | $141.35 | | $15.94 | $81.97 | $239.26 |
| CA1 | 0.78 | | $125.28 | | $15.94 | $81.97 | $223.19 |
| BB2 | 0.97 | | $155.80 | | $15.94 | $81.97 | $253.71 |
| BB1 | 0.9 | | $144.56 | | $15.94 | $81.97 | $242.47 |
| BA2 | 0.7 | | $112.43 | | $15.94 | $81.97 | $210.34 |
| BA1 | 0.64 | | $102.80 | | $15.94 | $81.97 | $200.71 |
| PE2 | 1.5 | | $240.93 | | $15.94 | $81.97 | $338.84 |
| PE1 | 1.4 | | $224.87 | | $15.94 | $81.97 | $322.78 |
| PD2 | 1.38 | | $221.66 | | $15.94 | $81.97 | $319.57 |
| PD1 | 1.28 | | $205.59 | | $15.94 | $81.97 | $303.50 |
| PC2 | 1.1 | | $176.68 | | $15.94 | $81.97 | $274.59 |
| PC1 | 1.02 | | $163.83 | | $15.94 | $81.97 | $261.74 |
| PB2 | 0.84 | | $134.92 | | $15.94 | $81.97 | $232.83 |
| PB1 | 0.78 | | $125.28 | | $15.94 | $81.97 | $223.19 |
| PA2 | 0.59 | | $94.77 | | $15.94 | $81.97 | $192.68 |
| PA1 | 0.54 | | $86.73 | | $15.94 | $81.97 | $184.64 |

**2012 Medicare Final Rule**

**Table 5:  Rug - IV Case-Mix Adjusted Federal Rates and Associated Indexes - <span style="color:red">RURAL</span>**

| RUG Category | Nursing Index | Therapy Index | Nursing Component | Therapy Component | Non-Case Mix Therapy Component | Non-Case Mix Component | Total Rate |
|---|---|---|---|---|---|---|---|
| RUX | 2.67 | 1.87 | $409.74 | $260.88 | | $83.49 | $754.11 |
| RUL | 2.57 | 1.87 | $394.39 | $260.88 | | $83.49 | $738.76 |
| RVX | 2.61 | 1.28 | $400.53 | $178.57 | | $83.49 | $662.59 |
| RVL | 2.19 | 1.28 | $336.08 | $178.57 | | $83.49 | $598.14 |
| RHX | 2.55 | 0.85 | $391.32 | $118.58 | | $83.49 | $593.39 |
| RHL | 2.15 | 0.85 | $329.94 | $118.58 | | $83.49 | $532.01 |
| RMX | 2.47 | 0.55 | $379.05 | $76.73 | | $83.49 | $539.27 |
| RML | 2.19 | 0.55 | $336.08 | $76.73 | | $83.49 | $496.30 |
| RLX | 2.26 | 0.28 | $346.82 | $39.06 | | $83.49 | $469.37 |
| RUC | 1.56 | 1.87 | $239.40 | $260.88 | | $83.49 | $583.77 |
| RUB | 1.56 | 1.87 | $239.40 | $260.88 | | $83.49 | $583.77 |
| RUA | 0.99 | 1.87 | $151.93 | $260.88 | | $83.49 | $496.30 |
| RVC | 1.51 | 1.28 | $231.72 | $178.57 | | $83.49 | $493.78 |
| RVB | 1.11 | 1.28 | $170.34 | $178.57 | | $83.49 | $432.40 |
| RVA | 1.1 | 1.28 | $168.81 | $178.57 | | $83.49 | $430.87 |
| RHC | 1.45 | 0.85 | $222.52 | $118.58 | | $83.49 | $424.59 |
| RHB | 1.19 | 0.85 | $182.62 | $118.58 | | $83.49 | $384.69 |
| RHA | 0.91 | 0.85 | $139.65 | $118.58 | | $83.49 | $341.72 |
| RMC | 1.36 | 0.55 | $208.71 | $76.73 | | $83.49 | $368.93 |
| RMB | 1.22 | 0.55 | $187.22 | $76.73 | | $83.49 | $347.44 |
| RMA | 0.84 | 0.55 | $128.91 | $76.73 | | $83.49 | $289.13 |
| RLB | 1.5 | 0.28 | $230.19 | $39.06 | | $83.49 | $352.74 |
| RLA | 0.71 | 0.28 | $108.96 | $39.06 | | $83.49 | $231.51 |
| ES3 | 3.58 | | $549.39 | | $17.02 | $83.49 | $649.90 |
| ES2 | 2.67 | | $409.74 | | $17.02 | $83.49 | $510.25 |
| ES1 | 2.32 | | $356.03 | | $17.02 | $83.49 | $456.54 |
| HE2 | 2.22 | | $340.68 | | $17.02 | $83.49 | $441.19 |
| HE1 | 1.74 | | $267.02 | | $17.02 | $83.49 | $367.53 |
| HD2 | 2.04 | | $313.06 | | $17.02 | $83.49 | $413.57 |
| HD1 | 1.6 | | $245.54 | | $17.02 | $83.49 | $346.05 |
| HC2 | 1.89 | | $290.04 | | $17.02 | $83.49 | $390.55 |
| HC1 | 1.48 | | $227.12 | | $17.02 | $83.49 | $327.63 |
| HB2 | 1.86 | | $285.44 | | $17.02 | $83.49 | $385.95 |

| | | | | | |
|---|---|---|---|---|---|
| HB1 | 1.46 | | $224.05 | $17.02 | $83.49 | $324.56 |
| LE2 | 1.96 | | $300.78 | $17.02 | $83.49 | $401.29 |
| LE1 | 1.54 | | $236.33 | $17.02 | $83.49 | $336.84 |
| LD2 | 1.86 | | $285.44 | $17.02 | $83.49 | $385.95 |
| LD1 | 1.46 | | $224.05 | $17.02 | $83.49 | $324.56 |
| LC2 | 1.56 | | $239.40 | $17.02 | $83.49 | $339.91 |
| LC1 | 1.22 | | $187.22 | $17.02 | $83.49 | $287.73 |
| LB2 | 1.45 | | $222.52 | $17.02 | $83.49 | $323.03 |
| LB1 | 1.14 | | $174.94 | $17.02 | $83.49 | $275.45 |
| CE2 | 1.68 | | $257.81 | $17.02 | $83.49 | $358.32 |
| CE1 | 1.5 | | $230.19 | $17.02 | $83.49 | $330.70 |
| CD2 | 1.56 | | $239.40 | $17.02 | $83.49 | $339.91 |
| CD1 | 1.38 | | $211.77 | $17.02 | $83.49 | $312.28 |
| CC2 | 1.29 | | $197.96 | $17.02 | $83.49 | $298.47 |
| CC1 | 1.15 | | $176.48 | $17.02 | $83.49 | $276.99 |
| CB2 | 1.15 | | $176.48 | $17.02 | $83.49 | $276.99 |
| CB1 | 1.02 | | $156.53 | $17.02 | $83.49 | $257.04 |
| CA2 | 0.88 | | $135.04 | $17.02 | $83.49 | $235.55 |
| CA1 | 0.78 | | $119.70 | $17.02 | $83.49 | $220.21 |
| BB2 | 0.97 | | $148.86 | $17.02 | $83.49 | $249.37 |
| BB1 | 0.9 | | $138.11 | $17.02 | $83.49 | $238.62 |
| BA2 | 0.7 | | $107.42 | $17.02 | $83.49 | $207.93 |
| BA1 | 0.64 | | $98.21 | $17.02 | $83.49 | $198.72 |
| PE2 | 1.5 | | $230.19 | $17.02 | $83.49 | $330.70 |
| PE1 | 1.4 | | $214.84 | $17.02 | $83.49 | $315.35 |
| PD2 | 1.38 | | $211.77 | $17.02 | $83.49 | $312.28 |
| PD1 | 1.28 | | $196.43 | $17.02 | $83.49 | $296.94 |
| PC2 | 1.1 | | $168.81 | $17.02 | $83.49 | $269.32 |
| PC1 | 1.02 | | $156.53 | $17.02 | $83.49 | $257.04 |
| PB2 | 0.84 | | $128.91 | $17.02 | $83.49 | $229.42 |
| PB1 | 0.78 | | $119.70 | $17.02 | $83.49 | $220.21 |
| PA2 | 0.59 | | $90.54 | $17.02 | $83.49 | $191.05 |
| PA1 | 0.54 | | $82.87 | $17.02 | $83.49 | $183.38 |

138.    The State of Texas uses a similar PPS coding and payment system for administering SNF payments on behalf of Medicaid beneficiaries in Texas, with a few significant differences.  Although Medicare recently switched over to a different SNF payment model, the Patient-Driven Payment Model (PDPM), effective October 1, 2019, Texas Medicaid continues to use the PPS system and will continue to do so through at least September 2021.

139.    Rather than the RUG-IV classification system formerly used by the Medicare program, the Texas Medicaid program uses the earlier RUG-III classification system, which Medicare previously used before adopting the RUG-IV system.  The RUG-III codes are similar to the RUG-IV codes, but there are fewer codes in RUG-III.

140.    TRICARE and VA health benefit programs such as CHAMPVA utilize similar RUG classification systems for the reimbursement of SNF services.

**General Abuses of SNF Prospective Payment System**

141.    HHS-OIG has issued multiple reports about its concerns regarding widespread abuses of the prospective payment system by SNFs.

142.    In December 2010, HHS-OIG issued a report entitled "Questionable Billing by Skilled Nursing Facilities" (the "2010 OIG Report").  The 2010 OIG Report identified a number of troubling trends in SNF billing nationwide, including:

   a.   "From 2006 to 2008, SNFs increasingly billed for higher paying RUGs, even though beneficiary characteristics remained largely unchanged";

   b.    "For-profit SNFs were far more likely than nonprofit or government SNFs to bill for higher paying RUGs";

   c.   Some SNFs had highly "questionable billing," such as "bill[ing] much more frequently for higher paying RUGs than other SNFs" and "unusually long average lengths of stay compared to those of other SNFs" which "indicate[d] that certain SNFs may be routinely placing beneficiaries into higher paying RUGs regardless of the beneficiaries' care and resource needs or keeping beneficiaries in Part A stays longer than necessary."[16]

143.    Notably, at the time of the 2010 OIG Report, the Medicare program was using the RUG-III classification system that is still used to this day by the Texas Medicaid program.

---

[16] *2010 OIG Report* at ii, https://oig.hhs.gov/oei/reports/oei-02-09-00202.pdf (last visited January 24, 2020).

144.    Regarding "questionable billing" by SNFs, the 2010 OIG Report elaborated using its own analysis of 2008 data from SNFs nationwide.  For instance, the analysis found that, for about three-quarters of all SNFs, only about 39 percent of their RUGs were for ultra high therapy, whereas "for the top 1 percent of SNFs, at least 77 percent of their RUGs were for ultra high therapy."  Similarly, about three-quarters of SNFs had high ADL scores about 43 percent of the time, whereas "for the top 1 percent of SNFs, at least 76 percent of their RUGs had high ADL scores."  Finally, "while the average lengths of stay were up to 34 days for three-quarters of SNFs, the top 1 percent of SNFs had average lengths of stay of at least 48 days."[17]

145.    The 2010 OIG Report concluded that there was a strong correlation between the outliers on these metrics and false claims.  Among the SNFs that were "in the top 1 percent using at least one of the measures" just discussed (*i.e.*, percentage of patients reported to require ultra-high therapy, percentage of patients reported to have high ADL scores, or average stays of at least 48 days), *none* "had beneficiary characteristics that indicated a need for such extensive use of ultra high therapy or RUGs with high ADL scores or longer lengths of stay."[18]

146.    Among SNFs in the top 1% of SNFs nationwide in any of these three categories, the "vast majority of these SNFs were for-profit."[19]

147.    The 2010 OIG Report explained that these findings "indicate[d] that some SNFs may be routinely placing beneficiaries into higher paying RUGs regardless of the beneficiaries' care and resource needs and keeping beneficiaries in Part A stays longer than necessary."[20]

---

[17] *Id.* at 14.

[18] *Id.*

[19] *Id.*

[20] *Id.* at 15

148.    The 2010 OIG Report concluded that "these findings raise[d] concerns about the potentially inappropriate use of higher paying RUGs, particularly ultra high therapy," and "indicate[d] that the current payment system provides incentives to SNFs to bill for ultra high therapy and for high levels of assistance when these levels of care may not be needed."[21]

149.    CMS, the agency charged with administering Medicare payments, largely concurred with the HHS-OIG's findings.  CMS's comments regarding the 2010 OIG Report state that, "[l]ike the OIG, CMS has been concerned with the increasing utilization of the highest paying RUGs."  CMS also expressed optimism that implementation of the RUG-IV classification system, which at that time had not been implemented, "will result in more accurate SNF payment" and "improve payment accuracy."[22]

150.    Unfortunately, however, implementation of the RUG-IV system did not solve the problem of SNF overbilling.  The aging population has led to greater numbers of individuals utilizing Medicare coverage.  According to CMS, 4.6 million claims per day were submitted between October 1-27, 2015.[23]  In September 2015, HHS-OIG issued another report regarding abuses of the SNF payment system entitled "The Medicare Payment System for Skilled Nursing Facilities Needs to be Reevaluated" (the "Sept. 2015 OIG Report").[24]

151.    The Sept. 2015 OIG Report was driven by the "longstanding concerns regarding Medicare's skilled nursing facility (SNF) payment system" raised by HHS-OIG, the Medicare

---

[21] *Id.* at iii.

[22] *Id.* at App'x H.

[23] Center for Medicare and Medicaid, *ICD-10 Transition Moves Forward* (Oct. 29, 2015), https://www.cms.gov/newsroom/fact-sheets/icd-10-transition-moves-forward.

[24] HHS OIG, *The Medicare Payment System for Skilled Nursing Facilities Needs to Be Reevaluated*, (Sept. 2015), https://oig.hhs.gov/oei/reports/oei-02-13-00610.pdf.

Payment Advisory Commission, and other entities.  In particular, "[t]hese concerns focus[ed] on SNF billing, the method of paying for therapy, and the extent to which Medicare payments exceed SNFs' costs."[25]

152.    Building on the findings from the 2010 OIG Report, as well as findings from another HHS-OIG report in June 2015 (the "June 2015 OIG Report"), the Sept. 2015 OIG Report reached the following findings, among others:

   a.   "The difference between Medicare payments and SNFs' costs for therapy, combined with the current payment method [*i.e.*, RUG-IV], creates an incentive for SNFs to bill for higher levels of therapy than necessary";

   b.   "SNFs increasingly billed for the highest level of therapy even though key beneficiary characteristics remained largely the same"; and

   c.   "Increases in SNF billing—particularly for the highest levels of therapy—resulted in $1.1 billion in Medicare payments in FYs 2012 and 2013."[26]

153.    CMS agreed with HHS-OIG's findings and recommendations in the Sept. 2015 OIG Report.  In a letter addressing HHS-OIG's findings, CMS's then-Acting Administrator Andrew M. Slavitt observed that the "number of Medicare Part A payment days continues to rise, and Medicare payments often exceed SNFs' costs."  The CMS Acting Administrator further noted that a "potential cause of this cost issue is that the Medicare Part A therapy payment under the SNF PPS is based primarily on the amount of therapy provided to the beneficiary regardless of patient condition, which implicitly provides a financial payment incentive for facilities to

---

[25] *Id.* at Executive Summary.

[26] *Id.* at 7–11.

provide as much therapy to a resident as that resident can tolerate, regardless of the impact of providing this level of therapy on producing positive patient outcomes."[27]

154.    Taken together, HHS-OIG's repeated examinations of the recurrent problem of SNF overbilling under the PPS (whether RUG-III or RUG-IV), as well as the payor agency CMS's general agreement with HHS-OIG's findings, make clear that the problem of SNF upcoding under PPS is and has been material to the United States and its payment decisions.

### **Defendants' False Claims Under the SNF Prospective Payment System**

155.    Defendant Facilities' billing practices are substantially similar to those criticized in the HHS-OIG Reports and to those of other providers that have entered into settlement agreements with the DOJ for False Claims Act violations.[28]

156.    In particular, Defendant Facilities have systematically inflated their Medicare and Medicaid payments by coding patients at higher RUG levels than warranted and continuing to apply higher RUG level treatment for longer than warranted.  Each instance in which the SNFs applied a higher-than-appropriate code or applied a higher code for longer than appropriate constitutes a false claim.

157.    In her position as Executive Assistant to Lozano and later Controller, Mrs. Winnon had access to information that supports the allegation that Defendant Facilities were upcoding and applying the higher codes for longer than was medically appropriate.

---

[27] *Id.* at App'x F.

[28] *2010 OIG Report* at 2; *see* U.S. Department of Justice, *Two Companies Pay $3.75 Million for Allegedly Causing Submission of Claims for Unreasonable or Unnecessary Rehabilitation Therapy at Skilled Nursing Facilities* (Sept. 5, 2014), https://www.justice.gov/opa/pr/two-companies-pay-375-million-allegedly-causing-submission-claims-unreasonable-or-unnecessary; *see also* U.S. Department of Justice, *United States Recovers Over $133 Million for Fraudulent Nursing Home Therapy Claims* (Jan. 12, 2016), https://www.justice.gov/usao-ma/pr/united-states-recovers-over-133-million-fraudulent-nursing-home-therapy-claims.

158.    For instance, Mrs. Winnon provided the government with a provider summary report (*see* **Exhibit E**) for several of the Defendant Facilities showing an inordinate amount of ultra-high therapy codes.  Mrs. Winnon also ran internal reports as part of her job duties based on monthly facility data.  These reports show similar outlier patterns.

**The Katy Facility**

159.    Some of the most eye-popping data points derive from the Spanish Meadows of Katy facility (the "Katy Facility"), a SNF located in the Houston suburb of Katy, Texas. **Exhibit E** shows, for example, that the Katy Facility billed an incredibly high rate of ultra-high therapy codes during 2014.  For the entire year, the Katy Facility billed 5,730 days at one of the five ultra-high therapy codes (*i.e.*, RUA, RUB, RUC, RUL, or RUX) out of a total of 7,008 patient days for the entire facility in the same timeframe.  Thus, ultra-high codes represented an astounding 81.8% of the total codes at the Katy Facility for the year 2014.

160.    For comparison, recall that, according to the 2010 OIG Report, about three-quarters of SNFs nationwide billed, on average, only about 39% ultra-high codes, whereas the top 1% of SNFs nationwide billed at least 77% for ultra-high codes.  The Katy Facility's nearly 82% ultra-high-therapy billing rate in 2014 would put it firmly in the top 1% of ultra-high-therapy billing SNFs in the entire country.  Recall also that the 2010 OIG Report found that, among the SNFs that were in the top 1 percent on the percentage of patients reported to require ultra-high therapy, *none* "had beneficiary characteristics that indicated a need for such extensive use of ultra high therapy or RUGs with high ADL scores or longer lengths of stay."[29]

161.    In addition, the same document shows that the Katy Facility billed 3,125 days under the highest-paying code in the entire RUG-IV categorization, that is, the "RUX" code.

---

[29] *2010 OIG Report* at 14.

Thus, approximately 44.6% of all patient days billed out of the Katy Facility in 2014 were charged at the highest-paying daily rate available in the PPS.

162.    These numbers represent a gross outlier nationwide.  Indeed, according to data regarding all SNFs nationwide, the Katy Facility had the highest number of Medicare Part A RUX codes in 2014 out of *any* facility in the entire country.[30]  Not only did the Katy Facility bill the highest-rate RUX code more often than any other facility in the country, it exceeded other facilities by a significant margin.  Table 4 below shows the fifty highest-frequency RUX-coding facilities in the country in 2014.  The Katy Facility exceeds the second-place facility by about 10%.  The drop-off beyond the second-place finisher is even more dramatic.  Only four other SNFs in the entire country billed *even half as many RUX codes as the Katy Facility*.  Put differently, the Katy Facility billed the highest-paying RUX code more than twice as often as all but four other SNFs in the entire country in 2014.  The Katy Facility was thus an extreme outlier on this metric.

**Table 4**

| Provider ID | Facility Name | Street Address | City | State | RUG | Total Days |
|---|---|---|---|---|---|---|
| 676064 | SPANISH MEADOWS NURSING & REHAB | 1480 KATY FLEWELLEN | KATY | TX | RUX | 3,140 |
| 215005 | BAY RIDGE HEALTH CARE CENTER | 900 VAN BUREN STREET | ANNAPOLIS | MD | RUX | 2,867 |
| 215145 | ST THOMAS MORE MEDICAL COMPLEX | 4922 LASALLE ROAD | HYATTSVILLE | MD | RUX | 2,716 |
| 555738 | WINDSOR TERRACE HEALTH CARE | 7447 SEPULVEDA BLVD | VAN NUYS | CA | RUX | 2,407 |
| 115531 | BRIARCLIFF HAVEN HEALTHCARE AND REHAB CENTER | 1000 BRIARCLIFF ROAD | ATLANTA | GA | RUX | 1,839 |
| 315494 | ALARIS HEALTH AT THE CHATEAU | 96 PARKWAY | ROCHELLE PARK | NJ | RUX | 1,526 |
| 55708 | LEGACY POST-ACUTE REHABILITATION | 1335 N. WATERMAN AVENUE | SAN BERNARDINO | CA | RUX | 1,500 |
| 145011 | GROVE OF EVANSTON | 500 ASBURY STREET | EVANSTON | IL | RUX | 1,480 |

[30] This data is referred to as the "Skilled Nursing Facility PUF," and is available at https://www.cms.gov/Research-Statistics-Data-and-Systems/Statistics-Trends-and-Reports/Medicare-Provider-Charge-Data/SNF2014 (last visited Feb. 6, 2020).  The statistics and comparisons below are derived from this data.

| 65403 | CENTER AT LINCOLN LLC | 12230 LIONESS WAY | PARKER | CO | RUX | 1,465 |
| 145618 | SALEM VILLAGE NURSING & REHAB | 1314 ROWELL AVENUE | JOLIET | IL | RUX | 1,449 |
| 65390 | CENTER AT CENTENNIAL, THE | 3490 CENTENNIAL BOULEVARD | COLORADO SPRINGS | CO | RUX | 1,415 |
| 56166 | PARAMOUNT MEADOWS NURSING CTR. | 7039 ALONDRA BLVD | PARAMOUNT | CA | RUX | 1,396 |
| 105453 | COMPREHENSIVE HEALTHCARE OF CLEARWATER | 2055 PALMETTO ST | CLEARWATER | FL | RUX | 1,300 |
| 145211 | BRENTWOOD SUB-ACUTE HEALTHCARE CENTER | 5400 WEST 87TH STREET | BURBANK | IL | RUX | 1,234 |
| 335271 | DUMONT CENTER FOR REHABILATION AND NURSING | 676 PELHAM ROAD | NEW ROCHELLE | NY | RUX | 1,200 |
| 335710 | HAMILTON PARK NURSING AND REHABILITATION CENTER | 691 92ND STREET | BROOKLYN | NY | RUX | 1,194 |
| 555851 | BAY AREA HEALTHCARE CENTER | 1833 10TH AVENUE | OAKLAND | CA | RUX | 1,190 |
| 145246 | MANORCARE OF HINSDALE | 600 WEST OGDEN AVENUE | HINSDALE | IL | RUX | 1,182 |
| 35087 | NORTH MOUNTAIN MEDICAL AND REHABILITATION CENTER | 9155 NORTH THIRD STREET | PHOENIX | AZ | RUX | 988 |
| 215219 | FUTURE CARE IRVINGTON | 22 SOUTH ATHOL AVENUE | BALTIMORE | MD | RUX | 945 |
| 555076 | ELDORADO CARE CENTER, LLC | 510 E. WASHINGTON AVENUE | EL CAJON | CA | RUX | 944 |
| 215126 | BERLIN NURSING AND REHABILITATION CENTER | 9715 HEALTHWAY DRIVE, PO BOX 799 | BERLIN | MD | RUX | 942 |
| 335248 | FIELDSTON LODGE CARE CENTER | 666 KAPPOCK STREET | RIVERDALE | NY | RUX | 929 |
| 195281 | MEADOWVIEW HEALTH & REHAB CENTER | 400 MEADOWVIEW DRIVE | MINDEN | LA | RUX | 918 |
| 105372 | AVANTE AT LAKE WORTH, INC. | 2501 N A ST | LAKE WORTH | FL | RUX | 910 |
| 56039 | DESERT OASIS HEALTHCARE | 44445 NO.15TH ST. WEST | LANCASTER | CA | RUX | 903 |
| 105903 | FRANCO NURSING & REHABILITATION CENTER | 800 NW 95TH STREET | MIAMI | FL | RUX | 893 |
| 55888 | HUNTINGTON VALLEY HEALTHCARE CENTER | 8382 NEWMAN AVENUE | HUNTINGTON BEACH | CA | RUX | 882 |
| 145607 | MANORCARE OF PALOS HEIGHTS EAST | 7850 WEST COLLEGE DRIVE | PALOS HEIGHTS | IL | RUX | 870 |
| 55750 | AMBERWOOD GARDENS | 1601 PETERSEN AVENUE | SAN JOSE | CA | RUX | 854 |
| 145557 | ALDEN ESTATES OF BARRINGTON | 1420 SOUTH BARRINGTON ROAD | BARRINGTON | IL | RUX | 854 |
| 335555 | COLD SPRINGS HILLS CTR FOR NURSING AND REHAB | 378 SYOSSET WOODBURY ROAD | WOODBURY | NY | RUX | 848 |
| 235659 | RIVERVIEW HEALTH & REHAB CENTER | 7733 E JEFFERSON | DETROIT | MI | RUX | 844 |
| 106084 | AVANTE AT OCALA, INC | 2021 SW 1ST AVE | OCALA | FL | RUX | 824 |
| 235461 | CLARKSTON SPECIALTY HEALTHCARE CENTER | 4800 CLINTONVILLE RD | CLARKSTON | MI | RUX | 820 |
| 55297 | NORWALK MEADOWS NURSING CENTER | 10625 LEFFINGWELL ROAD | NORWALK | CA | RUX | 817 |
| 345273 | KINDRED HOSPITAL EAST GREENSBORO | 2401 SOUTH SIDE BOULEVARD | GREENSBORO | NC | RUX | 813 |
| 55187 | GARDEN VIEW POST- ACUTE REHABILITATION | 14475 GARDEN VIEW LANE | BALDWIN PARK | CA | RUX | 812 |
| 56182 | GOLDEN HILL SUBACUTE & REHAB CTR | 1201 34TH ST. | SAN DIEGO | CA | RUX | 809 |
| 335328 | PALM GARDENS CARE CENTER L L C | 615 AVENUE C | BROOKLYN | NY | RUX | 791 |
| 145336 | WARREN BARR LIVING & REHAB CTR | 66 WEST OAK STREET | CHICAGO | IL | RUX | 784 |
| 56327 | KINDRED TRANSITIONAL CARE & REHAB - WALNUT CREEK | 1224 ROSSMOOR PARKWAY | WALNUT CREEK | CA | RUX | 780 |
| 335100 | ISABELLA GERIATRIC CENTER INC | 515 AUDUBON AVENUE | NEW YORK | NY | RUX | 778 |
| 335349 | CLIFFSIDE REHAB & H C C | 119 - 19 GRAHAM COURT | FLUSHING | NY | RUX | 746 |
| 555686 | STUDIO CITY REHABILITATION CEN | 11429 VENTURA BLVD | STUDIO CITY | CA | RUX | 720 |
| 335493 | CONCOURSE REHABILITATION AND NURSING | 1072 GRAND CONCOURSE | BRONX | NY | RUX | 718 |

| | CENTER INC | | | | | |
|---|---|---|---|---|---|---|
| 295070 | MARQUIS CARE PLAZA REGENCY | 6021 W. CHEYENNE AVE. | LAS VEGAS | NV | RUX | 715 |
| 445207 | WEXFORD HOUSE, THE | 2421 JOHN B DENNIS HIGHWAY | KINGSPORT | TN | RUX | 706 |
| 315352 | ALARIS HEALTH AT ST MARY'S | 135 SOUTH CENTER STREET | ORANGE | NJ | RUX | 699 |
| 15153 | ARLINGTON REHABILITATION & HEALTHCARE CENTER | 1020 TUSCALOOSA AVENUE, SW | BIRMINGHAM | AL | RUX | 697 |

163.    The data also reveals a disturbing trend regarding the period of time for which each patient at the Katy Facility was purportedly subjected to ultra-high therapy.  Among all SNFs nationwide that provided any ultra-high therapy in 2014, the average number of days of ultra-high therapy for each patient who received such therapy was 23.9 days.  However, at the Katy Facility in 2014, the average number of days of ultra-high therapy for each patient who received such therapy was 42.9 days, nearly double the national average.  For the RUX code, a patient coded "RUX" received that code on average 28.2 days across all SNFs nationwide.  However, in the Katy Facility, the average for the RUX code was 44.2 days.

164.    These lengths of stay placed the Katy Facility at or near the top 1% of all facilities nationwide in terms of average length of ultra-high therapy per patient.  Recall that, according to the 2010 OIG Report, among facilities in the top 1% in this category, *none* "had beneficiary characteristics that indicated a need for such extensive use of ultra high therapy or RUGs with high ADL scores or longer lengths of stay."[31]

165.    2014 was not an anomalous year for the Katy Facility.  Indeed, in 2013, the Katy Facility was an even greater outlier.[32]  That year, the Katy Facility charged an astounding 3,548 total days to the highest-paying RUX code.  Table 5 below shows the 25 SNFs that billed the most days under the RUX code nationwide.  As before, the data shows that the Katy Facility

---

[31] *2010 OIG Report* at 14.

[32] *See* https://www.cms.gov/Research-Statistics-Data-and-Systems/Statistics-Trends-and-Reports/Medicare-Provider-Charge-Data/SNF2013 (last visited Feb. 3, 2020).

exceeded the second-place SNF in this category by a wide margin—nearly 25%. In 2013, the

Katy Facility far outpaced other RUX-billing facilities. Indeed, only 19 facilities had even 1000

days billed to the RUX code; the Katy Facility billed 3,548 RUX days.

**Table 5**

| Provider ID | Facility Name | Street Address | City | State | RUG | Total Days |
|---|---|---|---|---|---|---|
| 676064 | SPANISH MEADOWS NURSING & REHAB | 1480 KATY FLEWELLEN | KATY | TX | RUX | 3,548 |
| 65390 | CENTER AT CENTENNIAL, THE | 3490 CENTENNIAL BOULEVARD | COLORADO SPRINGS | CO | RUX | 2,842 |
| 555738 | WINDSOR TERRACE HEALTH CARE | 7447 SEPULVEDA BLVD | VAN NUYS | CA | RUX | 2,350 |
| 56166 | PARAMOUNT MEADOWS NURSING CTR. | 7039 ALONDRA BLVD | PARAMOUNT | CA | RUX | 2,170 |
| 215145 | ST THOMAS MORE MEDICAL COMPLEX | 4922 LASALLE ROAD | HYATTSVILLE | MD | RUX | 2,151 |
| 55708 | LEGACY POST-ACUTE REHABILITATION | 1335 N. WATERMAN AVENUE | SAN BERNARDINO | CA | RUX | 2,097 |
| 65403 | CENTER AT LINCOLN LLC | 12230 LIONESS WAY | PARKER | CO | RUX | 1,859 |
| 145246 | MANORCARE OF HINSDALE | 600 WEST OGDEN AVENUE | HINSDALE | IL | RUX | 1,805 |
| 145211 | BRENTWOOD SUB-ACUTE HEALTHCARE CENTER | 5400 WEST 87TH STREET | BURBANK | IL | RUX | 1,434 |
| 145334 | PRESENCE BALLARD NURSING CTR | 9300 BALLARD ROAD | DES PLAINES | IL | RUX | 1,420 |
| 145607 | MANORCARE OF PALOS HEIGHTS EAST | 7850 WEST COLLEGE DRIVE | PALOS HEIGHTS | IL | RUX | 1,286 |
| 105717 | TIMBERRIDGE NURSING & REHABILITATION CENTER | 9848 SW 110TH ST | OCALA | FL | RUX | 1,173 |
| 105903 | FRANCO NURSING & REHABILITATION CENTER | 800 NW 95TH STREET | MIAMI | FL | RUX | 1,139 |
| 115531 | BRIARCLIFF HAVEN HEALTHCARE AND REHAB CENTER | 1000 BRIARCLIFF ROAD | ATLANTA | GA | RUX | 1,091 |
| 56092 | TOPANGA TERRACE | 22125 ROSCOE BLVD | CANOGA PARK | CA | RUX | 1,079 |
| 315494 | ALARIS HEALTH AT THE CHATEAU | 96 PARKWAY | ROCHELLE PARK | NJ | RUX | 1,058 |
| 105372 | AVANTE AT LAKE WORTH, INC. | 2501 NORTH A STREET | LAKE WORTH | FL | RUX | 1,053 |
| 195281 | MEADOWVIEW HEALTH & REHAB CENTER | 400 MEADOWVIEW DRIVE | MINDEN | LA | RUX | 1,035 |
| 235659 | RIVERVIEW HEALTH & REHAB CENTER | 7733 E JEFFERSON | DETROIT | MI | RUX | 1,024 |
| 676297 | CASA RIO HEALTHCARE AND REHABILITATION | 6211 S NEW BRAUNFELS AVE | SAN ANTONIO | TX | RUX | 984 |
| 455416 | THE COURTYARDS AT FORT WORTH | 8001 WESTERN HILLS BLVD | FORT WORTH | TX | RUX | 943 |
| 335555 | COLD SPRINGS HILLS CTR FOR NURSING AND REHAB | 378 SYOSSET WOODBURY ROAD | WOODBURY | NY | RUX | 942 |
| 105670 | AVANTE AT ST CLOUD INC | 1301 KANSAS AVE | SAINT CLOUD | FL | RUX | 892 |
| 105718 | CENTRAL PARK HEALTHCARE AND REHABILITATION CENTER | 702 S KINGS AVE | BRANDON | FL | RUX | 886 |
| 555859 | KINDRED HOSPITAL BREA D/P SNF | 875 N BREA BLVD | BREA | CA | RUX | 870 |

166. Similarly, in 2013, the average number of days of ultra-high therapy for each

patient receiving ultra-high therapy nationwide was 23.9 days. But at the Katy Facility in 2013,

patients who received ultra-high therapy received it for an average of 41.4 days.  For patients receiving the RUX code, the average number of days nationwide for the RUX code was 27.3 days, but at the Katy Facility it was 43.3 days.

167.    Similar results hold in other years.  In 2015, the Katy Facility had the second-highest number of RUX codes of any facility in the country.[33]  Regarding average number of days billing ultra-high codes, the nationwide average in 2015 was 23.6 days, whereas at the Katy Facility it was 50.5 days, more than double the national average.  For the highest-paying RUX code, the national average was 29.1 days in 2015; at the Katy Facility, the average for the RUX-coded patients was 43.6 days.

168.    In 2016, the Katy Facility regained its position atop the rankings, outpacing the second-ranked facility by more than 10% with respect to the total number of days billed to the highest-paying RUX code.[34]  That year, the nationwide average number of days of ultra-high therapy for patients receiving such therapy was 22.9 days; at the Katy Facility, the average number of days of ultra-high therapy was 37.6 days.  For the RUX code, the nationwide average was 28.5 days; at the Katy Facility, it was 48 days.

169.    Beyond the fact that the Katy Facility is an extreme outlier on these indicators, there is also evidence indicating that these ultra-high-therapy codes were not dictated by medical necessity.  The percentage of ultra-high-code therapy ending within ten minutes of the threshold is significant because it suggests that many patients did not really require the high volume of

---

[33] *See* https://www.cms.gov/Research-Statistics-Data-and-Systems/Statistics-Trends-and-Reports/Medicare-Provider-Charge-Data/SNF2015 (last visited Feb. 3, 2020).

[34] *See* https://www.cms.gov/Research-Statistics-Data-and-Systems/Statistics-Trends-and-Reports/Medicare-Provider-Charge-Data/SNF2016 (last visited Feb. 3, 2020).

therapy and instead that the facility applied the therapy up to a predetermined threshold simply to attain the higher-paying ultra-high-therapy RUG.

170.    The Sept. 2015 OIG Report recognized this troubling trend in SNF billing.  In particular, the report explained that "SNFs increasingly provided the minimum number of therapy minutes for the higher levels of therapy."' For instance, the Sept. 2015 OIG Report noted that, in 2013, about 34% of all ultra-high-therapy codes provided only the minimum number of minutes of therapy to qualify for that code.  The Sept. 2015 OIG Report characterized this practice as a "strateg[y] to optimize revenues" and noted that the "practice increased from FYs 2011 to 2013," the period studied in that report.[35]

171.    Data from the Katy Facility shows similar abuses.  For instance, in 2016, 73% of ultra-high-therapy codes applied at the Katy Facility were within 10 minutes of the 720-minute threshold required to qualify for an ultra-high-therapy RUG.  Similarly, in 2015, 71% of the ultra-high-therapy codes were within ten minutes of the threshold.   In 2014, the figure was 69%.  In 2013, it was 66%.  Consistent with HHS-OIG's findings, not only do these figures reflect a high rate of ultra-high codes near the threshold, the Katy Facility steadily increased the percentage incidence of these near-threshold events.

172.    These alarming statistics were not an accident.  Instead, Defendant Facilities knowingly charged a higher rate for services than was medically justified.  Lozano knew or should have known about the questionable coding practices at the Katy Facility, in particular, and the fact that the higher-level codes were not medically justified.  A July 2016 survey noted that the "[Katy] facility did not make sure all assessments are accurate, coordinated by an RN,

---

[35] *Sept. 2015 OIG Report* at 8–9.

done by the right professional, and are signed by the person completing them." The survey noted these deficiencies had the potential to negatively affect "many" residents.

173.    Mrs. Winnon later came to suspect that Lozano and/or Balentine were rewarding the individuals who may have known about the apparent upcoding practices at the Katy Facility. She observed that, from 2011 through 2015, the administrator of the Katy Facility, Kathy Thurman, received over $54,000 in bonus money, as well as a new Cadillac for her use and a $142,800 annual salary.    According to accounting records, Ms. Thurman's compensation represented the highest bonuses paid to any of Defendant Facilities' employees over that period by over $15,000 and the highest salary by over $30,000 annually.    To Relator's knowledge, Ms. Thurman was the only SNF administrator rewarded with a new vehicle for her use.

174.    Lozano profited handsomely as a result of the increased billing.    Internal records show Lozano took approximately $3.1 million out of the Katy Facility between 2012 and 2014.

**The Alice Facility**

175.    The Katy Facility was not the only Defendant Facility submitting false and unsubstantiated RUG claims.    There were extraordinarily expensive RUG claims submitted at other facilities, including RJ Meridian Care of Alice, LTD (the "Alice Facility"), a SNF in the small town of Alice, Texas, located between San Antonio and Brownsville.

176.    According to the Skilled Nursing Facility PUF data, over a four-year timespan from 2013 and 2016, *all* of the RUG claims paid by Medicare to the Alice Facility related to the ultra-high or very-high levels of therapy.

177.    In addition, the Skilled Nursing Facility PUF data also shows that, over the same four-year timeframe, an incredibly high percentage of the ultra-high and very-high therapy days attributed to the Alice Facility were within ten minutes of the threshold for the applicable therapy

level.  As explained above in regards to the Katy Facility, a high rate of therapy days within ten

minutes of the threshold suggests that the facility applied the treatment level only to receive the

higher level of reimbursement and not due to the patient's actual medical necessity.

178.    Table 6 below shows all of the Medicare RUG claims attributed to the Alice

Facility according to the Skilled Nursing Facility PUF data during this four-year timeframe, as

well as the percentage of ultra-high and very-high therapy RUGs that were within ten minutes of

the respective thresholds for those therapy levels:

**Table 6**

| Year | Ultra-High Therapy Days | % of UH Days w/in 10 Mins | Very-High Therapy Days | % of VH Days w/in 10 Mins | Other Days (Not UH or VH) |
|------|------|------|------|------|------|
| **2013** | 2717 | 85% | 760 | 78% | 0 |
| **2014** | 2906 | 95% | 861 | 88% | 0 |
| **2015** | 2117 | 94% | 1047 | 85% | 0 |
| **2016** | 2298 | 77% | 693 | 57% | 0 |
| **TOTAL** | 10,038 | 87.75% | 3361 | 77% | 0 |

179.    As with the Katy Facility, this data suggests that the Alice Facility was

systematically overbilling by upcoding, with the help of its service provider, RehabCare.

**Defendant RehabCare**

180.    Lozano, Balentine, and Defendant Facilities did not act alone.  In fact, some of the

Defendant Facilities contracted with Defendant RehabCare to provide therapy services.

RehabCare provided therapy services and then billed the relevant Defendant Facility for those

services.

181.    RehabCare would send the relevant Defendant Facility a monthly invoice that

listed out all patients for whom RehabCare provided services.  For each patient, the invoice

itemized the "Rug" level for the patient, the number of days the patient needed care at that level, the "Price Per RUGS," and the "Total Per Patient." The invoice also contained a summary for the month, which listed out, among other things, "Medicare Part A" and "Medicare Part B" itemized services by quantity. Each line item also identified whether the services qualified as "Ultra High," "Very High," "High," and so on. An example of one of these invoices (with patient names redacted) is attached as **Exhibit G**.

182.    Two things become self-evident upon even a cursory review of these invoices, like the one in **Exhibit G**. First, RehabCare was paid more per patient per day for billing Very High and Ultra High Medicare Part A services than any other level of service, therefore creating a financial incentive for RehabCare to code its services at "Very High" and "Ultra High" rates. Second, RehabCare disproportionately invoiced for "Very High" and "Ultra High" services.

183.    For example, the invoice in **Exhibit G** is dated February 28, 2015. RehabCare sent it to the Alice Facility. Out of 455 RUG days for Medicare Part A patients, RehabCare only billed 15 of those days at a "Medium" level or lower, and only 25 days were billed at the "High" level. As a result, 91.2 percent of the RUG days for Medicare Part A patients identified in these invoices were billed at the "Very High" or "Ultra High" therapy level.[36]

184.    Similarly, in March 2015, RehabCare again sent the Alice Facility an invoice. 417 out of 422 (98.8%) of the Medicare Part A RUG days reported on this invoice were billed at the "High," "Very High," or "Ultra High" therapy level, and 367 out of 422 days (87.0%) were billed at the "Very High" or "Ultra High" therapy level.

---

[36] It is unclear why RehabCare apparently billed for "Low," "Medium," and "High" level of treatment for at least some patients at the Alice Facility during 2015, but the Skilled Nursing Facility PUF does not report any such patients for the Alice Facility during that year.

185.    In April 2015, RehabCare again sent the Alice Facility an invoice.  421 out of 449 (93.8%) of the Medicare Part A RUG days reported on this invoice were billed at the "High," "Very High," or "Ultra High" therapy level, and 384 out of 449 days (85.5%) were billed at the "Very High" or "Ultra High" therapy level.

186.    In May 2015, RehabCare again sent the Alice Facility an invoice.  393 out of 455 (86.4%) of the Medicare Part A RUG days reported on this invoice were billed at the "Very High" or "Ultra High" therapy levels.

187.    In June 2015, RehabCare again sent the Alice Facility an invoice.  375 out of 379 (98.9%) of the Medicare Part A RUG days reported on this invoice were billed at the "High," "Very High," or "Ultra High" therapy levels, and 357 out of 379 days (94.2%) were billed at the "Very High" or "Ultra High" therapy levels.

188.    Another way to see the abuses and overbilling by RehabCare is by examining these internal invoices provided by Mrs. Winnon on a patient-specific level.  For instance, one Medicare Part A patient at the Alice Facility—Patient R.L.—purportedly received 13 straight days of "Ultra High" therapy at the end of February 2015.  Then, in March 2015, Patient R.L. purportedly received 1 day of "Very High" therapy followed by 30 straight days of "Ultra High" therapy.  Then, in April 2015, RehabCare billed the Alice Facility for 30 more straight days of "Ultra High" therapy for Patient R.L.  In May 2015, RehabCare billed the Alice Facility for 12 additional straight days of "Very High" therapy for Patient R.L.  In other words, RehabCare claimed it was necessary for Medicare Part A Patient R.L. to receive 86 straight days of "Very High" or "Ultra High" therapy.

189.    There are additional examples.  For instance, Medicare Part A Patient E.B. at the Alice Facility received 21 straight days of "Ultra High" therapy from RehabCare between April

10, 2015 and April 30, 2015.  Then, Patient E.B. received 31 straight days of "Ultra High" therapy every single day of the month of May 2015.  Then, Patient E.B. received 30 more straight days of "Ultra High" therapy every single day of June 2015.

190.    The same phenomenon is reflected in RehabCare's invoices to the Alice Facility for Medicare Part A Patient N.G. between March 2015 and June 2015:  93 straight days of "Very High" or "Ultra High" therapy.

191.    Anticipating the unlikely event that patients are just sicker in Alice, Texas, documents obtained by Mrs. Winnon show that RehabCare's pattern of overbilling RUG codes persisted at other Defendant Facilities.  At Meridian Care of Hebbronville (the "Hebbronville Facility") in February 2015, for instance, RehabCare billed 157 out of 186 (84.4%) of the Medicare Part A RUG days "Very High" or "Ultra High."

192.    In March 2015, RehabCare again sent the Hebbronville Facility an invoice.  159 out of 176 (90.34%) of the Medicare Part A RUG days were billed at "High," "Very High," or "Ultra High."

193.    In April 2015, RehabCare again sent the Hebbronville Facility an invoice.  151 out of 165 (91.51%) of the Medicare Part A RUG days were billed at "High," "Very High," or "Ultra High."

194.    In May 2015, RehabCare again sent the Hebbronville Facility an invoice.  156 out of 156 (100%) of the Medicare Part A RUG days were billed at "Ultra High"—*all* of them.

195.    RehabCare did the same thing in Galveston, Texas, at The Meridian (the "Galveston Facility").  In an invoice for June 2015, Rehab Care billed 627 out of 658 (95.28%) of the Medicare Part A RUG days at "High," "Very High," or "Ultra High."  430 of these (65.34%) were at the highest available therapy level:  "Ultra High."

196.    Mrs. Winnon does not recall Lozano, Balentine, or anyone at Defendant Facilities complaining about these extremely high invoices being dominated by the most expensive codes. However, Mrs. Winnon does recall raising a concern to Lozano that at least the Galveston Defendant Facility was paying RehabCare too much.   Lozano responded that RehabCare had agreed to absorb certain costs and to not charge for certain services.

197.    The examples above involve Medicare Part A patients.   The relevant Defendant Facilities then passed along these expensive RUG therapy days to the taxpayers and Medicare. **Exhibit E**, for instance, shows the Alice Facility overwhelming submitting RUG days at "High," "Very High," and "Ultra High" in 2014.   The same pattern holds true in 2015 in the Skilled Nursing Facility PUF data—the Alice Facility was passing along RehabCare's Medicare Part A "High," "Very High," and "Ultra High" RUG days to Medicare.   These expensive RUG codes would have financially benefitted all Defendants—to Medicare's detriment, of course.

198.    RehabCare has had prior run-ins with the Department of Justice and has settled multiple allegations related to Anti-Kickback Statute violations and unnecessary therapy practices.   In fact, the United States actually sued RehabCare in July 2015 related to its RUG billing and therapy practices.   The United States amended its complaint against RehabCare and its parent company in January 2016 to address conduct from January 1, 2009 through September 30, 2013.   RehabCare settled with the Department of Justice as to therapy provided to specific SNFs (but not Defendant Facilities) between January 1, 2009 and September 30, 2013.[37]

199.    Importantly, Defendant Facilities would have submitted bills to Medicare based on services provided by RehabCare.   The government would not know that RehabCare's

---

[37] RehabCare's billing practices at Defendant Facilities were not covered by the prior settlement. In fact, the prior settlement was limited to a timeframe that ended in September 2013.

invoices caused the submission of those false claims because RehabCare was not doing the billing.  Accordingly, Mrs. Winnon brings these practices to the government's attention based on invoices that are not submitted to the government and practices at specific SNFs that are not otherwise publicly disclosed.

### C.    False Information Submitted in Medicare Cost Reports
(Lozano, Balentine, and Defendant Facilities)

200.    Defendant Facilities are required to file an annual Form 2540-10 (formerly 2540-96) – Medicare Cost Report.  "The cost report contains provider information such as facility characteristics, utilization data, cost and charges by cost center (in total and for Medicare), Medicare settlement data, and financial statement data."[38] Worksheet S-3 Parts I-V require wage index information, overhead costs, wage related costs and direct care expenditures to be reported by SNFs.[39] Since kickbacks were paid to referral sources, the relevant Medicare Cost Reports contain *per se* material misrepresentations or omissions.

201.    In addition, Lozano and/or Balentine utilized laborers at various Defendant Facilities who worked as "regular" maintenance workers.  However, some of the costs associated with these workers were costs associated with the yacht *Estancia*.

202.    Based on Mrs. Winnon's recollection and internal documentation, a significant portion of the amounts paid to the individuals in the table below were for services rendered on the yacht, *Estancia*, and not for work associated with health care facilities.  The total for labor alone for these individuals in October and November 2015 totaled $43,044.50.  Table 7 below provides examples of some of these labor costs.

---

[38]    CMS, *Cost Reports*, https://www.cms.gov/Research-Statistics-Data-and-Systems/Downloadable-Public-Use-Files/Cost-Reports (last visited Jan. 30, 2020).

[39] *See* CMS, *Medicare Prover Reimbursement Manual*, https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/Downloads/R7PR241.pdf (Aug. 19, 2016).

**Table 7**

| Contractor Name | Invoice # | Amount |
|---|---|---|
| **Lincoln Walker** | 101615-102215 | $3,587.50 |
| | 102315-102915 | $6,140.00 |
| | 103015-110515 | $7,250.00 |
| | 110615-111215 | $7,250.00 |
| | 111315-111915 | $7,000.00 |
| **Alexander Garcia** | 101615-102215 | $300.00 |
| | 102315-102715 | $337.50 |
| | 110215-110515 | $517.50 |
| | 110615-111215 | $615.00 |
| | 111315-111915 | $510.00 |
| **Matthew Poulton** | 101615-102215 | $630.00 |
| | 102315-102915 | $805.50 |
| | 103015-110515 | $774.00 |
| | 110615-111215 | $787.50 |
| | 111315-111915 | $787.50 |
| **Roy Ryan** | 101615-102215 | $882.00 |
| | 102315-102915 | $837.00 |
| | 103015 | $171.00 |
| **Clayton Staff** | 101615-102215 | $480.00 |
| | 102315-102915 | $277.50 |
| | 103015-110515 | $600.00 |
| | 110615-111215 | $600.00 |

| | 111315-111815 | $510.00 |
|---|---|---|
| **George Luis Rios** | 101615-102015 | $558.00 |
| **Trey Lambright** | 102215-102315 | $180.00 |
| | 102715-102915 | $170.00 |
| | 103015 | $85.00 |
| **Kenneth Holmes** | 101615-102215 | $402.00 |

203.    Lozano was aware that this conduct was impermissible because Mrs. Winnon

brought it to his attention.  Just before her termination on February 17, 2016, Defendant Lozano

sent an email (Subject: Accounting for boat expenses) to another accounting employee,

instructing him as follows:

> Daniel please go back to January 2015 and properly code all expenses associated
> with the boat. I want to credit any expenses that were charged to Galveston
> facility and journal entry them to the RJR group . . . . Set up a receivable to
> Galveston for expenses owed to from (sic) RJR group. I will be in the office by
> 1030. Thanks Ramiro

In other words, after Mrs. Winnon raised the issue, Lozano instructed one of his employees to go

back more than a year and "properly" code expenses related to *Estancia* that had been charged as

expenses to Defendant Facility RJ Meridian Care of Galveston, LLC.  Relator does not know

whether this correction was ever made; however, Lozano's own email establishes that "boat"

expenses (*i.e.*, expenses for the yacht, *Estancia*) were charged to the Galveston facility.  Relator

believes these expenses were then reflected in the Galveston facility's cost report submitted to

the government.

204.    In fact, there is evidence that Lozano tried to conceal the nature of some of his financial transactions.  On February 19, 2014, Mrs. Winnon asked Lozano for direction on how to handle a transfer of funds.  Lozano instructed Mrs. Winnon to "please don't say yacht on the transfer.  Last time it said that[.]"  Mrs. Winnon replied:  "Kevin's vendor name is 'PB Yacht Delivery.'  I can't change that . . . ."

205.    Lozano and Balentine disregarded the corporate forms of their various entities, moving expenses and funds between and among entities as shown above.  This reality was again on full display in an email exchange between Mrs. Winnon and Lozano on December 17, 2014.  Mrs. Winnon asked Lozano a series of questions regarding wages at some of the Defendant Facilities.  Mrs. Winnon asked why a person named Ray Murphy was listed a working 395 hours in 2013 at one of the San Antonio facilities.  Lozano responded, stating in relevant part:  "Rays (sic) hours should be full time.  FYI later we will move him to a realty company."  In other words, Lozano expressed his ability and intent to move personnel among his entities, at least on paper.

206.    The paragraph above begs the question:  Who was Ray Murphy?  Ray Murphy was an airplane pilot Lozano kept on retainer or otherwise paid monthly to be available.  The amounts paid to Mr. Murphy came from various entities owned, controlled, and/or operated by Lozano and/or Balentine.  The above exchange shows that, similar to the Galveston facility with *Estancia* expenses, one of the San Antonio facilities had pilot expenses on its books.  Again, Relator believes these expenses would have been passed on in cost report submissions to the government.

207.    Relator believes that similar practices across the Defendant Facilities caused the submission of numerous cost reports that contained false information, inflated costs, and

unallowable expenses.  As explained above, CMS requires providers to submit accurate cost reporting information, which is material to CMS's administration of the Medicare program.

## CONCLUSION

208.    The above provides a sordid snapshot of how America's health care system becomes corrupted by avarice and the drive for profit maximization.  In summary, Defendants used unlawful kickbacks to bring patients in the door, then treated patients at the highest-paying levels regardless of medical necessity and for longer than necessary.  These unlawful acts allowed Defendants to profit handsomely and unjustifiably at the expense of taxpayers.

209.    Within the context of providers prioritizing patients covered by government health care programs that rely on taxpayer funds, this cascade of targeted inducements, improper financial arrangements, upcoding, and misreporting is more than just illegal—it is pernicious, dishonest, and must be stopped and remedied.

### CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

**Violations of the False Claims Act:  False Claims for Payment
31 U.S.C. § 3729(a)(1)(A)
(All Defendants)**

210.    Relator realleges and incorporates by reference each of the preceding paragraphs as if fully set forth in this claim for relief.

211.    Through the acts and omissions alleged above, Defendants knowingly presented, or caused to be presented, false or fraudulent claims to the United States and the State of Texas for payment or approval, within the meaning of 31 U.S.C. § 3729(a)(1)(A).

212.    Defendants violated the federal False Claims Act by submitting, or causing to be submitted, claims for reimbursement from federal health care programs, including Medicare and Texas Medicaid, knowing that those claims were ineligible for the payments demanded.

213.    False claims submitted, or caused to be submitted, by Defendants included claims resulting from unnecessary services, upcoded charges, and/or claims tainted by Anti-Kickback and Stark Law violations.

214.    Each claim submitted as a result of the Defendants' illegal conduct represents a false or fraudulent record or statement.

215.    The United States, unaware of the falsity of the records, statements, and claims made or caused to be made by Defendants, paid and may continue to pay claims that would not be paid but for Defendants' unlawful conduct.

216.    Defendants' conduct described herein was knowing, as that term is used in the False Claims Act, and material, as that term is defined in *Universal Health Services, Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016).

217.    By reason of the false or fraudulent claims, the United States has sustained damages in a substantial amount to be determined at trial, and is entitled to treble damages plus a civil penalty for each false or fraudulent claim.

<u>SECOND CLAIM FOR RELIEF</u>

**Violations of the False Claims Act:  Use of False Statements**
**31 U.S.C. § 3729(a)(1)(B)**
**(All Defendants)**

218.    Relator realleges and incorporates by reference each of the preceding paragraphs as if fully set forth in this claim for relief.

219.    Defendants knowingly used or caused to be made or used false records or statements that were material to false or fraudulent claims for payment submitted to federal health care programs.  Those false records or statements used or caused to be used by Defendants include false or upcoded claims as well as false certifications of compliance with the Anti-Kickback Statute and the Stark Law.

220.    Defendants' conduct described herein was knowing, as that term is used in the False Claims Act, and material, as that term is defined in *Universal Health Services, Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016).

221.    The United States, unaware of the falsity of the records and statements made by, used, or caused to be used by Defendants, approved, paid, and participated in payments made by federal health care programs for claims that would otherwise not have been approved and paid.

222.    By reason of these false records or statements, the United States has sustained damages in a substantial amount to be determined at trial, and is entitled to treble damages plus a civil penalty for each false or fraudulent claim.

### THIRD CLAIM FOR RELIEF

**Violations of the False Claims Act:  Conspiracy to Violate the False Claims Act
31 U.S.C. § 3729(a)(1)(C)
(All Defendants)**

223.    Relator realleges and incorporates by reference each of the preceding paragraphs as if fully set forth in this claim for relief.

224.    Defendants knowingly conspired with each other and/or other individuals and agents to violate 31 U.S.C. §§ 3729(a)(1)(A) and (B) and to defraud the United States by causing federal health care programs to pay for false claims submitted in violation of federal law.

225.    By reason of Defendants' conspiracy, the United States has sustained damages in a substantial amount to be determined at trial, and is entitled to treble damages plus a civil penalty for each false or fraudulent claim caused to be submitted.

<div align="center">

**FOURTH CLAIM FOR RELIEF**

**Violations of the False Claims Act:  Knowing Retention of Overpayments
31 U.S.C. § 3729(a)(1)(G)
(Lozano, Balentine, and Defendant Facilities)**

</div>

226.    Relator realleges and incorporates by reference each of the preceding paragraphs as if fully set forth in this claim for relief.

227.    As set forth herein, Defendants presented numerous claims for payment to the United States through federal health care programs and knowingly retained overpayments in violation of 31 U.S.C. § 3729(a)(1)(G) when Defendants failed to repay the money as required by federal law.

228.    For the reasons alleged herein, many of these claims were false within the meaning of the False Claims Act.  More specifically, Defendants knowingly and improperly avoided or decreased an obligation to repay money to the United States.

229.    By reason of Defendants' conduct, the United States has sustained damages in a substantial amount to be determined at trial, and is entitled to treble damages plus a civil penalty for each false or fraudulent claim caused to be submitted.

<div align="center">

**FIFTH CLAIM FOR RELIEF**

**Violations of Texas Law
TEX. HUM. RES. CODE § 36.002(1)
(Lozano, Balentine, Defendant Facilities, and Defendant Referral Sources)**

</div>

230.    Relator realleges and incorporates by reference each of the preceding paragraphs as if fully set forth in this claim for relief.

231.     The TMFPL, among other things, specifies certain "unlawful acts" in Section 36.002 of the Texas Human Resources Code.  These unlawful acts include knowingly making or causing to be made a false statement or misrepresentation of material fact that permits a person to receive an unauthorized or greater benefit or payment under Texas Medicaid.

232.     Through the acts and omissions alleged above, Defendants knowingly made, or caused to be made, false statements or misrepresentations of material fact to the State of Texas that permitted some or all Defendants to receive unauthorized and greater benefits and payments from Texas Medicaid.

233.     Defendants violated Texas Law by submitting, or causing to be submitted, claims for reimbursement from Texas Medicaid knowing that those claims were ineligible for the payments demanded.

234.     False claims submitted, or caused to be submitted, by Defendants included claims resulting from unnecessary services, upcoded charges, and/or claims tainted by Anti-Kickback and Stark Law violations.

235.     Each claim submitted as a result of the Defendants' illegal conduct represents a false statement or misrepresentation of material fact.

236.     The State of Texas, unaware of the falsity of the claims and statements made or caused to be made by Defendants, paid and may continue to pay claims that would not be paid but for Defendants' unlawful conduct.

237.     By reason of Defendant's unlawful conduct, the State of Texas has sustained damages in a substantial amount to be determined at trial, and is entitled to double damages plus a civil penalty for each unlawful act.

### SIXTH CLAIM FOR RELIEF

**Violations of Texas Law**
**TEX. HUM. RES. CODE § 36.002(2)**
**((Lozano, Balentine, Defendant Facilities, and Defendant Referral Sources)**

238.     Relator realleges and incorporates by reference each of the preceding paragraphs as if fully set forth in this claim for relief.

239.     The TMFPL, among other things, specifies certain "unlawful acts" in Section 36.002 of the Texas Human Resources Code.  These unlawful acts include knowingly concealing or failing to disclose information that permits a person to receive an unauthorized or greater benefit or payment under Texas Medicaid.

240.     Through the acts and omissions alleged above, Defendants knowingly concealed and failed to disclose information to the State of Texas that permitted some or all Defendants to receive unauthorized and greater benefits and payments from Texas Medicaid.

241.     False claims submitted, or caused to be submitted, by Defendants included claims resulting from unnecessary services, upcoded charges, and claims tainted by Anti-Kickback and Stark Law violations.

242.     Defendants concealed or otherwise failed to disclose to the State of Texas the unnecessary services, upcoded charges, and/or violations of the Anti-Kickback and Stark Law detailed herein.

243.     Due to this concealed conduct, the State of Texas paid and may continue to pay claims that would not be paid but for Defendants' unlawful conduct.

244.     By reason of Defendant's unlawful conduct, the State of Texas has sustained damages in a substantial amount to be determined at trial, and is entitled to double damages plus a civil penalty for each unlawful act.

## SEVENTH CLAIM FOR RELIEF

### Violations of Texas Law
### TEX. HUM. RES. CODE § 36.002(5)
### (Lozano, Balentine, Defendant Facilities, and Defendant Referral Sources)

245.    Relator realleges and incorporates by reference each of the preceding paragraphs as if fully set forth in this claim for relief.

246.    The TMFPL, among other things, specifies certain "unlawful acts" in Section 36.002 of the Texas Human Resources Code.  These unlawful acts include knowingly paying, charging, soliciting, accepting, or receiving a gift, money, donation, or other consideration as a condition to the provision of a service or product or the continued provision or service or product if the cost of the service or product is paid for, in whole or in part, under Texas Medicaid.

247.    Through the acts and omissions alleged above, Defendants knowingly paid, charged, solicited, accepted, or received a gift, money, donation, or other consideration as a condition to the provision of a service or product or the continued provision or service or product if the cost of the service or product is paid for, in whole or in part, under Texas Medicaid.

248.    Due to this unlawful conduct, the State of Texas paid and may continue to pay claims that would not be paid but for Defendants' unlawful conduct.

249.    By reason of Defendant's unlawful conduct, the State of Texas has sustained damages in a substantial amount to be determined at trial, and is entitled to double damages plus a civil penalty for each unlawful act.

## EIGHTH CLAIM FOR RELIEF

### Violations of Texas Law
### TEX. HUM. RES. CODE § 36.002(13)
### (Lozano, Balentine, Defendant Facilities, and Defendant Referral Sources)

250.    Relator realleges and incorporates by reference each of the preceding paragraphs as if fully set forth in this claim for relief.

251.    The TMFPL, among other things, specifies certain "unlawful acts" in Section 36.002 of the Texas Human Resources Code.  These unlawful acts include knowingly engaging in conduct that constitutes a violation under Section 32.039(b) of the Texas Human Resources Code.

252.    Through the acts and omissions alleged above, Defendants committed violations of Section 32.039(b) of the Texas Human Resources Code, including violations of Section 32.039(b)(1) and Section 32.039(b)(1-a) through (1-f).

253.    Due to this unlawful conduct, the State of Texas paid and may continue to pay claims that would not be paid but for Defendants' unlawful conduct.

254.    By reason of Defendant's unlawful conduct, the State of Texas has sustained damages in a substantial amount to be determined at trial, and is entitled to double damages plus a civil penalty for each unlawful act.

255.    Additionally, each violation of Section 32.039(b)(1-a) and the Texas Patient Solicitation Act, Texas Occupations Code 102.001, whether or not the unlawful conduct is related to reimbursement by any federal or state health care programs, is subject to penalties under the TMFPL.

### PRAYER FOR RELIEF

**WHEREFORE,** Relator respectfully prays for judgment against Defendants as follows:

a.    On Claims for Relief One, Two, Three, and Four (False Claims Act), treble damages and all applicable civil penalties in the maximum amount allowed by law;

b.    On Claims for Relief Five, Six, Seven, and Eight (Texas Law), double damages and all applicable civil penalties in the maximum amount allowed by law;

c.    All attorney's fees and costs associated with prosecuting this civil action, as provided by law;

d.    Interest on all amounts owed to the United States, the State of Texas, and/or Relator; and

e.    For all other relief the Court deems just and proper.

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Relator demands a jury trial for all claims and issues so triable.

Respectfully submitted,

**REESE MARKETOS LLP**

By: _/s/ Joshua M. Russ_____
    Joshua M. Russ (*pro hac vice* pending)
    Texas Bar No. 24074990
    josh.russ@rm-firm.com
    Brett S. Rosenthal (*pro hac vice* pending)
    Texas Bar No. 24080096
    brett.rosenthal@rm-firm.com
    750 N. Saint Paul St. Ste. 600
    Dallas, TX 75201-3201
    Telephone: (214) 382-9810
    Facsimile:  (214) 501-0731

**RACHEL V. ROSE – ATTORNEY AT LAW, PLLC**

By: _/S/ RACHEL VERONICA ROSE_____
    Rachel Veronica Rose
    TX State Bar No. 24074982
    P.O. Box 22718
    Houston TX 77227
    Telephone: (713) 907-7442
    rvrose@rvrose.com

**PATRICIA D. RYAN – ATTORNEY AT LAW**

By: _/s/ Patricia D. Ryan_
    Patricia D. Ryan
    DC Bar No. 296053
    Attorney at Law
    6106 Harvard Avenue
    PO Box 633
    Glen Echo, MD 20812
    Telephone: (240) 481-6284
    patriciaryan@pdrlaw.com

**ATTORNEYS FOR RELATOR**

# Exhibit A

RJ Meridian Care Company Flowchart



**Exhibit A**

| Nursing Care Facility | |
|---|---|
| A owns 100% of B (split between partners) | |
| C owns 99% of D (split between partners) | |
| E owns 1% of F | |
| G leases to H | |
| J subleases to K | |

| Company | Startup Date |
|---|---|
| RJ Meridian Care of El Campo, LTD | 8/23/2007 |
| RJ Meridian Care of Alice, LTD | 10/27/2008 |
| RJ Meridian Care of Hebbronville, LTD | 5/5/2008 |
| RJ Meridian Care of San Antonio, LTD | 3/28/2005 |
| RJ Meridian Care Alta Vista, LLC | 11/30/2009 |
| RJ Meridian Care of Galveston, LLC | 3/30/2010 |
| RJM Alta Vista Realty Group, LLC | 12/18/2009 |
| RJ Realty Group, LLC | 3/24/2005 |
| RJ Meridian Realty Group of San Antonio, LLC | 7/23/2007 |
| RJ Meridian Group, LLC | 3/24/2005 |
| RJ Meridian Care, LTD | 3/24/2005 |
| RJ Meridian Care Realty Group of El Campo, LLC | 7/23/2007 |
| RJ Meridian Care Management Company, LLC | 5/5/2008 |
| RJ Meridian Care Realty Group of Katy, LLC | 6/4/2010 |
| RJ Meridian Care Realty Group of Galveston, LLC | 7/9/2010 |

Spanish Meadows of Katy
001013539

# Exhibit B

# Medicare
## Provider Reimbursement Manual
Part 2, Provider Cost Reporting Forms and Instructions,
Chapter 35, Form CMS-2540-96

Department of Health and
Human Services (DHHS)

Centers for Medicare and
Medicaid Services (CMS)

| Transmittal 16 | Date: OCTOBER 2008 |
|---|---|

| HEADER SECTION NUMBERS | PAGES TO INSERT | PAGES TO DELETE |
|---|---|---|
| 3508 (Cont.) – 3509.1 (Cont.) | 35-15– 35-18.1(5pp.) | 35-15– 35-18.1 (5pp.) |
| 3511.3 – 3511.3 (Cont.) | 35-22.1– 35-22.2 (2pp.) | 35-22.1– 35-22.2 (2pp.) |
| 3534.3 (Cont.) – 3534.4 | 35-73 – 35-76 (4pp.) | 35-73 – 35-76 (4pp.) |
| 3565 (Cont.) – 3566 (Cont.) | 35-121 – 35-124 (4pp.) | 35-121 – 35-124 (4pp.) |
| 3590 (Cont.) – 3590 (Cont.) | 35-303 – 35-308 (6pp.) | 35-303 – 35-308 (6pp.) |
| | 35-355 – 35-356 (2pp.) | 35-355 – 35-356 (2pp.) |
| | 35-389 – 35-402(14pp.) | 35-389 – 35-402 (14pp.) |
| 3595 (Cont.) – 3595 (Cont.) | 35-503 – 35-505.1 (4pp.) | 35-503 – 35-505.1 (4pp.) |
| | 35-511.2 – 35.514 (4pp.) | 35-511.2 – 35.514 (4pp.) |
| | 35-516.1 – 35-518 (3pp.) | 35-516.1 – 35-518 (3pp.) |
| | 35-519 – 35-520 (2pp.) | 35-519 – 35-520 (2pp.) |
| | 35-533 – 35-534 (2pp.) | 35-533 – 35-534 (2pp.) |
| | 35-539 – 35-540 (2pp.) | 35-539 – 35-540 (2pp.) |
| | 35-545 – 35-546 (2pp.) | 35-545 – 35-546 (2pp.) |
| | 35-563 – 35-569 (7pp.) | 35-563 – 35-569 (7pp.) |

**NEW/REVISED MATERIAL--*EFFECTIVE DATE:***

This transmittal updates Chapter 35, Skilled Nursing Facility Complex Cost Report, Form CMS 2540-96, to reflect further clarification to existing instructions. The effective date effective for instructional changes is April 30, 2008.

Significant Revisions:
    Worksheet S-2 – One of the changes in Transmittal 15 required the reporting of a National Provider Identifier (NPI) in accordance with the Health Insurance Portability and Accountability Act of 1996 (HIPAA).  Worksheet S-2 was revised to provide for the reporting of this NPI, and the last test case included this change.  However due to an internal change of direction concerning this reporting, the NPI is now NOT required to be entered on the Worksheet S-2. Transmittal 16 reverses the change in Transmittal 15 concerning the reporting of the NPI.

**CMS-Pub. 15-2-35**

Exhibit
B

Worksheet S-2 - lines 53 through 56- Are added to record information concerning any related organizations or home office costs as defined in CMS Pub.15-1, Chapter 10. These lines include reporting provider name, address, and fiscal intermediary or contractor information.

Worksheet S-4 - Subscript column 1 of lines 16 and 17, to report CBSA. For services on and after 01/01/2006 MSA data is no longer applicable.

Worksheet E-III - Where an intermediary is required to list an adjustment on the settlement worksheet (Worksheet E, Part III), Lines 16 and 36 may be further subscripted beginning with 16.20 and 36.20.

Worksheet H-6 Part II - Specs are added to require that the proper amount as identified on line 20 is entered on line 20.

Worksheets K through K-5 - Effective for FYE on and after 06/30/2006 the following cost centers should be added on subscripted lines as follows:

"Nursing Care-Continuous Home Care" – Line 10.20

"HH Aide & Homemaker- Cont. Home Care" – Line 18.20

"Analgesics" – Line 20.30

"Sedatives/Hypnotics" – Line 20.31

"Other – Specify" – Line 20.32

Specs are being revised to require capturing the actual time stamp (i.e. 14.52) of the ECR file.

**REVISED ELECTRONIC SPECIFICATIONS EFFECTIVE DATE:** Changes to the electronic reporting specifications are effective for cost reporting periods ending on and after September 30, 2008.

**DISCLAIMER:**   **The revision date and transmittal number only apply to the redlined material. All other material was previously published in the manual and is only being reprinted.**

Lines 23, 24, and 25.--Indicate, on the appropriate lines, the amount of depreciation claimed under each method of depreciation used by the SNF during the cost reporting period.

Line 26.--The total depreciation shown on this line may not equal the amount shown on lines 1 and/or 2 on the Trial Balance of Expenses Worksheet, but represents the amount of depreciation included in costs on Worksheet A, column 7.

Lines 29 through 32.--Indicate a "Yes" or "No" answer to each question on these lines.

Lines 33 through 44.--Indicate a "Yes" or "No" answer, where applicable, to each component and type of service that qualifies for the exception.

If you are a provider (public or non public) that qualifies for an exemption from the application of the lower of cost or charges (as explained in 42 CFR 413.13(f)), indicate the component and the appropriate services that qualify for this exemption.  Subscript lines 35 through 40 as required for additional component(s).

Line 43.--Indicate whether the provider is licensed in a  State that certifies the provider as an SNF as described on line 4 above, regardless of the level of care given for Titles V and XIX patients.

Line 44.-This line is not used for cost reporting periods beginning on and after July 1, 1998.  Indicate whether the provider participated in the NHCMQ demonstration during the cost reporting period. All NHCMQ demonstration participants must file Form CMS 2540-96, including facilities reporting less than 1,500 program days which would otherwise be allowed to utilize the Form CMS 2540S-97. Only facilities in Kansas, Maine, Mississippi, New York, South Dakota, and Texas are eligible to participate in the NHCMQ demonstration.  This demonstration will not be applicable for cost reporting periods beginning on and after July 1, 1998.  At that time all SNFs will be reimbursed under PPS.

Section 222 (a)(1) of P.L. 92-603 (42 U.S.C. Section 1395b-1, note) authorizes the Secretary of the Department of Health and Human Services to engage in experiments and demonstrations regarding alternative methods of making payment on a prospective basis to SNFs and other providers.  Section 222 (a)(3) authorizes the Secretary to grant waivers of certain Title XVIII requirements insofar as such requirements relate to methods of payment for services provided.  Additional forms have been added to the SNF cost report to accommodate the NHCMQ demonstration project.  Worksheet D-1 must be completed by a provider participating in the demonstration.

A provider participating in the NHCMQ demonstration, which otherwise is reimbursed by other than the Prospective Payment System and which indicates either an "O" or "N" on line 4, must complete Worksheet E, Part V in place of Worksheet E, Part I or Worksheet E, Part II.

Line 45.--List the total amount of malpractice premiums paid,  (column 1) the total amount of paid losses, (column 2), and the total amount of self insurance, (column 3) allocated in this fiscal year.

Line 46.--Indicate if malpractice premiums and paid losses are reported in other than the Administrative and General cost center.  If yes, provide a supporting schedule and list the amounts applicable to each cost center.

Line 47.--Are you claiming ambulance costs? Enter in column 1, "Y" for yes or "N" for no. If this is your first year of providing and reporting ambulance services, you are not subject to the payment limit. Enter in column 2, Y if this is your first year of providing ambulance service, or N if it is not.

| 3508 (Cont.) | FORM CMS 2540-96 | 10-08 |
|---|---|---|

NOTE: Do not complete lines 48 and 48.01 for cost reporting periods beginning on and after 01/01/2006.

Line 48.-- If line 47 column 1 is Y, and column 2 is N, enter on line 48 column 1 the payment limit provided from your fiscal intermediary, and for services on or after 04/01/2002, enter in column 2, the Fee Amount from the PS&R. Use Worksheet S-2, line 48 (and subscripts) columns 1 and 2 for the Limit and Fee amount respectively. If your fiscal year is OTHER than a year beginning on October 1st, enter in Line 48, column 1, the payment limit for the period prior to October 1, and enter in column 2 the Fee Amount. Subscript line 48 for the applicable time periods, and enter in column 1 the Limit, enter in column 2 the Fee Amount. The per-trip rate is updated October 1st of each year. Subscript this line as needed.

Report your ambulance trip limits chronologically, in accordance with your fiscal year. Applicable chronological dates are 01/01/2001, 07/01/2001, 01/01/2002, 04/01/2002 (effective date of the blend), 01/01/2003, 01/01/2004, 01/01/2005, and 01/01/2006.

Line 48.01- 48.03.  – Use lines 48.01-48.03 if your fiscal year is OTHER than a year beginning on October 1 Ambulance services will be based on a blend until 100 percent fee schedule is transitioned on 01/01/2006. The blend is effective for services on 04/01/2002 through 12/31/2005

Line 49.--Did you operate an ICF/MR facility for the purposes of title XIX? Enter "Y" for yes and "N" for no.

Line 50.-- Did this facility report less than 1500 Medicare days in its previous year's cost report? Enter "Y" for yes or "N" for no.  If a new provider is filing a first year cost report, and qualifies to file a "simplified" SNF cost report, do not enter "Y" or "N".

Line 51.--If line 50 is yes, did you file your previous year's cost report using the "simplified" step-down method of cost finding? (See §3500.) Enter "Y" for yes or "N" for no. If a new provider is filing a first year cost report, and qualifies to file a "simplified" SNF cost report, do not enter "Y" or "N".

Line 52.--Is this cost report being filed under 42 CFR 413.321, (the "simplified" cost report)? Enter "Y" for yes, or "N" for no.

Line 53.   Are there any related organizations or home office costs as defined in CMS Pub 15-1, chapter 10 in this cost report? Enter "Y" for yes, or "N" for no in column 1. If yes, and there are related organization or home office costs, enter the related organization or home office provider number in column 2. Also, if this facility is part of a chain organization, enter the name and address of the home office on lines 54, 55 and 56.

Line 54, columns 1, 2, and 3.— Enter the name of the home office in column 1, and enter the name of the fiscal intermediary or contractor of the home office in column 2. Enter the fiscal intermediary or contractor number in column 3.

Line 55, columns 1, and 2.--Enter the street address in column 1, or the post office box number in column 2.

Line 56, columns 1, 2 and 3.—Enter the city, State and zip code in columns 1, 2, and 3.

3509.    WORKSHEET S-3 - SKILLED NURSING FACILITY AND SKILLED NURSING
         FACILITY HEALTH CARE COMPLEX STATISTICAL DATA

In accordance with 42 CFR 413.60(a), 42 CFR 413.24(a), and 42 CFR 413.40(c), you are required to maintain statistical records for proper determination of costs payable under the Medicare program. The statistics reported on this worksheet pertain to SNF, nursing facility, ICF/MR, other long term care services, HHA, CORF, CMHC, and hospice. The data to be maintained, depending on the services provided by the component, include the number of beds available, the number of admissions, the number of discharges, the average length of stay, the number of inpatient days, the bed days available, and full time equivalents (FTEs).

Column Descriptions

Column 1.--Enter on the appropriate line the beds available for use by patients at the end of the cost reporting period (SNF on line 1, nursing facility on line 3, ICF/MR on line 3.1, SNF-based other long term care facility on line 4 or hospice on line 8). Do not enter any data on line 2.

Column 2.--Enter the total bed days available. Bed days are computed by multiplying the number of beds available throughout the period by the number of days in the reporting period. If there is an increase or decrease in the number of beds available during the period, multiply the number of beds available for each part of the cost reporting period by the number of days for which that number of beds was available.

Columns 3 through 6.--Enter the number of inpatient days for each component by program

Column 4.--For fiscal years beginning on October 1st. enter on line 10 the number of ambulance trips, as defined by §4531(a)(1) of the BBA, provided for Medicare patients. If your fiscal year begins on a date other than October 1st, subscript line 10, to line 10.01. For cost reporting periods that overlap the October 1 date, enter on line 10 the trips prior to October 1 and enter on line 10.01 the number of trips after October 1. Subscript line 10 to line 10.02 if you entered amounts on Worksheet S-2, line 48.02. If you further subscripted line 48.02 to account for more than one limit on Worksheet S-2, you must subscript line 10 further to account for the trips applicable to each set of rates.

Column 7.--Enter the total number of inpatient days to include all classes of patients for each component.

Columns 8 through 11.--Enter the number of discharges, including deaths (excluding newborn and DOAs), for each component by program. A patient discharge, including death, is a formal release of a patient. (See 42 CFR 412.4.)

Column 12.--Enter the total number of discharges (including deaths) for all classes of patients for each component.

Columns 13 through 16.--The average length of stay is calculated as follows:

| | | |
|---|---|---|
| a. | Column 13, lines 1 & 3 | Column 3 divided by column 8 |
| b. | Column 14, line 1 | Column 4 divided by column 9 |
| c. | Column 15, lines 1 & 3 | Column 5 divided by column 10 |
| d. | Column 16, lines 1, 3, 4, & 9 | Column 7 divided by column 12 |

**EXCEPTION:**    Where the skilled nursing facility is located in a State that certifies the provider as an SNF regardless of the level of care given for Titles V and XIX patients, combine the statistics on lines 1 and 3.

Rev. 16                                                                        35-17

Columns 17 through 21.--Enter the number of admissions (from your records) for each component by program.

Columns 22 and 23.--The average number of employees (full-time equivalent) for the period may be determined either on a quarterly or semiannual basis. When quarterly data are used, add the total number of hours worked by all employees on the first payroll at the beginning of each quarter and divide the sum by four times the number of hours in the standard work period. When semiannual data are used, add the total number of hours worked by all employees on the first payroll of the first. and seventh months of the period, and divide this sum by two times the number of hours in the standard work period. Enter the average number of paid employees in column 22 and the average number of non-paid worker's in column 23 for each component, an applicable.

3509.1    Part II - SNF Wage Index Information.--This part provides for the collection of skilled nursing facility and nursing facility data to develop an SNF wage index that is applied to the labor related portion of the SNF cost limits. The Social Security Act Amendments of 1994 (P.L. 103-432) requested the Secretary to begin collecting data on employee compensation and hours of employment specific to skilled nursing facilities for the purposes of constructing an SNF wage index. In order to collect the data necessary to develop an SNF wage index, CMS has developed an SNF wage index form, as part of the cost report, to be completed by all SNFs.

**NOTE:** Any line reference for Worksheets A and A-6 includes all subscripts of that line.

Line 1.--Enter the wages and salaries paid to employees from Worksheet A, column 1, line 75.

Line 2.--Enter physician salaries paid to employees which are included on Worksheet A, column 1, line 75.

Line 3.--Enter the total physician and physician assistant salaries and wage related costs that are related to patient care and are included on line 1. Under Medicare, these services are billed separately under Part B.

Line 4.--Enter from Worksheet A the sum of salaries reported in column 1 of line 14 for interns and residents. Base the hours reported in column 4 on 2080 hours per each full time intern and resident employee.

Line 5.--If you are a member of a chain or other related organization, as defined in CMS Pub 15-I, 2150, enter the allowable wages and salaries and wage related costs for home office personnel from your records that are included in line 1.

Line 6.--Enter the sum of lines 2 through 5.

Line 7.--Subtract line 6 from line 1 and enter the result.

Line 8.--Enter the total of Worksheet A, column 1, line 19. This amount represents other long term care.

Line 9.- For cost reports ending on and after 11/30/1999, do not use this line.

Line 10.--Enter the amount from Worksheet A, column 1, line 49.

Line 11.--Enter the total of Worksheet A, column 1, lines 37 through 47. If these lines are subscripted to accommodate more than one HHA, also enter the total of the subscripted lines.

Line 12.--Enter the amount from Worksheet A, column 1, line 50.

Line 13.--Enter the amount from Worksheet A, column 1, line 55.

Line 14.--Enter the amount from Worksheet A, column 1, lines 58 through 63.

Line 15.--Enter the sum of lines 8 through 14.

Line 16.--Subtract line 15 from line 7 and enter the result.

Line 17.--Enter the amount paid (include only those costs attributable to services rendered in the SNF and/or NF), rounded to the nearest dollar, for contracted direct patient care services, i.e., nursing, therapeutic, rehabilitative, or diagnostic services furnished under contract rather than by employees and management contract services as defined below. Report only those personnel costs associated with these contracts. Eliminate all supplies and other miscellaneous items. Do not apply the guidelines for contracted therapy services under §1861(v)(5) of the Act and 42 CFR 413.106. For example, you have a contract with a nursing service to supply nurses for the general routine service area on weekends. Contracted labor for purposes of this worksheet does **NOT** include the following services: consultant contracts, billing services, legal and accounting services, Part A CRNA services, clinical psychologists and clinical social worker services, housekeeping services, planning contracts, independent financial audits, or any other service not directly related to patient care.

Include the amount paid (rounded to the nearest dollar) for contract management services, as defined below, furnished under contract rather than by employees. Report only those personnel costs associated with the contract. Eliminate all supplies, travel expenses, and other miscellaneous items. Contract management is limited to the personnel costs for those individuals who are working at the facility in the capacity of chief executive, chief operating officer, chief financial officer, or nursing administrator. The titles given to these individuals may vary from the titles indicated above. However, the individual should be performing those duties customarily given these positions.

For purposes of this worksheet, contract labor does **NOT** include the following services: other management or administrative services, consultative services, unmet physician guarantees, physician services, clinical personnel, security personnel, housekeeping services, planning contracts, independent financial audits, or any other services not related to the overall management and operation of the facility.

Per instructions on Form CMS-339, details, including the type of service, wages, and hours associated with each direct patient care related contract must be submitted to your intermediary as well as the aggregate total wages and hours for management contracts.

In addition, if you have no contracted labor as defined above or management contract services, enter a zero in column 1. If you are unable to accurately determine the number of hours associated with contracted labor, enter a zero in column 1.

Rev. 16                                                                          35-18.1

10-08                    FORM CMS 2540-96                         3511.3

Report in column 2 the FTE contracted and consultant staff of the HHA.

Compute staff FTEs for column 1 as follows. Divide the sum of all hours for which employees were paid by 2080 hours. Round to two decimal places, e.g., round .62244 to .62. Compute contract FTEs for column 2 as follows. Divide the sum of all hours for which contracted and consultant staff worked by 2080 hours.

If employees are paid for unused vacation, unused sick leave, etc., exclude the hours so paid from the numerator in the calculations.

Lines 16 and 17. – Enter the total number of Metropolitan Statistical Areas (MSAs), and/or *Community Based Statistical Area (CBSA),* served by this provider for this cost reporting period. List each MSA *and CBSA* code on line 17. *Effective for services on and after 01/01/2006, do not use column 1.For 01/01/2006 and after, Worksheet S-4, column 1 should be subscripted to column 1.01 for lines 16 and 17 to report the number of CBSAs, and CBSA codes serviced during this cost reporting period.*

3511.3 Part III – Compilation of PPS Activity Data.--

In accordance with 42 CFR §413.20 and §1895 of the Social Security Act, home health agencies are mandated to transition from a cost based reimbursement system to a prospective payment system (PPS) effective for home health services rendered on or after October 1, 2000.

The statistics required on this worksheet pertain to home health services furnished on or after October 1, 2000. The data to be maintained, depending on the services provided by the agency, includes the number of aggregate program visits furnished in each episode of care payment category for each covered discipline, the corresponding aggregate program charges imposed in each episode of care payment category for each covered discipline, total visits and total charges for each episode of care payment category, total number of episodes and total number of outlier episodes for each episode of care payment category, and total medical supply charges for each episode of care payment category.

All data captured in Part III of this worksheet must be associated only with episodes of care which terminate during the current fiscal year for payment purposes. Similarly, when an episode of care is initiated in one fiscal year and concludes in the subsequent fiscal year, all data required in Part III of this worksheet associated with that episode will appear in the fiscal year on the PS&R in which the episode of care terminates.

HHA Visits--See Part I of this section for the definition of an HHA visit.

Episode of Care--Under home health PPS, the 60 day episode is the basic unit of payment where the episode payment is specific to one individual beneficiary. Beneficiaries are covered for an unlimited number of non-overlapping episodes. The duration of a full length episode is 60 days. An episode begins with the start of care date and must end by the 60th day from the start of care.

Less than a full Episode of Care--

When 4 or fewer visits are provided by the HHA in a 60 day episode period, the result is a Low Utilization Payment Adjustment (LUPA). In this instance, the HHA is reimbursed based on a standardized per visit payment.

An episode may end before the 60th day in the case of a beneficiary elected transfer, or a discharge and readmission to the same HHA (including for an intervening inpatient stay). This type of situation results in a Partial Episode Payment (PEP) adjustment.

Rev. 16                                                          35-22.1

3511.3 (Cont.)            FORM CMS 2540-96            10-08

When a beneficiary experiences a Significant Change in Condition (SCIC) and subsequently, but within the same 60 day episode, elects to transfer to another provider, a SCIC within a PEP occurs. A SCIC adjustment occurs when a beneficiary experiences a significant change in condition, either improving or deteriorating, during the 60 day episode that was not envisioned in the original plan of care. The SCIC adjustment reflects the proportional payment adjustment for the time both before and after the beneficiary experienced the significant change in condition during the 60 day episode.

Use lines 1 through 12 to identify the number of visits and the corresponding visit charges for each discipline for each episode payment category. Lines 13 and 14 identify the total number of visits and the total corresponding charges, respectively, for each episode payment category. Line 15 identifies the total number of episodes completed for each episode payment category. Line 16 identifies the total number of outlier episodes completed for each episode payment category. Outlier episodes do not apply to 1) Full Episodes without Outliers 2) LUPA Episodes. Line 17 identifies the total medical supply charges incurred for each episode payment category. Column 7 displays the sum total of data for columns 1 through 6. The statistics and data required on this worksheet are obtained from the provider statistical and reimbursement (PS&R) report and pertain only to services rendered on or after October 1, 2000.

Columns 1 through 6.--Enter data pertaining to Title XVIII patients only for services furnished on or after October 1, 2000. Enter, as applicable, in the appropriate columns 1 through 6, lines 1 through 12, the number of aggregate program visits furnished in each episode of care payment category for each covered discipline and the corresponding aggregate program visit charges imposed for each covered discipline for each episode of care payment category. The visit counts and corresponding charge data are mutually exclusive for all episode of care payment categories. For example, visit counts and the corresponding charges that appear in column 4 (PEP only episodes) will not include any visit counts or corresponding charges that appear in column 5 (SCIC within a PEP) and vise versa. This is true for all episode of care payment categories in columns 1 through 6.

Line 13.--Enter in columns 1 through 6 for each episode of care payment category, respectively, the sum total of visits from lines 1, 3, 5, 7, 9, and 11.

Line 14.--Enter in columns 1 through 6 for each episode of care payment category, respectively, the sum total other of charges for all unspecified services reimbursed under PPS.

Line 15.--Enter in columns 1 through 6 for each episode of care payment category, respectively, the sum total of visit charges from lines 2, 4, 6, 8, 10, 12, and 14.

Line 16.--Enter in columns 1 through 6 for each episode of care payment category, respectively, the total number of episodes of care rendered and concluded in the provider's fiscal year.

Line 17.--Enter in columns 2 and 4 through 6 for each episode of care payment category identified, respectively, the total number of episodes of care rendered and concluded in the provider's fiscal year. Outlier episodes do not apply to columns 1 and 3 (Full Episodes without Outliers and LUPA Episodes, respectively).

Line 18.-- Enter in columns 1 through 6 for each episode of care payment category, respectively, the total non-routine medical supply charges for services relating to episodes of care rendered and concluded in the provider's fiscal year.

Column 7.-- Enter on lines 1 through 18, respectively, the sum total of amounts from columns 1 through 6.

35-22.2                                                    Rev.16

08-08 Draft                     FORM CMS 2540-96                          3534.3 (Cont.)

primary payer payment is not credited toward the beneficiary's deductible and coinsurance (situations 4 and 5). Primary payer payments that are credited toward the beneficiary's deductible and coinsurance are not entered on line 9.

Line 9.--Enter the Part A coinsurance billed to Medicare beneficiaries. Include any primary payer payments applied to Medicare beneficiaries' coinsurance in situations where the primary payer payments do not fully satisfy the obligation of the beneficiary to the provider. Do not include any primary payer payments applied to Medicare beneficiaries' coinsurance in situations where the primary payer payment fully satisfies the obligation of the beneficiary to the provider. DO NOT INCLUDE coinsurance billed to program patients for physicians' professional services.

Line 10.--Enter program reimbursable bad debts for deductibles and coinsurance (from your records), excluding deductibles and coinsurance for physicians' professional services and net of bad debt recoveries.

Line 10.01—Multiply the amount (including negative amounts) on line 10 by 100 percent for cost reporting periods beginning before 10/01/2005.

Line 10.02—Enter the gross reimbursable bad debts for full-benefit dual eligible individuals. This amount must also be included in the amount on line 10.

Line 10.03—DRA 2005 SNF Bad Debt – For cost reporting periods beginning on or after October 1, 2005, calculate as follows: [( Line 10 – line 10.02) times .7], PLUS the amount on line 10.02. This is the adjusted SNF allowable bad debt in accordance with DRA 2005, section 5004. (10/01/2005)

Line 11.--Enter the applicable program's share of the reasonable compensation paid to physicians for services in utilization review committees applicable to the SNF. Include this amount in the amount eliminated from total costs on Worksheet A-8, line 28.

Line 12.--Enter the program's share of any recovery of excess depreciation applicable to prior years resulting from provider termination or a decrease in program utilization. (See §§136-136.16.)

Line 13.--Enter the program's share of any net depreciation adjustment applicable to prior years resulting from the gain or loss on the disposition of depreciable assets. (See §§132 - 132.4.) Enter in parentheses ( ) the amount of any excess depreciation taken.

**NOTE:**  Section 1861 (v) (1) (O) sets a limit on the valuation of a depreciable asset that may be recognized in establishing an appropriate allowance for depreciation, and for interest on capital indebtedness after a change of ownership that occurs on or after December 1, 1997.

Line 14.—For cost reporting periods beginning prior to October 1, 2005, enter the sum of lines 3, 7, 10 and 11, minus lines 12, 8 & 9, plus line 13. For cost reporting periods beginning on and after October 1, 2005 enter the sum of lines 3, 7,  line 10.03 for title XVIII, plus lines 11and 13, minus lines 8, 9, and 12.

Line 15.--Using the methodology outlined in §120, enter the sequestration adjustment.

Line 16.--Enter interim payments from Worksheet E-1.

**NOTE:**  Include amounts received from PPS (for inpatient routine services) as well as amounts received from ancillary services.

Line 16.01.—Your fiscal intermediary will enter the Part A tentative adjustments from Worksheet E-1, column 2.

*Line 16.20.—Enter OTHER adjustments from Worksheet E-1, column 2.*

Rev. 16                                                                            35-73

Line 17.--Enter the amount on line 14 minus the sum of lines 15, 16, and 16.01.  Enter a negative amount in parentheses ( ).  Transfer this amount to Worksheet S, Part II, column 2, line 1 or line 2, as applicable.

Line 18.--Enter the program reimbursement effect of protested items.  Estimate the reimbursement effect of the nonallowable items by applying reasonable methodology which closely approximates the actual effect of the item as if it had been determined through the normal cost finding process.  (See §115.2.)  Attach a worksheet showing the details and computations for this line.

Part B Line Descriptions.-

Use this part to calculate reimbursement settlement for Part B services for SNFs under title XVIII.

Line Descriptions

Line 19.--Enter the amount of Part B ancillary services furnished to Medicare patients.  Obtain this amount from Worksheet D, Part I column 9, line 75.

Line 21.--Enter the intern and resident cost from Worksheet D-2, column 8, lines 16 or 20 for title XVIII

Line 23.--Report the charges applicable to the ancillary services from Worksheet D, Part I, column 3, line 75, plus Part II, line 2.

Line 24.--Enter the intern and resident charges from the provider's records.

Line 26.--Enter the amounts paid or payable by workmen's compensation and other primary payers when program liability is secondary to that of the primary payer.  There are six situations under which Medicare payment is secondary to a primary payer:

    1. Workmen's compensation,
    2. No fault coverage,
    3. General liability coverage,
    4. Working aged provisions,
    5. Disability provisions, and
    6. Working ESRD beneficiary provisions.

Generally, when payment by the primary payer satisfies the liability of the program beneficiary, for cost reporting purposes, the services are considered non-program services.  (The primary payment satisfies the beneficiary's liability when you accept that payment as payment in full.  Note this on no-pay bills submitted in these situations.)  The patient days and charges are included in total patient days and charges but are not included in program patient days and charges.  In this situation, no primary payer payment is entered on line 26.

However, if the payment by the primary payer does not satisfy the beneficiary's obligation, the program pays (in situations 1, 2, and 3) the amount it otherwise pays (absent primary payer payment) less the primary payer payment and any applicable deductible and coinsurance.  In situations 1, 2, and 3, primary payer payment is not credited toward the beneficiary's deductibles and coinsurance.  In situations 4 and 5, the program pays the lesser of (a) the amount it otherwise pays (without regard to the primary payer payment or deductibles and coinsurance) less the primary payer payment; or (b) the amount it otherwise pays (without regard to primary payer payment or deductibles and coinsurance) less applicable deductible and coinsurance.  In situations 4 and 5, primary payer payment is credited toward the beneficiary's deductible and coinsurance obligation.

If the primary payment does not satisfy the beneficiary's liability, include the covered days and charges in program days and charges and include the total days and charges in total days and charges for cost apportionment purposes. Enter the primary payer payment on line 26 to the extent that primary payer payment is not credited toward the beneficiary's deductible and coinsurance. Primary payer payments that are credited toward the beneficiary's deductible and coinsurance are not entered on line 27.

Line 27.--Enter the Part B deductible and coinsurance billed to Medicare beneficiaries. Include any primary payer payments applied to Medicare beneficiaries' coinsurance in situations where the primary payer payments do not fully satisfy the obligation of the beneficiary to you. Do not include any primary payer payments applied to Medicare beneficiaries' coinsurance in situations where the primary payer payment fully satisfies the obligation of the beneficiary to you. DO NOT INCLUDE coinsurance billed to program patients for physicians' professional services.

Line 28.--Enter program reimbursable bad debts for deductibles and coinsurance (from your records), excluding deductibles and coinsurance for physicians' professional services and net of bad debt recoveries.

Line 31.--Enter the program's share of any recovery of excess depreciation applicable to prior years resulting from provider termination or a decrease in Medicare utilization. (See CMS Pub. 15-I, §§136 - 136.16.)

Line 32.--Enter any other adjustments. For example, enter an adjustment resulting from changing the recording of vacation pay from cash basis to accrual basis. (See CMS Pub. 15-I, §2146.4.) Specify the adjustment in the space provided.

Line 33.--Enter the program's share of any net depreciation adjustment applicable to prior years resulting from the gain or loss on the disposition of depreciable assets. (See CMS Pub. 15-I, §§132 - 132.4.) Enter in parentheses ( ) the amount of any excess depreciation taken.

**NOTE:**   Section 1861 (v) (1) (o) sets a limit on the valuation of a depreciable asset that may be recognized in establishing an appropriate allowance for depreciation, and for interest on capital indebtedness after a change of ownership that occurs on or after December 1, 1997.

Line 34.-- Enter the sum of the amounts on lines 25, 28, and 30, minus the amounts on lines 26, 27, and 31  plus or minus the amounts on lines 32 and 33.

Line 35.--Using the methodology outlined in §120, enter the sequestration adjustment.

Line 36.--Enter the Title XVIII interim payment from Worksheet E-1, column 4 line 4. Enter the Title V or Title XIX interim payment from your records.

Line 36.01.--Your Fiscal Intermediary will enter the Part B tentative adjustments from Worksheet E-1, column 4.

Line 36.20.--Enter OTHER adjustments from Worksheet E-1, column 4.

Line 37.--Enter the amount on line 34 minus the sum of lines 35, 36, and 36.01. Enter a negative amount in parentheses ( ).  Transfer this amount to Worksheet S, Part II, column 3, line 1.

Line 38.--Enter the program reimbursement effect of protested items. Estimate the reimbursement effect of the nonallowable items by applying reasonable methodology which closely approximates the actual effect of the item as if it had been determined through the normal cost finding process. (See §115.2.) Attach a worksheet showing the details and computations for this line.

3534.4   <u>Part V - Reimbursement Under NHCMQ Demonstration</u>.--Use this part to calculate reimbursement if you are a part of the NHCMQ demonstration project. This Part will not be completed for cost reporting periods beginning on and after July 1, 1998.

Use Part A to calculate payment for title XVIII services furnished by NHCMQ demonstration participants. Only facilities in Kansas, Maine, Mississippi, New York, South Dakota, and Texas are eligible to participate in the NHCMQ demonstration.

<u>Line Descriptions</u>

<u>Line 1</u>.--Enter the number of total title XVIII inpatient days. Obtain this figure from Worksheet S-3, column 4, line 1.

<u>Line 2</u>.--Enter the number of demonstration program days. Obtain this figure from Worksheet S-7, sum of columns 3.01 and 4.01, line 46 .

Lines 3 through 5 calculate the net non-NHCMQ demonstration Part A inpatient ancillary services. These include radiology, laboratory, intravenous therapy, oxygen, electrocardiology, medical supplies charged to patients, and drugs charged to patients and others.

<u>Line 3</u>.--Enter the total Part A ancillary program costs. Obtain this figure from Worksheet D, column 4, line 75.

<u>Line 4</u>.--Complete this line for phase 3 only. Enter the physical, occupational, and speech therapy ancillary program costs. Enter the sum of lines 25, 26, and 27 from Worksheet D, column 4.

<u>Line 5</u>.--Subtract the amount on line 4 from line 3, and enter the difference. This amount represents the net ancillary services not applicable to the NHCMQ demonstration.

<u>Line 6</u>.-- Enter the NHCMQ demonstration inpatient routine/ancillary PPS amount paid. Obtain this figure from Worksheet S-7, column 5, line 46.

<u>Line 7</u>.-- Do not make any entries on this line.

Lines 8 and 9 calculate the program inpatient capital costs. The capital costs are not part of the PPS calculation. Instead the capital costs flow through the cost finding stepdown process on Worksheet B.

<u>Line 8</u>.--Enter the per diem capital related cost from the title XVIII SNF Worksheet D-1, line 21.

<u>Line 9</u>.-- Calculate the program capital related cost by multiplying the amount on line 8 by the amount on line 1.

Lines 10 through 24 calculate the indirect cost component of the demonstration ancillary services. The indirect cost component of the demonstration ancillary services is not part of the PPS calculation. Instead the indirect costs are passed through from cost finding on the cost report. For participants in the demonstration, ancillary services will be calculated as part of the PPS payment beginning in phase 3. Thus lines 10 through 24 are completed only for phase 3.

| 10-08 | FORM CMS 2540-96 | 3565 (Cont.) |

Line 8 - Inpatient - Respite Care.--This cost center includes costs applicable to patients who receive this level of care on an intermittent, nonroutine, and occasional basis. The costs included on this line are those direct costs of furnishing routine and ancillary services associated with inpatient respite care for which other provisions are not made on this worksheet. Costs incurred by the hospice in furnishing direct patient care services to patients receiving inpatient respite care either directly by the hospice or under a contractual arrangement in an inpatient facility are to be included in visiting service costs section.

For a hospice that maintains its own inpatient beds, these costs include (but are not limited to) the costs of furnishing 24 hours nursing care within the facility, patient meals, laundry and linen services and housekeeping. Plant operation and maintenance costs are recorded on line 3.

For a hospice that does not maintain its own inpatient beds, but furnishes inpatient respite care through a contractual arrangement with another facility, record contracted/purchased costs on Worksheet K-3. Do not include any costs associated with providing direct patient care. These costs are recorded in the visiting service costs section.

Line 9 - Physician Services.--In addition to the palliation and management of terminal illness and related conditions, hospice physician services also include meeting the general medical needs of the patients to the extent that these needs are not met by the attending physician. The amount entered on this line includes costs incurred by the hospice or amounts billed through the hospice for physicians direct patient care services.

Line 10 - Nursing Care.--Generally, nursing services are provided as specified in the plan of care by or under the supervision of a registered nurse at the patient's residence.

*Line 10.20 - Nursing Care- Continuous Home Care.--Enter the continuous home care portion of costs for nursing services provided by a registered nurse, licensed practical nurse, or licensed vocational nurse as specified in the plan of care by or under the supervision of a registered nurse at the patient's residence.*

Line 11 - Physical Therapy.--Physical therapy is the provision of physical or corrective treatment of bodily or mental conditions by the use of physical, chemical, and other properties of heat, light, water, electricity, sound massage, and therapeutic exercise by or under the direction of a registered physical therapist as prescribed by a physician. Therapy and speech-language pathology services may be provided for purposes of symptom control or to enable the individual to maintain activities of daily living and basic functional skills.

Line 12 - Occupational Therapy.--Occupational therapy is the application of purposeful goal-oriented activity in the evaluation, diagnostic, for the persons whose function is impaired by physical illness
or injury, emotional disorder, congenital or developmental disability, and to maintain health. Therapy and speech-language pathology services may be provided for purposes of symptom control or to enable the individual to maintain activities of daily living and basic functional skills.

Line 13 - Speech/Language Pathology.--These are physician-prescribed services provided by or under the direction of a qualified speech-language pathologist to those with functionally impaired communications skills. This includes the evaluation and management of any existing disorders of the communication process centering entirely, or in part, on the reception and production of speech and language related to organic and/or nonorganic factors. Therapy and speech-language pathology services may be provided for purposes of symptom control or to enable the individual to maintain activities of daily living and basic functional skills.

Line 14 - Medical Social Services.--This cost center includes only direct expenses incurred in providing medical social services. Medical social services consist of counseling and assessment activities which contribute meaningfully to the treatment of a patient's condition. These services must be provided by a qualified social worker under the direction of a physician.

Rev. 16                                                                                    35-121

**Lines 15-17 - Counseling.**--Counseling services must be available to both the terminally ill individual and family members or other persons caring for the individual for them. Counseling, including dietary counseling, may be provided both for the purpose of training the individual's family or other care giver to provide care, and for the purpose of helping the individual and those caring for him or her to adjust to the individual's approaching death. This includes dietary, spiritual, and other counseling services provided while the individual is enrolled in the hospice. Costs associated with such counseling are accumulated in the appropriate counseling cost center. Costs associated with bereavement counseling are recorded on line 30.

**Line 18 - Home Health Aide and Homemaker.**--Enter the cost of a home health aide and homemaker services. Home health aide services are provided under the general supervision of a registered professional nurse and may be provided by only individuals who have successfully completed a home health aide training and competency evaluation program or competency evaluation program as required in 42 CFR 484.36.

Home health aides may provide personal care services. Aides may also perform household services to maintain a safe and sanitary environment in areas of the home used by the patient, such as changing the bed or light cleaning and laundering essential to the comfort and cleanliness of the patient.

Homemaker services may include assistance in personal care, maintenance of a safe and healthy environment, and services to enable the individual to carry out the plan of care.

*Line 18.20 - Home Health Aide and Homemaker-Continuous Home Care.--Enter the continuous care portion of cost for home health aide and/or homemaker services provided as specified in the plan of care and under the supervision of a registered nurse.*

**Line 19 - Other.**--Enter on this line any other visiting cost which cannot be appropriately identified in the services already listed.

**Line 20 - Drugs, Biological and Infusion Therapy.**--Only drugs as defined in §1861(t) of the Act and which are used primarily for the relief of pain and symptom control related to the individual's terminal illness are covered. The amount entered on this line includes costs incurred for drugs or biologicals provided to the patients while at home. If a pharmacist dispenses prescriptions and provides other services to patients while the patient is both at home and in an inpatient unit, a reasonable allocation of the pharmacist cost must be made and reported respectively on line 20 (Drugs and Biologicals) and line 7 (Inpatient General Care) or line 8 (Inpatient Respite Care) of Worksheet K.

A hospice may, for example, use the number of prescriptions provided in each setting to make that allocation, or may use any other method that results in a reasonable allocation of the pharmacist's cost in relation to the service rendered.

Infusion therapy may be used for palliative purposes if you determine that these services are needed for palliation. For the purposes of a hospice, infusion therapy is considered to be the therapeutic introduction of a fluid other than blood, such as saline solution, into a vein.

*Line 20.30 - Analgesics.- Enter the cost of analgesics.*

*Line 20.31 - Sedatives/Hypnotics. - Enter the cost of sedatives/hypnotics.*

*Line 20.32 - Other Specify. - Specify the type and enter the cost of any other drugs which cannot be appropriately identified in the drug cost center already listed.*

**Line 21 - Durable Medical Equipment/Oxygen.**--Durable medical equipment as defined in 42 CFR 410.38 as well as other self-help and personal comfort items related to the palliation or management

35-122

of the patient's terminal illness are covered.  Equipment is provided by the hospice for use in the patient's home while he or she is under hospice care.

Line 22 - Patient Transportation.--Enter all of the cost of transportation except those costs previously directly assigned in column 3.  This cost is allocated during the cost finding process.

Line 23 - Imaging Services.--Enter the cost of imaging services including MRU.

Line 24 - Labs and Diagnostics.--Enter the cost of laboratory and diagnostic tests.

Line 25 - Medical Supplies.--The cost of medical supplies reported in this cost center are those costs which are directly identifiable supplies furnished to individual patients.

These supplies are generally specified in the patient's plan of treatment and furnished under the specific direction of the patient's physician.

Line 26 - Outpatient Services.--Use this line for any outpatient services costs not captured elsewhere. This cost can include the cost of an emergency room department.

Lines 27-28 - Radiation Therapy and Chemotherapy.--Radiation, chemotherapy, and other modalities may be used for palliative purposes if you determine that these services are needed for palliation. This determination is based on the patient's condition and your care giving philosophy.

Line 29 - Other (Specify).--Enter any additional costs involved in providing visiting services which have not been provided for in the previous lines.

Lines 30-33 - Non Reimbursable Costs.--Enter in the appropriate lines the applicable costs. Bereavement program costs consists of counseling services provided to the individual's family after the individual's death. In accordance with §1814 (I)(1) (A) of the Social Security Act, bereavement counseling is a required hospice service, but it is not reimbursable.

Line 34 - Total.--Line 34 column 10, must agree with Worksheet A, line 55, column 7.

3566.    WORKSHEET K-1 – HOSPICE COMPENSATION ANALYSIS SALARIES AND WAGES

Enter all salaries and wages for the hospice on this worksheet for the actual work performed within the specific area or cost center in accordance with the column headings.  For example, if the administrator also performs visiting services which account for 55 percent of that person's time, then enter 45 percent of the administrator's salary on line 6 (A&G) and 55 percent of the administrator's salary enter on line 10 (Nursing Care).

The records necessary to determine the split in salary between two or more cost centers must be maintained by the hospice and must adequately substantiate the method used to split the salary. These records must be available for audit by the intermediary, and the intermediary can accept or reject the method used to determine the split in salary.  When approval of a method has been requested in writing and this approval has been received prior to the beginning of a cost reporting period, the approved method remains in effect for the requested period and all subsequent periods until you request in writing to change to another method or until the intermediary determines that the method is no longer valid due to changes in your operations.

Definitions

Salary.--This is gross salary paid to the employee before taxes and other items are withheld, including deferred compensation, overtime, incentive pay, and bonuses.  (See HCFA Pub. 15-I, Chapter 21.)

Rev. 16                                                                                35-123

Administrator (Column 1).--

Possible Titles:      President, Chief Executive Officer.

Duties:    This position is the highest occupational level in the agency.  This individual is the chief management official in the agency.  The administrator develops and guides the organization by taking responsibility for planning, organizing, implementing, and evaluating.  The administrator is responsible for the application and implementation of established policies.  The administrator may act as a liaison among the governing body, the medical staff, and any departments.    The administrator provides for personnel policies and practices that adequately support sound patient care and maintains accurate and complete personnel records.  The administrator implements the control and effective utilization of the physical and financial resources of the provider.

Director (Column 2).--

Possible Titles: Medical Director, Director of Nursing, or Executive Director.

Duties:    The medical director is responsible for helping to establish and assure that the quality of medical care is appraised and maintained.  This individual advises the chief executive officer on medical and administrative problems and investigates and studies new developments in medical practices and techniques.

The nursing director is responsible for establishing the objectives for the department of nursing.  This individual administers the department of nursing and directs and delegates management of professional and ancillary nursing personnel.

Medical Social Worker (Column 3).--This individual is a person who has at least a bachelor's degree from a school accredited or approved by the council of social work education.  These services must be under the direction of a physician and must be provided by  a qualified social worker.

Supervisors (Column 4).--Employees in this classification are primarily involved in the direction, supervision, and coordination of the hospice activities.

When a supervisor performs two or more functions, e.g., supervision of nurses and home health aides, the salaries and wages must be split in proportion with the percentage of the supervisor's time spent in each cost center, provided the hospice maintains the proper records (continuous time records) to support the split.  If continuous time records are not maintained by the hospice, enter the entire salary of the supervisor on line 6 (A&G) and allocate to all cost centers through step-down.  However, if the supervisor's salary is all lumped in one cost center, e.g., nursing care, and the supervisor's title coincides with this cost center, e.g., nursing supervisor, no adjustment is required.

Total Therapists (Column 6).--Include in column 6, on the line indicated, the cost attributable to the following services:

|                      |   |         |
|----------------------|---|---------|
| Physical therapy     | - | line 11 |
| Occupational therapy | - | line 12 |
| Speech pathology     | - | line 13 |

Therapy and speech-language pathology may be provided to control symptoms or to enable the individual to maintain activities of daily living and basic functional skill.

Physical therapy is the provision of physical or corrective treatment of bodily or mental conditions by the use of physical, chemical, and other properties of heat, light, water, electricity, sound, massage, and therapeutic exercise by or under the direction of a registered physical therapist as prescribed by a physician.

35-124                                                                  Rev. 16

Case 1:17-cv-02433-RJL Document 23 Filed 06/12/20 Page 98 of 274

ELECTRONIC REPORTING SPECIFICATIONS FOR FORM CMS 2540-96
**TABLE 1 - RECORD SPECIFICATIONS**

Table 1 specifies the standard record format to be used for electronic cost reporting. Each electronic cost report submission (file) has four types of records. The first group (type 1 records) contains information for identifying, processing, and resolving problems. The text used throughout the cost report for variable line labels (e.g., Worksheet A) and variable column headers (Worksheet B-1) is included in the type 2 records. Refer to Table 5 for cost center coding. The data detailed in Table 3 are identified as type three records. The encryption coding at the end of the file, records 1, 1.01, and 1.02, are type 4 records.

The medium for transferring cost reports submitted electronically to fiscal intermediaries is 3 diskette. These disks must be in IBM format. The character set must be ASCII. Seek approval from your fiscal intermediary regarding alternate methods of submission to ensure that the method of transmission is acceptable.

The following are requirements for all records:

1. All alpha characters must be in upper case.

2. For micro systems, the end of record indicator must be a carriage return and line feed, in that sequence.

3. No record may exceed 60 characters.

Below is an example of a Type 1 record with a narrative description of its meaning.

```
         1         2         3         4         5
12345678901234567890123456789012345678901234567890123456789
1               1   0101231999274200003053C99P00520000202000305
1               7           17:15
```

Record #1: This is a cost report file submitted by Provider 010123 for the period from October 1, 1999 (1999274) through October 31, 2000, (2000305). It is filed on Form CMS-2540-96. It is prepared with vendor number C99's PC based system, version number 1. Position 38 changes with each new test case and/or approval and is alpha. Positions 39 and 40 will remain constant for approvals issued after the first test case. This file is prepared by the skilled nursing facility on January 20, 2000, (2000020). The electronic cost report specification, dated October 31, 2000, (2000305), is used to prepare this file.

FILE NAMING CONVENTION

Name each cost report file in the following manner:

SNNNNNNN.YYL, where

1. SN (SNF electronic cost report) is constant;
2. NNNNNN is the 6 digit Medicare skilled nursing facility provider number;
3. YY is the year in which the provider's cost reporting period ends; and
4. L is a character variable (A-Z) to enable separate identification of files from skilled nursing facilities with two or more cost reporting periods ending in the same calendar year.

ELECTRONIC REPORTING SPECIFICATIONS FOR FORM CMS 2540-96
**TABLE 1 - RECORD SPECIFICATIONS**

RECORD NAME:  Type 1 Records - Record Number 1

| | | Size | Usage | Loc. | Remarks |
|---|---|---|---|---|---|
| 1. | Record Type | 1 | X | 1 | Constant "1" |
| 2. | NPI | 10 | 9 | 2-11 | Numeric only |
| 3. | Spaces | 1 | X | 12 | |
| 4. | Record Number | 1 | X | 13 | Constant "1" |
| 5. | Spaces | 3 | X | 14-16 | |
| 6. | SNF   Provider Number | 6 | 9 | 17-22 | Field must have 6 numeric characters |
| 7. | Fiscal Year Beginning Date | 7 | 9 | 23-29 | YYYYDDD - Julian date; first day covered by this cost report |
| 8. | Fiscal Year Ending Date | 7 | 9 | 30-36 | YYYYDDD - Julian date; last day covered by this cost report |
| 9. | MCR Version | 1 | 9 | 37 | Constant "3" (for Form CMS 2540-96) |
| 10. | Vendor Code | 3 | X | 38-40 | To be supplied upon approval. Refer to page 35-503. |
| 11. | Vendor Equipment | 1 | X | 41 | P = PC; M = Main Frame |
| 12. | Version Number | 3 | X | 42-44 | Version of extract software, e.g., 001=1st, 002=2nd, etc. or 101=1st, 102=2nd. The version number must be incremented by 1 with each recompile and release to client(s). |
| 13. | Creation Date | 7 | 9 | 45-51 | YYYYDDD - Julian date; date on which the file was created (extracted from the cost report) |
| 14. | ECR Spec. Date | 7 | 9 | 52-58 | YYYYDDD - Julian date; date of electronic cost report specifications used in producing each file. Valid for cost reporting periods ending on and after 2008274 (September 30, 2008). Prior approval(s) are for cost reporting periods ending on or after 2005304 (October 31, 2005). 2002365 (12/31/02), 2001059, 2000274, 1999334, 1998273, 1997273, and 1996274. |

ELECTRONIC REPORTING SPECIFICATIONS FOR FORM CMS 2540-96
TABLE 1 - RECORD SPECIFICATIONS

RECORD NAME:  Type 1 Records - Record Numbers 2 - 99

|   |   | Size | Usage | Loc. | Remarks |
|---|---|------|-------|------|---------|
| 1. | Record Type | 1 | 9 | 1 | Constant "1" |
| 2. | Spaces | 10 | X | 2-11 | |
| 3. | Record Number | | | | #2 to #6 - Reserved for future use.<br>#7 - The time that the cost report is created. This is represented in military time as alpha numeric. Use position 21-25. Example 2:30PM is expressed as 14:30.<br>#8 to #99 - Reserved for future use |
| 4. | Spaces | 7 | X | 14-20 | Spaces (optional) |
| 5. | ID Information | 40 | X | 21-60 | Left justified to position 21. |

RECORD NAME:  Type 2 Records for Labels

|   |   | Size | Usage | Loc. | Remarks |
|---|---|------|-------|------|---------|
| 1. | Record Type | 1 | 9 | 1 | Constant "2" |
| 2. | Wkst. Indicator | 7 | X | 2-8 | Alphanumeric.  Refer to Table 2. |
| 3. | Spaces | 2 | X | 9-10 | |
| 4. | Line Number | 3 | 9 | 11-13 | Numeric |
| 5. | Subline Number | 2 | 9 | 14-15 | Numeric |
| 6. | Column Number | 3 | X | 16-18 | Alphanumeric |
| 7. | Subcolumn Number | 2 | 9 | 19-20 | Numeric |
| 8. | Cost Center Code | 4 | 9 | 21-24 | Numeric.    Refer to Table 5 for appropriate cost center codes. |
| 9. | Labels/Headings | | | | |
|   | a. Line Labels | 36 | X | 25-60 | Alphanumeric, left justified |
|   | b. Column Headings Statistical Basis & Code | 10 | X | 21-30 | Alphanumeric, left justified |

The type 2 records contain text that appears on the pre-printed cost report.  Of these, there are three groups: (1) Worksheet A cost center names (labels); (2) column headings for step-down entries; and (3) other text appearing in various places throughout the cost report.  The standard cost center labels are listed below.

A Worksheet A cost center label must be furnished for every cost center with cost or charge data anywhere in the cost report.  The line and subline numbers for each label must be the same as the line and subline numbers of the corresponding cost center on Worksheet A.  The columns and subcolumn numbers are always set to zero.

Rev. 16                                                    35-505

ELECTRONIC REPORTING SPECIFICATIONS FOR FORM CMS 2540-96
TABLE 1 - RECORD SPECIFICATIONS

TYPE 2 COST CENTER DESCRIPTIONS
The following type 2 cost center descriptions must be used for all Worksheet A standard cost center lines.

| Line | Used when a FULL cost report is filed | Used when a SIMPLIFIED cost report is filed |
|------|----------------------------------------|---------------------------------------------|
| 1 | CAP REL COSTS - BLDGS & FIXTURES | CAP REL COSTS - BLDGS & FIXTURES |
| 2 | CAP REL COSTS - MOVEABLE EQUIPMENT | CAP REL COSTS - MOVEABLE EQUIPMENT |
| 3 | EMPLOYEE BENEFITS | EMPLOYEE BENEFITS |
| 4 | ADMINISTRATIVE & GENERAL | ADMINISTRATIVE & GENERAL |
| 5 | PLANT OPERATION, MAINT. & REPAIRS | PLANT OPERATION, MAINT. & REPAIRS |
| 6 | LAUNDRY & LINEN SERVICE | LAUNDRY & LINEN SERVICE |
| 7 | HOUSEKEEPING | HOUSEKEEPING |
| 8 | DIETARY | DIETARY |
| 9 | NURSING ADMINISTRATION | NURSING ADMINISTRATION |
| 10 | CENTRAL SERVICES & SUPPLY | |
| 11 | PHARMACY | |
| 12 | MEDICAL RECORDS & LIBRARY | |
| 13 | SOCIAL SERVICE | |
| 14 | INTERNS & RESIDENTS (APPRVD PROG) | |
| 16 | SKILLED NURSING FACILITY | SKILLED NURSING FACILITY |
| 18 | NURSING FACILITY | NURSING FACILITY |
| 18.1 | INTERMEDIATE CARE FACILITY - MENTALLY RETARDED | |
| 19 | OTHER LONG TERM CARE | OTHER LONG TERM CARE |
| 21 | RADIOLOGY | RADIOLOGY |
| 22 | LABORATORY | LABORATORY |
| 23 | INTRAVENOUS THERAPY | INTRAVENOUS THERAPY |
| 24 | OXYGEN (INHALATION) THERAPY | OXYGEN (INHALATION) THERAPY |
| 25 | PHYSICAL THERAPY | PHYSICAL THERAPY |
| 26 | OCCUPATIONAL THERAPY | OCCUPATIONAL THERAPY |
| 27 | SPEECH PATHOLOGY | SPEECH PATHOLOGY |
| 28 | ELECTROCARDIOLOGY | ELECTROCARDIOLOGY |
| 29 | MEDICAL SUPPLIES CHARGED TO PATIENTS | MEDICAL SUPPLIES CHARGED TO PATIENTS |
| 30 | DRUGS CHARGED TO PATIENTS | DRUGS CHARGED TO PATIENTS |
| 31 | DENTAL CARE - TITLE XIX ONLY | DENTAL CARE - TITLE XIX ONLY |
| 32 | SUPPORT SURFACES | SUPPORT SURFACES |
| 34 | CLINIC | |
| 35 | RURAL HEALTH CLINIC | |
| 37 | ADMINISTRATIVE & GENERAL - HHA | |
| 38 | SKILLED NURSING CARE - HHA | |
| 39 | PHYSICAL THERAPY - HHA | |
| 40 | OCCUPATIONAL THERAPY - HHA | |
| 41 | SPEECH PATHOLOGY - HHA | |
| 42 | MEDICAL SOCIAL SERVICES - HHA | |
| 43 | HOME HEALTH AIDE - HHA | |
| 44 | DME RENTED - HHA | |
| 45 | DME SOLD - HHA | |
| 46 | HOME DELIVERED MEALS - HHA | |
| 47 | OTHER HOME HEALTH SERVICES – HHA | |
| 47.1 | TELEMEDICINE | |
| 48 | AMBULANCE | |
| 49 | INTERNS & RESIDENTS (NOT APPROVED) | |
| 52 | MALPRACTICE PREMIUMS & PAID LOSSES | |
| 53 | INTEREST EXPENSE | |
| 54 | UTILIZATION REVIEW - SNF | UTILIZATION REVIEW – SNF |
| 55 | HOSPICE | |
| 56 | OTHER SPECIAL PURPOSE COST | OTHER SPECIAL PURPOSE COST |
| 58 | GIFT, FLOWER, COFFEE SHOPS &CANTEEN | |
| 59 | BARBER & BEAUTY SHOP | BARBER & BEAUTY SHOP |
| 60 | PHYSICIANS' PRIVATE OFFICES | |
| 61 | NONPAID WORKERS | |
| 62 | PATIENTS' LAUNDRY | |

35-505.1                                                                        Rev.16

ELECTRONIC REPORTING SPECIFICATIONS FOR FORM CMS 2540-96
TABLE 2 - WORKSHEET INDICATORS

Worksheets That Apply to the Hospice Complex

| K | K010000 | |
|---|---|---|
| K-1 | K110000 | (j) |
| K-2 | K210000 | (j) |
| K-3 | K310000 | (j) |
| K-4, Part I | K410001 | (j) |
| K-4, Part II | K410002 | (j) |
| K-5, Part I | K510001 | (j) |
| K-5, Part II | K510002 | (j) |
| K-5, Part III | K510003 | (j) |

ELECTRONIC REPORTING SPECIFICATIONS FOR FORM CMS 2540-96
TABLE 2 - WORKSHEET INDICATORS

FOOTNOTES:

(a)   <u>Multiple SNF-Based Home Health Agencies (HHAs)</u>
The 3rd digit of the worksheet indicator (position 4 of the record) is numeric to identify the
SNF-based HHA.  If there is only one home health agency, the default is 1.  This affects all H
series worksheets, and Worksheet S-4.

b)   <u>Multiple Outpatient Rehabilitation Providers</u>
The third digit of the worksheet indicator is numeric from 1 to 9 to accommodate multiple
providers. If there is only one outpatient provider type, the default is 1.  The fourth character of
the worksheet indicator (position 5 of the record) indicates the outpatient rehabilitation provider
as listed above.  This affects all J series worksheets and Worksheet S-6.

(c)   <u>Multiple Worksheets for Reclassifications and Adjustments Before and After Step-down</u>
The fifth and sixth digits of the worksheet indicator (positions 6 and 7 of the record) are
numeric from 01-99 to accommodate reports with more lines on Worksheets A-6, A-8-2, and/or
B-2.  For reports that do not need additional worksheets, the default is 01.  For reports that do
need additional worksheets, the first page of each worksheet is numbered 01.  The number for
each additional page of each worksheet is incremented by 1.

(d)   <u>Worksheet with Multiple Parts using Identical Worksheet Indicator</u>
Although this worksheet has several parts, the lines are numbered sequentially. This worksheet
identifier is used with all lines from this worksheet regardless of the worksheet part.  This
differs from the Table 3 presentation which identifies each worksheet and part as they appear
on the cost report.  This affects Worksheets A-8-3, A-8-4, D-2, H-5, Parts III through V, and J-
2.

(e)   <u>States Apportioning Vaccine Costs Per Medicare Methodology</u>
If, for titles V and/or XIX, your State directs providers to apportion vaccine costs using
Medicare's methodology, show these costs on a separate Worksheet D, Part II for each title.

Rev. 16                                                                         35-511.2

(f)  States Licensing the Provider as an SNF Regardless of the Level of Care
     These worksheet identifiers are for providers licensed as an SNF for Titles V and XIX.

(g)  Multiple Worksheet A-8-5
     This worksheet is used for occupational, physical, or respiratory therapy and speech pathology
     services furnished by outside suppliers. The fourth digit of the worksheet indicator (position 5
     of the record) is an alpha character of O for occupational therapy, P for physical therapy, R for
     respiratory therapy, and S for speech pathology services.

(h)  Multiple Health Clinic Programs
     The third digit of the worksheet indicator (position 4 of the record) is numeric from 1 to 0 to
     accommodate multiple providers. If there is only one health clinic provider type, the default is
     1. The fourth character of the worksheet indicator (position 5 of the record) indicates the health
     clinic provider. Q indicates Federally qualified health center, and R indicates rural health
     clinic.

(i)  Multiple Worksheets H-5, Part II for Cost Limitations Based on the MSA *or CBSA*
     The fifth and sixth digits of the worksheet indicator (positions 6 and 7 or the record) is numeric
     from *00-29* and corresponds to the two digit subscript of line 17 on Worksheet S-4 (i.e. insert
     the identifier 02 for line 17.02) which identifies the 4 *character* MSA code. If services are
     provided in only one MSA, the default is 00. Where an HHA provides services in multiple
     MSA, one Worksheet H-5, Part II must be completed for each MSA.

     *The fifth and sixth digits of the worksheet indicator (positions 6 and 7 of the record) are
     numeric from 30-59 and correspond to, but are not identical with, the two digit subscript of
     line 29, column 1.01 on Worksheet S-4 (i.e., insert the identifier 30 for line 17.00, 31 for line
     17.01, and 32 for line 17.02) which identifies the 5 character CBSA. If services are provided
     in only one CBSA the default is 30. Where an HHA provides services in multiple CBSAs, one
     Worksheet H-5, Part II must be completed for each CBSA. (The actual effective date of use
     for CBSAs is episodes concluding on or after January1, 2006.)*

(j)  Multiple SNF-Based Hospices (HSPSs)
     The 3rd digit of the worksheet indicator (position 4 of the record) is numeric to identify the
     SNF-based hospice. If there is only one hospice, the default is 1. This affects all K series
     worksheets, and Worksheet S-8

35-512                                                                                   Rev. 16

ELECTRONIC REPORTING SPECIFICATIONS FOR FORM CMS 2540-96
**TABLE 3 - LIST OF DATA ELEMENTS WITH WORKSHEET, LINE, AND COLUMN
DESIGNATIONS**

This table identifies those data elements necessary to calculate a skilled nursing facility cost report. It also identifies some figures from a completed cost report. These calculated fields (e.g., Worksheet B, column 18) are needed to verify the mathematical accuracy of the raw data elements and to isolate differences between the file submitted by the skilled nursing facility complex and the report produced by the fiscal intermediary. Where an adjustment is made, that record must be present in the electronic data file. For explanations of the adjustments required, refer to the cost report instructions.

Table 3 "Usage" column is used to specify the format of each data item as follows:

| | |
|---|---|
| 9 | Numeric, greater than or equal to zero. |
| -9 | Numeric, may be either greater than, less than, or equal to zero. |
| 9(x).9(y) | Numeric, greater than zero, with x or fewer significant digits to the left of the decimal point, a decimal point, and exactly y digits to the right of the decimal point. |
| X | Character. |

Consistency in line numbering (and column numbering for general service cost centers) for each cost center is essential. The sequence of some cost centers does change among worksheets. Refer to Table 4 for line and column numbering conventions for use with complexes that have more components than appear on the preprinted FORM CMS 2540-96.

Table 3 refers to the data elements needed from a standard cost report. When a standard line is subscripted, the subscripted lines must be numbered sequentially with the first subline number displayed as "01" or "1" in field locations 14-15. It is unacceptable to format in a series of 10, 20, or skip subline numbers (i.e., 01, 03), except for skipping subline numbers for prior year cost center(s) deleted in the current period or initially created cost center(s) no longer in existence after cost finding. Exceptions are specified in this manual. For "Other (specify)" lines, i.e., Worksheet settlement series, all subscripted lines must be in sequence and consecutively numbered beginning with subscripted line "01". Automated systems must reorder these numbers where the provider skips a line number in the series.

Drop all records with zero values from the file. Any record absent from a file is treated as if it were zero.

All numeric values are presumed positive. Leading minus signs may only appear in data with values less than zero that are specified in Table 3 with a usage of "-9". Amounts that are within preprinted parentheses on the worksheets, indicating the reduction of another number, are to be reported as positive values.

Rev. 16                                                         35-513

### ELECTRONIC REPORTING SPECIFICATIONS FOR FORM CMS 2540-96
### TABLE 3 - LIST OF DATA ELEMENTS WITH WORKSHEET, LINE, AND COLUMN DESIGNATIONS

| DESCRIPTION | LINE(S) | COLUMN(S) | FIELD SIZE | USAGE |
|---|---|---|---|---|
| **WORKSHEET S** | | | | |
| **Part II:** | | | | |
| Balances due provider or program: | | | | |
| Title V | 1, 3-6 | 1 | 9 | -9 |
| Title XVIII, Part A | 1, 4 | 2 | 9 | -9 |
| Title XVIII, Part B | 1, 4-6 | 3 | 9 | -9 |
| Title XIX | 1, 3-6 | 4 | 9 | -9 |
| In total | 7 | 1-4 | 9 | -9 |
| **WORKSHEET S-2** | | | | |
| For the skilled nursing facility only: | | | | |
| Street | 1 | 1 | 36 | X |
| P.O. Box | 1 | 2 | 9 | X |
| City | 2 | 1 | 36 | X |
| State | 2 | 2 | 2 | X |
| Zip Code | 2 | 3 | 10 | X |
| County | 3 | 1 | 36 | X |
| MSA Code | 3 | 2 | 4 | X |
| CBSA Code | 3 | 2.01 | 5 | X |
| Urban/Rural | 3 | 3 | 1 | X |
| Facility Specific Rate | 3.1 | 1 | 11 | 9(8).99 |
| Transition period | 3.1 | 2 | 3 | 9(3) |
| Wage Index Adjustment Factor – Before October 1 | 3.2 | 1 | 6 | 9.9(4) |
| Wage Index Adjustment Factor – After September 30 | 3.2 | 2 | 6 | 9.9(4) |
| For the skilled nursing facility and SNF-based components: | | | | |
| Component name | 4, 6-8, 10-12 | 1 | 36 | X |
| Provider number (xxxxxx) | 4, 6- 8, 10-12 | 2 | 6 | X |
| National Provider Identifier | 4, 6- 8, 10-12 *These lines are not completed for column 2.01* | 2.01 | 10 | 9 |

FORM CMS 2540-96

ELECTRONIC REPORTING SPECIFICATIONS FOR FORM CMS 2540-96
TABLE 3 - LIST OF DATA ELEMENTS WITH WORKSHEET, LINE, AND COLUMN
DESIGNATIONS

WORKSHEET S-2 (Continued)

| DESCRIPTION | LINE(S) | COLUMN(S) | FIELD SIZE | USAGE |
|---|---|---|---|---|
| If depreciation is funded, enter the balance as of the end of the period. | 27 | 1 | 9 | 9 |
| Were there any disposals of capital assets during the cost reporting period? (Y/N) | 28 | 1 | 1 | X |
| Was accelerated depreciation claimed on any assets in the current or any prior cost reporting period? (Y/N) | 29 | 1 | 1 | X |
| Was accelerated depreciation claimed on assets acquired on or after August 1, 1970? (Y/N) | 30 | 1 | 1 | X |
| Did you cease to participate in the Medicare program at the end of the period to which this cost report applies? (Y/N) | 31 | 1 | 1 | X |
| Was there a substantial decrease in health insurance proportion of allowable cost from prior cost reporting periods? (Y/N) | 32 | 1 | 1 | X |

If this facility contains a public or non-public provider that qualifies for an exemption from the application of the lower of costs or charges, enter "Y" for each component and type of service that qualifies for the exemption. Enter "N" for each component and type of service contained in this facility that does not qualify for the exemption.

| | | | | |
|---|---|---|---|---|
| Skilled Nursing Facility | 33 | 1-2 | 1 | X |
| Nursing Facility | 35 | 3 | 1 | X |
| I C F - M R | 35.1 | 3 | 1 | X |
| SNF-Based OLTC | 36 | 1-2 | 1 | X |
| SNF-Based HHA | 37 | 1-2 | 1 | X |
| SNF-Based Outpatient Rehabilitation Providers | 39 | 2 | 1 | X |
| SNF-Based RHC | 40 | 2 | 1 | X |
| Is this nursing facility exempt from the cost limits? (Y/N) | 42 | 1 | 1 | X |

Rev. 16                                                          35-516.1

ELECTRONIC REPORTING SPECIFICATIONS FOR FORM CMS 2540-96
TABLE 3 - LIST OF DATA ELEMENTS WITH WORKSHEET, LINE, AND COLUMN DESIGNATIONS

WORKSHEET S-2 (Continued)

| | | | | |
|---|---|---|---|---|
| Is the skilled nursing facility located in a State that certifies the provider as an SNF regardless of the level of care given for titles V and XIX patients? (Y/N) | 43 | 1 | 1 | X |
| Did the provider participate in the NHCMQ Demonstration during the cost reporting period? (Y/N) | 44 | 1 | 1 | X |
| If yes, enter phase number. | 44 | 0 | 2 | 9 |
| List malpractice premium and paid losses | | | | |
| Premium: | 45 | 1 | 11 | 9 |
| Paid Losses: | 45 | 2 | 11 | 9 |
| Self Insurance: | 45 | 3 | 11 | 9 |
| Are malpractice premiums and paid losses reported in other than the Administrative and General cost Center? If yes, check box, and submit supporting schedules listing cost centers and amounts contained therein. | 46 | 1 | 1 | X |
| Are you claiming ambulance costs? Enter Y or N in column 1. If column 1 is Y, and this is your first year of operation for rendering ambulance services, enter Y in column 2. If it is not enter N. | 47 | 1 & 2 | 1 | X |
| *If line 47 column 1 is Y, and column 2 is N, enter on line 48 column 1 the payment limit provided from your fiscal intermediary, and for services on or after 04/01/2002* | *48* | *1* | *9* | *9(8).99* |
| *Enter in column 2, the Fee Amount from the PS&R. Use Worksheet S-2, line 48 (and subscripts) columns 1 and 2 for the Limit and Fee amount respectively. If your fiscal year is OTHER than a year beginning on October 1st, enter in Line 48, column 1, the payment limit for the period prior to October 1, and enter in column 2 the Fee Amount.* | *48* | *2* | *9* | *9* |
| *Subscript line 48 for the applicable time periods, and enter in column 1 the Limit, enter in column 2 the Fee Amount. The per-trip rate is updated October 1st of each year. Subscript this line as needed.* | *48.01* | *1&2* | *9* | *9(8).99* |

ELECTRONIC REPORTING SPECIFICATIONS FOR FORM CMS 2540-96
TABLE 3 - LIST OF DATA ELEMENTS WITH WORKSHEET, LINE, AND COLUMN
DESIGNATIONS

WORKSHEET S-2 (Continued)

| DESCRIPTION | LINE(S) | COLUMN(S) | FIELD SIZE | USAGE |
|---|---|---|---|---|
| Enter in column 1 the subsequent ambulance payment limit as required. Subscript if more than 2 limits apply. | 48.02 48.03 | 1 | 9 | 9(8).99 |
| Enter in column 2, the fee schedule amounts for the initial or subsequent period as applicable. | 48.02 48.03 | 2 | 9 | 9 |
| Did you operate an Intermediate Care Facility for the Mentally Retarded (ICF/MR) under title XIX? | 49 | 1 | 1 | X |
| Did this facility report less than 1500 Medicare days in its previous year's cost report? | 50 | 1 | 1 | X |
| If line 50 is yes, did you file your previous year's cost report using the "simplified" step-down method of cost finding? | 51 | 1 | 1 | X |
| Is this cost report being filed under 42CFR 413.321, the simplified cost report? | 52 | 1 | 1 | X |
| Are there any related organizations or home office costs as defined in CMS Pub. 15-1, chapter 10? | 53 | 1 | 1 | X |
| If yes, and there are related organization or home office costs, enter the related organization or home office provider number. | 53 | 2 | 6 | X |
| Name | 54 | 1 | 36 | X |
| FI or Contractor name | 54 | 2 | 36 | X |
| FI or Contractor number | 54 | 3 | 6 | X |
| Street | 55 | 1 | 36 | X |
| P.O. Box | 55 | 2 | 9 | X |
| City | 56 | 1 | 36 | X |
| State | 56 | 2 | 2 | X |
| Zip Code | 56 | 3 | 10 | X |

08-08  Draft                    FORM CMS 2540-96                    3595 (Cont.)

ELECTRONIC REPORTING SPECIFICATIONS FOR FORM CMS 2540-96
TABLE 3 - LIST OF DATA ELEMENTS WITH WORKSHEET, LINE, AND COLUMN
DESIGNATIONS

WORKSHEET S-4, PART I

| DESCRIPTION | LINE(S) | COLUMN(S) | FIELD SIZE | USAGE |
|---|---|---|---|---|
| Number of HHA visits, by discipline: | | | | |
| Program | 1-6 | 2 | 9 | 9 |
| Non-Program | 1-7 | 5 | 9 | 9 |
| Total | 1-8 | 8 | 9 | 9 |
| Patient count, by discipline: | | | | |
| Program | 1-6 | 3 | 9 | 9 |
| Non-Program | 1-7 | 6 | 9 | 9 |
| Total | 1-7 | 9 | 9 | 9 |
| Home health aide hours: | | | | |
| Program | 6 | 1 | 9 | 9 |
| Non-Program | 6 | 4 | 9 | 9 |
| Total | 6 | 7 | 9 | 9 |
| Unduplicated census count: | | | | |
| Program | 9 | 3 | 9 | 9.99 |
| Non-Program | 9 | 6 | 9 | 9.99 |
| Total | 9 | 9 | 9 | 9.99 |
| Unduplicated census count Pre October 1, 2000: | | | | |
| Program | 9.01 | 3 | 9 | 9.99 |
| Non-Program | 9.01 | 6 | 9 | 9.99 |
| Total | 9.01 | 9 | 9 | 9.99 |
| Unduplicated census count Post September 30, 2000 | | | | |
| Program | 9.02 | 3 | 9 | 9.99 |
| Non-Program | 9.02 | 6 | 9 | 9.99 |
| Total | 9.02 | 9 | 9 | 9.99 |

Rev. 16

35-519

29

3595 (Cont.)                FORM CMS 2540-96                          10-08

ELECTRONIC REPORTING SPECIFICATIONS FOR FORM CMS 2540-96
TABLE 3 - LIST OF DATA ELEMENTS WITH WORKSHEET, LINE, AND COLUMN
DESIGNATIONS

### WORKSHEET S-4, PART II

| | | | | |
|---|---|---|---|---|
| Number of hours in a normal work week | 0 | 0 | 6 | 9(3).99 |
| Text as needed for blank lines | 13-15 | 0 | 36 | X |
| Number of full time equivalent employees: | | | | |
|     Staff | 1-15 | 1 | 6 | 9(3).99 |
|     Contract | 1-15 | 2 | 6 | 9(3).99 |
| How many MSA's did you provide services to during this cost reporting period? | 16 | 1 | 2 | 9 |
| *How many CBSAs did you provide services to during this cost reporting period?* | *16* | *1.01* | *2* | *9* |
| List those MSA code(s) serviced this period. | 17 | 1 | 4 | X |
| *List those CBSA code(s) serviced this period.* | *17* | *1.01* | *5* | *X* |

### WORKSHEET S-4, Part III

| | | | | |
|---|---|---|---|---|
| Covered Home Health Visits by Discipline for each Payment Category | 1,3,5,7,9.11 | 1-6 | 9 | 9 |
| HH Charges by Discipline for each Payment Category | 2,4,6,8,10,12 | 1-6 | 9 | 9 |
| Total Visits | 13 | 1-6 | 9 | 9 |
| Other Charges | 14 | 1-6 | 9 | 9 |
| Total Charges | 15 | 1-6 | 9 | 9 |
| Total number of episodes | 16 | 1, 3-6 | 9 | 9 |
| Total number of outlier episodes | 17 | 2, 4-6 | 9 | 9 |
| Total non-routine Medical supply charges for each payment category | 18 | 1-6 | 9 | 9 |
| Total HH visits by discipline for each payment category | 1,3,5,7,9,11 | 7 | 9 | 9 |
| Total Medical supply charges for each payment category | 2,4,6,8,10,12 | 7 | 9 | 9 |
| Total Visits | 13 | 7 | 9 | 9 |
| Other Charges | 14 | 7 | 9 | 9 |
| Total Charges | 15 | 7 | 9 | 9 |
| Total Number of Episodes | 16 | 7 | 9 | 9 |
| Total Number of Outlier Episodes | 17 | 7 | 9 | 9 |
| Total Medical Supply Charges | 18 | 7 | 9 | 9 |

35-520

Rev. 16

ELECTRONIC REPORTING SPECIFICATIONS FOR FORM CMS 2540-96
**TABLE 3 - LIST OF DATA ELEMENTS WITH WORKSHEET, LINE, AND COLUMN DESIGNATIONS**

WORKSHEET E, PART II

| DESCRIPTION | LINE(S) | COLUMN(S) | FIELD SIZE | USAGE |
|---|---|---|---|---|
| Primary payer amount | 6 | 1 | 9 | 9 |
| Inpatient ancillary service charges | 8 | 1 | 9 | 9 |
| Intern and resident charges | 10 | 1 | 9 | 9 |
| Aggregate amount collected | 12 | 1 | 9 | 9 |
| Amount collectible | 13 | 1 | 9 | 9 |
| Deductibles and coinsurance | 17 | 1 | 9 | 9 |
| Reimbursable bad debt | 19 | 1 | 9 | 9 |
| Recovery of excess depreciation | 21 | 1 | 9 | 9 |
| Other adjustments (specify) | 22 | 0 | 36 | X |
| Other adjustments (see instructions) | 22 | 1 | 9 | -9 |
| Amounts applicable to prior periods resulting from disposition of depreciable assets | 23 | 1 | 9 | -9 |
| Sequestration adjustment (see instructions) | 25 | 1 | 9 | 9 |
| Protested amounts | 29 | 1 | 9 | -9 |

WORKSHEET E, PART III

Part A - Inpatient service PPS provider computation of reimbursement of lesser of cost or charges

| | | | | |
|---|---|---|---|---|
| Intern and resident charges | 5 | 1 | 9 | 9 |
| Inpatient routine PPS amount (see instructions) | 7 | 1 | 9 | 9 |
| Primary payer amounts | 8 | 1 | 9 | 9 |
| Coinsurance | 9 | 1 | 9 | 9 |

Rev. 16                                                              35-533

3595 (Cont.)                  FORM CMS 2540-96                        10-08

### ELECTRONIC REPORTING SPECIFICATIONS FOR FORM CMS 2540-96
### TABLE 3 - LIST OF DATA ELEMENTS WITH WORKSHEET, LINE, AND COLUMN DESIGNATIONS

WORKSHEET E, PART III (Continued)

| DESCRIPTION | LINE(S) | COLUMN(S) | FIELD SIZE | USAGE |
|---|---|---|---|---|
| Reimbursable bad debts | 10 | 1 | 9 | -9 |
| Reimbursable bad debts | 10.01 | 1 | 9 | -9 |
| Reimbursable bad debts | 10.02 | 1 | 9 | -9 |
| Utilization review | 11 | 1 | 9 | 9 |
| Recovery of excess depreciation | 12 | 1 | 9 | 9 |
| Amounts applicable to prior periods resulting from disposition of depreciable assets | 13 | 1 | 9 | -9 |
| Sequestration adjustment (see instructions) | 15 | 1 | 9 | 9 |
| Other Adjustments ( Specify) | 16.20 - 16.99 | 0 | 36 | X |
| Other Adjustments | 16.20 - 16.99 | 1 | 11 | -9 |
| Protested amounts | 18 | 1 | 9 | -9 |

Part B - Ancillary service computation of reimbursement of lesser of cost or charges (title XVIII only)

| | | | | |
|---|---|---|---|---|
| Intern and resident charges | 24 | 1 | 9 | 9 |
| Primary payer amounts | 26 | 1 | 9 | 9 |
| Coinsurance and deductibles | 27 | 1 | 9 | 9 |
| Reimbursable bad debts | 28 | 1 | 9 | 9 |
| Recovery of excess depreciation | 31 | 1 | 9 | 9 |
| Other adjustments (specify) | 32 | 0 | 36 | X |
| Other adjustments | 32 | 1 | 9 | -9 |
| Amounts applicable to prior periods resulting from disposition of depreciable assets | 33 | 1 | 9 | -9 |
| Sequestration adjustment | 35 | 1 | 9 | 9 |
| Other Adjustments ( Specify | 36.20 - 36.99 | 0 | 36 | X |
| Other Adjustments | 36.20 - 36.99 | 1 | 11 | -9 |
| Protested amounts | 38 | 1 | 9 | -9 |

35-534                                                                Rev. 16

ELECTRONIC REPORTING SPECIFICATIONS FOR FORM CMS 2540-96
TABLE 3 - LIST OF DATA ELEMENTS WITH WORKSHEET, LINE, AND COLUMN
DESIGNATIONS

WORKSHEET H-5 PART V

| DESCRIPTION | LINE(S) | COLUMN(S) | FIELD SIZE | USAGE |
|---|---|---|---|---|
| Medicare visits for services rendered before 1/1/98 | 26-28 | 3 | 9 | 9 |
| Medicare visits for services rendered on and after 1/1/98 | 26-28 | 5 | 9 | 9 |
| Medicare visits for services rendered 1/1/99 to 9/30/00 | 26-28 | 5.01 | 9 | 9 |
| Medicare visits for services rendered on and after 10/1/00 | 26-28 | 5.02 | 9 | 9 |

WORKSHEET H-6, PART I

| | | | | |
|---|---|---|---|---|
| Total charges for title XVIII - Parts A and B services | 2, 2.01 | 1-3 | 9 | 9 |
| Amount collected from patients | 3 | 1-3 | 9 | 9 |
| Amount collectible from patients | 4 | 1-3 | 9 | 9 |
| Primary payer payments | 7 | 1-3 | 9 | 9 |

WORKSHEET H-6, PART II

| | | | | |
|---|---|---|---|---|
| PPS Reimbursement Amounts | 8.01–8.14 | 1,2 | 9 | 9 |
| Part B deductibles billed to Medicare patients | 9 | 2 | 9 | 9 |
| Coinsurance billed to Medicare patients | 11 | 2 | 9 | 9 |
| Reimbursable bad debts | 13 | 1-2 | 9 | 9 |
| Amounts applicable to prior periods | 15 | 1-2 | 9 | 9 |
| Recovery of excess depreciation | 16 | 1-2 | 9 | -9 |
| Non-refunded excess charges to beneficiaries | 17 | 1-2 | 9 | 9 |
| Other adjustments | 18.01 | 1-2 | 9 | 9 |
| Sequestration adjustment | 19 | 1-2 | 9 | 9 |
| Amounts due to you after sequestration adjustment & other adjustments | 20 | 1-2 | 9 | 9 |
| Interim payments (titles V, XVIII, and XIX ) | 21 | 1-2 | 9 | 9 |
| Protested amounts | 23 | 1-2 | 9 | -9 |

3595 (Cont.)            FORM CMS 2540-96            10-08

ELECTRONIC REPORTING SPECIFICATIONS FOR FORM CMS 2540-96
**TABLE 3 - LIST OF DATA ELEMENTS WITH WORKSHEET, LINE, AND COLUMN DESIGNATIONS**

### WORKSHEET H-7

| DESCRIPTION | LINE(S) | COLUMN(S) | FIELD SIZE | USAGE |
|---|---|---|---|---|
| Total interim payments paid to provider | 1 | 2 & 4 | 9 | 9 |
| Interim payments payable | 2 | 2 & 4 | 9 | 9 |
| Date of each retroactive lump sum adjustment (MM/DD/YYYY) | 3.01-3.98 | 1 & 3 | 10 | X |
| Amount of each lump sum adjustment | | | | |
|     Program to provider | 3.01-3.49 | 2 & 4 | 9 | 9 |
|     Provider to program | 3.50-3.98 | 2 & 4 | 9 | 9 |

### WORKSHEET I-1

| DESCRIPTION | LINE(S) | COLUMN(S) | FIELD SIZE | USAGE |
|---|---|---|---|---|
| Provider based cost | 1-9, 11-13, 15-20, 23-27, 29-30 | 1,2,4,6, & 7 | 11 | -9 |

### WORKSHEET I-2

| DESCRIPTION | LINE(S) | COLUMN(S) | FIELD SIZE | USAGE |
|---|---|---|---|---|
| Number of FTE personnel | 1-3, & 5-7 | 1 | 6 | 9(3).99 |
| Total visits | 1-3, 5-7, & 9 | 2 | 11 | 9 |
| Productivity Standards | 1, 2, & 3 | 3 | 4 | 9 |
| Greater of columns 2 or 4 | 4 | 5 | 11 | 9 |
| Parent provider overhead allocated to facility (see instructions) | 17 | 1 | 11 | 9 |

### WORKSHEET I-3

| DESCRIPTION | LINE(S) | COLUMN(S) | FIELD SIZE | USAGE |
|---|---|---|---|---|
| Adjusted cost per visit | 7 | 1 | 6 | 9(3).99 |
| Maximum rate per visit (from your intermediary) | 8 | 1, 2, & 3 | 6 | 9(3).99 |
| Rate for program covered visits | 9 | 1, 2, & 3 | 6 | 9(3).99 |
| Medicare covered visits excluding mental health services (from your intermediary) | 10 | 1, 2, & 3 | 11 | 9 |

35-540

Rev.16

ELECTRONIC REPORTING SPECIFICATIONS FOR FORM CMS 2540-96

### TABLE 3A - WORKSHEETS REQUIRING NO INPUT

Worksheet S, Part I
Worksheet A-8-3, Parts II, III, and IV
Worksheet A-8-4, Parts II and III
Worksheet J-1, Part II
Worksheet H-4, Part I

### TABLE 3B - TABLES TO WORKSHEET S-2

Table I:    Type of Control

| | | |
|---|---|---|
| 1 | = | Voluntary Nonprofit, Church |
| 2 | = | Voluntary Nonprofit, Other |
| 3 | = | Proprietary, Individual |
| 4 | = | Proprietary, Corporation |
| 5 | = | Proprietary, Partnership |
| 6 | = | Proprietary, Other |
| 7 | = | Governmental, Federal |
| 8 | = | Governmental, City-County |
| 9 | = | Governmental, County |
| 10 | = | Governmental, State |
| 11 | = | Governmental, Hospital District |
| 12 | = | Governmental, City |
| 13 | = | Governmental, Other |

Table II:    All-inclusive provider methods (see CMS Pub. 15-I, §2208.2).

| | | |
|---|---|---|
| Method A | = | Departmental statistical data |
| Method D | = | Comparable SNF data |
| Method E | = | Percentage of average cost per diem |

### TABLE 3C - LINES THAT CANNOT BE SUBSCRIPTED (BEYOND THOSE PREPRINTED)

| Worksheet | Lines |
|---|---|
| S, Part II | 1, 3, 7 |
| S-2 | 1,2,4, 6, 6.10, 7, 13,14, 16-35, 41-46 |
| S-3, Part I | 1, 3, 4 |
| S-3, Parts II & III | All |
| S-4, Part I | 1-8 |
| S-4, Part II | 1-12 |
| S-5 | 1-8, 14, 16 |
| S-6 | 1-17 |

Rev. 16

35-545

ELECTRONIC REPORTING SPECIFICATIONS FOR FORM CMS 2540-96
**TABLE 3C - LINES THAT CANNOT BE SUBSCRIBED**
**(BEYOND THOSE PREPRINTED) (CONTINUED)**

| | |
|---|---|
| S-7, Parts I, II, III | All |
| S-7, Part IV | 1&2, 4&5, 7&8, 10&11, 13, 15-46 |
| S-8 | All |
| A | 16,  19, 48, 49, 52-54, 75 |
| | (lines 17 and 20 may not be used) |
| A-6 | All |
| A-7 | All |
| A-8 - full cost report | Lines 2, through *31*, 28 and 32 |
| A-8 - simplified cost report | All except lines 23 and 31 |
| A-8-1, Part A | All |
| A-8-1, Part B | 1-8 |
| A-8-1, Part C | 1-9 |
| A-8-2 | All |
| A-8-3 | All (except lines 5, 6, 12, 13, 28-38, |
| | 51, 59, 62,  and 64) |
| A-8-4 | All |
| A-8-5 | All (except lines 5, 6, 12, 12.01, 13, |
| | 13.01, 66-70, 77-81) |
| B, Parts I & II | 16, 19, 48, 49, 52-54, 65, and 75 (lines |
| | 17 and 20 may not be used) |
| B, Part III | 15.1, 16, 17, 18, 18.1, 19, 21-33, 59, |
| | 63 (Lines 17 and 20 may not be used) |
| B-1 | 16, 19, 48, 49, and 52-54 |
| | (lines 17 and 20 may not be used) |
| B, Part II | 15.1, 16, 17, 18, 18.1, 19, 21-33, 59, |
| | 63 (Lines 17 and 20 may not be used) |
| C | 75 |
| D, Part I | 75 |
| D-1 | All |
| D-2 | 2, 4-5, and 17 (lines 3, 7, 11, 18, and |
| | 19 may not be used) |
| E, Part I | All (except line 30) |
| E, Part II | All (except line 22) |
| E, Part III | All (except lines 10, 16, 32, and 36) |

ELECTRONIC COST REPORTING SPECIFICATIONS FOR FORM CMS 2540-96

**TABLE 6 - EDITS**

| Reject Code | Condition |
|---|---|
| 1055S | *Worksheet S-2: If the response on line 53 column 1 = "Y", then there must be a response on line 53, column 2; line 54, columns 1, 2, and 3, line 55 column 1 or column 2; line 56 columns 1, 2, and 3. If the response on line 53 column 1 = "N", then line 53 column 2, and lines 54 – 56 must be blank. [04/30/2008]* |
| 1075S | All amounts reported on Worksheet S-3, Part I must not be less than zero. [03/31/1997] |
| 1080S | For Worksheet S-3, Part I, the sum of the inpatient days in columns 3-6 for each of lines 1, 3, and 4 must be equal to or less than the total inpatient days in column 7 for each line. [03/31/1997] |
| 1100S | The amount of hours reported in column 4, lines 1-13 (Worksheet S-3, Part III) must be greater than or equal to zero. [03/31/1997] |
| 1105S | For Worksheet S-3, Part I, the sum of the discharges in columns 8-11 for each of lines 1, 3, and 4 must be equal to or less than the total discharges in column 12 for each line indicated. [03/31/1997] |
| 1110S | Worksheet S-3, Part II, columns 1 and 4, line 23 must be greater than zero. [03/31/1997] |
| 1115S | The amount on Worksheet S-3, Part II, Column 3, line 22 (total wage related costs), must be greater than 7.65 percent and less than 50.0 percent of the amount in column 3, line 16 (total salaries). [12/31/2002] |
| 1120S | For Worksheet S-3, Part II, all values for column 5 lines 1-18, and 23 must equal or exceed $5.15. When there are no salaries reported in column *three,* then it is okay to have zero amounts in columns 3 and 5. [12/31/2002] |
| 1125S | The amount of total salaries reported in column 1, line 1 (Worksheet S-3, Part II) must equal Worksheet A, Column 1, line 75 [12/31/2002] |
| 1130S | *If Worksheet S-4, Part II, column 1, line 17 has data, then it must be a four character alpha numeric; or if column 1.01, line 17 has data, then it must be a five character alpha numeric [04/30/08]* |

The following Wage Index edits are to be applied against PPS SNFs only, edit number 1200S, 1205S, and 1220S.

| | |
|---|---|
| 1200S | For Worksheet S-3, Part II, sum of columns 1 and 2 each of lines 2-5, 8-14, 17-21, and subscripts as applicable must be equal to or greater than zero. [01/31/2001] |
| 1205S | The amount of salaries reported for Interns & Residents in approved programs Worksheet S-3, Part II column 1, line 4 must be equal to or greater than the amount on Worksheet A, column 1 line 14 (including subscripts). [09/30/1998] |
| 1220S | Worksheet S-3, Part II, sum of columns 1 & 2, line 19 must be greater than zero. [09/30/1998] |

ELECTRONIC COST REPORTING SPECIFICATIONS FOR FORM CMS 2540-96

**TABLE 6 – EDITS**

| Reject Code | Condition |
|---|---|
| 1225S | Worksheet S-5, Line 15: If the response in column 1 = "Y", then column 2 must be greater than zero. If the response in column 1 = "N", then column 2 must = zero. [04/30/2008] |
| 1230S | Worksheet S-7 Part 4: Column 3.01 sum of lines 1 through 45 must agree with Worksheet S-3, Part I, column 4, line 1. [04/30/2008] |
| 1000A | Worksheet A, columns 1 and 2, line 75 must be greater than zero. [03/31/97] |
| 1015A | On Worksheet A, lines 52 and 53, the sum of column 2 and the corresponding reclassifications and adjustments must equal zero. On line 54, the sum of columns 1 and 2 and the corresponding reclassifications and adjustments must equal zero. [03/31/1997] |
| 1020A | For reclassifications reported on Worksheet A-6, the sum of all increases (columns 4 and 5) must equal the sum of all decreases (columns 8 and 9). [03/31/1997] |
| 1025A | For each line on Worksheet A-6, if there is an entry in column 3, 4, 5, 7, 8, or 9, there must be an entry in column 1. There must be an entry on each line of columns 4 and/or 5 for each entry in column 3 (and vice versa), and there must be an entry on each line of columns 8 and/or 9 for each entry in column 7 (and vice versa). All entries must be valid, for example, no salary adjustments in columns 3 and/or 7, for capital lines 1 & 2 of Worksheet A. [09/30/1998] |
| 1040A | For Worksheet A-8 adjustments on lines 1-7, 9-11, and 13-21, if either columns 2 or 4 has an entry, then columns 1, 2, and 4 must have entries, and if any one of columns 0, 1, 2, or 4 for line 31 (and subscripts of line 31) has an entry, then all columns 0, 1, 2, and 4 must have entries. [03/31/1997] If lines 28-30 have an entry in column 2, then column 1 of that line must have an entry. [03/31/1997] |
| 1041A | The total Utilization Review amount shown on Worksheet E, Part III, Line 11, may not be greater than the amount on Worksheet A-8, line 28.(Absolute value of line 28) [04/30/2008] |
| 1045A | This edit was changed to a level two edit April 2003. See edit # 2045A |
| 1050A | On Worksheet A-8-2, column 3 must be equal to or greater than the sum of columns 4 and 5. If column 5 is greater than zero, column 6, and column 7 must be greater than zero. [06/13/02] |
| 1055A | Worksheet A-8-3, column 3, line 56 must equal the sum of column 1, lines 58 and 59. [03/31/1997] |
| 1060A | If Worksheet A-8-5, column 5, line 47 is equal to zero, column 5, line 51 must also be equal to zero. Conversely, if Worksheet A-8-5, columns 1-4, line 47 is greater than zero, column 5, line 51 must be greater than column 5, line 47 and equal to or less than 2080 hours for a 12 month cost report, (2240 hours for a 13 month cost report, 2400 hours for a 14 month cost report, or 2560 hours for a 15 month cost report). [10/31/1998] |

ELECTRONIC COST REPORTING SPECIFICATIONS FOR FORM CMS 2540-96

**TABLE 6 – EDITS**

| Reject Code | Condition |
| --- | --- |
| 1000B | On Worksheet B-1, all statistical amounts must be greater than or equal to zero, except for reconciliation columns. [03/31/1997] (A): On Worksheet B-1, Part II, all statistical amounts must be greater than or equal to zero, except for reconciliation columns. [02/01/2001] (B) |
| 1005B | Worksheet B, Part I, column 18, line 75 must be greater than zero. [03/31/1997] |
| 1010B | For each general service cost center with a net expense for cost allocation greater than zero (Worksheet B-1, columns 1 through 15, line 75), the corresponding total cost allocation statistics (Worksheet B-1, column 1, line 1; column 2, line 2; etc.) must also be greater than zero. Exclude from this edit any column, including any reconciliation column, that uses accumulated cost as its basis for allocation. [03/31/1997] |
| 1015B | For any column which uses accumulated cost as its basis of allocation (Worksheet B-1), there may not simultaneously exist on any line an amount both in the reconciliation column and the accumulated cost column, including a negative one. [03/31/1997] |
| 1010C | On Worksheet C, all amounts in column 1 line 75 and column 2 must be greater than or equal to zero. [03/31/1997] |
| 1000D | On Worksheet D, all amounts must be greater than or equal to zero.  [03/31/1997] |
| 1005D | *The total inpatient charges on Worksheet C, Part I, Line 30 must be greater than or equal to the sum of Worksheet D, Part I, Line 30 plus Worksheet D, Part II, Line 2. [04-30--2008]* |
| 1000E | *On Worksheet E, Part III, line 10.02, bad debt for dual eligible beneficiaries, new amounts cannot exceed total bad debts on line 10, (eg. for Worksheet E, Part III, line 10.02, must be less than or equal to line 10, total bad debts). Do not apply this edit if the total bad debt line is negative. [04/30/2008]* |
| 1020H | For the home health agency, [FYs ending through 9/30/2000], the total Medicare program (Title XVIII) visits reported as the sum of all Worksheets H-5, Part II (sum of columns 5 and 6, lines 1-6, plus Worksheet H-5, Part V, columns 3, 5, and 5.01, lines 26-28) must equal the sum of the visits reported on Worksheet S-4 (column 2, sum of lines 1-6). Do not apply this edit for cost reports beginning on or after 10/01/2000. (A) |
| 1021H | For the home health agency, [FYs which over lap 10/1/2000], the total Medicare program (Title XVIII) visits reported as the sum of all Worksheets H-5, Part II (sum of columns 5 and 6, lines 1-6 which are pre 10/1/2000 visits excluding subscripts, plus Worksheet H-5, Part V, columns 5.01 pre 10/1/2000 visits, lines 26-28) must equal the sum of the visits reported on Worksheet S-4, column 2, sum of lines 1-6. (A) |

Rev. 16

ELECTRONIC COST REPORTING SPECIFICATIONS FOR FORM CMS 2540-96

### TABLE 6 – EDITS

| | |
|---|---|
| 1022H | For the home health agency, [FYs beginning on or after 10/1/ 2000], the total Medicare program (Title XVIII) visits reported as the sum of all Worksheets H-5, Part II (sum of columns 5 and 6, lines 1-6, must equal the sum of the visits reported on Worksheet S-4, Part III, column 7, sum of lines 1, 3, 5, 7, 9 and 11. (A) |
| 1023H | For the home health agency, [FYs ending through 9/30/2000], the total Medicare (Title XVIII) unduplicated census count (Worksheet S-4, Part I, column 3, line 9) must be equal to or greater than the sum of the unduplicated census count for all MSAs (Worksheet H-5, Part IV, column 1, line 25). Do not apply this edit for cost reports beginning on or after 10/01/2000. (A) |
| 1024H | For the home health agency, [FYs which over lap 10/1/2000], the total Medicare (Title XVIII) unduplicated census count (Worksheet S-4, Part I, column 3, line 9.01) must be equal to or greater than the sum of the unduplicated census count for all MSAs (Worksheet H-5, Part IV, column 1, line 25). (A) |
| 1030H | For the home health agency, [FYs ending through 9/30/2000], if Medicare visits on Worksheet S-4, column 2, lines 1-6, respectively, are greater than zero, then the corresponding cost on Worksheet H-4, Part I, Column 3, lines 2 through 7, must also be greater than zero. Do not apply this edit for cost reports beginning on or after 10/01/2000. (A) |
| 1035H | Worksheet H-6 Part II: If line 20, columns 1 and 2 respectively, are greater than zero (0), then Worksheet H-7 Line 1 columns 2 and 4, respectively, must be greater than zero (0) [04/30/2008] |
| 1000J | Worksheet J-1, Part I, sum of columns 0-3, 4-15, and 17, line 22, must equal the corresponding Worksheet B, column 18, line 50 or appropriate subscript as identifies this provider type. [03/31/1997] |

II.   Level II Edits (Potential Rejection Errors)

These conditions are usually, but not always, incorrect. These edit errors should be cleared when possible through the cost report. When corrections on the cost report are not feasible, you should provide additional information in schedules, note form, or any other manner as may be required by your fiscal intermediary (FI). Failure to clear these errors in a timely fashion, as determined by your FI, may be grounds for withholding payments.

| Edit | Condition |
|---|---|
| 2000 | All type 3 records with numeric fields and a positive usage must have values equal to or greater than zero (supporting documentation may be required for negative amounts). |
| 2005 | Only elements set forth in Table 3, with subscripts as appropriate, are required in the file. |
| 2010 | The cost center code (positions 21-24) (type 2 records) must be a code from Table 5, and each cost center code must be unique. |
| 2015 | Standard cost center lines, descriptions, and codes should not be changed. (See Table 5.) This edit applies to the standard line only and not subscripts of that code. |
| 2020 | All standard cost center codes must be entered on the designated standard cost center line and subscripts thereof as indicated in Table 5. |

ELECTRONIC COST REPORTING SPECIFICATIONS FOR FORM CMS 2540-96

### TABLE 6 - EDITS

2025    Only nonstandard cost center codes within a cost center category may be placed on standard cost center lines of that cost center category.

2030    The following standard cost centers listed below must be reported on the lines indicated and the corresponding cost center codes may appear only on the lines indicated. No other cost center codes may be placed on these lines or subscripts of these lines, unless indicated herein. [03/31/1997] (A)

| Cost Center | Line | Code |
|---|---|---|
| CAP REL COSTS - BLDGS & FIXTURES | 1 | 0100-0199 |
| CAP REL COSTS - *MOVEABLE* EQUIPMENT | 2 | 0200-0299 |
| EMPLOYEE BENEFITS | 3 | 0300-0399 |
| SKILLED NURSING FACILITY | 16 | 1600 |
| NURSING FACILITY | 18 | 1800 |
| INTERMEDIATE CARE FACILITY/MENTALLY RETARDED | 18.1 | 1810 |
| OTHER LONG TERM CARE | 19 | 1900 |
| ADMINISTRATIVE & GENERAL - HHA | 37 | 3700-3704 |
| SKILLED NURSING CARE - HHA | 38 | 3800-3804 |
| PHYSICAL THERAPY - HHA | 39 | 3900-3904 |
| OCCUPATIONAL THERAPY - HHA | 40 | 4000-4004 |
| SPEECH PATHOLOGY - HHA | 41 | 4100-4104 |
| MEDICAL SOCIAL SERVICES - HHA | 42 | 4200-4204 |
| HOME HEALTH AIDE - HHA | 43 | 4300-4304 |
| DME RENTED - HHA | 44 | 4400-4404 |
| DME SOLD - HHA | 45 | 4500-4504 |
| HOME DELIVERED MEALS - HHA | 46 | 4600-4604 |
| OTHER HOME HEALTH SERVICES - HHA | 47 | 4700-4704 |
| TELEMEDICINE | 47.1 | 4710-4714 |
| AMBULANCE | 48 | 4800 |
| INTERNS & RESIDENTS (NOT APPRVD) | 49 | 4900 |
| MALPRACTICE PREMIUMS & PAID LOSSES | 52 | 5200 |
| INTEREST EXPENSE | 53 | 5300 |
| UTILIZATION REVIEW - SNF | 54 | 5400 |
| HOSPICE | 55 | 5500-5504 |
| GIFT, FLOWER, COFFEE SHOPS & CANTEEN | 58 | 5800-5899 |
| BARBER & BEAUTY SHOP | 59 | 5900-5999 |
| PHYSICIANS-PRIVATE OFFICES | 60 | 6000-6099 |
| NONPAID WORKERS | 61 | 6100-6149 |
| PATIENTS-LAUNDRY | 62 | 6200-6299 |

2035    Administrative and general cost center code 0400-0499 may appear only on line 4 and subscripts of line 4. [03/31/1997]

2040

All calendar format dates must be edited for 10 character format, e.g., 01/01/1996 (MM/DD/YYYY). [10/31/1998]

2045    All dates must be possible, e.g., no "00", no "30" or "31" of February. [03/31/1997]

2005S    *DELETE THIS EDIT*: The combined amount due the provider or program (Worksheet S, Part II, line 7, sum of columns 1-4) should not equal zero. [09/30/2008]

ELECTRONIC COST REPORTING SPECIFICATIONS FOR FORM CMS 2540-96

**TABLE 6 - EDITS**

Edit     Condition

2015S    The SNF certification date (Worksheet S-2, column 3, line 4) should be on or before the cost report beginning date (Worksheet S-2, column 1, line 13). [03/31/1997]

2020S    The length of the cost reporting period should be greater than 27 days and less than 459 days. [03/31/1997]

2045S    Worksheet S-2, line 14 (type of control) must have a value of 1 through 13. [03/31/1997]

2085S    The sum of column 1, lines 2-5, 8-14, 17-21, and 24 (Worksheet S-3, Part II) must be greater than zero. [03/31/1997]

2090S    The sum of column 4, lines 2-5, 8-14, 17-18, and 24 (Worksheet S-3, Part II) must be greater than zero. [03/31/1997]

2100S    Total days for the SNF (Worksheet S-3, Part I, column 7, line 9) should be greater than zero. [03/31/1997]

2105S    If Medicare SNF inpatient days (Worksheet S-3, Part I, column 4, line 1) is greater than zero, then the following fields on Worksheet S-3, Part I, should also be greater than zero. [03/31/1997]

    a. Total skilled nursing facility discharges (column 12, line 9); and

    b. Medicare SNF discharges (column 9, line 9)

2110S    Total SNF inpatient days (Worksheet S-3, Part I, column 7, line 1) should be less than or equal to SNF bed days available (Worksheet S-3, Part I, column 2, line 1)[03/31/1997].

2115S    If on Worksheet S-2, either of columns 4 or 6 for line 4 equals P or O, then the corresponding columns for line 6 must be blank or equal N and vice versa. This edit flags the existence of SNF and NF simultaneously for title V and/or title XIX services. [03/31/1997]

2125S    Worksheet S-3, Part II, column 1, lines 8 through 14 must equal the sum of all related lines on Worksheet A, column 1. [03/31/1997]

2150S    If Worksheet S-3, Part II (column 4, sum of lines 8 through 14 divided by the sum of line 1 minus the sum of lines 2 through 5) is greater than 5 percent, then Worksheet S-3, Part III, column 1, line 14 must equal the sum of the amounts on Worksheet A, column 1, lines 3 through 15. [03/31/1997]

2155S    If Worksheet S-3, Part II (column 4, sum of lines 8 through 14 divided by the sum of line 1 minus the sum of lines 2 through 5) is equal to or greater than 15 percent, then Worksheet S-3, Part III, columns 1 and 4 for line 14 should be greater than zero. [03/31/1997]

10-08                           FORM CMS 2540-96                          3595 (Cont.)

ELECTRONIC COST REPORTING SPECIFICATIONS FOR FORM CMS 2540-96

**TABLE 6 – EDITS**

| Edit | Condition |
|---|---|
| 2160S | If Worksheet S-3, Part III, column 4, line 14 is greater than zero, then those hours should be at least 20 percent but not more than 60 percent of Worksheet S-3, Part II, column 4, line 1. [03/31/1997] |
| 2165S | Worksheet S-3, Part II, column 5: line 16 must be greater than $5.14, and less than $50.00; line 17 must be greater than $7.00, and less than $75.00; and line 18 must be greater than $5.14, and less than $50.00;. [12/31/2002] |
| 2000A | Worksheet A-6, column 1 (reclassification code) must be alpha characters. [03/31/1997] |
| 2020A | Worksheet A-8-1, Part A, line 1, must contain an "X" in either column 1 or 2. [03/31/1997] |
| 2035A | For Worksheet A-7, line 7, the sum of columns 1-3 minus column 5 must be greater than zero. [03/31/1997] |
| | Column headings (Worksheets B-1; B, Parts I and II; and J-1, Part III) are required as indicated below. (A). |
| 2045A | If there are any transactions with related organizations or home offices as defined in CMS Pub. 15-I, chapter 10 (Worksheet A-8-1, Part A, line 1, column 1, is "X"), Worksheet A-8-1, Part B, columns 4 or 5, sum of lines 1-9 must be greater than zero; and Part C, column 1, any one of lines 1-10 must contain any one of alpha characters A through G. However, for each line completed in Part B, at least one line entry must be completed in Part C. Conversely, if Worksheet A-8-1, Part A, line 1, column 2, is "X," Worksheet A-8-1, Parts B and C must not be completed. [03/31/1997] |
| 2000B | At least one cost center description (lines 1-3), at least one statistical basis label (lines 4-5), and one statistical basis code (line 6) must be present for each general service cost center with costs to allocate. This edit applies to all general service cost centers required and/or listed. [03/31/1997] |
| 2005B | The column numbering among these worksheets must be consistent. For example, data in capital related costs - buildings and fixtures is identified as coming from column 1 on all applicable worksheets. [03/31/1997] |
| 2000G | Total assets on Worksheet G (line 33, sum of columns 1-4) must equal total liabilities and fund balances (line 59, sum of columns 1-4). [03/31/1997] |
| 2010G | Net income or loss (Worksheet G-3, column 1, line 32) should not equal zero. [03/31/1997] |
| **NOTE:** | CMS reserves the right to require additional edits to correct deficiencies that become evident after processing the data commences and, as needed, to meet user requirements. |

Rev. 16                                                                      35-569

Exhibit C



# MEDICARE ENROLLMENT APPLICATION

## INSTITUTIONAL PROVIDERS

## CMS-855A

**SEE PAGE 1 TO DETERMINE IF YOU ARE COMPLETING THE CORRECT APPLICATION**

**SEE PAGE 3 FOR INFORMATION ON WHERE TO MAIL THIS APPLICATION.**

**SEE PAGE 52 TO FIND A LIST OF THE SUPPORTING DOCUMENTATION THAT MUST BE SUBMITTED WITH THIS APPLICATION.**

Exhibit
C



1

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

Form Approved OMB
No. 0938-0685
Expires: 08/19

## WHO SHOULD COMPLETE THIS APPLICATION

Institutional providers can apply for enrollment in the Medicare program or make a change in their enrollment information using either:
- The Internet-based Provider Enrollment, Chain and Ownership System (PECOS), or
- The paper enrollment application process (e.g., CMS 855A).

For additional information regarding the Medicare enrollment process, including Internet-based PECOS, go to *www.cms.gov/MedicareProviderSupEnroll*.

Institutional providers who are enrolled in the Medicare program, but have not submitted the CMS 855A since 2003, are required to submit a Medicare enrollment application (i.e., Internet-based PECOS or the CMS 855A) as an initial application when reporting a change for the first time.

The following health care organizations must complete this application to initiate the enrollment process:
- Community Mental Health Center
- Comprehensive Outpatient Rehabilitation Facility
- Critical Access Hospital
- End-Stage Renal Disease Facility
- Federally Qualified Health Center
- Histocompatibility Laboratory
- Home Health Agency
- Hospice
- Hospital
- Indian Health Services Facility
- Organ Procurement Organization
- Outpatient Physical Therapy/Occupational Therapy /Speech Pathology Services
- Religious Non-Medical Health Care Institution
- Rural Health Clinic
- Skilled Nursing Facility

If your provider type is not listed above, contact your designated fee-for-service contractor before you submit this application.

Complete this application if you are a health care organization and you:
- Plan to bill Medicare for Part A medical services, or
- Would like to report a change to your existing Part A enrollment data. A change must be reported within 90 days of the effective date of the change; per 42 C.F.R. 424.516(e), changes of ownership or control must be reported within 30 days of the effective date of the change.

## BILLING NUMBER INFORMATION

The National Provider Identifier (NPI) is the standard unique health identifier for health care providers and is assigned by the National Plan and Provider Enumeration System (NPPES). **Medicare healthcare providers, except organ procurement organizations, must obtain an NPI prior to enrolling in Medicare or before submitting a change to your existing Medicare enrollment information.** Applying for an NPI is a process separate from Medicare enrollment. To obtain an NPI, you may apply online at *https://NPPES.cms.hhs.gov*. As an organizational health care provider, it is your responsibility to determine if you have "subparts." A subpart is a component of an organization that furnishes healthcare and is not itself a legal entity. If you do have subparts, you must determine if they should obtain their own unique NPIs. Before you complete this enrollment application, you need to make those determinations and obtain NPI(s) accordingly.

**IMPORTANT: For NPI purposes, sole proprietors and sole proprietorships are considered to be "Type 1" providers. Organizations (e.g., corporations, partnerships) are treated as "Type 2" entities. When reporting the NPI of a sole proprietor on this application, therefore, the individual's Type 1 NPI should be reported; for organizations, the Type 2 NPI should be furnished.**

For more information about subparts, visit *www.cms.gov/NationalProvIdentStand* to view the "Medicare Expectations Subparts Paper."

The Medicare Identification Number, often referred to as the CMS Certification Number (CCN) or Medicare "legacy" number, is a generic term for any number other than the NPI that is used to identify a Medicare provider.

## INSTRUCTIONS FOR COMPLETING AND SUBMITTING THIS APPLICATION

- Type or print all information so that it is legible. Do not use pencil.
- Report additional information within a section by copying and completing that section for each additional entry.
- Attach all required supporting documentation.
- Keep a copy of your completed Medicare enrollment package for your records.
- Send the completed application with original signatures and all required documentation to your designated Medicare fee-for-service contractor.

## AVOID DELAYS IN YOUR ENROLLMENT

To avoid delays in the enrollment process, you should:
- Complete all required sections.
- Ensure that the legal business name shown in Section 2 matches the name on the tax documents.
- Ensure that the correspondence address shown in Section 2 is the provider's address.
- Enter your NPI in the applicable sections.
- Enter all applicable dates.
- Ensure that the correct person signs the application.
- Send your application and all supporting documentation to the designated fee-for-service contractor.

## OBTAINING MEDICARE APPROVAL

The usual process for becoming a certified Medicare provider is as follows:

1. The applicant completes and submits a CMS-855A enrollment application and all supporting documentation to its fee-for-service contractor.
2. The fee-for-service contractor reviews the application and makes a recommendation for approval or denial to the State survey agency, with a copy to the CMS Regional Office.
3. The State agency or approved accreditation organization conducts a survey. Based on the survey results, the State agency makes a recommendation  for approval or denial (a certification of compliance or noncompliance) to the CMS Regional Office. Certain provider types may elect voluntary accreditation by a CMS-recognized accrediting organization in  lieu of a State survey.
4. A CMS contractor conducts a second contractor review, as needed, to verify that a provider continues to meet the enrollment requirements prior to granting Medicare billing privileges.
5. The CMS Regional Office makes the final decision regarding program eligibility. The CMS Regional Office also works with the Office of Civil Rights to obtain necessary Civil Rights clearances. If approved, the provider must typically sign a provider agreement.

## ADDITIONAL INFORMATION

For additional information regarding the Medicare enrollment process, visit *www.cms.gov/ MedicareProviderSupEnroll*.

The fee-for-service contractor may request, at any time during the enrollment process, documentation to support or validate information reported on the application. You are responsible for providing this documentation in a timely manner.

The information you provide on this application will not be shared. It is protected under 5 U.S.C. Section 552(b)(4) and/or (b)(6), respectively. For more information, see the last page of this application for the Privacy Act Statement.

## MAIL YOUR APPLICATION

The Medicare fee-for-service contractor (also referred to as a fiscal intermediary or a Medicare administrative contractor) that services your State is responsible for processing your enrollment application. To locate the mailing address for your fee-for-service contractor, go to *www.cms.gov/ MedicareProviderSupEnroll*.

# SECTION 1: BASIC INFORMATION

## NEW ENROLLEES

If you are:

- Enrolling with a particular fee-for-service contractor for the first time.
- Undergoing a change of ownership where the new owner will not be accepting assignment of the Medicare assets and liabilities of the seller/former owner.

## ENROLLED MEDICARE PROVIDERS

The following actions apply to Medicare providers already enrolled in the program:

### Reactivation

To reactivate your Medicare billing privileges, submit this enrollment application. In addition, you must be able to submit a valid claim and meet all current requirements for your provider type before reactivation can occur.

### Voluntary Termination

A provider should voluntarily terminate its Medicare enrollment when:

- It will no longer be rendering services to Medicare patients,
- It is planning to cease (or has ceased) operations,
- There has been an acquisition/merger and the new owner will not be using the identification number of the entity it has acquired,
- There has been a consolidation and the identification numbers of the consolidating providers will no longer be used, or
- There has been a change of ownership and the new owner will not be accepting assignment of the Medicare assets and liabilities of the seller/former owner, meaning that the number of the seller/former owner will no longer be used.

**NOTE:** A voluntary identification number termination cannot be used to circumvent any corrective action plan or any pending/ongoing investigation, nor can it be used to avoid a period of reasonable assurance, where a provider must operate for a certain period without recurrence of the deficiencies that were the basis for the termination. The provider will not be reinstated until the completion of the reasonable assurance period.

### Change of Ownership (CHOW)

A CHOW typically occurs when a Medicare provider has been purchased (or leased) by another organization. The CHOW results in the transfer of the old owner's Medicare Identification Number and provider agreement (including any outstanding Medicare debt of the old owner) to the new owner. The regulatory citation for CHOWs can be found at 42 C.F.R. 489.18. If the purchaser (or lessee) elects not to accept a transfer of the provider agreement, then the old agreement should be terminated and the purchaser or lessee is considered a new applicant.

## SECTION 1: BASIC INFORMATION *(Continued)*

**Acquisition/Merger**

An acquisition/merger occurs when a currently enrolled Medicare provider is purchasing or has been purchased by another enrolled provider. Only the purchaser's Medicare Identification Number and tax identification number remain.

Acquisitions/mergers are different from CHOWs. In the case of an acquisition/merger, the seller/former owner's Medicare Identification Number dissolves. In a CHOW, the seller/former owner's provider number typically remains intact and is transferred to the new owner.

**Consolidation**

A consolidation occurs when two or more enrolled Medicare providers consolidate to form a new business entity.

Consolidations are different from acquisitions/mergers. In an acquisition/merger, two entities combine but the Medicare Identification Number and tax identification number (TIN) of the purchasing entity remain intact. In a consolidation, the TINs and Medicare Identification Numbers of the consolidating entities dissolve and a new TIN and Medicare Identification Number are assigned to the new, consolidated entity.

> Because of the various situations in which a CHOW, acquisition/merger, or consolidation can occur, it is recommended that the provider contact its fee-for-service contractor or its CMS Regional Office if it is unsure as to whether such a transaction has occurred. The provider should also review the applicable federal regulation at 42 C.F.R. 489.18 for additional guidance.

**Change of Information**

A change of information should be submitted if you are changing, adding, or deleting information under your current tax identification number. Changes in your existing enrollment data must be reported to the Medicare fee-for-service contractor in accordance with 42 C.F.R. 424.516(e).

**NOTE:** Ownership changes that do not qualify as CHOWs, acquisitions/mergers, or consolidations should be reported here. The most common example involves stock transfers. For instance, assume that a business entity's stock is owned by A, B, and C. A sells his stock to D. While this is an ownership change, it is generally not a formal CHOW under 42 C.F.R. 489.18. Thus, the ownership change from A to D should be reported as a change of information, not a CHOW. If you have any questions on whether an ownership change should be reported as a CHOW or a change of information, contact your fee-for-service contractor or CMS Regional Office.

If you are already enrolled in Medicare and are not receiving Medicare payments via EFT, any change to your enrollment information will require you to submit a CMS-588 application. All future payments will then be made via EFT.

**Revalidation**

CMS may require you to submit or update your enrollment information. The fee-for-service contractor will notify you when it is time for you to revalidate your enrollment information. Do not submit a revalidation application until you have been contacted by the fee-for-service contractor.

## SECTION 1: BASIC INFORMATION *(Continued)*

### A. Check one box and complete the required sections

| REASON FOR APPLICATION | BILLING NUMBER INFORMATION | REQUIRED SECTIONS |
|---|---|---|
| ☐ You are a **new enrollee** in Medicare | Enter your Medicare Identification Number (if issued) and the NPI you would like to link to this number in Section 4. | **Complete all applicable** sections except **2F, 2G,** and **2H** |
| ☐ You are enrolling with another fee-for-service contractor's jurisdiction<br><br>☐ You are **reactivating** your Medicare enrollment | Enter your Medicare Identification Number (if issued) and the NPI you would like to link to this number in Section 4. | **Complete all applicable** sections except **2F, 2G,** and **2H** |
| ☐ You are **voluntarily terminating** your Medicare enrollment | Effective Date of Termination:<br><br>Medicare Identification Number(s) to Terminate *(if issued)*:<br><br>National Provider Identifier *(if issued)*: | **Complete sections: 1, 2B1, 13,** and either **15** or **16** |
| ☐ There has been a **Change of Ownership (CHOW)** of the Medicare-enrolled provider<br><br>You are the:<br>☐ Seller/Former Owner<br>☐ Buyer/New Owner | Tax Identification Number: | **Seller/Former Owner: 1A, 2F, 13,** and either **15** or **16**<br><br>**Buyer/New Owner: Complete all** sections except **2G** and **2H** |
| ☐ Your organization has taken part in an **Acquisition** or **Merger**<br><br>You are the:<br>☐ Seller/Former Owner<br>☐ Buyer/New Owner | Medicare Identification Number of the Seller/Former Owner *(if issued)*:<br><br>NPI:<br><br>Tax Identification Number: | **Seller/Former Owner: 1A, 2G, 13,** and either **15** or **16**<br><br>**Buyer/New Owner: 1A, 2G, 4, 13,** and either **15** (if you are the authorized official) or **16** (if you are the delegated official), and **6** for the signer if that authorized or delegated official has not been established for this provider. |

## SECTION 1: BASIC INFORMATION *(Continued)*

### A. Check one box and complete the required sections

| | | |
|---|---|---|
| ☐ Your organization has **Consolidated** with another organization<br><br>You are the:<br>☐ Former organization<br>☐ New organization | Medicare Identification Number of the Seller/Former Owner *(if issued):*<br><br>NPI:<br><br>Tax Identification Number: | **Former Organizations:** **1A, 2H, 13,** and either **15** or **16**<br><br>**New Organization:** **Complete all** sections except **2F** and **2G** |
| ☐ You are **changing** your Medicare information | Medicare Identification Number *(if issued):*<br><br>NPI: | **Go to Section 1B** |
| ☐ You are **revalidating** your Medicare enrollment | Enter your Medicare Identification Number (if issued) and the NPI you would like to link to this number in Section 4. | **Complete all applicable sections except 2F, 2G, and 2H** |

## SECTION 1: BASIC INFORMATION *(Continued)*

**B. Check all that apply and complete the required sections:**

|  | REQUIRED SECTIONS |
|---|---|
| ☐ Identifying Information | **1, 2** (complete only those sections that are changing), **3, 13,** and either **15** (if you are the authorized official) **or 16** (if you are the delegated official), and Section 6 for the signer if that authorized or delegated official has not been established for this provider. |
| ☐ Adverse Legal Actions/Convictions | **1, 2B1, 3, 13,** and either **15** (if you are the authorized official) **or 16** (if you are the delegated official), and Section 6 for the signer if that authorized or delegated official has not been established for this provider. |
| ☐ Practice Location Information, Payment Address & Medical Record Storage Information | **1, 2B1, 3, 4** (complete only those sections that are changing), **13,** and either **15** (if you are the authorized official) **or 16** (if you are the delegated official), and Section 6 for the signer if that authorized or delegated official has not been established for this provider. |
| ☐ Ownership Interest and/or Managing Control Information (Organizations) | **1, 2B1, 3, 5, 13,** and either **15** (if you are the authorized official) **or 16** (if you are the delegated official), and Section 6 for the signer if that authorized or delegated official has not been established for this provider. |
| ☐ Ownership Interest and/or Managing Control Information (Individuals) | **1, 2B1, 3, 6, 13,** and either **15** (if you are the authorized official) **or 16** (if you are the delegated official), and Section 6 for the signer if that authorized or delegated official has not been established for this provider. |
| ☐ Chain Home Office Information | **1, 2B1, 3, 7, 13,** and either **15** (if you are the authorized official) **or 16** (if you are the delegated official), and Section 6 for the signer if that authorized or delegated official has not been established for this provider. |
| ☐ Billing Agency Information | **1, 2B1, 3, 8** (complete only those sections that are changing), **13,** and either **15** (if you are the authorized official) **or 16** (if you are the delegated official), and Section 6 for the signer if that authorized or delegated official has not been established for this provider. |
| ☐ Special Requirements for Home Health Agencies | **1, 2B1, 3, 12, 13,** and either **15** (if you are the authorized official) **or 16** (if you are the delegated official), and Section 6 for the signer if that authorized or delegated official has not been established for this provider. |
| ☐ Authorized Official(s) | **1, 2B1, 3, 6, 13,** and **15.** |
| ☐ Delegated Official(s) (Optional) | **1, 2B1, 3, 6, 13, 15,** and **16**. |

## SECTION 2: IDENTIFYING INFORMATION

### NEW ENROLLEES

**Submit separate CMS-855A enrollment applications** if the types of providers for which this application is being submitted are separately recognized provider types with different rules regarding Medicare participation. For example, if a provider functions as both a hospital and an end-stage renal disease (ESRD) facility, the provider must complete two separate enrollment applications (CMS-855A)—one for the hospital and one for the ESRD facility. If a hospital performs multiple types of services, only one enrollment application (CMS-855A) is required.

For example, a hospital that has a swing-bed unit need only submit one enrollment application (CMS–855A). This is because the provider is operating as a single provider type—a hospital—that happens to have a distinct part furnishing different/additional services.

### SPECIAL ENROLLMENT NOTES

- If you are adding a psychiatric or rehabilitation unit to a hospital, check the appropriate subcategory under the "Hospital" heading. (A separate enrollment for the psychiatric/rehabilitation unit is not required). The unit should be listed as a practice location in Section 4.
- If you are adding a home health agency (HHA) branch, list it as a practice location in Section 4. A separate enrollment application is not necessary.
- If you are changing hospital types (e.g., general hospital to a psychiatric hospital), indicate this in Section 2. A new/separate enrollment is not necessary.
- If you are adding an HHA sub-unit (as opposed to a branch), this requires an initial enrollment application for the sub-unit.
- If the hospital will focus on certain specialized services, the applicant should analyze whether the facility will be a general hospital or will fall under the category of a specialty hospital. A specialty hospital is defined as a facility that is primarily engaged in cardiac, orthopedic, or surgical care. Based upon Diagnosis Related Group/Major Diagnosis Category (DRG/MDC) and type (medical/surgical), the applicant should project all inpatient discharges expected in the first year of the hospital's operation. Those applicants that project that 45% or more of the hospital's inpatient cases will fall in either cardiac (MDC-5), orthopedic (MDC-8), or surgical care should check the Hospital—Specialty Hospital block in Section 2A2.
- Physician-owned hospital means any participating hospital (as defined in 42 CFR § 489.24) in which a physician, or an immediate family member of a physician has an ownership or investment interest in the hospital. The ownership or investment interest may be through equity, debt, or other means, and includes an interest in an entity that holds an ownership or investment interest in the hospital. This definition does not include a hospital with physician ownership or investment interests that satisfy the requirements at 42 CFR § 411.356(a) or (b).

## SECTION 2: IDENTIFYING INFORMATION *(Continued)*

### A. Type of Provider

The provider must meet all Federal and State requirements for the type of provider checked. Check only one provider type. If the provider functions as two or more provider types, a separate enrollment application (CMS-855A) must be submitted for each type.

**1. Type of Provider (other than Hospitals— See 2A2). Check only one:**

☐ Community Mental Health Center
☐ Comprehensive Outpatient Rehabilitation Facility
☐ Critical Access Hospital
☐ End-Stage Renal Disease Facility
☐ Federally Qualified Health Center
☐ Histocompatibility Laboratory
☐ Home Health Agency
☐ Home Health Agency (Sub-unit)
☐ Hospice
☐ Indian Health Services Facility
☐ Organ Procurement Organization
☐ Outpatient Physical Therapy/Occupational Therapy/ Speech Pathology Services
☐ Religious Non-Medical Health Care Institution
☐ Rural Health Clinic
☐ Skilled Nursing Facility
☐ Other (Specify):_____

**2. If this provider is a hospital, check all applicable subgroups and units listed below and complete Section 2A3.**

☐ Hospital—General
☐ Hospital—Acute Care
☐ Hospital—Children's (excluded from PPS)
☐ Hospital—Long-Term (excluded from PPS)
☐ Hospital—Psychiatric (excluded from PPS)
☐ Hospital—Rehabilitation (excluded from PPS)
☐ Hospital—Short-Term (General and Specialty)
☐ Hospital—Swing-Bed approved
☐ Hospital—Psychiatric Unit
☐ Hospital—Rehabilitation Unit
☐ Hospital—Specialty Hospital (cardiac, orthopedic, or surgical)
☐ Other (Specify):_____

**3. If hospital was checked in Section 2A1 or 2A2, does this hospital have a compliance plan that states that the hospital checks all managing employees against the exclusion/debarment lists of both the HHS Office of the Inspector General (OIG) and the General Services Administration (GSA)?**

☐ YES   ☐ NO

**4. Is the provider a physician-owned hospital (as defined in the Special Enrollment Notes on page 9)?**

☐ YES   ☐ NO

## SECTION 2: IDENTIFYING INFORMATION *(Continued)*

**B. Identification Information**

### 1. BUSINESS INFORMATION

Legal Business Name (not the "Doing Business As" name) as reported to the Internal Revenue Service


Identify the type of organizational structure of this provider/supplier *(Check one)*

☐ Corporation      ☐ Limited Liability Company      ☐ Partnership

☐ Sole Proprietor      ☐ Other *(Specify)*: _____

Tax Identification Number


Incorporation Date *(mm/dd/yyyy) (if applicable)* | State Where Incorporated *(if applicable)*

Other Name


Type of Other Name

☐ Former Legal Business Name   ☐ Doing Business As Name   ☐ Other *(Specify)*: _____

Identify how your business is registered with the IRS. (**NOTE:** If your business is a Federal and/or State government provider or supplier indicate "Non-Profit" below):

☐ Proprietary   ☐ Non-Profit

**NOTE:** If a checkbox indicating Proprietaryship or non-profit status is not completed, the provider/supplier will be defaulted to "Proprietary."

What is the supplier's year end cost report date? *(mm/dd/yyyy)*


Is this supplier an Indian Health Facility enrolling with the designated Indian Health Service (IHS) Medicare Administrative Contractor (MAC)?

☐ Yes   ☐ No

## SECTION 2: IDENTIFYING INFORMATION *(Continued)*

### 2. STATE LICENSE INFORMATION/CERTIFICATION INFORMATION

Provide the following information if the provider has a State license/certification to operate as the provider type for which you are enrolling.

☐ State License Not Applicable

| License Number | State Where Issued |
|---|---|
| Effective Date *(mm/dd/yyyy)* | Expiration/Renewal Date *(mm/dd/yyyy)* |

### Certification Information

☐ Certification Not Applicable

| Certification Number | State Where Issued |
|---|---|
| Effective Date *(mm/dd/yyyy)* | Expiration/Renewal Date *(mm/dd/yyyy)* |

### C. Correspondence Address

Provide contact information for the entity listed in Section 2B1 of this section. Once enrolled, the information provided below will be used by the fee-for-service contractor if it needs to contact you directly. This address cannot be a billing agency's address.

Mailing Address Line 1 *(Street Name and Number)*

Mailing Address Line 2 *(Suite, Room, etc.)*

| City/Town | | State | ZIP Code + 4 |
|---|---|---|---|
| Telephone Number | Fax Number *(if applicable)* | E-mail Address *(if applicable)* | |

### D. Accreditation

Is this provider accredited?    ☐ YES    ☐ NO
If YES, complete the following:

| Date of Accreditation *(mm/dd/yyyy)* | Expiration Date of Accreditation *(mm/dd/yyyy)* |
|---|---|

Name of Accrediting Body

Type of Accreditation or Accreditation Program (e.g., hospital accreditation program, home health accreditation, etc.)

### E. Comments

Use this section to clarify any information furnished in this section.

## SECTION 2: IDENTIFYING INFORMATION *(Continued)*

### F. Change of Ownership (CHOW) Information

Both the seller/former owner and the new owner should complete this section. (As the new owner may not know all of the seller/former owner's data, it should furnish this information on an "if known" basis.) The seller/former owner must complete Sections 1A, 2F, 13, and either 15 or 16. (Section 6 must also be completed if the signer has never completed Section 6 before.) The new owner must complete the entire application.

Legal Business Name of "Seller/Former Owner" as reported to the Internal Revenue Service

| "Doing Business As" Name of Seller/Former Owner *(if applicable)* | Old Owner's Medicare Identification Number *(if issued)* |
|---|---|

| Old Owner's NPI | Effective Date of Transfer *(this can be a future date) (mm/dd/yyyy)* | Name of Fee-For-Service Contractor of Seller/Former Owner |
|---|---|---|

Will the new owner be accepting assignment of the current "Provider Agreement?"  ☐ YES   ☐ NO

If the answer is "No," then this is an initial enrollment and the new owner should follow the instructions for "New Enrollees" in Section 1 of this form.

**Submit one copy of the bill of sale with the application. A copy of the final sales agreement must be submitted once the sale is executed.**

### G. Acquisitions/Mergers

Effective Date of Acquisition *(mm/dd/yyyy)*

The seller/former owner need only complete Sections 1A, 2G, 13, and either 15 or 16; the new owner must complete Sections 1A, 2G, 4, 13, and either 15 or 16. (Section 6 must also be completed if the signer has never completed Section 6 before.)

### 1. PROVIDER BEING ACQUIRED

This section is to be completed with information about the currently enrolled provider that is being acquired and will no longer retain its current Medicare provider number as a result of this acquisition.

Legal Business Name of the "Provider Being Acquired" as reported to the Internal Revenue Service

Current Fee-for-Service Contractor

Provide the name and Medicare identification number of all units of the above provider that have separate Medicare identification numbers but have not entered into separate provider agreements, such as swing bed units of a hospital and HHA branches. Also furnish the NPI. Units that already have a separate provider agreement should not be reported here.

| NAME/DEPARTMENT | MEDICARE IDENTIFICATION NUMBER (IF ISSUED) | NATIONAL PROVIDER IDENTIFIER |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

## SECTION 2: IDENTIFYING INFORMATION *(Continued)*

### 2. ACQUIRING PROVIDER

This section is to be completed with information about the organization acquiring the provider identified in Section 2G1.

| Legal Business Name of the "Acquiring Provider" as Reported to the Internal Revenue Service | Medicare Identification Number (if issued) |
|---|---|
| Current Fee-for-Service Contractor | National Provider Identifier |

**Submit one copy of the bill of sale with the application. A copy of the final sales agreement must be submitted once the sale is executed.**

### H. Consolidations

**The newly formed provider completes the entire application. The providers that are being consolidated are reported below.**

### 1. 1ST CONSOLIDATING PROVIDER

This section is to be completed with information about the 1st currently enrolled provider that, as a result of this consolidation, will no longer retain its current Medicare Identification Number.

Legal Business Name of the "Provider Being Acquired" as reported to the Internal Revenue Service

Current Fee-for-Service Contractor

Effective Date of Consolidation

Provide the name and Medicare identification number of all units of the above provider that have separate Medicare identification numbers but have not entered into separate provider agreements, such as swing-bed units of a hospital and HHA branches. Also furnish the NPI. Units that already have a separate provider agreement should not be reported here.

| NAME/DEPARTMENT | MEDICARE IDENTIFICATION NUMBER (IF ISSUED) | NATIONAL PROVIDER IDENTIFIER |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

### 2. 2ND CONSOLIDATING PROVIDER

This section is to be completed with information about the 2nd currently enrolled provider that, as a result of this consolidation, will also no longer retain its current Medicare Identification Number.

Legal Business Name of the "Provider Being Acquired" as reported to the Internal Revenue Service

Current Fee-for-Service Contractor

## SECTION 2: IDENTIFYING INFORMATION *(Continued)*

Provide the name and Medicare identification number of all units of the above provider that have separate Medicare identification numbers but have not entered into separate provider agreements, such as swing-bed units of a hospital and HHA branches. Also furnish the NPI. Units that already have a separate provider agreement should not be reported here.

| NAME/DEPARTMENT | MEDICARE IDENTIFICATION NUMBER (IF ISSUED) | NATIONAL PROVIDER IDENTIFIER |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

### 3. NEWLY CREATED PROVIDER IDENTIFICATION INFORMATION

Complete this section with identifying information about the newly created provider resulting from this consolidation.

| Legal Business Name of the New Provider as Reported to the Internal Revenue Service | Tax Identification Number |
|---|---|
| | |

**Submit one copy of the bill of sale with the application. A copy of the final sales agreement must be submitted once the sale is executed.**

## SECTION 3: FINAL ADVERSE LEGAL ACTIONS/CONVICTIONS

This section captures information on final adverse legal actions, such as convictions, exclusions, revocations, and suspensions. All applicable final adverse legal actions must be reported, regardless of whether any records were expunged or any appeals are pending.

**Convictions**

1. The provider, supplier, or any owner of the provider or supplier was, within the last 10 years preceding enrollment or revalidation of enrollment, convicted of a Federal or State felony offense that CMS has determined to be detrimental to the best interests of the program and its beneficiaries. Offenses include: Felony crimes against persons and other similar crimes for which the individual was convicted, including guilty pleas and adjudicated pre-trial diversions; financial crimes, such as extortion, embezzlement, income tax evasion, insurance fraud and other similar crimes for which the individual was convicted, including guilty pleas and adjudicated pre-trial diversions; any felony that placed the Medicare program or its beneficiaries at immediate risk (such as a malpractice suit that results in a conviction of criminal neglect or misconduct); and any felonies that would result in a mandatory exclusion under Section 1128(a) of the Act.

2. Any misdemeanor conviction, under Federal or State law, related to: (a) the delivery of an item or service under Medicare or a State health care program, or (b) the abuse or neglect of a patient in connection with the delivery of a health care item or service.

3. Any misdemeanor conviction, under Federal or State law, related to theft, fraud, embezzlement, breach of fiduciary duty, or other financial misconduct in connection with the delivery of a health care item or service.

4. Any felony or misdemeanor conviction, under Federal or State law, relating to the interference with or obstruction of any investigation into any criminal offense described in 42 C.F.R. Section 1001.101 or 1001.201.

5. Any felony or misdemeanor conviction, under Federal or State law, relating to the unlawful manufacture, distribution, prescription, or dispensing of a controlled substance.

**Exclusions, Revocations or Suspensions**

1. Any revocation or suspension of a license to provide health care by any State licensing authority. This includes the surrender of such a license while a formal disciplinary proceeding was pending before a State licensing authority.

2. Any revocation or suspension of accreditation.

3. Any suspension or exclusion from participation in, or any sanction imposed by, a Federal or State health care program, or any debarment from participation in any Federal Executive Branch procurement or non-procurement program.

4. Any current Medicare payment suspension under any Medicare billing number.

5. Any Medicare revocation of any Medicare billing number.

## SECTION 3: FINAL ADVERSE ACTIONS/CONVICTIONS *(Continued)*

**FINAL ADVERSE LEGAL HISTORY**

1. Has your organization, under any current or former name or business identity, ever had a final adverse action listed on page 16 of this application imposed against it?

   ☐ YES–Continue Below      ☐ NO–Skip to Section 4

2. If yes, report each final adverse action, when it occurred, the Federal or State agency or the court/administrative body that imposed the action, and the resolution, if any.

   Attach a copy of the final adverse action documentation and resolution.

| FINAL ADVERSE LEGAL ACTION | DATE | TAKEN BY | RESOLUTION |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

## SECTION 4: PRACTICE LOCATION INFORMATION

**INSTRUCTIONS**

- Report all practice locations within the jurisdiction of the Medicare fee-for-service contractor to which you will submit this application.
- If the provider is adding a practice location in the same State and the location requires a separate provider agreement, a separate, complete CMS-855A must be submitted for that location. The location is considered a separate provider for purposes of enrollment, and is not considered a practice location of the main provider. If a provider agreement is not required, the location can be added as a practice location.
- If the provider is adding a practice location in another State and the location requires a separate provider agreement, a separate, complete CMS-855A must be submitted for that location. (This often happens when a home health agency wants to perform services in an adjacent State.)
- If the provider is adding a practice location within another fee-for-service contractor's jurisdiction and the provider is not already enrolled with that fee-for-service contractor, the provider must submit a full, complete CMS-855A to that fee-for-service contractor—regardless of whether a separate provider agreement is required. It cannot add the location as a mere practice location.
- Provide the specific street address as recorded by the United States Postal Service. Do not furnish a P.O. Box.

**IMPORTANT:** The provider should list its primary practice location first in Section 4A. The "primary practice location" must be associated with the NPI that the provider intends to use to bill for Medicare services.

If you have any questions as to whether the practice location requires a separate State survey or provider agreement, contact your fee-for-service contractor.

**Community Mental Health Centers** (CMHCs) must report all alternative sites where core services are provided (proposed alternative sites for initial enrollment and actual alternative sites for those CMHCs already participating in Medicare). In accordance with provisions of the Public Health Service Act, a CMHC is required to provide mental health services principally to individuals who reside in a defined geographic area (service area). Therefore, CMHCs must service a distinct and definable community. Those CMHCs operating or proposing to operate outside of this specific community must have a separate provider agreement/number, submit a separate enrollment application, and individually meet the requirements to participate. CMS will determine if the alternative site is permissible or whether the site must have a separate agreement/number. CMS will consider the actual demonstrated transportation pattern of CMHC clients within the community to ensure that all core services and partial hospitalization services are available from each location within the community. A CMHC patient must be able to access and receive services he/she needs at the parent CMHC site or the alternative site within the distinct and definable community served by the parent.

## SECTION 4: PRACTICE LOCATION INFORMATION *(Continued)*

**Hospitals** must report all practice locations where the hospital provides services. Do not report separately enrolled provider types such as skilled nursing facilities (SNFs), HHAs, RHCs, etc., even if these entities are provider-based to the hospital. Suppose a hospital owns a SNF and an HHA. The hospital should not list the SNF and HHA on its application, as they are not locations where the hospital furnishes services.

They are providers that are separate and distinct from the hospital, and will be reported on their respective CMS-855A applications.

### Base of Operations Address

* If this provider does not have a physical location where equipment and/or vehicles are stored or from where personnel report on a regular basis, complete this section with information about the location of the dispatcher/scheduler. This situation may occur if the provider operates mobile units that travel continuously from one location directly to another.
* HHAs must complete this section.

### Mobile Facility and/or Portable Units

To properly pay claims, Medicare must know when services are provided in a mobile facility or with portable units. (This section is mostly applicable to providers that perform outpatient physical therapy, occupational therapy, and speech pathology services.)

* A "mobile facility" is generally a mobile home, trailer, or other large vehicle that has been converted, equipped, and licensed to render health care services. These vehicles usually travel to local shopping centers or community centers to see and treat patients inside the vehicle.
* A "portable unit" is when the provider transports medical equipment to a fixed location (e.g., a physician's office or nursing home) to render services to the patient.

## SECTION 4: PRACTICE LOCATION INFORMATION *(Continued)*

### A. Practice Location Information

Report all practice locations where services will be furnished. If there is more than one location, copy and complete this section for each. Please list your primary practice location first.

To ensure that CMS establishes the correct associations between your Medicare legacy number (if issued) and your NPI, you must list a Medicare legacy number—NPI combination for each practice location. If you have multiple NPIs associated with both a single legacy number and a single practice location, please list below all NPIs and associated legacy numbers for that practice location.

If you are changing, adding, or deleting information, check the applicable box, furnish the effective date, and complete the appropriate fields in this section.

| CHECK ONE | ☐ CHANGE | ☐ ADD | ☐ DELETE |
|---|---|---|---|
| DATE *(mm/dd/yyyy)* | | | |

Practice Location Name *("Doing Business As" name if different from Legal Business Name)*

Practice Location Street Address Line 1 *(Street Name and Number – NOT a P.O. Box)*

Practice Location Street Address Line 2 *(Suite, Room, etc.)*

| City/Town | State | ZIP Code + 4 |
|---|---|---|
| Telephone Number | Fax Number *(if applicable)* | E-mail Address *(if applicable)* |

| Medicare Identification Number *(if issued)* | NPI |
|---|---|

| Medicare Identification Number *(if issued)* | NPI |
|---|---|

| Medicare Identification Number *(if issued)* | NPI |
|---|---|

| Medicare Identification Number *(if issued)* | NPI |
|---|---|

| CLIA Number for this location *(if applicable)* | FDA/Radiology (Mammography) Certification Number for this location *(if issued)* |
|---|---|

Hospitals and HHAs only *(Identify type of practice location)*:
☐ HHA Branch                  ☐ Main/Primary Hospital Location
☐ Hospital Psychiatric Unit        ☐ OPT Extension Site
☐ Hospital Rehabilitation Unit      ☐ Other Hospital Practice Location:_____
☐ Hospital Swing-Bed Unit

## SECTION 4: PRACTICE LOCATION INFORMATION *(Continued)*

### B. Where Do You Want Remittance Notices Or Special Payments Sent?

If you are changing, adding, or deleting information, check the applicable box, furnish the effective date, and complete the appropriate fields in this section.

| CHECK ONE | ☐ CHANGE | ☐ ADD | ☐ DELETE |
|---|---|---|---|
| DATE *(mm/dd/yyyy)* | | | |

**Medicare will issue payments via electronic funds transfer (EFT).** Since payment will be made by EFT, the "Special Payments" address will indicate where all other payment information (e.g., remittance notices, special payments) are sent.

☐ "Special Payments" address is the same as the practice location (only one address is listed in Section 4A). **Skip to Section 4C.**

☐ "Special Payments" address is different than that listed in Section 4A, or multiple locations are listed. **Provide address below.**

"Special Payments" Address Line 1 *(PO Box or Street Name and Number)*

"Special Payments" Address Line 2 *(Suite, Room, etc.)*

| City/Town | State | ZIP Code + 4 |
|---|---|---|
| | | |

### C. Where Do You Keep Patients' Medical Records?

If you store patients' medical records (current and/or former patients) at a location other than the location in Section 4A or 4D, complete this section with the address of the storage location.

If this section is not complete, you are indicating that all records are stored at the practice locations reported in Section 4A or 4D. The records must be the provider's records, not the records of another provider. Post Office Boxes and drop boxes are not acceptable as physical addresses where patients' records are maintained.

For mobile facilities/portable units, the patients' medical records must be under the provider's control.

If you are changing, adding, or deleting information, check the applicable box, furnish the effective date, and complete the appropriate fields in this section.

### First Medical Record Storage Facility for Current and Former Patients

| CHECK ONE | ☐ CHANGE | ☐ ADD | ☐ DELETE |
|---|---|---|---|
| DATE *(mm/dd/yyyy)* | | | |

Storage Facility Address Line 1 *(Street Name and Number)*

Storage Facility Address Line 2 *(Suite, Room, etc.)*

| City/Town | State | ZIP Code + 4 |
|---|---|---|
| | | |

CMS-855A (07/11)                                                                                    21

## SECTION 4: PRACTICE LOCATION INFORMATION *(Continued)*

**Second Medical Record Storage Facility for Current and Former Patients**

| CHECK ONE | ☐ CHANGE | ☐ ADD | ☐ DELETE |
|---|---|---|---|
| **DATE** *(mm/dd/yyyy)* | | | |

Storage Facility Address Line 1 *(Street Name and Number)*

Storage Facility Address Line 2 *(Suite, Room, etc.)*

| City/Town | State | ZIP Code + 4 |
|---|---|---|
| | | |

### D. Base of Operations Address for Mobile or Portable Providers (Location of Business Office or Dispatcher/Scheduler)

The base of operations is the location from where personnel are dispatched, where mobile/portable equipment is stored, and when applicable, where vehicles are parked when not in use.

If you are changing, adding, or deleting information, check the applicable box, furnish the effective date, and complete the appropriate fields in this section.

| CHECK ONE | ☐ CHANGE | ☐ ADD | ☐ DELETE |
|---|---|---|---|
| **DATE** *(mm/dd/yyyy)* | | | |

**Check here ☐ and skip to Section 4E if the "Base of Operations" address is the same as the "Practice Location" listed in Section 4A.**

Street Address Line 1 *(Street Name and Number)*

Street Address Line 2 *(Suite, Room, etc.)*

| City/Town | State | ZIP Code + 4 |
|---|---|---|
| | | |
| Telephone Number | Fax Number *(if applicable)* | E-mail Address *(if applicable)* |

## SECTION 4: PRACTICE LOCATION INFORMATION *(Continued)*

### E. Vehicle Information

If the mobile health care services are rendered inside a vehicle, such as a mobile home or trailer, furnish the following vehicle information. Do not furnish information about ambulance vehicles, or vehicles that are used only to transport medical equipment (e.g., when the equipment is transported in a van but is used in a fixed setting, such as a doctor's office). If more than three vehicles are used, copy and complete this section as needed.

If you are changing, adding, or deleting information, check the applicable box, furnish the effective date, and complete the appropriate fields in this section.

| CHECK ONE FOR EACH VEHICLE | TYPE OF VEHICLE (van, mobile home, trailer, etc.) | VEHICLE IDENTIFICATION NUMBER |
|---|---|---|
| ☐ CHANGE    ☐ ADD    ☐ DELETE  Effective Date: | | |
| ☐ CHANGE    ☐ ADD    ☐ DELETE  Effective Date: | | |
| ☐ CHANGE    ☐ ADD    ☐ DELETE  Effective Date: | | |

**For each vehicle, submit a copy of all health care related permits/licenses/registrations.**

### F. Geographic Location For Mobile or Portable Providers where the Base of Operations and/or Vehicle Renders Services

For home health agencies (HHAs) and mobile/portable providers, furnish information identifying the geographic area(s) where health care services are rendered.

**NOTE:** If you provide mobile health care services in more than one State and those States are serviced by different Medicare fee-for-service contractors, complete a separate enrollment application (CMS-855A) for each Medicare fee-for-service contractor's jurisdiction.

### 1. INITIAL REPORTING AND/OR ADDITIONS

If you are reporting or adding an entire State, it is not necessary to report each city/town. Simply check the box below and specify the State.

☐ Entire State of _____

If services are provided in selected cities/towns, provide the locations below. Only list ZIP codes if you are not servicing the entire city/town.

| CITY/TOWN | STATE | ZIP CODE |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |

## SECTION 4: PRACTICE LOCATION INFORMATION *(Continued)*

### 2. DELETIONS

If you are deleting an entire State, it is not necessary to report each city/town. Simply check the box below and specify the State.

☐ Entire State of _____

If services are provided in selected cities/towns, provide the locations below. Only list ZIP codes if you are not servicing the entire city/town.

| CITY/TOWN | STATE | ZIP CODE |
|-----------|-------|----------|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

## SECTION 5: OWNERSHIP INTEREST AND/OR MANAGING CONTROL INFORMATION (ORGANIZATIONS)

This section is to be completed with information about any organization that has direct or indirect ownership of, a partnership interest in, and/or managing control of the provider identified in Section 2. If there is more than one organization, copy and complete this section for each. (See examples below of organizations that should be reported in this section.)

Only organizations should be reported in this section. Individuals should be reported in Section 6.

If adding, deleting, or changing information on an existing owner, partner, or managing organization, check the appropriate box, indicate the effective date of the change, complete the appropriate fields in this section, and sign and date the certification statement.

### A. Ownership

The following ownership interests must be reported in this section.

### 1. DIRECT OWNERSHIP INTEREST
Examples of direct ownership are as follows:
- The provider is a skilled nursing facility that is wholly (100%) owned by Company A. As such, the provider would have to report Company A in this section.
- A hospice wants to enroll in Medicare. Company X owns 50% of the hospice. Company X would have to be reported in this section.

In the first example, Company A is considered a direct owner of the skilled nursing facility, in that it actually owns the assets of the business. Similarly, Company X is a direct owner of the hospice mentioned in the second example. It has 50% actual ownership of the hospice.

### 2. INDIRECT OWNERSHIP INTEREST
Many organizations that directly own a provider are themselves wholly or partly owned by other organizations (or even individuals). This is often the result of the use of holding companies and parent/subsidiary relationships. Such organizations and individuals are considered to be "indirect" owners of the provider. Using the first example in #1 above, if Company B owned 100% of Company A, Company B is considered to be an indirect owner of the provider. In other words, a direct owner has an actual ownership interest in the provider (e.g., owns stock in the business, etc.), whereas an indirect owner has an ownership interest in an organization that owns the provider.

Consider the following example of indirect ownership:

### EXAMPLE 1: OWNERSHIP

| LEVEL 3 | Individual X | Individual Y |
|---------|--------------|--------------|
|         | 5%           | 30%          |
| LEVEL 2 | Company C    | Company B    |
|         | 60%          | 40%          |
| LEVEL 1 | Company A    |              |
|         | 100%         |              |

## SECTION 5: OWNERSHIP INTEREST AND/OR MANAGING CONTROL INFORMATION (ORGANIZATIONS) *(Continued)*

- Company A owns 100% of the Enrolling Provider
- Company B owns 40% of Company A
- Company C owns 60% of Company A
- Individual X owns 5% of Company C
- Individual Y owns 30% of Company B

In this example, Company A (Level 1) is the direct owner of the provider identified in section 2 of this application. Companies B and C, as well as Individuals X and Y, are indirect owners of the provider. To calculate ownership shares using the above-cited example, utilize the following steps:

### LEVEL 1

The diagram above indicates that Company A owns 100% of the Enrolling Provider. Company A must be reported.

### LEVEL 2

To calculate the percentage of ownership held by Company C of the Enrolling Provider, multiply:

- The percentage of ownership the LEVEL 1 owner has in the Enrolling Provider
  **MULTIPLIED BY**
  The percentage of ownership the LEVEL 2 owner has in that LEVEL 1 owner
- Company A, the LEVEL 1 (or direct) owner, owns 100% of the provider. The diagram also indicates that Company C, a LEVEL 2 owner, owns 60% of Company A. As such, multiply 100% (or 1.0) by 60% (.60). The result is .60. Therefore, Company C indirectly owns 60% of the provider, and must be reported.
- Repeat the same procedure for Company B, the other LEVEL 2 owner. Because Company B owns 40% of Company A, multiply this figure by 100% (again, the ownership stake Company A has in the Enrolling Provider). Company B thus owns 40% of the Enrolling Provider, and must be reported.

This process is continued until all LEVEL 2 owners have been accounted for.

### LEVEL 3

To calculate the percentage of ownership that Individual X has in the Enrolling Provider, multiply:

- The percentage of ownership the LEVEL 2 owner has in the Enrolling Provider
  **MULTIPLIED BY**
  The percentage of ownership the LEVEL 3 owner has in that LEVEL 2 owner
- Company C owns 60% of the provider. According to the example above, Individual X (Level 3) owns 5% of Company C. Therefore, multiply 60% (.60) by 5% (.05), resulting in .03. This means that Individual X owns 3% of the provider and does not need to be reported in this application.
- Repeat this process for Company B, which owns 40% of the provider. The diagram states that Individual Y (Level 3) owns 30% of Company B. We thus multiply 40% (.40) by 30% (.30). The result is .12, or 12%. Because Individual Y owns 12% of the provider, Individual Y must be reported in this application (in Section 6: Individuals).

This process is continued until all owners in LEVEL 3 have been accounted for. This process must be repeated for Levels 4 and beyond.

## SECTION 5: OWNERSHIP INTEREST AND/OR MANAGING CONTROL INFORMATION (ORGANIZATIONS) *(Continued)*

### 3. MORTGAGE OR SECURITY INTEREST

All entities with at least a 5% mortgage, deed of trust, or other security interest in the provider must be reported in this section. To calculate whether this interest meets the 5% threshold, use the following formula:

- Dollar amount of the mortgage, deed of trust, or other obligation secured by the provider or any of the property or assets of the provider

  **DIVIDED BY**

  Dollar amount of the total property and assets of the provider

Example: Two years ago, a provider obtained a $20 million loan from Entity X to add a third floor to its facility. Various assets of the provider secure the mortgage. The total value of the provider's property and assets is $100 million.

Using the formula described above, divide $20 million (the dollar amount of the secured mortgage) by $100 million (the total property and assets of the Enrolling Provider). This results in .20, or 20%. Because Entity X's interest represents at least 5% of the total property and assets of the Enrolling Provider, Entity X must be reported in this section.

### 4. PARTNERSHIPS

All general partnership interests—regardless of the percentage—must be reported. This includes: (1) all interests in a non-limited partnership, and (2) all general partnership interests in a limited partnership.

For limited partnerships, all limited partners must be reported if their interest in the partnership is at least 10%. To illustrate, assume a provider is a limited partnership. The general partner has a 60% interest in the entity, while the 4 limited partners each own 10%. The general partnership must be reported in this application. Likewise, the 4 limited partners must be reported, as they each own at least 10% of the limited partnership.

## SECTION 5: OWNERSHIP INTEREST AND/OR MANAGING CONTROL INFORMATION (ORGANIZATIONS) *(Continued)*

### 5. ADDITIONAL INFORMATION ON OWNERSHIP

All entities that meet any the requirements above must be reported in this section, including, but not limited to:

- Entities with an investment interest in the provider (e.g., investment firms)
- Banks and financial institutions (e.g., mortgage interests)
- Holding companies
- Trusts and trustees
- Governmental/Tribal Organizations: If a Federal, State, county, city or other level of government, or an Indian tribe, will be legally and financially responsible for Medicare payments received (including any potential overpayments), the name of that government or Indian tribe must be reported as an owner. The provider must submit a letter on the letterhead of the responsible government (e.g., government agency) or tribal organization, which attests that the government or tribal organization will be legally and financially responsible in the event that there is any outstanding debt owed to CMS. This letter must be signed by an "authorized official" of the government or tribal organization who has the authority to legally and financially bind the government or tribal organization to the laws, regulations, and program instructions of Medicare. See Section 15 for further information on "authorized officials."
- Charitable and Religious Organizations: Many non-profit organizations are charitable or religious in nature, and are operated and/or managed by a Board of Trustees or other governing body. The actual name of the Board of Trustees or other governing body should be reported in this section.

In addition to furnishing the information in this section, the provider must submit:

- An organizational diagram identifying all of the entities listed in this section and their relationships with the provider and with each other.
- If the provider is a skilled nursing facility, a diagram identifying the organizational structures of all of its owners, including owners that were not required to be listed in this section or in Section 6.

### B. Managing Control

Any organization that exercises operational or managerial control over the provider, or conducts the day-to-day operations of the provider, is a managing organization and must be reported. The organization need not have an ownership interest in the provider in order to qualify as a managing organization. For instance, it could be a management services organization under contract with the provider to furnish management services for the business.

### C. Managing Control: Adverse Legal History

This section is to be completed with any adverse legal history information about any ownership organization, partnership and/or organization with managing control of the provider identified in Section 2.

# SECTION 5: OWNERSHIP INTEREST AND/OR MANAGING CONTROL INFORMATION (ORGANIZATIONS) *(Continued)*

☐ Not Applicable

If you are changing, adding, or deleting information, check the applicable box, furnish the effective date, and complete the appropriate fields in this section.

| CHECK ONE | ☐ CHANGE | ☐ ADD | ☐ DELETE |
|---|---|---|---|
| DATE *(mm/dd/yyyy)* | | | |

## A. Ownership/Managing Control Organization

### 1. IDENTIFYING INFORMATION

Legal Business Name as Reported to the Internal Revenue Service

"Doing Business As" Name *(if applicable)*

Address Line 1 *(Street Name and Number)*

Address Line 2 *(Suite, Room, etc.)*

| City/Town | State | ZIP Code + 4 |
|---|---|---|

Tax Identification Number *(required)*

| Medicare Identification Number(s) *(if issued)* | NPI *(if issued)* |
|---|---|

### 2. TYPE OF ORGANIZATION

Check all that apply:

☐ Corporation
☐ Limited liability Company
☐ Medical provider/supplier
☐ Management services company
☐ Medical staffing company
☐ Holding company

☐ Investment firm
☐ Bank or other financial institution
☐ Consulting firm
☐ For-profit
☐ Non-profit
☐ Other *(please specify)*:

## SECTION 5: OWNERSHIP INTEREST AND/OR MANAGING CONTROL INFORMATION (ORGANIZATIONS) *(Continued)*

### B. Ownership/Managing Control Information

Identify the type of ownership and/or managing control the organization identified in Section 5.A.1. has in the provider identified in Section 2 of this application. Check all that apply. Complete all information for each type of ownership and/or managing control applicable.

---

### ☐ 5% or greater direct ownership interest

Effective date of 5% or greater direct ownership interest *(mm/dd/yyyy)*

---

Exact percentage of direct ownership this organization has in the provider

---

Was this organization solely created to acquire/buy the provider and/or the provider's assets?

☐ Yes   ☐ No

If this organization also provides contracted services to the provider, describe the types of services furnished *(e.g., managerial, billing, consultative, medical personnel staffing).*

---

### ☐ 5% or greater indirect ownership interest

Effective date of 5% or greater indirect ownership interest *(mm/dd/yyyy)*

---

Exact percentage of indirect ownership this organization has in the provider

---

Was this organization solely created to acquire/buy the provider and/or the provider's assets?

☐ Yes   ☐ No

If this organization provides contracted services to the provider, describe the types of services furnished *(e.g., managerial, billing, consultative, medical personnel staffing).*

---

### ☐ 5% or greater mortgage interest

Effective date of 5% or greater mortgage interest *(mm/dd/yyyy)*

---

Exact percentage of mortgage interest this organization has in the provider

---

Was this mortgage solely created to acquire/buy the provider and/or the provider's assets?

☐ Yes   ☐ No

---

## SECTION 5: OWNERSHIP INTEREST AND/OR MANAGING CONTROL INFORMATION (ORGANIZATIONS) *(Continued)*

### B. Managing Control: Identifying Information *(Continued)*

#### □ 5% or greater security interest

Effective date of 5% or greater security interest *(mm/dd/yyyy)*


Exact percentage of security interest this organization has in the provider


Was this security solely created to acquire/buy the provider and/or the provider's assets?

□ Yes    □ No

#### □ General Partnership interest

Effective Date of the general partnership interest *(mm/dd/yyyy)*


Exact percentage of general partnership interest this organization has in the provider


Was this general partnership solely created to acquire/buy the provider and/or the provider's assets?

□ Yes    □ No

If this general partnership also provides contracted services to the provider, describe the types of services furnished *(e.g., managerial, billing, consultative, medical personnel staffing).*


#### □ Limited Partnership interest

Effective Date of the limited partnership interest *(mm/dd/yyyy)*


Exact percentage of limited partnership interest this organization has in the provider


Was this limited partnership solely created to acquire/buy the provider and/or the provider's assets?

□ Yes    □ No

If this limited partnership also provides contracted services to the provider, describe the types of services furnished *(e.g., managerial, billing, consultative, medical personnel staffing).*

## SECTION 5: OWNERSHIP INTEREST AND/OR MANAGING CONTROL INFORMATION (ORGANIZATIONS) *(Continued)*

### B. Managing Control: Identifying Information *(Continued)*

☐ **Operational/Managerial Control**

Effective Date of the operational/managerial control *(mm/dd/yyyy)*

Exact percentage of operational/managerial control this organization has in the provider

If this operational/managerial organization also provides contracted services to the provider, describe the types of services furnished *(e.g., managerial, billing, consultative, medical personnel staffing).*

☐ **Other ownership or control/interest (please specify):** _____

Effective Date of other ownership or control/interest *(mm/dd/yyyy)*

Exact percentage of ownership or control/interest this organization has in the provider

Was this organization solely created to acquire/buy the provider and/or the provider's assets?

☐ Yes   ☐ No

If this organization also provides contracted services to the provider, describe the types of services furnished *(e.g., managerial, billing, consultative, medical personnel staffing).*

### C. Final Adverse Legal Action History

If reporting a change to existing information, check "Change," provide the effective date of the change, and complete the appropriate fields in this section.

☐ Change    ☐ Effective Date: _____

1. Has this organization in Section 5A, under any current or former name or business identity, ever had a final adverse legal action listed on page 16 of this application imposed against it?

   ☐ YES–Continue Below    ☐ NO–Skip to Section D

2. If YES, report each final adverse legal action, when it occurred, the Federal or State agency or the court/administrative body that imposed the action, and the resolution, if any.

   Attach a copy of the final adverse legal action documentation and resolution.

| FINAL ADVERSE LEGAL ACTION | DATE | TAKEN BY | RESOLUTION |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

## SECTION 6: OWNERSHIP INTEREST AND/OR MANAGING CONTROL INFORMATION (INDIVIDUALS)

This section is to be completed with information about any individual who has direct or indirect ownership of, a partnership interest in, and/or managing control of the provider identified in Section 2 of this application. If there is more than one individual, copy and complete this section for each. Note that the provider must have at least one managing employee.

Only individuals should be reported in this section. Organizations should be reported in Section 5.

If adding, deleting, or changing information on an existing owner, partner, or managing individual, check the appropriate box, indicate the effective date of the change, complete the appropriate fields in this section, and sign and date the certification statement.

### A. Ownership and Control

The following ownership control interests, as they are described in the instructions to Section 5, must be reported in this section:

- 5% or greater direct ownership interest
- 5% or greater indirect ownership interest
- 5% or greater mortgage or security interest
- All general partnership interests, regardless of the percentage. This includes: (1) all interests in a non-limited partnership, and (2) all general partnership interests in a limited partnership.
- Limited partnership interests if the individual's interest in the partnership is at least 10%.
- Officers and Directors, if the entity is organized as a corporation.

For more information on these interests, please see Section 5. Note that the diagrams referred to in Section 5(A)(5) of the instructions must include all individuals with any of the ownership interests described above.

All managing employees of the provider must be reported in this section. The term "managing employee" means a general manager, business manager, administrator, director, or other individual who exercises operational or managerial control over, or who directly or indirectly conducts, the day-to-day operations of the provider, either under contract or through some other arrangement, regardless of whether the individual is a W-2 employee of the provider.

**NOTE:** If a governmental or tribal organization will be legally and financially responsible for Medicare payments received (per the instructions for Governmental/Tribal Organizations in Section 5), the provider is only required to report its managing employees in Section 6. Owners, partners, officers and directors do not need to be reported, except those who are listed as authorized or delegated officials on this application.

### B. Adverse Legal History

This section is to be completed with any adverse legal history information about any individual owner, partner and/or individual with managing control of the provider identified in Section 2.

## SECTION 6: OWNERSHIP INTEREST AND/OR MANAGING CONTROL INFORMATION (INDIVIDUALS) *(Continued)*

If you are changing, adding, or deleting information, check the applicable box, furnish the effective date, and complete the appropriate fields in this section.

| CHECK ONE | ☐ CHANGE | ☐ ADD | ☐ DELETE |
|---|---|---|---|
| **DATE** *(mm/dd/yyyy)* | | | |

### A. Identifying Information

| First Name | | Middle Initial | Last Name | | Jr., Sr., etc. |
|---|---|---|---|---|---|
| Medicare Identification Number *(if issued)* | | | NPI *(if issued)* | | |
| Social Security Number *(Required)* | Date of Birth *(mm/dd/yyyy)* | | Place of Birth *(State)* | | Country of Birth |

Identify the type of ownership and/or managing control the individual identified above has in the provider identified in Section 2 of this application. Check all that apply. Complete all information for each type of ownership and/or managing control applicable.

### ☐ 5% or greater direct ownership interest

Effective Date of 5% or greater direct ownership interest *(mm/dd/yyyy)*

Exact percentage of direct ownership this individual has in the provider

If this individual also provides contracted services to the provider, describe the types of services furnished *(e.g., managerial, billing, consultative, medical personnel staffing, etc.).*

### ☐ 5% or greater indirect ownership interest

Effective Date of 5% or greater indirect ownership interest *(mm/dd/yyyy)*

Exact percentage of indirect ownership this individual has in the provider

If this individual also provides contracted services to the provider, describe the types of services furnished *(e.g., managerial, billing, consultative, medical personnel staffing, etc.).*

## SECTION 6: OWNERSHIP INTEREST AND/OR MANAGING CONTROL INFORMATION (INDIVIDUALS) *(Continued)*

### ☐ 5% or greater mortgage interest

Effective Date of 5% or greater mortgage interest *(mm/dd/yyyy)*

Exact percentage of mortgage interest this individual has in the provider

If this individual also provides contracted services to the provider, describe the types of services furnished *(e.g., managerial, billing, consultative, medical personnel staffing, etc.).*

### ☐ 5% or greater security interest

Effective Date of 5% or greater greater security interest *(mm/dd/yyyy)*

Exact percentage of security interest this individual has in the provider

If this individual also provides contracted services to the provider, describe the types of services furnished *(e.g., managerial, billing, consultative, medical personnel staffing, etc.).*

### ☐ General Partnership interest

Effective Date of the general partnership interest *(mm/dd/yyyy)*

Exact percentage of general partnership interest this individual has in the provider

If applicable, furnish this individual's title within the provider organization *(e.g., CEO, Board member, etc.)*

If this individual also provides contracted services to the provider, describe the types of services furnished *(e.g., managerial, billing, consultative, medical personnel staffing, etc.).*

### ☐ Limited Partnership interest

Effective Date of limited partnership interest *(mm/dd/yyyy)*

Exact percentage of limited partnership interest this individual has in the provider

If applicable, furnish this individual's title within the provider organization *(e.g., CEO, Board member, etc.)*

If this individual also provides contracted services to the provider, describe the types of services furnished *(e.g., managerial, billing, consultative, medical personnel staffing, etc.).*

## SECTION 6: OWNERSHIP INTEREST AND/OR MANAGING CONTROL INFORMATION (INDIVIDUALS) *(Continued)*

### ☐ Officer

Effective Date of office *(mm/dd/yyyy)*

Exact percentage of control as an Officer this individual has in the provider

If applicable, furnish this individual's title within the provider organization *(e.g., CEO, Board member, etc.)*

If this individual also provides contracted services to the provider, describe the types of services furnished *(e.g., managerial, billing, consultative, medical personnel staffing, etc.).*

### ☐ Director

Effective Date as Director *(mm/dd/yyyy)*

Exact percentage of control as a Director this individual has in the provider

If applicable, furnish this individual's title within the provider organization *(e.g., CEO, Board member, etc.)*

If this individual also provides contracted services to the provider, describe the types of services furnished *(e.g., managerial, billing, consultative, medical personnel staffing, etc.).*

### ☐ W-2 Managing Employee

Effective Date of 5% or greater direct ownership interest *(mm/dd/yyyy)*

Exact percentage of management control this individual has in the provider

If applicable, furnish this manager's title within the provider organization *(e.g., CEO, Board member, etc.)*

If this individual also provides contracted services to the provider, describe the types of services furnished *(e.g., managerial, billing, consultative, medical personnel staffing, etc.).*

## SECTION 6: OWNERSHIP INTEREST AND/OR MANAGING CONTROL INFORMATION (INDIVIDUALS) *(Continued)*

### ☐ Contracted Managing Employee

Effective Date of contract for managing employee *(mm/dd/yyyy)*

Exact percentage of this contracted managing employee's control in the provider

If applicable, furnish this individual's title within the provider organization *(e.g., CEO, Board member, etc.)*

If this individual also provides contracted services to the provider, describe the types of services furnished *(e.g., managerial, billing, consultative, medical personnel staffing, etc.).*

### ☐ Operational/Managerial Control

Effective Date of the operational/managerial control *(mm/dd/yyyy)*

Exact percentage of operational/managerial control this individual has in the provider

If applicable, furnish this individual's title within the provider organization *(e.g., CEO, Board member, etc.)*

If this individual also provides contracted services to the provider, describe the types of services furnished *(e.g., managerial, billing, consultative, medical personnel staffing, etc.).*

### ☐ Other ownership or control/interest (please specify): _____

Effective Date of other ownership or control/interest *(mm/dd/yyyy)*

Exact percentage of ownership or control/interest this individual has in the provider

If applicable, furnish this individual's title within the provider organization *(e.g., CEO, Board member, etc.)*

If this individual also provides contracted services to the provider, describe the types of services furnished *(e.g., managerial, billing, consultative, medical personnel staffing, etc.).*

## SECTION 6: OWNERSHIP INTEREST AND/OR MANAGING CONTROL INFORMATION (INDIVIDUALS) *(Continued)*

### B. Final Adverse Legal Action History
Complete this section for the individual reported in Section 6A above.

If you are changing information, check "change" box, furnish the effective date, and complete the appropriate fields in this section.

☐ Change    ☐ Effective Date:_____

1. Has the individual in Section 6A, under any current or former name or business identity, ever had a final adverse legal action listed on page 16 of this application imposed against him/her?

    ☐ YES–Continue Below    ☐ NO–Skip to Section 7

2. If YES, report each final adverse legal action, when it occurred, the Federal or State agency or the court/administrative body that imposed the action, and the resolution, if any.

    Attach a copy of the final adverse legal action documentation and resolution.

| FINAL ADVERSE LEGAL ACTION | DATE | TAKEN BY | RESOLUTION |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

## SECTION 7: CHAIN HOME OFFICE INFORMATION

This section captures information regarding chain organizations. This information will be used to ensure proper reimbursement when the provider's year-end cost report is filed with the Medicare fee-for-service contractor.

For more information on chain organizations, see 42 C.F.R. 421.404.

**Check here ☐ if this section does not apply and skip to Section 8.**

If you are changing, adding, or deleting information, check the applicable box, furnish the effective date, and complete the appropriate fields in this section.

| CHECK ONE | ☐ CHANGE | ☐ ADD | ☐ DELETE |
|---|---|---|---|
| **DATE** *(mm/dd/yyyy)* | | | |

### A. Type of Action this Provider is Reporting

| CHECK ONE: | EFFECTIVE DATE | SECTIONS TO COMPLETE |
|---|---|---|
| ☐ Provider in chain is enrolling in Medicare for the first time *(Initial Enrollment or Change of Ownership)*. | | Complete all of Section 7. |
| ☐ Provider is no longer associated with the chain | | Complete Section 7 identifying the former chain home office. |
| ☐ Provider has changed from one chain to another. | | Complete Section 7 in full to identify the new chain home office. |
| ☐ The name of provider's chain home office is changing *(all other information remains the same)*. | | Complete Section 7C. |

### B. Chain Home Office Administrator Information

| First Name of Home Office Administrator or CEO | Middle Initial | Last Name | | Jr., Sr., etc. |
|---|---|---|---|---|
| Title of Home Office Administrator | Social Security Number | | Date of Birth *(mm/dd/yyyy)* | |

## SECTION 7: CHAIN HOME OFFICE INFORMATION *(Continued)*

### C. Chain Home Office Information

1. Name of Home Office as Reported to the Internal Revenue Service


2. Home Office Business Street Address Line 1 *(Street Name and Number)*


Home Office Business Street Address Line 2 *(Suite, Room, etc.)*


| City/Town | | State | ZIP Code + 4 |
|---|---|---|---|
| **Telephone Number** | **Fax Number** *(if applicable)* | **E-mail Address** *(if applicable)* | |
| 3. Home Office Tax Identification Number | | Home Office Cost Report Year-End Date *(mm/dd)* | |
| 4. Home Office Fee-For-Service Contractor | | Home Office Chain Number | |

### D. Type of Business Structure of the Chain Home Office

**Check one:**

**Voluntary:**

☐ Non-Profit – Religious Organization

☐ Non-Profit – Other *(Specify)*:_____

**Proprietary:**

☐ Individual

☐ Corporation

☐ Partnership

☐ Other *(Specify)*: _____

**Government:**

☐ Federal

☐ State

☐ City

☐ County

☐ City-County

☐ Hospital District

☐ Other *(Specify)*: _____

### E. Provider's Affiliation to the Chain Home Office

**Check one:**

☐ Joint Venture/Partnership     ☐ Managed/Related     ☐ Leased

☐ Operated/Related     ☐ Wholly Owned     ☐ Other *(Specify)*: _____

## SECTION 8: BILLING AGENCY INFORMATION

Applicants that use a billing agency must complete this section. A billing agency is a company or individual that you contract with to process and submit your claims. If you use a billing agency, you are responsible for the claims submitted on your behalf.

☐ **Check here if this section does not apply and skip to Section 12.**

### BILLING AGENCY NAME AND ADDRESS

If you are changing, adding, or deleting information, check the applicable box, furnish the effective date, and complete the appropriate fields in this section.

| CHECK ONE | ☐ CHANGE | ☐ ADD | ☐ DELETE |
|---|---|---|---|
| DATE *(mm/dd/yyyy)* | | | |

Legal Business/Individual Name as Reported to the Social Security Administration or Internal Revenue Service

If Individual, Billing Agent Date of Birth *(mm/dd/yyyy)*

Tax Identification Number or Social Security Number *(required)*

"Doing Business As" Name *(if applicable)*

Billing Agency Address Line 1 *(Street Name and Number)*

Billing Agency Address Line 2 *(Suite, Room, etc.)*

| City/Town | | State | ZIP Code + 4 |
|---|---|---|---|
| Telephone Number | Fax Number *(if applicable)* | E-mail Address *(if applicable)* | |

## SECTION 9: FOR FUTURE USE (THIS SECTION NOT APPLICABLE)

## SECTION 10: FOR FUTURE USE (THIS SECTION NOT APPLICABLE)

## SECTION 11: FOR FUTURE USE (THIS SECTION NOT APPLICABLE)

## SECTION 12: SPECIAL REQUIREMENTS FOR HOME HEALTH AGENCIES (HHAS)

## INSTRUCTIONS

**All HHAs and HHA sub-units enrolling in the Medicare program must complete this section.**
HHAs and HHA sub-units initially enrolling in Medicare, Medicaid, or both programs on or after January 1, 1998 are required to provide documentation supporting that they have sufficient initial reserve operating funds (capitalization) to operate for the first three months in the Medicare and/or Medicaid program(s). The capitalization requirement applies to all HHAs and HHA sub-units enrolling in the Medicare program, including HHAs or HHA sub-units currently participating in the Medicare program that, as a result of a change of ownership, will be issued a new provider number. The capitalization requirement does not apply to a branch of an HHA. Regulations found at 42 C.F.R. 489.28 require that the fee-for-service contractor determine the required amount of reserve operating funds needed for the enrolling HHA or HHA sub-unit by comparing the enrolling HHA or HHA sub-unit to at least three other new HHAs that it serves which are comparable to the enrolling HHA or HHA sub-unit. Factors to be considered are geographic location, number of visits, type of HHA or HHA sub-unit and business structure of the HHA or HHA sub-unit. The fee-for-service contractor then verifies that the enrolling HHA or HHA sub-unit has the required funds. To assist the fee-for-service contractor in determining the amount of funds necessary, the enrolling HHA or HHA sub-unit should complete this section.

**Check here ☐ if this section does not apply and skip to Section 13.**

**A. Type of Home Health Agency**

**1. CHECK ONE:**
    ☐ Non-Profit Agency     ☐ Proprietary Agency

**2. PROJECTED NUMBER OF VISITS BY THIS HOME HEALTH AGENCY**
    How many visits does this HHA project it will make in the first:
    three months of operation?_____
    twelve months of operation? _____

**3. FINANCIAL DOCUMENTATION**
    A) In order to expedite the enrollment process, the HHA may attach a copy of its most current savings, checking, or other financial statement(s) that verifies the initial reserve operating funds, accompanied by:

    1) An attestation from an officer of the bank or other financial institution stating that the funds are in the account(s) and are immediately available for the HHA's use, and

    2) Certification from the HHA attesting that at least 50% of the reserve operating funds are non-borrowed funds.

    B) Will the HHA be submitting the above documentation with this application?     ☐ YES     ☐ NO

**NOTE:** The fee-for-service contractor may require a subsequent attestation that the funds are still available. If the fee-for-service contractor determines that the HHA requires funds in addition to those indicated on the originally submitted account statement(s), it will require verification of the additional amount as well as a new attestation statement.

## SECTION 12: SPECIAL REQUIREMENTS FOR HOME HEALTH AGENCIES (HHAS)
*(Continued)*

### 4. ADDITIONAL INFORMATION

Provide any additional documentation necessary to assist the fee-for-service contractor or State agency in properly comparing this HHA with other comparable HHAs. Use this space to explain or justify any unique financial situations of this HHA that may be helpful in determining the HHA's compliance with the capitalization requirements.

_____

_____

_____

_____

_____

### B. Nursing Registries

If you are changing, adding, or deleting information, check the applicable box, furnish the effective date, and complete the appropriate fields in this section.

| CHECK ONE | ☐ CHANGE | ☐ ADD | ☐ DELETE |
|---|---|---|---|
| DATE *(mm/dd/yyyy)* | | | |

Does this HHA contract with a nursing registry whereby the latter furnishes personnel to perform HHA services on behalf of the provider?

☐ YES–Furnish the information below

☐ NO–Skip to Section 13

Legal Business/Individual Name as Reported to the Internal Revenue Service

_____

Tax Identification Number *(required)*

_____

"Doing Business As" Name *(if applicable)*

_____

Billing Street Address Line 1 *(Street Name and Number)*

_____

Billing Street Address Line 2 *(Suite, Room, etc.)*

_____

| City/Town | State | ZIP Code + 4 |
|---|---|---|
| Telephone Number | Fax Number *(if applicable)* | E-mail Address *(if applicable)* |

## SECTION 13: CONTACT PERSON

If questions arise during the processing of this application, the fee-for-service contractor will contact the individual shown below. If the contact person is an authorized or delegated official, check the appropriate box below and skip to the section indicated.

☐ Contact an Authorized Official listed in Section 15

☐ Contact a Delegated Official listed in Section 16

| First Name | Middle Initial | Last Name | Jr., Sr., etc. |
|---|---|---|---|
| | | | |

| Telephone Number | Fax Number *(if applicable)* |
|---|---|
| | |

| Address Line 1 *(Street Name and Number)* |
|---|
| |

| Address Line 2 *(Suite, Room, etc.)* |
|---|
| |

| City/Town | State | ZIP Code + 4 |
|---|---|---|
| | | |

| E-mail Address |
|---|
| |

## SECTION 14: PENALTIES FOR FALSIFYING INFORMATION

**This section explains the penalties for deliberately furnishing false information in this application to gain or maintain enrollment in the Medicare program.**

1. 18 U.S.C. § 1001 authorizes criminal penalties against an individual who, in any matter within the jurisdiction of any department or agency of the United States, knowingly and willfully falsifies, conceals or covers up by any trick, scheme or device a material fact, or makes any false, fictitious, or fraudulent statements or representations, or makes any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry. Individual offenders are subject to fines of up to $250,000 and imprisonment for up to five years. Offenders that are organizations are subject to fines of up to $500,000 (18 U.S.C. § 3571). Section 3571(d) also authorizes fines of up to twice the gross gain derived by the offender if it is greater than the amount specifically authorized by the sentencing statute.

2. Section 1128B(a)(1) of the Social Security Act authorizes criminal penalties against any individual who, "knowingly and willfully," makes or causes to be made any false statement or representation of a material fact in any application for any benefit or payment under a Federal health care program. The offender is subject to fines of up to $25,000 and/or imprisonment for up to five years.

3. The Civil False Claims Act, 31 U.S.C. § 3729, imposes civil liability, in part, on any person who:
   a) knowingly presents, or causes to be presented, to an officer or any employee of the United States Government a false or fraudulent claim for payment or approval;
   b) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; or
   c) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid.

   The Act imposes a civil penalty of $5,000 to $10,000 per violation, plus three times the amount of damages sustained by the Government

4. Section 1128A(a)(1) of the Social Security Act imposes civil liability, in part, on any person (including an organization, agency or other entity) that knowingly presents or causes to be presented to an officer, employee, or agent of the United States, or of any department or agency thereof, or of any State agency…a claim…that the Secretary determines is for a medical or other item or service that the person knows or should know:
   a) was not provided as claimed; and/or
   b) the claim is false or fraudulent.

   This provision authorizes a civil monetary penalty of up to $10,000 for each item or service, an assessment of up to three times the amount claimed, and exclusion from participation in the Medicare program and State health care programs.

5. 18 U.S.C. 1035 authorizes criminal penalties against individuals in any matter involving a health care benefit program who knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact; or makes any materially false, fictitious, or fraudulent statements or representations, or makes or uses any materially false fictitious, or fraudulent statement or entry, in connection with the delivery of or payment for health care benefits, items or services. The individual shall be fined or imprisoned up to 5 years or both.

## SECTION 14: PENALTIES FOR FALSIFYING INFORMATION *(Continued)*

6. 18 U.S.C. 1347 authorizes criminal penalties against individuals who knowing and willfully execute, or attempt, to executive a scheme or artifice to defraud any health care benefit program, or to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by or under the control of any, health care benefit program in connection with the delivery of or payment for health care benefits, items, or services. Individuals shall be fined or imprisoned up to 10 years or both. If the violation results in serious bodily injury, an individual will be fined or imprisoned up to 20 years, or both. If the violation results in death, the individual shall be fined or imprisoned for any term of years or for life, or both.

7. The government may assert common law claims such as "common law fraud," "money paid by mistake," and "unjust enrichment." Remedies include compensatory and punitive damages, restitution, and recovery of the amount of the unjust profit.

## SECTION 15: CERTIFICATION STATEMENT

An **AUTHORIZED OFFICIAL** means an appointed official (for example, chief executive officer, chief financial officer, general partner, chairman of the board, or direct owner) to whom the organization has granted the legal authority to enroll it in the Medicare program, to make changes or updates to the organization's status in the Medicare program, and to commit the organization to fully abide by the statutes, regulations, and program instructions of the Medicare program.

A **DELEGATED OFFICIAL** means an individual who is delegated by an authorized official the authority to report changes and updates to the provider's enrollment record. A delegated official must be an individual with an "ownership or control interest in" (as that term is defined in Section 1124(a)(3) of the Social Security Act), or be a W-2 managing employee of, the provider.

Delegated officials may not delegate their authority to any other individual. Only an authorized official may delegate the authority to make changes and/or updates to the provider's Medicare status. Even when delegated officials are reported in this application, an authorized official retains the authority to make any such changes and/or updates by providing his or her printed name, signature, and date of signature as required in Section 15B.

> **NOTE:** Authorized officials and delegated officials must be reported in Section 6, either on this application or on a previous application to this same Medicare fee-for-service contractor. **If this is the first time an authorized and/or delegated official has been reported on the CMS-855A, you must complete Section 6 for that individual.**

By his/her signature(s), an authorized official binds the provider to all of the requirements listed in the Certification Statement and acknowledges that the provider may be denied entry to or revoked from the Medicare program if any requirements are not met. All signatures must be original and in ink. Faxed, photocopied, or stamped signatures will not be accepted.

Only an authorized official has the authority to sign (1) the initial enrollment application on behalf of the provider or (2) the enrollment application that must be submitted as part of the periodic revalidation process. A delegated official does not have this authority.

By signing this application, an authorized official agrees to immediately notify the Medicare fee-for-service contractor if any information furnished on this application is not true, correct, or complete. In addition, an authorized official, by his/her signature, agrees to notify the Medicare fee-for-service contractor of any future changes to the information contained in this form, after the provider is enrolled in Medicare, in accordance with the timeframes established in 42 C.F.R. 424.516(e).

The provider can have as many authorized officials as it wants. If the provider has more than two authorized officials, it should copy and complete this section as needed.

**Each authorized and delegated official must have and disclose his/her social security number.**

## SECTION 15: CERTIFICATION STATEMENT *(Continued)*

### A. Additional Requirements for Medicare Enrollment

These are additional requirements that the provider must meet and maintain in order to bill the Medicare program. Read these requirements carefully. By signing, the provider is attesting to having read the requirements and understanding them.

By his/her signature(s), the authorized official(s) named below and the delegated official(s) named in Section 16 agree to adhere to the following requirements stated in this Certification Statement:

1. I agree to notify the Medicare contractor of any future changes to the information contained in this application in accordance with the time frames established in 42 C.F.R. § 424.516(e). I understand that any change in the business structure of this provider may require the submission of a new application.

2. I have read and understand the Penalties for Falsifying Information, as printed in this application. I understand that any deliberate omission, misrepresentation, or falsification of any information contained in this application or contained in any communication supplying information to Medicare, or any deliberate alteration of any text on this application form, may be punished by criminal, civil, or administrative penalties including, but not limited to, the denial or revocation of Medicare billing privileges, and/or the imposition of fines, civil damages, and/or imprisonment.

3. I agree to abide by the Medicare laws, regulations and program instructions that apply to this provider. The Medicare laws, regulations, and program instructions are available through the Medicare contractor. I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations, and program instructions (including, but not limited to, the Federal anti-kickback statute and the Stark law), and on the provider's compliance with all applicable conditions of participation in Medicare.

4. Neither this provider, nor any physician owner or investor or any other owner, partner, officer, director, managing employee, authorized official, or delegated official thereof is currently sanctioned, suspended, debarred, or excluded by the Medicare or State Health Care Program, e.g., Medicaid program, or any other Federal program, or is otherwise prohibited from supplying services to Medicare or other Federal program beneficiaries.

5. I agree that any existing or future overpayment made to the provider by the Medicare program may be recouped by Medicare through the withholding of future payments.

6. I will not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare, and I will not submit claims with deliberate ignorance or reckless disregard of their truth or falsity.

7. I authorize any national accrediting body whose standards are recognized by the Secretary as meeting the Medicare program participation requirements, to release to any authorized representative, employee, or agent of the Centers for Medicare & Medicaid Services (CMS), a copy of my most recent accreditation survey, together with any information related to the survey that CMS may require (including corrective action plans).

## SECTION 15: CERTIFICATION STATEMENT *(Continued)*

### B. 1ST Authorized Official Signature

I have read the contents of this application. My signature legally and financially binds this provider to the laws, regulations, and program instructions of the Medicare program. By my signature, I certify that the information contained herein is true, correct, and complete, and I authorize the Medicare fee-for-service contractor to verify this information. If I become aware that any information in this application is not true, correct, or complete, I agree to notify the Medicare fee-for-service contractor of this fact in accordance with the time frames established in 42 C.F.R. § 424.516(e).

If you are changing, adding, or deleting information, check the applicable box, furnish the effective date, and complete the appropriate fields in this section.

| CHECK ONE | ☐ CHANGE | ☐ ADD | ☐ DELETE |
|---|---|---|---|
| **DATE** *(mm/dd/yyyy)* | | | |

#### Authorized Official's Information and Signature

| First Name | Middle Initial | Last Name | Suffix *(e.g., Jr., Sr.)* |
|---|---|---|---|
| Telephone Number | | Title/Position | |
| Authorized Official Signature *(First, Middle, Last Name, Jr., Sr., M.D., D.O., etc.)* | | Date Signed *(mm/dd/yyyy)* | |

### C. 2ND Authorized Official Signature

I have read the contents of this application. My signature legally and financially binds this provider to the laws, regulations, and program instructions of the Medicare program. By my signature, I certify that the information contained herein is true, correct, and complete, and I authorize the Medicare fee-for-service contractor to verify this information. If I become aware that any information in this application is not true, correct, or complete, I agree to notify the Medicare fee-for-service contractor of this fact in accordance with the time frames established in 42 C.F.R. § 424.516(e).

If you are changing, adding, or deleting information, check the applicable box, furnish the effective date, and complete the appropriate fields in this section.

| CHECK ONE | ☐ CHANGE | ☐ ADD | ☐ DELETE |
|---|---|---|---|
| **DATE** *(mm/dd/yyyy)* | | | |

#### Authorized Official's Information and Signature

| First Name | Middle Initial | Last Name | Suffix *(e.g., Jr., Sr.)* |
|---|---|---|---|
| Telephone Number | | Title/Position | |
| Authorized Official Signature *(First, Middle, Last Name, Jr., Sr., M.D., D.O., etc.)* | | Date Signed *(mm/dd/yyyy)* | |

**All signatures must be original and signed in ink. Applications with signatures deemed not original will not be processed. Stamped, faxed or copied signatures will not be accepted.**

## SECTION 16: DELEGATED OFFICIAL(S) *(Optional)*

- You are not required to have a delegated official. However, if no delegated official is assigned, the authorized official(s) will be the only person(s) who can make changes and/or updates to the provider's status in the Medicare program.
- The signature of a delegated official shall have the same force and effect as that of an authorized official, and shall legally and financially bind the provider to the laws, regulations, and program instructions of the Medicare program. By his or her signature, the delegated official certifies that he or she has read the Certification Statement in Section 15 and agrees to adhere to all of the stated requirements. The delegated official also certifies that he/she meets the definition of a delegated official. When making changes and/or updates to the provider's enrollment information maintained by the Medicare program, the delegated official certifies that the information provided is true, correct, and complete.
- Delegated officials being deleted do not have to sign or date this application.
- Independent contractors are not considered "employed" by the provider and, therefore, cannot be delegated officials.
- The signature(s) of an authorized official in Section 16 constitutes a legal delegation of authority to any and all delegated official(s) assigned in Section 16.
- If there are more than two individuals, copy and complete this section for each individual.

### A. 1ST Delegated Official Signature
If you are changing, adding, or deleting information, check the applicable box, furnish the effective date, and complete the appropriate fields in this section.

| CHECK ONE | ☐ CHANGE | ☐ ADD | ☐ DELETE |
|---|---|---|---|
| **DATE** *(mm/dd/yyyy)* | | | |

| Delegated Official First Name | Middle Initial | Last Name | Suffix *(e.g., Jr., Sr.)* |
|---|---|---|---|
| Delegated Official Signature *(First, Middle, Last Name, Jr., Sr., M.D., D.O., etc.)* | | | Date Signed *(mm/dd/yyyy)* |
| ☐ Check here if Delegated Official is a W-2 Employee | | Telephone Number | |
| Authorized Official Signature Assigning this Delegation *(First, Middle, Last Name, Jr., Sr., M.D., D.O., etc.)* | | | Date Signed *(mm/dd/yyyy)* |

## SECTION 16: DELEGATED OFFICIAL(S) *(Optional) (Continued)*

**B. 2ND Delegated Official Signature**

If you are changing, adding, or deleting information, check the applicable box, furnish the effective date, and complete the appropriate fields in this section.

| CHECK ONE | ☐ CHANGE | ☐ ADD | ☐ DELETE |
|---|---|---|---|
| **DATE** *(mm/dd/yyyy)* | | | |

| Delegated Official First Name | Middle Initial | Last Name | Suffix *(e.g., Jr., Sr.)* |
|---|---|---|---|

| Delegated Official Signature *(First, Middle, Last Name, Jr., Sr., M.D., D.O., etc.)* | Date Signed *(mm/dd/yyyy)* |
|---|---|

| ☐ Check here if Delegated Official is a W-2 Employee | Telephone Number |
|---|---|

| Authorized Official Signature Assigning this Delegation *(First, Middle, Last Name, Jr., Sr., M.D., D.O., etc.)* | Date Signed *(mm/dd/yyyy)* |
|---|---|

## SECTION 17: SUPPORTING DOCUMENTS

This section lists the documents that, if applicable, must be submitted with this completed enrollment application. If you are newly enrolling, or are reactivating or revalidating your enrollment, you must provide all applicable documents. For changes, only submit documents that are applicable to that change. The enrolling provider may submit a notarized copy of a Certificate of Good Standing from the provider's State licensing/certification board or other medical associations in lieu of copies of the above-requested documents. This certification cannot be more than 30 days old.

**The fee-for-service contractor may request, at any time during the enrollment process, documentation to support or validate information that you have reported in this application. The Medicare fee-for-service contractor may also request documents from you, other than those identified in this section 17, as are necessary to bill Medicare.**

### MANDATORY FOR ALL PROVIDER/SUPPLIER TYPES

Required documents that can only be obtained after a State survey are not required as part of the application submission but must be furnished within 30 days of the provider receiving them. The Medicare fee–service contractor will furnish specific licensing requirements for your provider type upon request.

☐ Licenses, certifications and registrations required by Medicare or State law.

☐ Federal, State, and/or local (city/county) business licenses, certifications and/or registrations required to operate a health care facility.

☐ Written confirmation from the IRS confirming your Tax Identification Number with the Legal Business Name (e.g., IRS CP 575) provided in Section 2.

☐ Completed Form CMS-588, Authorization Agreement for Electronic Funds Transfer.
NOTE: If a provider already receives payments electronically and is not making a change to its banking information, the CMS-588 is not required.

### MANDATORY FOR SELECTED PROVIDER/SUPPLIER TYPES

☐ Copy(s) of all bills of sale or sales agreements (CHOWS, Acquisition/Mergers, and Consolidations only).

☐ Copy(s) of all documents that demonstrate meeting capitalization requirements (HHAs only).

### MANDATORY, IF APPLICABLE

☐ Statement in writing from the bank. If Medicare payment due a provider of services is being sent to a bank (or similar financial institution) with whom the provider has a lending relationship (that is, any type of loan), then the provider must provide a statement in writing from the bank (which must be in the loan agreement) that the bank has agreed to waive its right of offset for Medicare receivables.

☐ Copy(s) of all adverse legal action documentation (e.g., notifications, resolutions, and reinstatement letters).

☐ Copy of an attestation for government entities and tribal organizations

☐ Copy of HRSA Notice of Grant Award if that is a qualifying document for FQHC status

☐ Copy of IRS Determination Letter, if provider is registered with the IRS as non-profit

☐ Written confirmation from the IRS confirming your Limited Liability Company (LLC) is automatically classified as a Disregarded Entity. (e.g., Form 8832).
NOTE: A disregarded entity is an eligible entity that is treated as an entity not separate from its single owner for income tax purposes.

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0938-0685. The time required to complete this information collection is estimated at 6 hours per response, including the time to review instructions, search existing data resources, gather the data needed, and complete and review the information collection. If you have any comments concerning the accuracy of the time estimate(s) or suggestions for improving this form, please write to: CMS, 7500 Security Boulevard, Attn: PRA Reports Clearance Officer, Baltimore, Maryland 21244-1850.

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

# MEDICARE SUPPLIER ENROLLMENT APPLICATION PRIVACY ACT STATEMENT

The Centers for Medicare & Medicaid Services (CMS) is authorized to collect the information requested on this form by sections 1124(a)(1), 1124A(a)(3), 1128, 1814, 1815, 1833(e), and 1842(r) of the Social Security Act [42 U.S.C. §§ 1320a-3(a)(1), 1320a-7, 1395f, 1395g, 1395(l)(e), and 1395u(r)] and section 31001(1) of the Debt Collection Improvement Act [31 U.S.C. § 7701(c)].

The purpose of collecting this information is to determine or verify the eligibility of individuals and organizations to enroll in the Medicare program as suppliers of goods and services to Medicare beneficiaries and to assist in the administration of the Medicare program. This information will also be used to ensure that no payments will be made to providers who are excluded from participation in the Medicare program. All information on this form is required, with the exception of those sections marked as "optional" on the form. Without this information, the ability to make payments will be delayed or denied.

The information collected will be entered into the Provider Enrollment, Chain and Ownership System (PECOS). The information in this application will be disclosed according to the routine uses described below.

Information from these systems may be disclosed under specific circumstances to:
1. CMS contractors to carry out Medicare functions, collating or analyzing data, or to detect fraud or abuse;
2. A congressional office from the record of an individual health care provider in response to an inquiry from the congressional office at the written request of that individual health care practitioner;
3. The Railroad Retirement Board to administer provisions of the Railroad Retirement or Social Security Acts;
4. Peer Review Organizations in connection with the review of claims, or in connection with studies or other review activities, conducted pursuant to Part B of Title XVIII of the Social Security Act;
5. To the Department of Justice or an adjudicative body when the agency, an agency employee, or the United States Government is a party to litigation and the use of the information is compatible with the purpose for which the agency collected the information;
6. To the Department of Justice for investigating and prosecuting violations of the Social Security Act, to which criminal penalties are attached;
7. To the American Medical Association (AMA), for the purpose of attempting to identify medical doctors when the National Plan and Provider System is unable to establish identity after matching contractor submitted data to the data extract provided by the AMA;
8. An individual or organization for a research, evaluation, or epidemiological project related to the prevention of disease or disability, or to the restoration or maintenance of health;
9. Other Federal agencies that administer a Federal health care benefit program to enumerate/enroll providers of medical services or to detect fraud or abuse;
10. State Licensing Boards for review of unethical practices or non-professional conduct;
11. States for the purpose of administration of health care programs; and/or
12. Insurance companies, self insurers, health maintenance organizations, multiple employer trusts, and other health care groups providing health care claims processing, when a link to Medicare or Medicaid claims is established, and data are used solely to process supplier's health care claims.

The supplier should be aware that the Computer Matching and Privacy Protection Act of 1988 (P.L. 100-503) amended the Privacy Act, 5 U.S.C. § 552a, to permit the government to verify information through computer matching.

### Protection of Proprietary Information
Privileged or confidential commercial or financial information collected in this form is protected from public disclosure by Federal law 5 U.S.C. § 552(b)(4) and Executive Order 12600.

### Protection of Confidential Commercial and/or Sensitive Personal Information
If any information within this application (or attachments thereto) constitutes a trade secret or privileged or confidential information (as such terms are interpreted under the Freedom of Information Act and applicable case law), or is of a highly sensitive personal nature such that disclosure would constitute a clearly unwarranted invasion of the personal privacy of one or more persons, then such information will be protected from release by CMS under 5 U.S.C. §§ 552(b)(4) and/or (b)(6), respectively.

# Medicare Provider-Based Designation Attestation

## TO: All Main Providers

In order for a facility to be designated as provider-based for billing and payment purposes, it must meet the applicable requirements set forth by Centers for Medicare & Medicaid Services (CMS) in Title 42 Code of Federal Regulations (CFR) § 413.65. If you believe your facility meets the criteria as a provider-based facility, please submit **two copies** of the attestation statement to Palmetto GBA at the following address. In this statement, you must attest that the facility meets the relevant provider-based requirements of 42 CFR § 413.65.

| Postal Service Address | Overnight Address |
| --- | --- |
| **Palmetto GBA**<br>**Provider Reimbursement (AG-330)**<br>**PO Box 100144**<br>**Columbia, SC  29202-3144** | **Palmetto GBA**<br>**Provider Reimbursement (AG-330)**<br>**2300 Springdale Drive, Bldg. One**<br>**Camden, SC  29020-1728** |

Generally, the Fiscal Intermediary (FI) will receive the attestation statement and any supporting documentation, review the statement for completeness and accuracy, and submit a recommendation to the CMS Regional Office (RO) based on the completed review. The CMS RO will review the FI's recommendation and either approve or deny the recommendation. The CMS RO will notify the provider and the intermediary of the decision regarding the facility's provider-based status.

Please note that provider-based determinations in relation to hospitals are not made for the provider types noted below. (An attestation statement is not needed for these.)

- Ambulatory Surgical Centers (ASCs)
- Comprehensive Outpatient Rehabilitation Facilities (CORFs)
- Home Health Agencies (HHAs)
- Skilled Nursing Facilities (SNFs)
- Hospices
- Inpatient Rehabilitation Units that are excluded from the inpatient prospective payment system for acute hospital services
- Independent Diagnostic Testing Facilities furnishing only services paid under a fee schedule
- ESRD facilities
- Departments of providers that perform functions necessary for the successful operation of the providers but do not furnish services of a type for which separate payment could be claimed under Medicare or Medicaid
- Ambulances

The following Sample is intended to be a guide to assist you in the preparation of your Provider-Based Attestation. **All information within this Sample is required for a Provider-Based Determination.**

Note: Facility names should reflect the advertised name of the facility. Addresses should include building number, suite/room number, etc. and must be exact.

1

## SAMPLE PROVIDER-BASED ATTESTATION STATEMENT FORMAT

### *(Section I - General Information)*

Main Provider's Medicare Provider Number: _____

Main Provider's Name: _____

Main Provider's Physical Address: _____

_____

Contact Information:   Name: _____

Phone number: _____

Email address: _____

Facility's Name (requesting provider-based status)

_____

Facility's exact **physical** address: _____

_____

Facility's Medicare Provider Number (if different) _____

Exact Distance between Main Provider and Facility (in Yards or Miles) _____

County that the Facility is located _____

Date when Main Provider established or assumed ownership of the Facility ____/____/____

Date when the Facility first began performing services   ____/____/____

| | Yes | No |
|---|:---:|:---:|
| Is the Facility part of a multi-campus Hospital? | ☐ | ☐ |
| Is the Facility operated under Management Contracts? (If YES, also complete Section IV-5) | ☐ | ☐ |
| Is the Facility operated as a Joint Venture? (If YES, also complete Section III-6) | ☐ | ☐ |

Types of Services Performed by the Facility:

_____

_____

_____

2

## Section II - ON-CAMPUS OR OFF-CAMPUS DETERMINATION

Please check one that identifies the <u>Location</u> of the facility to the main provider:

_____ Inside the main provider's primary building.
_____ In the physical area immediately adjacent to the main provider's primary building.
_____ Other areas or structures that are not strictly contiguous to the main provider's primary building, but are located within 250 yards of the main provider's primary building.

*Documentation Examples:  A detailed map to verify the **exact** distance between main provider and facility, i.e.  A Plat of the complex or a map from the Internet web site, MapQuest.*

**Check the appropriate box based on the results above:**

_____ **ON-CAMPUS**:  If any of the blanks above are checked and the facility requesting provider-based status is within 250 yards of the main provider, the facility is considered to be located **On-Campus.**  *Section III* must be completed. <u>Please note that no documentation (for Section III) is required to be submitted for facilities located on-campus.</u>

_____ **OFF-CAMPUS**:  If none of the blanks above are checked and the facility requesting provider-based status is within 35 miles of the main provider, then the facility is considered to be located **Off-Campus.**  *Sections III & IV* must be completed. Documentation as noted must be submitted for off-campus facilities.

If the facility is located **more than 35 miles** from the main provider, check here _____ and see Section IV.3(b) for Exceptions that might apply.

---

## Section III - REQUIRED FOR BOTH ON-CAMPUS AND OFF-CAMPUS FACILITIES)

The criteria for provider-based status at 42 CFR § 413.65 (d) applicable to ALL facilities are listed below.  It is a requirement that documentation for the basis of each be maintained, and to make that documentation available to CMS or the FI upon request.  **All Documentation examples listed must be submitted with the Attestation.**

I attest that the facility/organization complies with the following requirements to be provider-based to the main provider (please indicate Yes or No for each requirement):

|  | Yes | No |
|---|---|---|
| 1. **Licensure:**  The facility is operated under the same license as the main provider (where permitted by law). | ☐ | ☐ |

* Exceptions: _____

*Documentation Examples: **A copy of the state license**.  If the state where the facility and main provider are located require separate licenses, provide supporting information.*

3

2.  **Clinical Services:**

|   | | Yes | No |
|---|---|---|---|
| a. | Professional staff of the facility have clinical privileges at the main provider. | ☐ | ☐ |
| b. | The main provider maintains the same monitoring and oversights of the facility as it does for any other department of the hospital. | ☐ | ☐ |
| c. | The medical director of the facility maintains a reporting relationship with a chief medical officer of the main provider with the same type of supervision and accountability as any other director of the main provider. | ☐ | ☐ |
| d. | Medical staff committees or other professional committees at the main provider are responsible for the medical activities in the facility. | ☐ | ☐ |

*Documentation Examples: A copy of the main provider's organizational chart, list of personnel working at the facility with titles and name of employer, other information showing the responsibility and relationship between the facility and the main provider.*

|   | | | |
|---|---|---|---|
| e. | Medical records for patients in the facility are integrated into a unified retrieval system of the main provider. | ☐ | ☐ |

*Documentation Examples: A copy of the policy utilized in patient record retrieval from both the main provider and the provider-based facility.*

|   | | | |
|---|---|---|---|
| f. | Inpatient/outpatient services of the facility and the main provider are integrated, and patients treated at the facility that require care have full access to the services of the main provider. | ☐ | ☐ |

*Documentation Examples: Information on how inpatient and outpatient services of the facility and the main provider are integrated, and examples of integration of services, including data on the frequency of referrals from inpatient to outpatient facilities, or vice versa.*

Comments: _____

3.  **Financial Integration:** Financial operations are fully integrated within the financial systems of the main provider, as evidenced by shared income and expenses between the main provider and the facility.  ☐  ☐

Comments : _____

*Documentation Examples: A copy of the appropriate section of the main provider's chart of accounts or trial balance that shows the location of the revenues and expenses of the facility. A printout from the chart of accounts or trial balance must be submitted.*

4

| **(Section III - REQUIRED FOR BOTH ON-CAMPUS AND OFF-CAMPUS FACILITIES)** | Yes | No |
|---|---|---|
| 4. <u>**Public Awareness:**</u>  The facility is held out to the public as a part of the main provider.  When a patient enters the facility, they are aware that they are entering the main provider and are billed according. | ☐ | ☐ |

Comments: _____

*Documentation Examples:  Copies of patient registration forms, letterhead, web sites, advertisements, signage that shows that the facility is clearly identified as part of the main provider. Advertisements that only show the facility to be part of or affiliated with the main provider's network or healthcare system are not sufficient. A picture of the exterior sign of the facility must be submitted.*

5. <u>**Obligations of Hospital Outpatient Departments & Hospital-Based Entities**</u>:
   Please check the appropriate box to indicate that the obligations are met.

|  | Yes | No |
|---|---|---|
| a. **Patient Anti-Dumping Rules** – Facility complies with criteria listed in Section 489.20(l), (m), (q), and (r), and Section 489.24 of chapter IV of Title 42. | ☐ | ☐ |
| b. **Site-of-Service** – Physicians providing services in the facility use the correct site-of-service-code on CMS-1500 claim form. | ☐ | ☐ |
| c. **Provider Agreement** – Facility complies with terms of Medicare provider agreement. | ☐ | ☐ |
| d. **Non-Discrimination Provisions** – Physicians working in the facility comply with the non-discrimination provisions of 42 CFR § 489.10 (b). | ☐ | ☐ |
| e. **Consistent Treatment as Outpatient**  - Facility treats all Medicare patients as hospital outpatients for billing purposes. | ☐ | ☐ |
| f. **72 Hour Payment Window** – Facility complies with all applicable Medicare payment window provisions. (Does not apply to CAHs) | ☐ | ☐ |
| g. **Health and Safety Rules** – Facility meets all applicable health and safety rules for Medicare-participating hospitals. | ☐ | ☐ |

Comments: _____

*Documentation:   A copy of EMTALA policy in place at the facility.*

6. <u>**Provider-based Status for Joint Venture**</u>:
   If does not apply (N/A), indicate here:          _____

The facility or organization operated as a joint venture is:

|  | Yes | No |
|---|---|---|
| a. Partially owned by at least one provider. | ☐ | ☐ |
| b. Located on the main campus of the main provider who is a partial owner. | ☐ | ☐ |
| c. Provider-based to the main provider on whose campus the facility is located. | ☐ | ☐ |
| d. Meets all the requirements applicable to all provider-based facilities in § 413.65 (d). | ☐ | ☐ |

5

59

**(Section III – REQUIRED FOR BOTH ON-CAMPUS AND OFF-CAMPUS FACILITIES)**

IF CONSIDERED ON-CAMPUS, and * any response in Section III is *"NO"*, the facility does not qualify for Provider-based Status.  If all responses are *"YES"*, then go to Section V - Provider Attestation.   A map showing distance between the facility and the main provider should accompany Attestation.

If CONSIDERED OFF-CAMPUS, and * any response in Section III is "NO", the entity does not qualify for Provider-based Status.  If all responses are "YES", then go to Section VI - Additional OFF-CAMPUS Requirements.  Submit Documentation with Attestation that supports all required criteria.
*Licensure Exceptions will be noted.*

---

**(Section IV - ADDITIONAL OFF-CAMPUS REQUIREMENTS)**

|  | Yes | No |
|---|---|---|

1. **Ownership and Control**:
   Please check the appropriate box to indicate that the requirements are met.

   a. The facility is 100% owned by the main provider.          ☐  ☐

   b. The facility is operated under the same governing body.          ☐  ☐

   c. The facility is operated under the same organizational documents
      as the main provider.          ☐  ☐

   d. The main provider has final responsibility for administrative
      decisions, final approval for contracts with outside parties,
      final approval for personnel actions, final responsibility for
      personnel policies and final approval for medical staff appointments
      in the facility.          ☐  ☐

*Comments:* _____

Documentation Examples: Copies of articles of incorporation and the bylaws for both the main provider and the facility. The provider must describe who has final approval for administrative decisions, contracts with outside parties, personnel policies, and medical staff appointments for the facility.

6

**(Section IV – ADDITIONAL OFF-CAMPUS REQUIREMENTS)**

|  |  | Yes | No |
|---|---|---|---|
| 2. | __Administration and Supervision__: |  |  |

a. The facility is under direct supervision of the main provider.   ☐  ☐

*Documentation:  A list of key administrative staff (position/titles only) at the main provider and facility that reflect a reporting relationship.*

b. The facility is operated under the same monitoring and oversight by the main provider as any other department of the main provider, and is operated just as any other department with regard to supervision and accountability.   ☐  ☐

   (i)  Facility director maintains a reporting relationship with a manager of the main provider.   ☐  ☐

*Documentation:  A copy of the facility's organizational chart that includes the main provider.*

   (ii) Facility director is accountable to the governing body of the main provider.   ☐  ☐

*Documentation:  A written description of the day-to-day reporting requirements and accountability procedures of the facility's director.*

c. The following administrative functions of the facility are integrated with those of the main provider:

   1) Billing Services   ☐  ☐
   2) Records   ☐  ☐
   3) Human Resources   ☐  ☐
   4) Payroll   ☐  ☐
   5) Employee Benefit Package   ☐  ☐
   6) Salary Structure   ☐  ☐
   7) Purchasing Services   ☐  ☐
      (i)  Contracted out under the same contract agreement.   ☐  ☐
      (ii) Handled under different contract agreements, with the contract of the facility being managed by the main provider.   ☐  ☐

Comments: _____

*Documentation:  A list of the various administrative functions (e.g. laundry, payroll, billing services) at the facility that are integrated with the main provider.  Contracts for administrative functions that are completed under arrangements for the main provider and the facility.*

7

---

**(Section IV - ADDITIONAL OFF-CAMPUS REQUIREMENTS)**

|  |  | Yes | No |
|---|---|---|---|
| **3.** | **Location:** |  |  |

a.  The facility is located within 35 miles of the main provider.    ☐  ☐

**Note:**  A Rural Health Clinic (RHC) that is otherwise qualified as a provider-based facility of a hospital that is located in a rural area and has fewer than 50 beds is not subject to this criteria.

**Note:** If the response to 3.a above is "Yes" skip questions in section b and proceed to question c.

b.  If the facility is **NOT** located within 35 miles of the main provider, check one of the following Exceptions that applies:

(1)  The facility is owned and operated by a provider that has a disproportionate share adjustment greater than 11.75% **and is:**

(a) Owned or operated by a unit of State or local government;    ☐  ☐

(b)  A public or nonprofit corporation that is formally granted governmental powers by a unit of State or local government;  **OR**    ☐  ☐

(c)  A private hospital that has a contract with a State or local government that includes the operations of clinics located off the main campus of the hospital.    ☐  ☐

(2)  The facility demonstrates that it serves the same patient population as the main provider, by submitting records showing that during the 12-month period immediately preceding the first day of the month in which the Attestation is filed with CMS, and for each subsequent 12-month period:

(a)  At least 75% of the patients served by the facility reside in the same zip code areas as 75% of the patients served by main provider;    ☐  ☐

(b)  At least 75% of the patients served by the facility who require the type of care furnished by the main provider received that care from that provider;  **OR**    ☐  ☐

(c)  The facility is unable to meet the criteria because it was not in operation during all of 12-month period previously described, the facility is located in a zip code area included among those that, during all of the 12-month period accounted for at least 75% of the patient population served by the main provider.    ☐  ☐

*Documentation:  Records showing that during the 12-month period immediately preceding the first day of the month in which the attestation is filed with CMS, and records for each subsequent 12-month period that meet the above criteria.*

8

c. The facility is not located in the same State as the main provider, but is located in an adjacent states and the licensure laws are consistent between the two states.  ☐  ☐

*(Supporting Documentation must be provided.)*

---

## (Section IV – ADDITIONAL OFF-CAMPUS REQUIREMENTS)

4.  **Obligations of Hospital Outpatient Departments & Hospital-Based Entities:**

When a Medicare beneficiary is treated in a hospital outpatient department or hospital-based facility (other than an RHC) that is not located on the main provider's campus, and the treatment is not required to be provided by the antidumping rules in § 489.24 of chapter IV of Title 42, the hospital must provide written notice to the beneficiary of the amount of the beneficiary's potential financial liability, before the delivery of services.  The notice meets the following guidelines:

|  | Yes | No |
|---|---|---|
| (a) Beneficiary can read and understand the notice. | ☐ | ☐ |
| (b) If the exact type and extent of care needed is not known, the hospital will furnish a written notice to the patient that explains that the beneficiary will incur a coinsurance liability to the hospital that would not be incurred if the facility were not provider-based. | ☐ | ☐ |
| (c) The notice will state that the patient's actual liability will vary if the amount is estimated. | ☐ | ☐ |
| (d) The notice will be presented to the beneficiary's authorized representative before delivery of services if the beneficiary is unconscious or under duress. | ☐ | ☐ |

*Documentation: Submit copy of the notice given to patients.*

(e)  When examination and treatment is required to be provided by the antidumping rules, notice must be given as soon as possible after the existence of an emergency is ruled out or the emergency condition has been stabilized.  ☐  ☐

---

5.  **Management Contracts:**

(a)  The entity is operated under a management contract.  ☐  ☐

**If answered "Yes" complete the following questions. If "No" skip to Section V.**

(i)  The main provider employs the staff of the facility, except those that are paid under a fee schedule.  ☐  ☐

(ii)  The administrative functions of the facility are integrated with those of the Main Provider.  ☐  ☐

9

(iii) The main provider has significant control over the operations
of the facility.                                                    ☐        ☐

(iv) The management contract is held by the main provider.          ☐        ☐

*Documentation:   A copy of the management contract.*

*Comments:* _____

---

## SECTION V – PROVIDER ATTESTATION

**\* I certify that the responses in this attestation and information in the documents are accurate, complete and current as of this date.  I acknowledge that the regulations must be continually adhered to.  Any material change in the relationship between the facility/organization and the main provider, such as a change of ownership or entry into a new or different management contract, may be reported to CMS.  (NOTE:  ORIGINAL ink signature must be submitted)**

Signed: _____
**(Signature of Officer or Administrator or authorized person)**

_____
**(PRINT Name of Signature)**

Title: _____
**(Title of authorized person acting on behalf of the provider)**

_____
**(Direct telephone number)**

Date: _____

**\*  Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme or device a material fact, or makes any false, fictitious or fraudulent statement or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $ 10,000 or imprisoned not more than five years or both.  (18 U.S.C.§ 1001).**

10

11

# Exhibit D



Home   Services   Medical Directors   Social Services   Activities   Dietary   FAQs   Contact

## MEDICAL DIRECTORS

More Information Coming Soon!

**Exhibit D**

© 2014. Spanish Meadows. All rights reserved.





Home    Services    Medical Directors    Social Services    Activities    Dietary    FAQs    Contact

## MEDICAL DIRECTORS

More Information Coming Soon!

© 2016. Spanish Meadows. All rights reserved.





Home    Services    Medical Directors    Social Services    Activities    Dietary    FAQs    Contact

## MEDICAL DIRECTORS

More Information Coming Soon!

© 2020. Spanish Meadows. All rights reserved.



# Exhibit E

PROVIDER STATISTICAL AND REIMBURSEMENT SYSTEM

**REPORT COVER PAGE FOR REQUEST: VIKQ206-S-2345029**

| Provider#-Report Type | Total # of Pages | Provider#-Report Type | Total # of Pages | Provider#-Report Type | Total # of Pages | Provider#-Report Type | Total # of Pages |
|---|---|---|---|---|---|---|---|
| 455455-210 | 3 | 455455-220 | 1 | 455455-225 | 1 | | |

**Exhibit
E**

1

P R O V I D E R   S T A T I S T I C A L   A N D   R E I M B U R S E M E N T   S Y S T E M

**Program ID:** REDESIGN
**Paid Dates:** 08/01/07  THRU  03/24/15
**Report Run Date:** 03/22/15
**Provider FYE:** 12/31
**Provider Number:** 455455  RJ Meridian Care of Alice Ltd

**PROVIDER SUMMARY REPORT**
**SNF – INPATIENT – PART A PPS**

**Page:** 1
**Report #:** OD44203
**Report Type:** 210

| | SERVICES FOR PERIOD 01/01/14 – 09/30/14 | SERVICES FOR PERIOD 10/01/14 – 12/31/14 | SERVICES FOR PERIOD No Data Requested | SERVICES FOR PERIOD No Data Requested |
|---|---|---|---|---|

## STATISTIC SECTION

| | | | | |
|---|---|---|---|---|
| DISCHARGES | 74 | 18 | | |
| MEDICARE DAYS | 3,436 | 852 | | |
| CLAIMS | 208 | 50 | | |

## CHARGE SECTION

**\*\*\* ACCOMMODATION CHARGES \*\*\***

| REV CODE | DESCRIPTION | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES |
|---|---|---|---|---|---|---|---|---|---|
| 0120 | ROOM-BOARD/SEMI | 3,436 | $601,330.00 | 852 | $234,200.00 | | | | |
| 0180 | LEAVE OF ABSENCE OR LOA | 0 | $0.00 | 0 | $0.00 | | | | |
| | TOTAL ACCOMMODATIONS | 3,436 | $601,330.00 | 852 | $234,200.00 | | | | |

**\*\*\* ANCILLARY CHARGES \*\*\***

| REV CODE | DESCRIPTION | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES |
|---|---|---|---|---|---|---|---|---|---|
| 0240 | ALL INCL ANCIL | 1 | $0.01 | 0 | $0.00 | | | | |
| 0250 | PHARMACY | 161 | $434,499.88 | 43 | $144,090.21 | | | | |
| 0260 | IV THERAPY | 13 | $18,809.46 | 3 | $11,169.60 | | | | |
| 0270 | MED-SUR SUPPLIES | 90 | $38,619.35 | 104 | $7,308.19 | | | | |
| 0274 | PROSTH/ORTH DEV | 60 | $1,269.04 | 41 | $865.92 | | | | |
| 0300 | LABORATORY or (LAB) | 120 | $35,422.97 | 29 | $9,095.31 | | | | |
| 0320 | DX X-RAY | 83 | $60,621.83 | 25 | $27,210.00 | | | | |
| 0420 | PHYSICAL THERP | 2,004 | $307,980.01 | 573 | $90,765.01 | | | | |
| 0424 | PHYS THERP/EVAL | 93 | $4,185.00 | 26 | $1,170.00 | | | | |
| 0430 | OCCUPATION THER | 2,064 | $320,580.01 | 581 | $87,255.01 | | | | |
| 0434 | OCCUP THERP/EVAL | 91 | $4,095.00 | 27 | $1,215.00 | | | | |
| 0440 | SPEECH PATHOL | 1,896 | $178,515.00 | 487 | $47,430.01 | | | | |
| 0444 | SPEECH PATH/EVAL | 84 | $7,425.00 | 25 | $2,250.00 | | | | |
| 0946 | COMPLX MED EQUIP-ROUT | 8 | $9,795.06 | 1 | $794.85 | | | | |

# PROVIDER STATISTICAL AND REIMBURSEMENT SYSTEM

**Program ID:** REDESIGN
**Paid Dates:** 08/01/07 THRU 03/24/15
**Report Run Date:** 03/22/15
**Provider FYE:** 12/31
**Provider Number:** 455455 RJ Meridian Care of Alice Ltd

**PROVIDER SUMMARY REPORT**
**SNF – INPATIENT – PART A PPS**

**Page:** 2
**Report #:** OD44203
**Report Type:** 210

| | SERVICES FOR PERIOD 01/01/14 – 09/30/14 | | SERVICES FOR PERIOD 10/01/14 – 12/31/14 | | SERVICES FOR PERIOD No Data Requested | | SERVICES FOR PERIOD No Data Requested | |
|---|---|---|---|---|---|---|---|---|
| **REV CODE    DESCRIPTION** | **UNITS** | **CHARGES** | **UNITS** | **CHARGES** | **UNITS** | **CHARGES** | **UNITS** | **CHARGES** |
| *TOTAL ANCILLARY* | 6,768 | $1,421,817.62 | 1,965 | $430,619.11 | | | | |
| **TOTAL COVERED CHARGES** | | $2,023,147.62 | | $664,819.11 | | | | |

### REIMBURSEMENT SECTION
#### PAYMENT

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **GROSS REIMBURSEMENT** | | $1,544,069.15 | | $392,055.93 | | | | |
| **LESS** | | | | | | | | |
| **CASH DEDUCTIBLE** | | $0.00 | | $0.00 | | | | |
| **BLOOD DEDUCTIBLE** | | $0.00 | | $0.00 | | | | |
| **COINSURANCE** | | $326,496.00 | | $65,512.00 | | | | |
| **NET MSP PAYMENTS** | | $0.00 | | $0.00 | | | | |
| **SEQUESTRATION** | | $24,351.42 | | $6,530.90 | | | | |
| **NET REIMBURSEMENT** | | $1,193,221.73 | | $320,013.03 | | | | |

### ADDITIONAL INFORMATION SECTION

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **CALCULATED NET REIMB FOR PIP** | | $0.00 | | $0.00 | | | | |
| **ACTUAL CLAIM PAYMENTS FOR PIP** | | $0.00 | | $0.00 | | | | |
| **CLAIM INTEREST PAYMENTS** | | $0.00 | | $0.00 | | | | |

The following schedule reflects the individual RUG utilization to assist in the completion of Worksheet S-7 of the Medicare Cost Report

| | | **UNITS** | **UNITS** | **UNITS** | **UNITS** |
|---|---|---|---|---|---|
| **0022** | AAA | 0 | 0 | 0 | 0 |
| | BB1 | 20 | 0 | 0 | 0 |
| | CB1 | 4 | 0 | 0 | 0 |

3

# P R O V I D E R   S T A T I S T I C A L   A N D   R E I M B U R S E M E N T   S Y S T E M

**Program ID:** REDESIGN
**Paid Dates:** 08/01/07  THRU  03/24/15
**Report Run Date:** 03/22/15
**Provider FYE:** 12/31
**Provider Number:** 455455  RJ Meridian Care of Alice Ltd

**PROVIDER SUMMARY REPORT**
**SNF – INPATIENT - PART A PPS**

**Page:** 3
**Report #:** OD44203
**Report Type:** 210

| | | SERVICES FOR PERIOD 01/01/14 - 09/30/14 | SERVICES FOR PERIOD 10/01/14 - 12/31/14 | SERVICES FOR PERIOD No Data Requested | SERVICES FOR PERIOD No Data Requested |
|---|---|---|---|---|---|
| | | UNITS | UNITS | UNITS | UNITS |
| 0022 | CD1 | 3 | 0 | 0 | 0 |
| | HC1 | 61 | 10 | 0 | 0 |
| | HE1 | 5 | 0 | 0 | 0 |
| | LC1 | 57 | 0 | 0 | 0 |
| | LD1 | 47 | 0 | 0 | 0 |
| | PA1 | 34 | 0 | 0 | 0 |
| | PB1 | 4 | 3 | 0 | 0 |
| | PC1 | 22 | 0 | 0 | 0 |
| | PD1 | 8 | 0 | 0 | 0 |
| | RHB | 53 | 0 | 0 | 0 |
| | RHC | 32 | 0 | 0 | 0 |
| | RUA | 529 | 291 | 0 | 0 |
| | RUB | 1,227 | 239 | 0 | 0 |
| | RUC | 545 | 58 | 0 | 0 |
| | RUL | 6 | 20 | 0 | 0 |
| | RVA | 363 | 171 | 0 | 0 |
| | RVB | 281 | 46 | 0 | 0 |
| | RVC | 135 | 14 | 0 | 0 |
| **TOTAL** | | **3,436** | **852** | **0** | **0** |

P R O V I D E R   S T A T I S T I C A L   A N D   R E I M B U R S E M E N T   S Y S T E M

**Program ID:** REDESIGN
**Paid Dates:** 08/01/07  THRU  03/24/15
**Report Run Date:** 03/22/15
**Provider FYE:** 12/31
**Provider Number:** 455455 RJ Meridian Care of Alice Ltd

**PROVIDER SUMMARY REPORT**
**SNF – INPATIENT – PART B COST REIMBURSED**

**Page:** 1
**Report #:** OD44203
**Report Type:** 220

| | SERVICES FOR PERIOD 01/01/14 - 09/30/14 | | SERVICES FOR PERIOD 10/01/14 - 12/31/14 | | SERVICES FOR PERIOD No Data Requested | | SERVICES FOR PERIOD No Data Requested | |

## STATISTIC SECTION

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| CLAIMS | | 146 | | 39 | | | | |

## CHARGE SECTION

| REV CODE | DESCRIPTION | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES |
|---|---|---|---|---|---|---|---|---|---|
| 0420 | PHYSICAL THERP | 0 | $0.00 | 0 | $0.00 | | | | |
| 0424 | PHYS THERP/EVAL | 0 | $0.00 | 0 | $0.00 | | | | |
| 0430 | OCCUPATION THER | 0 | $0.00 | 0 | $0.00 | | | | |
| 0434 | OCCUP THERP/EVAL | 0 | $0.00 | 0 | $0.00 | | | | |
| 0440 | SPEECH PATHOL | 0 | $0.00 | 0 | $0.00 | | | | |
| 0444 | SPEECH PATH/EVAL | 0 | $0.00 | 0 | $0.00 | | | | |
| | *TOTAL COVERED CHARGES* | **0** | **$0.00** | **0** | **$0.00** | | | | |

## REIMBURSEMENT SECTION

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GROSS REIMBURSEMENT | | **$0.00** | | **$0.00** | | | | |
| LESS | | | | | | | | |
| CASH DEDUCTIBLE | | $0.00 | | $0.00 | | | | |
| BLOOD DEDUCTIBLE | | $0.00 | | $0.00 | | | | |
| COINSURANCE | | $0.00 | | $0.00 | | | | |
| NET MSP PAYMENTS | | $0.00 | | $0.00 | | | | |
| SEQUESTRATION | | $0.00 | | $0.00 | | $0.00 | | $0.00 |
| REBILLING ADJUSTMENT | | $0.00 | | $0.00 | | | | |
| NET REIMBURSEMENT | | **$0.00** | | **$0.00** | | | | |

## ADDITIONAL INFORMATION SECTION

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| CLAIM INTEREST PAYMENTS | | $19.28 | | $0.14 | | | | |

5

# PROVIDER STATISTICAL AND REIMBURSEMENT SYSTEM

**Program ID:** REDESIGN
**Paid Dates:** 08/01/07 THRU 03/24/15
**Report Run Date:** 03/22/15
**Provider FYE:** 12/31
**Provider Number:** 455455 RJ Meridian Care of Alice Ltd

**PROVIDER SUMMARY REPORT**
**SNF – INPATIENT – FEE REIMBURSED**
**THESE ITEMS ARE NOT TO BE INCLUDED ON THE MEDICARE COST REPORT**

**Page:** 1
**Report #:** OD44203
**Report Type:** 225

| | SERVICES FOR PERIOD 01/01/14 - 09/30/14 | | SERVICES FOR PERIOD 10/01/14 - 12/31/14 | | SERVICES FOR PERIOD No Data Requested | | SERVICES FOR PERIOD No Data Requested | |
|---|---|---|---|---|---|---|---|---|

## STATISTIC SECTION

| CLAIMS | | 356 | | 107 | | | | |
|---|---|---|---|---|---|---|---|---|

## CHARGE SECTION

| REV CODE | DESCRIPTION | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES |
|---|---|---|---|---|---|---|---|---|---|
| 0274 | PROSTH/ORTH DEV | 24,637 | $170,100.32 | 7,545 | $53,265.78 | | | | |
| 0420 | PHYSICAL THERP | 4,314 | $136,982.91 | 628 | $20,108.98 | | | | |
| 0424 | PHYS THERP/EVAL | 41 | $2,993.00 | 10 | $730.00 | | | | |
| 0430 | OCCUPATION THER | 4,447 | $142,758.11 | 645 | $20,799.85 | | | | |
| 0434 | OCCUP THERP/EVAL | 45 | $3,668.85 | 8 | $652.24 | | | | |
| 0440 | SPEECH PATHOL | 2,148 | $85,866.76 | 532 | $21,292.47 | | | | |
| 0444 | SPEECH PATH/EVAL | 24 | $4,447.44 | 7 | $1,297.17 | | | | |
| | TOTAL COVERED CHARGES | 35,656 | $546,817.39 | 9,375 | $118,146.49 | | | | |

## REIMBURSEMENT SECTION

| GROSS REIMBURSEMENT | | $488,693.84 | | $110,006.30 | | | | |
|---|---|---|---|---|---|---|---|---|
| LESS | | | | | | | | |
| CASH DEDUCTIBLE | | $1,123.55 | | $0.00 | | | | |
| BLOOD DEDUCTIBLE | | $0.00 | | $0.00 | | | | |
| COINSURANCE | | $97,486.32 | | $21,992.83 | | | | |
| NET MSP PAYMENTS | | $0.00 | | $0.00 | | | | |
| SEQUESTRATION | | $7,822.22 | | $1,763.57 | | $0.00 | | $0.00 |
| REBILLING ADJUSTMENT | | $0.00 | | $0.00 | | | | |
| NET REIMBURSEMENT | | $382,261.75 | | $86,249.90 | | | | |

## ADDITIONAL INFORMATION SECTION

| CLAIM INTEREST PAYMENTS | | $1.11 | | $0.00 | | | | |
|---|---|---|---|---|---|---|---|---|
| DEVICE CREDIT | | $0.00 | | $0.00 | | | | |

6

PROVIDER STATISTICAL AND REIMBURSEMENT SYSTEM

REPORT COVER PAGE FOR REQUEST: VIKQ206-S-2345030

| Provider#-Report Type | Total # of Pages | Provider#-Report Type | Total # of Pages | Provider#-Report Type | Total # of Pages | Provider#-Report Type | Total # of Pages |
|---|---|---|---|---|---|---|---|
| 455802-210 | 4 | 455802-220 | 1 | 455802-222 | 1 | 455802-225 | 2 |
| 455802-230 | 1 | 455802-232 | 1 | 455802-235 | 1 | | |

7

PROVIDER STATISTICAL AND REIMBURSEMENT SYSTEM

**Program ID:** REDESIGN
**Paid Dates:** 08/01/07 THRU 03/24/15
**Report Run Date:** 03/22/15
**Provider FYE:** 12/31
**Provider Number:** 455802 Empire Spanish Meadows Ltd

**PROVIDER SUMMARY REPORT**
**SNF - INPATIENT - PART A PPS**

**Page:** 1
**Report #:** OD44203
**Report Type:** 210

| | SERVICES FOR PERIOD 01/01/14 - 09/30/14 | | SERVICES FOR PERIOD 10/01/14 - 12/31/14 | | SERVICES FOR PERIOD No Data Requested | | SERVICES FOR PERIOD No Data Requested | |
|---|---|---|---|---|---|---|---|---|

## STATISTIC SECTION

| | | | | |
|---|---|---|---|---|
| DISCHARGES | 110 | 40 | | |
| MEDICARE DAYS | 5,400 | 2,225 | | |
| CLAIMS | 306 | 115 | | |

## CHARGE SECTION

**\*\*\* ACCOMMODATION CHARGES \*\*\***

| REV CODE | DESCRIPTION | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES |
|---|---|---|---|---|---|---|---|---|---|
| 0120 | ROOM-BOARD/SEMI | 5,400 | $945,000.00 | 2,225 | $610,675.00 | | | | |
| 0180 | LEAVE OF ABSENCE OR LOA | 0 | $0.00 | 0 | $0.00 | | | | |
| | *TOTAL ACCOMMODATIONS* | 5,400 | $945,000.00 | 2,225 | $610,675.00 | | | | |

**\*\*\* ANCILLARY CHARGES \*\*\***

| REV CODE | DESCRIPTION | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES |
|---|---|---|---|---|---|---|---|---|---|
| 0250 | PHARMACY | 273 | $666,088.43 | 107 | $203,446.00 | | | | |
| 0260 | IV THERAPY | 30 | $34,224.30 | 24 | $18,891.00 | | | | |
| 0270 | MED-SUR SUPPLIES | 111 | $52,299.51 | 69 | $46,731.71 | | | | |
| 0274 | PROSTH/ORTH DEV | 11 | $2,453.40 | 0 | $0.00 | | | | |
| 0300 | LABORATORY or (LAB) | 145 | $27,131.00 | 70 | $24,379.60 | | | | |
| 0320 | DX X-RAY | 87 | $6,168.50 | 49 | $2,341.00 | | | | |
| 0420 | PHYSICAL THERP | 3,654 | $638,775.01 | 1,535 | $250,335.00 | | | | |
| 0429 | OTHER PHYS THERP | 5 | $0.05 | 0 | $0.00 | | | | |
| 0430 | OCCUPATION THER | 3,589 | $611,100.00 | 1,438 | $230,805.00 | | | | |
| 0440 | SPEECH PATHOL | 536 | $27,990.00 | 283 | $13,725.00 | | | | |
| 0946 | COMPLX MED EQUIP-ROUT | 140 | $22,616.22 | 40 | $30,719.83 | | | | |
| | *TOTAL ANCILLARY* | 8,581 | $2,088,846.42 | 3,615 | $821,374.14 | | | | |
| | **TOTAL COVERED CHARGES** | | $3,033,846.42 | | $1,432,049.14 | | | | |

### PROVIDER STATISTICAL AND REIMBURSEMENT SYSTEM

**Program ID:** REDESIGN
**Paid Dates:** 08/01/07 THRU 03/24/15
**Report Run Date:** 03/22/15
**Provider FYE:** 12/31
**Provider Number:** 455802 Empire Spanish Meadows Ltd

**PROVIDER SUMMARY REPORT**
**SNF – INPATIENT – PART A PPS**

**Page:** 2
**Report #:** OD44203
**Report Type:** 210

| | SERVICES FOR PERIOD 01/01/14 - 09/30/14 | SERVICES FOR PERIOD 10/01/14 - 12/31/14 | SERVICES FOR PERIOD No Data Requested | SERVICES FOR PERIOD No Data Requested |
|---|---|---|---|---|
| **REIMBURSEMENT SECTION** | | | | |
| **PAYMENT** | | | | |
| GROSS REIMBURSEMENT | $2,209,034.05 | $938,889.75 | | |
| **LESS** | | | | |
| CASH DEDUCTIBLE | $0.00 | $0.00 | | |
| BLOOD DEDUCTIBLE | $0.00 | $0.00 | | |
| COINSURANCE | $534,128.00 | $227,240.00 | | |
| NET MSP PAYMENTS | $0.00 | $0.00 | | |
| SEQUESTRATION | $33,498.22 | $14,233.03 | | |
| NET REIMBURSEMENT | $1,641,407.83 | $697,416.72 | | |

### ADDITIONAL INFORMATION SECTION

| | | | | |
|---|---|---|---|---|
| CALCULATED NET REIMB FOR PIP | $0.00 | $0.00 | | |
| ACTUAL CLAIM PAYMENTS FOR PIP | $0.00 | $0.00 | | |
| CLAIM INTEREST PAYMENTS | $3.80 | $0.00 | | |

The following schedule reflects the individual RUG utilization to assist in the completion of Worksheet S-7 of the Medicare Cost Report

| | | UNITS | UNITS | UNITS | UNITS |
|---|---|---|---|---|---|
| 0022 | AAA | 8 | 0 | 0 | 0 |
| | BB1 | 6 | 0 | 0 | 0 |
| | CA1 | 3 | 31 | 0 | 0 |
| | CB1 | 1 | 0 | 0 | 0 |
| | CC1 | 5 | 0 | 0 | 0 |
| | CE2 | 0 | 13 | 0 | 0 |

9

## P R O V I D E R   S T A T I S T I C A L   A N D   R E I M B U R S E M E N T   S Y S T E M

**Program ID:** REDESIGN
**Paid Dates:** 08/01/07  THRU  03/24/15
**Report Run Date:** 03/22/15
**Provider FYE:** 12/31
**Provider Number:** 455802  Empire Spanish Meadows Ltd

**PROVIDER SUMMARY REPORT**
**SNF – INPATIENT - PART A PPS**

**Page:** 3
**Report #:** OD44203
**Report Type:** 210

| | | SERVICES FOR PERIOD<br>01/01/14 - 09/30/14 | SERVICES FOR PERIOD<br>10/01/14 - 12/31/14 | SERVICES FOR PERIOD<br>No Data Requested | SERVICES FOR PERIOD<br>No Data Requested |
|---|---|---|---|---|---|
| | | UNITS | UNITS | UNITS | UNITS |
| 0022 | ES3 | 6 | 194 | 0 | 0 |
| | HB2 | 78 | 0 | 0 | 0 |
| | HC1 | 12 | 0 | 0 | 0 |
| | HC2 | 29 | 0 | 0 | 0 |
| | HD1 | 1 | 0 | 0 | 0 |
| | HD2 | 81 | 0 | 0 | 0 |
| | HE1 | 93 | 38 | 0 | 0 |
| | HE2 | 24 | 29 | 0 | 0 |
| | LB1 | 23 | 0 | 0 | 0 |
| | LC1 | 73 | 0 | 0 | 0 |
| | LC2 | 0 | 17 | 0 | 0 |
| | LD1 | 21 | 0 | 0 | 0 |
| | LD2 | 6 | 0 | 0 | 0 |
| | LE1 | 16 | 0 | 0 | 0 |
| | LE2 | 0 | 21 | 0 | 0 |
| | PB1 | 20 | 8 | 0 | 0 |
| | PD1 | 10 | 0 | 0 | 0 |
| | RHA | 98 | 71 | 0 | 0 |
| | RHB | 186 | 49 | 0 | 0 |
| | RHC | 318 | 113 | 0 | 0 |
| | RHX | 10 | 0 | 0 | 0 |
| | RMA | 21 | 43 | 0 | 0 |
| | RMB | 23 | 0 | 0 | 0 |
| | RMC | 27 | 18 | 0 | 0 |

PROVIDER STATISTICAL AND REIMBURSEMENT SYSTEM

**Program ID:** REDESIGN
**Paid Dates:** 08/01/07 THRU 03/24/15
**Report Run Date:** 03/22/15
**Provider FYE:** 12/31
**Provider Number:** 455802 Empire Spanish Meadows Ltd

**PROVIDER SUMMARY REPORT**
**SNF – INPATIENT – PART A PPS**

**Page:** 4
**Report #:** OD44203
**Report Type:** 210

| | | SERVICES FOR PERIOD 01/01/14 - 09/30/14 | SERVICES FOR PERIOD 10/01/14 – 12/31/14 | SERVICES FOR PERIOD No Data Requested | SERVICES FOR PERIOD No Data Requested |
|---|---|---|---|---|---|
| | | UNITS | UNITS | UNITS | UNITS |
| 0022 | RUA | 1,468 | 514 | 0 | 0 |
| | RUB | 855 | 277 | 0 | 0 |
| | RUC | 220 | 79 | 0 | 0 |
| | RUL | 8 | 5 | 0 | 0 |
| | RVA | 790 | 313 | 0 | 0 |
| | RVB | 515 | 176 | 0 | 0 |
| | RVC | 345 | 202 | 0 | 0 |
| | RVL | 0 | 14 | 0 | 0 |
| TOTAL | | 5,400 | 2,225 | 0 | 0 |

# PROVIDER STATISTICAL AND REIMBURSEMENT SYSTEM

**Program ID:** REDESIGN
**Paid Dates:** 08/01/07 THRU 03/24/15
**Report Run Date:** 03/22/15
**Provider FYE:** 12/31
**Provider Number:** 455802 Empire Spanish Meadows Ltd

**PROVIDER SUMMARY REPORT**
**SNF - INPATIENT - PART B COST REIMBURSED**

**Page:** 1
**Report #:** OD44203
**Report Type:** 220

| | SERVICES FOR PERIOD 01/01/14 - 09/30/14 | | SERVICES FOR PERIOD 10/01/14 - 12/31/14 | | SERVICES FOR PERIOD No Data Requested | | SERVICES FOR PERIOD No Data Requested | |
|---|---|---|---|---|---|---|---|---|

## STATISTIC SECTION

| CLAIMS | 153 | 48 | | |
|---|---|---|---|---|

## CHARGE SECTION

| REV CODE | DESCRIPTION | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES |
|---|---|---|---|---|---|---|---|---|---|
| 0424 | PHYS THERP/EVAL | 0 | $0.00 | 0 | $0.00 | | | | |
| 0434 | OCCUP THERP/EVAL | 0 | $0.00 | 0 | $0.00 | | | | |
| 0440 | SPEECH PATHOL | 0 | $0.00 | 0 | $0.00 | | | | |
| | *TOTAL COVERED CHARGES* | 0 | $0.00 | 0 | $0.00 | | | | |

## REIMBURSEMENT SECTION

| | | | | |
|---|---|---|---|---|
| **GROSS REIMBURSEMENT** | $0.00 | $0.00 | | |
| LESS | | | | |
| CASH DEDUCTIBLE | $0.00 | $0.00 | | |
| BLOOD DEDUCTIBLE | $0.00 | $0.00 | | |
| COINSURANCE | $0.00 | $0.00 | | |
| NET MSP PAYMENTS | $0.00 | $0.00 | | |
| SEQUESTRATION | $0.00 | $0.00 | $0.00 | $0.00 |
| REBILLING ADJUSTMENT | $0.00 | $0.00 | | |
| NET REIMBURSEMENT | $0.00 | $0.00 | | |

## ADDITIONAL INFORMATION SECTION

| CLAIM INTEREST PAYMENTS | $0.00 | $0.00 | | |
|---|---|---|---|---|

12

P R O V I D E R   S T A T I S T I C A L   A N D   R E I M B U R S E M E N T   S Y S T E M

**Program ID:** REDESIGN
**Paid Dates:** 08/01/07  THRU  03/24/15
**Report Run Date:** 03/22/15
**Provider FYE:** 12/31
**Provider Number:** 455802 Empire Spanish Meadows Ltd

**PROVIDER SUMMARY REPORT**
**SNF - INPATIENT - VACCINE  - PART B 100% REASONABLE COST**

**Page:** 1
**Report #:** OD44203
**Report Type:** 222

| | SERVICES FOR PERIOD 01/01/14 - 09/30/14 | | SERVICES FOR PERIOD 10/01/14 - 12/31/14 | | SERVICES FOR PERIOD No Data Requested | | SERVICES FOR PERIOD No Data Requested | |
|---|---|---|---|---|---|---|---|---|

### STATISTIC SECTION

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| CLAIMS | 0 | | 80 | | | | | |

### CHARGE SECTION

| REV CODE   DESCRIPTION | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES |
|---|---|---|---|---|---|---|---|---|
| 0636   DRUGS/DETAIL CODE | 0 | $0.00 | 80 | $4,400.00 | | | | |
| *TOTAL COVERED CHARGES* | 0 | $0.00 | 80 | $4,400.00 | | | | |

### REIMBURSEMENT SECTION

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GROSS REIMBURSEMENT | | $0.00 | | $3,168.00 | | | | |
| LESS | | | | | | | | |
| CASH DEDUCTIBLE | | $0.00 | | $0.00 | | | | |
| BLOOD DEDUCTIBLE | | $0.00 | | $0.00 | | | | |
| COINSURANCE | | $0.00 | | $0.00 | | | | |
| NET MSP PAYMENTS | | $0.00 | | $0.00 | | | | |
| SEQUESTRATION | | $0.00 | | $63.20 | | $0.00 | | $0.00 |
| REBILLING ADJUSTMENT | | $0.00 | | $0.00 | | | | |
| NET REIMBURSEMENT | | $0.00 | | $3,104.80 | | | | |

### ADDITIONAL INFORMATION SECTION

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| CLAIM INTEREST PAYMENTS | | $0.00 | | $0.00 | | | | |

13

# PROVIDER STATISTICAL AND REIMBURSEMENT SYSTEM

**Program ID:** REDESIGN
**Paid Dates:** 08/01/07  THRU  03/24/15
**Report Run Date:** 03/22/15
**Provider FYE:** 12/31
**Provider Number:** 455802  Empire Spanish Meadows Ltd

**PROVIDER SUMMARY REPORT**
**SNF - INPATIENT - FEE REIMBURSED**
**THESE ITEMS ARE NOT TO BE INCLUDED ON THE MEDICARE COST REPORT**

**Page:** 1
**Report #:** OD44203
**Report Type:** 225

| | SERVICES FOR PERIOD 01/01/14 - 09/30/14 | | SERVICES FOR PERIOD 10/01/14 - 12/31/14 | | SERVICES FOR PERIOD No Data Requested | | SERVICES FOR PERIOD No Data Requested | |
|---|---|---|---|---|---|---|---|---|

## STATISTIC SECTION

| CLAIMS | 443 | 225 | | |
|---|---|---|---|---|

## CHARGE SECTION

| REV CODE | DESCRIPTION | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES |
|---|---|---|---|---|---|---|---|---|---|
| 0274 | PROSTH/ORTH DEV | 26,655 | $187,797.51 | 9,437 | $66,905.01 | | | | |
| 0420 | PHYSICAL THERP | 2,017 | $61,765.74 | 602 | $18,007.35 | | | | |
| 0424 | PHYS THERP/EVAL | 60 | $4,380.00 | 17 | $1,241.00 | | | | |
| 0430 | OCCUPATION THER | 1,064 | $33,819.37 | 263 | $8,416.45 | | | | |
| 0434 | OCCUP THERP/EVAL | 47 | $3,831.91 | 7 | $522.63 | | | | |
| 0440 | SPEECH PATHOL | 148 | $11,854.52 | 8 | $648.04 | | | | |
| 0444 | SPEECH PATH/EVAL | 9 | $1,284.11 | 0 | $0.00 | | | | |
| 0771 | VACCINE ADMIN | 0 | $0.00 | 80 | $2,000.00 | | | | |
| | *TOTAL COVERED CHARGES* | 30,000 | $304,733.16 | 10,414 | $97,740.48 | | | | |

## REIMBURSEMENT SECTION

| GROSS REIMBURSEMENT | $288,456.24 | $93,441.44 | | |
|---|---|---|---|---|
| LESS | | | | |
| CASH DEDUCTIBLE | $1,957.47 | $0.00 | | |
| BLOOD DEDUCTIBLE | $0.00 | $0.00 | | |
| COINSURANCE | $57,300.77 | $18,313.34 | | |
| NET MSP PAYMENTS | $0.00 | $0.00 | | |
| SEQUESTRATION | $4,589.90 | $1,503.66 | $0.00 | $0.00 |
| REBILLING ADJUSTMENT | $0.00 | $0.00 | | |
| NET REIMBURSEMENT | $224,608.10 | $73,624.44 | | |

## ADDITIONAL INFORMATION SECTION

| CLAIM INTEREST PAYMENTS | $0.59 | $0.00 | | |
|---|---|---|---|---|

Mar 22, 2015

- 1 -

12:18:55 PM

### PROVIDER STATISTICAL AND REIMBURSEMENT SYSTEM

**Program ID:** REDESIGN
**Paid Dates:** 08/01/07  THRU  03/24/15
**Report Run Date:** 03/22/15
**Provider FYE:** 12/31
**Provider Number:** 455802 Empire Spanish Meadows Ltd

**PROVIDER SUMMARY REPORT**
**SNF – INPATIENT – FEE REIMBURSED**
**THESE ITEMS ARE NOT TO BE INCLUDED ON THE MEDICARE COST REPORT**

**Page:** 2
**Report #:** OD44203
**Report Type:** 225

| | SERVICES FOR PERIOD 01/01/14 - 09/30/14 | SERVICES FOR PERIOD 10/01/14 - 12/31/14 | SERVICES FOR PERIOD No Data Requested | SERVICES FOR PERIOD No Data Requested |
|---|---|---|---|---|
| **DEVICE CREDIT** | $0.00 | $0.00 | | |

# PROVIDER STATISTICAL AND REIMBURSEMENT SYSTEM

**Program ID:** REDESIGN
**Paid Dates:** 08/01/07 THRU 03/24/15
**Report Run Date:** 03/22/15
**Provider FYE:** 12/31
**Provider Number:** 455802 Empire Spanish Meadows Ltd

**PROVIDER SUMMARY REPORT**
**SNF - OUTPATIENT - COST REIMBURSED**

**Page:** 1
**Report #:** OD44203
**Report Type:** 230

| | SERVICES FOR PERIOD 01/01/14 - 09/30/14 | | SERVICES FOR PERIOD 10/01/14 - 12/31/14 | | SERVICES FOR PERIOD No Data Requested | | SERVICES FOR PERIOD No Data Requested | |
|---|---|---|---|---|---|---|---|---|

## STATISTIC SECTION

| CLAIMS | 1 | 3 | | |
|---|---|---|---|---|

## CHARGE SECTION

| REV CODE | DESCRIPTION | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES |
|---|---|---|---|---|---|---|---|---|---|
| 0420 | PHYSICAL THERP | 0 | $0.00 | 0 | $0.00 | | | | |
| 0424 | PHYS THERP/EVAL | 2 | $0.00 | 0 | $0.00 | | | | |
| 0434 | OCCUP THERP/EVAL | 0 | $0.00 | 0 | $0.00 | | | | |
| | TOTAL COVERED CHARGES | 2 | $0.00 | 0 | $0.00 | | | | |

## REIMBURSEMENT SECTION

| | GROSS REIMBURSEMENT | $0.00 | $0.00 | | |
|---|---|---|---|---|---|
| | LESS | | | | |
| | CASH DEDUCTIBLE | $0.00 | $0.00 | | |
| | BLOOD DEDUCTIBLE | $0.00 | $0.00 | | |
| | COINSURANCE | $0.00 | $0.00 | | |
| | NET MSP PAYMENTS | $0.00 | $0.00 | | |
| | SEQUESTRATION | $0.00 | $0.00 | $0.00 | $0.00 |
| | REBILLING ADJUSTMENT | $0.00 | $0.00 | | |
| | NET REIMBURSEMENT | $0.00 | $0.00 | | |

## ADDITIONAL INFORMATION SECTION

| CLAIM INTEREST PAYMENTS | $0.00 | $0.00 | | |
|---|---|---|---|---|

### P R O V I D E R   S T A T I S T I C A L   A N D   R E I M B U R S E M E N T   S Y S T E M

**Program ID:** REDESIGN
**Paid Dates:** 08/01/07  THRU  03/24/15
**Report Run Date:** 03/22/15
**Provider FYE:** 12/31
**Provider Number:** 455802 Empire Spanish Meadows Ltd

**PROVIDER SUMMARY REPORT**
**SNF – OUTPATIENT – VACCINE – PART B 100% REASONABLE COST**

**Page:** 1
**Report #:** OD44203
**Report Type:** 232

| | SERVICES FOR PERIOD 01/01/14 - 09/30/14 | | SERVICES FOR PERIOD 10/01/14 - 12/31/14 | | SERVICES FOR PERIOD No Data Requested | | SERVICES FOR PERIOD No Data Requested | |
|---|---|---|---|---|---|---|---|---|

#### STATISTIC SECTION

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| CLAIMS | | 0 | | 4 | | | | |

#### CHARGE SECTION

| REV CODE | DESCRIPTION | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES |
|---|---|---|---|---|---|---|---|---|---|
| 0636 | DRUGS/DETAIL CODE | 0 | $0.00 | 4 | $220.00 | | | | |
| *TOTAL COVERED CHARGES* | | 0 | $0.00 | 4 | $220.00 | | | | |

#### REIMBURSEMENT SECTION

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| GROSS REIMBURSEMENT | $0.00 | | $158.40 | | | | |
| LESS | | | | | | | |
| CASH DEDUCTIBLE | $0.00 | | $0.00 | | | | |
| BLOOD DEDUCTIBLE | $0.00 | | $0.00 | | | | |
| COINSURANCE | $0.00 | | $0.00 | | | | |
| NET MSP PAYMENTS | $0.00 | | $0.00 | | | | |
| SEQUESTRATION | $0.00 | | $3.16 | | $0.00 | | $0.00 |
| REBILLING ADJUSTMENT | $0.00 | | $0.00 | | | | |
| NET REIMBURSEMENT | $0.00 | | $155.24 | | | | |

#### ADDITIONAL INFORMATION SECTION

| | | | |
|---|---|---|---|
| CLAIM INTEREST PAYMENTS | $0.00 | | $0.00 |

PROVIDER STATISTICAL AND REIMBURSEMENT SYSTEM

**Program ID:** REDESIGN
**Paid Dates:** 08/01/07 THRU 03/24/15
**Report Run Date:** 03/22/15
**Provider FYE:** 12/31
**Provider Number:** 455802 Empire Spanish Meadows Ltd

**PROVIDER SUMMARY REPORT**
**SNF - OUTPATIENT - FEE REIMBURSED**
**THESE ITEMS ARE NOT TO BE INCLUDED ON THE MEDICARE COST REPORT**

**Page:** 1
**Report #:** OD44203
**Report Type:** 235

| | SERVICES FOR PERIOD 01/01/14 - 09/30/14 | | SERVICES FOR PERIOD 10/01/14 - 12/31/14 | | SERVICES FOR PERIOD No Data Requested | | SERVICES FOR PERIOD No Data Requested | |
|---|---|---|---|---|---|---|---|---|

## STATISTIC SECTION

| CLAIMS | | 1 | | 8 | | | | |
|---|---|---|---|---|---|---|---|---|

## CHARGE SECTION

| REV CODE | DESCRIPTION | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES |
|---|---|---|---|---|---|---|---|---|---|
| 0420 | PHYSICAL THERP | 20 | $599.85 | 46 | $1,375.82 | | | | |
| 0424 | PHYS THERP/EVAL | 1 | $73.00 | 1 | $73.00 | | | | |
| 0430 | OCCUPATION THER | 0 | $0.00 | 20 | $640.40 | | | | |
| 0771 | VACCINE ADMIN | 0 | $0.00 | 4 | $100.00 | | | | |
| | *TOTAL COVERED CHARGES* | 21 | $672.85 | 71 | $2,189.22 | | | | |

## REIMBURSEMENT SECTION

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GROSS REIMBURSEMENT | | $561.43 | | $1,819.54 | | | | |
| LESS | | | | | | | | |
| CASH DEDUCTIBLE | | $0.00 | | $0.00 | | | | |
| BLOOD DEDUCTIBLE | | $0.00 | | $0.00 | | | | |
| COINSURANCE | | $112.26 | | $345.12 | | | | |
| NET MSP PAYMENTS | | $0.00 | | $0.00 | | | | |
| SEQUESTRATION | | $9.00 | | $29.52 | | $0.00 | | $0.00 |
| REBILLING ADJUSTMENT | | $0.00 | | $0.00 | | | | |
| NET REIMBURSEMENT | | $440.17 | | $1,444.90 | | | | |

## ADDITIONAL INFORMATION SECTION

| CLAIM INTEREST PAYMENTS | | $0.00 | | $0.00 | | | | |
|---|---|---|---|---|---|---|---|---|
| DEVICE CREDIT | | $0.00 | | $0.00 | | | | |

18

PROVIDER STATISTICAL AND REIMBURSEMENT SYSTEM

REPORT COVER PAGE FOR REQUEST: YLKX826-S-2352623

| Provider#-Report Type | Total # of Pages | Provider#-Report Type | Total # of Pages | Provider#-Report Type | Total # of Pages | Provider#-Report Type | Total # of Pages |
|---|---|---|---|---|---|---|---|
| 676260-210 | 4 | 676260-220 | 1 | 676260-225 | 1 | | |

# PROVIDER STATISTICAL AND REIMBURSEMENT SYSTEM

**Program ID:** REDESIGN
**Paid Dates:** 08/01/07 THRU 03/30/15
**Report Run Date:** 03/28/15
**Provider FYE:** 12/31
**Provider Number:** 676260 The Meridan

**PROVIDER SUMMARY REPORT**
**SNF - INPATIENT - PART A PPS**

**Page:** 1
**Report #:** OD44203
**Report Type:** 210

| | SERVICES FOR PERIOD 01/01/14 - 09/30/14 | SERVICES FOR PERIOD 10/01/14 - 12/31/14 | SERVICES FOR PERIOD 01/01/15 - 12/31/15 | SERVICES FOR PERIOD No Data Requested |
|---|---|---|---|---|

## STATISTIC SECTION

| | | | | |
|---|---|---|---|---|
| DISCHARGES | 165 | 60 | 42 | |
| MEDICARE DAYS | 5,634 | 2,024 | 1,298 | |
| CLAIMS | 379 | 130 | 85 | |

## CHARGE SECTION

### *** ACCOMMODATION CHARGES ***

| REV CODE | DESCRIPTION | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES |
|---|---|---|---|---|---|---|---|---|---|
| 0110 | ROOM-BOARD/PVT | 572 | $157,300.00 | 121 | $45,375.00 | 76 | $28,500.00 | | |
| 0120 | ROOM-BOARD/SEMI | 5,062 | $885,675.00 | 1,903 | $521,825.00 | 1,222 | $336,050.00 | | |
| 0180 | LEAVE OF ABSENCE OR LOA | 0 | $0.00 | 0 | $0.00 | 0 | $0.00 | | |
| | TOTAL ACCOMMODATIONS | 5,634 | $1,042,975.00 | 2,024 | $567,200.00 | 1,298 | $364,550.00 | | |

### *** ANCILLARY CHARGES ***

| REV CODE | DESCRIPTION | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES |
|---|---|---|---|---|---|---|---|---|---|
| 0250 | PHARMACY | 321 | $336,022.09 | 117 | $130,051.20 | 76 | $75,564.90 | | |
| 0260 | IV THERAPY | 12 | $23,952.24 | 4 | $3,445.80 | 7 | $3,756.36 | | |
| 0270 | MED-SUR SUPPLIES | 432 | $72,157.94 | 135 | $17,777.89 | 91 | $13,335.57 | | |
| 0300 | LABORATORY or (LAB) | 232 | $69,015.99 | 90 | $29,936.99 | 46 | $9,769.79 | | |
| 0320 | DX X-RAY | 85 | $101,500.00 | 23 | $27,850.00 | 9 | $10,605.00 | | |
| 0420 | PHYSICAL THERP | 3,637 | $545,535.00 | 1,429 | $218,790.00 | 872 | $126,450.00 | | |
| 0424 | PHYS THERP/EVAL | 183 | $8,235.00 | 66 | $2,970.00 | 41 | $1,845.00 | | |
| 0430 | OCCUPATION THER | 3,814 | $597,150.00 | 1,482 | $220,140.00 | 895 | $128,790.00 | | |
| 0434 | OCCUP THERP/EVAL | 193 | $8,685.00 | 69 | $3,105.00 | 41 | $1,845.00 | | |
| 0440 | SPEECH PATHOL | 2,701 | $260,280.00 | 824 | $90,450.00 | 720 | $66,870.00 | | |
| 0444 | SPEECH PATH/EVAL | 143 | $8,505.00 | 42 | $2,430.00 | 35 | $2,250.00 | | |
| 0946 | COMPLX MED EQUIP-ROUT | 17 | $8,983.65 | 5 | $2,318.25 | 8 | $2,813.25 | | |
| | TOTAL ANCILLARY | 11,770 | $2,040,021.91 | 4,286 | $749,265.13 | 2,841 | $443,894.87 | | |

20

### P R O V I D E R   S T A T I S T I C A L   A N D   R E I M B U R S E M E N T   S Y S T E M

**Program ID:** REDESIGN
**Paid Dates:** 08/01/07 THRU 03/30/15
**Report Run Date:** 03/28/15
**Provider FYE:** 12/31
**Provider Number:** 676260 The Meridan

**PROVIDER SUMMARY REPORT**
**SNF - INPATIENT - PART A PPS**

**Page:** 2
**Report #:** OD44203
**Report Type:** 210

|  | SERVICES FOR PERIOD<br>01/01/14 - 09/30/14 | SERVICES FOR PERIOD<br>10/01/14 - 12/31/14 | SERVICES FOR PERIOD<br>01/01/15 - 12/31/15 | SERVICES FOR PERIOD<br>No Data Requested |
|---|---|---|---|---|
| **TOTAL COVERED CHARGES** | $3,082,996.91 | $1,316,465.13 | $808,444.87 | |

**REIMBURSEMENT SECTION**
**PAYMENT**

|  | | | | |
|---|---|---|---|---|
| **GROSS REIMBURSEMENT** | $2,744,190.14 | $1,024,863.33 | $671,221.69 | |
| **LESS** | | | | |
| **CASH DEDUCTIBLE** | $0.00 | $0.00 | $0.00 | |
| **BLOOD DEDUCTIBLE** | $0.00 | $0.00 | $0.00 | |
| **COINSURANCE** | $491,720.00 | $163,248.00 | $102,195.50 | |
| **NET MSP PAYMENTS** | $0.00 | $0.00 | $0.00 | |
| **SEQUESTRATION** | $45,049.52 | $17,232.28 | $11,380.54 | |
| **NET REIMBURSEMENT** | $2,207,420.62 | $844,383.05 | $557,645.65 | |

**ADDITIONAL INFORMATION SECTION**

|  | | | | |
|---|---|---|---|---|
| **CALCULATED NET REIMB FOR PIP** | $0.00 | $0.00 | $0.00 | |
| **ACTUAL CLAIM PAYMENTS FOR PIP** | $0.00 | $0.00 | $0.00 | |
| **CLAIM INTEREST PAYMENTS** | $0.00 | $0.00 | $0.00 | |

The following schedule reflects the individual RUG utilization to assist in the completion of Worksheet S-7 of the Medicare Cost Report

|  |  | UNITS | UNITS | UNITS | UNITS |
|---|---|---|---|---|---|
| 0022 | CA1 | 33 | 10 | 4 | 0 |
|  | CB1 | 5 | 6 | 0 | 0 |
|  | CC1 | 14 | 1 | 0 | 0 |
|  | ES2 | 14 | 0 | 0 | 0 |
|  | HB1 | 1 | 0 | 0 | 0 |

### P R O V I D E R   S T A T I S T I C A L   A N D   R E I M B U R S E M E N T   S Y S T E M

**Program ID:** REDESIGN
**Paid Dates:** 08/01/07 THRU 03/30/15
**Report Run Date:** 03/28/15
**Provider FYE:** 12/31
**Provider Number:** 676260 The Meridan

**PROVIDER SUMMARY REPORT**
**SNF - INPATIENT - PART A PPS**

**Page:** 3
**Report #:** OD44203
**Report Type:** 210

| | | SERVICES FOR PERIOD 01/01/14 - 09/30/14 | SERVICES FOR PERIOD 10/01/14 - 12/31/14 | SERVICES FOR PERIOD 01/01/15 - 12/31/15 | SERVICES FOR PERIOD No Data Requested |
|---|---|---|---|---|---|
| | | UNITS | UNITS | UNITS | UNITS |
| 0022 | HC1 | 15 | 0 | 0 | 0 |
| | HE1 | 2 | 0 | 8 | 0 |
| | LB1 | 1 | 1 | 0 | 0 |
| | LC1 | 3 | 0 | 0 | 0 |
| | LC2 | 10 | 0 | 0 | 0 |
| | LD1 | 4 | 12 | 2 | 0 |
| | PB1 | 11 | 0 | 0 | 0 |
| | PC1 | 2 | 0 | 0 | 0 |
| | PE1 | 1 | 0 | 0 | 0 |
| | RHA | 47 | 34 | 0 | 0 |
| | RHB | 255 | 0 | 11 | 0 |
| | RHC | 115 | 0 | 0 | 0 |
| | RMA | 3 | 0 | 0 | 0 |
| | RMC | 6 | 0 | 6 | 0 |
| | RUA | 2,167 | 748 | 386 | 0 |
| | RUB | 1,038 | 458 | 317 | 0 |
| | RUC | 400 | 146 | 97 | 0 |
| | RUL | 22 | 66 | 83 | 0 |
| | RVA | 693 | 290 | 168 | 0 |
| | RVB | 493 | 173 | 127 | 0 |
| | RVC | 228 | 16 | 75 | 0 |
| | RVL | 34 | 63 | 14 | 0 |
| | RVX | 15 | 0 | 0 | 0 |
| **TOTAL** | | **5,632** | **2,024** | **1,298** | **0** |

22

# PROVIDER STATISTICAL AND REIMBURSEMENT SYSTEM

**Program ID:** REDESIGN
**Paid Dates:** 08/01/07  THRU  03/30/15
**Report Run Date:** 03/28/15
**Provider FYE:** 12/31
**Provider Number:** 676260  The Meridan

**PROVIDER SUMMARY REPORT**
**SNF – INPATIENT – PART A PPS**

**Page:** 4
**Report #:** OD44203
**Report Type:** 210

| | SERVICES FOR PERIOD<br>01/01/14 - 09/30/14 | SERVICES FOR PERIOD<br>10/01/14 - 12/31/14 | SERVICES FOR PERIOD<br>01/01/15 - 12/31/15 | SERVICES FOR PERIOD<br>No Data Requested |
|---|---|---|---|---|

# P R O V I D E R   S T A T I S T I C A L   A N D   R E I M B U R S E M E N T   S Y S T E M

**Program ID:** REDESIGN
**Paid Dates:** 08/01/07  THRU  03/30/15
**Report Run Date:** 03/28/15
**Provider FYE:** 12/31
**Provider Number:** 676260  The Meridan

**PROVIDER SUMMARY REPORT**
**SNF – INPATIENT – PART B COST REIMBURSED**

**Page:** 1
**Report #:** OD44203
**Report Type:** 220

| | SERVICES FOR PERIOD<br>01/01/14 - 09/30/14 | | SERVICES FOR PERIOD<br>10/01/14 - 12/31/14 | | SERVICES FOR PERIOD<br>01/01/15 - 12/31/15 | | SERVICES FOR PERIOD<br>No Data Requested | |
|---|---|---|---|---|---|---|---|---|

## STATISTIC SECTION

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| CLAIMS | | 29 | | 9 | | 12 | | |

## CHARGE SECTION

| REV CODE | DESCRIPTION | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES |
|---|---|---|---|---|---|---|---|---|---|
| 0424 | PHYS THERP/EVAL | 0 | $0.00 | 0 | $0.00 | 0 | $0.00 | | |
| 0430 | OCCUPATION THER | 0 | $0.00 | 0 | $0.00 | 0 | $0.00 | | |
| 0434 | OCCUP THERP/EVAL | 0 | $0.00 | 0 | $0.00 | 0 | $0.00 | | |
| 0440 | SPEECH PATHOL | 0 | $0.00 | 0 | $0.00 | 0 | $0.00 | | |
| | *TOTAL COVERED CHARGES* | **0** | **$0.00** | **0** | **$0.00** | **0** | **$0.00** | | |

## REIMBURSEMENT SECTION

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GROSS REIMBURSEMENT | | **$0.00** | | **$0.00** | | **$0.00** | | |
| LESS | | | | | | | | |
| CASH DEDUCTIBLE | | $0.00 | | $0.00 | | $0.00 | | |
| BLOOD DEDUCTIBLE | | $0.00 | | $0.00 | | $0.00 | | |
| COINSURANCE | | $0.00 | | $0.00 | | $0.00 | | |
| NET MSP PAYMENTS | | $0.00 | | $0.00 | | $0.00 | | |
| SEQUESTRATION | | $0.00 | | $0.00 | | $0.00 | | $0.00 |
| REBILLING ADJUSTMENT | | $0.00 | | $0.00 | | $0.00 | | |
| NET REIMBURSEMENT | | **$0.00** | | **$0.00** | | **$0.00** | | |

## ADDITIONAL INFORMATION SECTION

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| CLAIM INTEREST PAYMENTS | | $0.26 | | $0.00 | | $0.00 | | |

# PROVIDER STATISTICAL AND REIMBURSEMENT SYSTEM

**Program ID:** REDESIGN
**Paid Dates:** 08/01/07 THRU 03/30/15
**Report Run Date:** 03/28/15
**Provider FYE:** 12/31
**Provider Number:** 676260 The Meridan

**PROVIDER SUMMARY REPORT**
**SNF – INPATIENT – FEE REIMBURSED**
**THESE ITEMS ARE NOT TO BE INCLUDED ON THE MEDICARE COST REPORT**

**Page:** 1
**Report #:** OD44203
**Report Type:** 225

| | SERVICES FOR PERIOD 01/01/14 – 09/30/14 | | SERVICES FOR PERIOD 10/01/14 – 12/31/14 | | SERVICES FOR PERIOD 01/01/15 – 12/31/15 | | SERVICES FOR PERIOD No Data Requested | |
|---|---|---|---|---|---|---|---|---|

## STATISTIC SECTION

| CLAIMS | 31 | 9 | 12 | |
|---|---|---|---|---|

## CHARGE SECTION

| REV CODE | DESCRIPTION | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES |
|---|---|---|---|---|---|---|---|---|---|
| 0420 | PHYSICAL THERP | 342 | $11,046.74 | 172 | $5,437.56 | 63 | $1,993.31 | | |
| 0424 | PHYS THERP/EVAL | 6 | $459.90 | 2 | $153.30 | 3 | $229.80 | | |
| 0430 | OCCUPATION THER | 374 | $12,206.90 | 200 | $6,984.08 | 148 | $4,988.92 | | |
| 0434 | OCCUP THERP/EVAL | 8 | $688.08 | 3 | $258.03 | 4 | $346.88 | | |
| 0440 | SPEECH PATHOL | 202 | $13,524.98 | 0 | $0.00 | 95 | $6,979.36 | | |
| 0444 | SPEECH PATH/EVAL | 3 | $555.93 | 0 | $0.00 | 1 | $192.30 | | |
| | *TOTAL COVERED CHARGES* | 935 | $38,482.53 | 377 | $12,832.97 | 314 | $14,730.57 | | |

## REIMBURSEMENT SECTION

| | | | | | |
|---|---|---|---|---|---|
| **GROSS REIMBURSEMENT** | **$33,654.25** | **$10,370.21** | **$13,081.28** | |
| LESS | | | | |
| CASH DEDUCTIBLE | $0.00 | $0.00 | $0.00 | |
| BLOOD DEDUCTIBLE | $0.00 | $0.00 | $0.00 | |
| COINSURANCE | $6,730.67 | $2,073.98 | $2,616.11 | |
| NET MSP PAYMENTS | $0.00 | $0.00 | $0.00 | |
| SEQUESTRATION | $538.81 | $165.86 | $209.65 | $0.00 |
| REBILLING ADJUSTMENT | $0.00 | $0.00 | $0.00 | |
| NET REIMBURSEMENT | **$26,384.77** | **$8,130.37** | **$10,255.52** | |

## ADDITIONAL INFORMATION SECTION

| | | | | |
|---|---|---|---|---|
| CLAIM INTEREST PAYMENTS | $0.00 | $0.00 | $0.00 | |
| DEVICE CREDIT | $0.00 | $0.00 | $0.00 | |

25

PROVIDER STATISTICAL AND REIMBURSEMENT SYSTEM

**REPORT COVER PAGE FOR REQUEST: VIKQ206-S-2345033**

| Provider#-Report Type | Total # of Pages | Provider#-Report Type | Total # of Pages | Provider#-Report Type | Total # of Pages | Provider#-Report Type | Total # of Pages |
|---|---|---|---|---|---|---|---|
| 675615-210 | 3 | 675615-220 | 1 | 675615-225 | 1 | | |

26

## P R O V I D E R   S T A T I S T I C A L   A N D   R E I M B U R S E M E N T   S Y S T E M

**Program ID:** REDESIGN
**Paid Dates:** 08/01/07  THRU  03/24/15
**Report Run Date:** 03/22/15
**Provider FYE:** 12/31
**Provider Number:** 675615 MERIDIAN CARE AT GRAYSON SQUARE

**PROVIDER SUMMARY REPORT**
**SNF - INPATIENT - PART A PPS**

**Page:** 1
**Report #:** OD44203
**Report Type:** 210

|  | SERVICES FOR PERIOD 01/01/14 – 09/30/14 | SERVICES FOR PERIOD 10/01/14 – 12/31/14 | SERVICES FOR PERIOD No Data Requested | SERVICES FOR PERIOD 01/01/15 - 12/31/15 |
|---|---|---|---|---|

### STATISTIC SECTION

|  | | | | |
|---|---|---|---|---|
| DISCHARGES | 14 | 0 | | 0 |
| MEDICARE DAYS | 1,001 | 101 | | 29 |
| CLAIMS | 60 | 5 | | 1 |

### CHARGE SECTION

**\*\*\* ACCOMMODATION CHARGES \*\*\***

| REV CODE | DESCRIPTION | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES |
|---|---|---|---|---|---|---|---|---|---|
| 0120 | ROOM-BOARD/SEMI | 1,001 | $275,275.00 | 101 | $27,775.00 | | | 29 | $7,975.00 |
| 0180 | LEAVE OF ABSENCE OR LOA | 0 | $0.00 | 0 | $0.00 | | | 0 | $0.00 |
| | *TOTAL ACCOMMODATIONS* | 1,001 | $275,275.00 | 101 | $27,775.00 | | | 29 | $7,975.00 |

**\*\*\* ANCILLARY CHARGES \*\*\***

| REV CODE | DESCRIPTION | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES |
|---|---|---|---|---|---|---|---|---|---|
| 0250 | PHARMACY | 60 | $87,014.66 | 6 | $9,696.00 | | | 1 | $2,784.00 |
| 0270 | MED-SUR SUPPLIES | 76 | $13,062.15 | 9 | $1,719.68 | | | 0 | $0.00 |
| 0300 | LABORATORY or (LAB) | 37 | $5,601.00 | 1 | $190.65 | | | 1 | $263.61 |
| 0320 | DX X-RAY | 14 | $11,157.00 | 1 | $540.00 | | | 0 | $0.00 |
| 0410 | RESPIRATORY SVC | 10 | $315.00 | 4 | $147.00 | | | 0 | $0.00 |
| 0420 | PHYSICAL THERP | 322 | $82,935.00 | 73 | $9,225.00 | | | 20 | $3,240.00 |
| 0424 | PHYS THERP/EVAL | 14 | $1,350.00 | 0 | $0.00 | | | 0 | $0.00 |
| 0430 | OCCUPATION THER | 299 | $94,770.00 | 44 | $5,985.00 | | | 18 | $2,835.00 |
| 0434 | OCCUP THERP/EVAL | 13 | $630.00 | 0 | $0.00 | | | 0 | $0.00 |
| 0440 | SPEECH PATHOL | 212 | $44,325.00 | 11 | $1,125.00 | | | 0 | $0.00 |
| 0444 | SPEECH PATH/EVAL | 8 | $540.00 | 0 | $0.00 | | | 0 | $0.00 |
| 0946 | COMPLX MED EQUIP-ROUT | 3 | $39.00 | 0 | $0.00 | | | 0 | $0.00 |
| | *TOTAL ANCILLARY* | 1,068 | $341,738.81 | 149 | $28,628.33 | | | 40 | $9,122.61 |

27

# PROVIDER STATISTICAL AND REIMBURSEMENT SYSTEM

**Program ID:** REDESIGN
**Paid Dates:** 08/01/07 THRU 03/24/15
**Report Run Date:** 03/22/15
**Provider FYE:** 12/31
**Provider Number:** 675615 MERIDIAN CARE AT GRAYSON SQUARE

**PROVIDER SUMMARY REPORT**
**SNF – INPATIENT – PART A PPS**

**Page:** 2
**Report #:** OD44203
**Report Type:** 210

|  | SERVICES FOR PERIOD 01/01/14 – 09/30/14 | SERVICES FOR PERIOD 10/01/14 – 12/31/14 | SERVICES FOR PERIOD No Data Requested | SERVICES FOR PERIOD 01/01/15 – 12/31/15 |
|---|---|---|---|---|
| TOTAL COVERED CHARGES | $617,013.81 | $56,403.33 |  | $17,097.61 |

## REIMBURSEMENT SECTION
### PAYMENT

|  |  |  |  |  |
|---|---|---|---|---|
| GROSS REIMBURSEMENT | $436,866.90 | $37,928.36 |  | $11,685.26 |
| LESS |  |  |  |  |
| CASH DEDUCTIBLE | $0.00 | $0.00 |  | $0.00 |
| BLOOD DEDUCTIBLE | $0.00 | $0.00 |  | $0.00 |
| COINSURANCE | $96,520.00 | $6,232.00 |  | $1,417.50 |
| NET MSP PAYMENTS | $0.00 | $0.00 |  | $0.00 |
| SEQUESTRATION | $6,806.99 | $633.93 |  | $205.36 |
| NET REIMBURSEMENT | $333,539.91 | $31,062.43 |  | $10,062.40 |

## ADDITIONAL INFORMATION SECTION

|  |  |  |  |  |
|---|---|---|---|---|
| CALCULATED NET REIMB FOR PIP | $0.00 | $0.00 |  | $0.00 |
| ACTUAL CLAIM PAYMENTS FOR PIP | $0.00 | $0.00 |  | $0.00 |
| CLAIM INTEREST PAYMENTS | $0.00 | $0.00 |  | $0.00 |

The following schedule reflects the individual RUG utilization to assist in the completion of Worksheet 5-7 of the Medicare Cost Report

|  |  | UNITS | UNITS | UNITS | UNITS |
|---|---|---|---|---|---|
| 0022 | CA1 | 10 | 0 | 0 | 0 |
|  | CB1 | 48 | 0 | 0 | 0 |
|  | LC1 | 11 | 0 | 0 | 0 |
|  | LD1 | 23 | 0 | 0 | 0 |
|  | PA1 | 4 | 0 | 0 | 0 |

### P R O V I D E R   S T A T I S T I C A L   A N D   R E I M B U R S E M E N T   S Y S T E M

**Program ID:** REDESIGN
**Paid Dates:** 08/01/07  THRU  03/24/15
**Report Run Date:** 03/22/15
**Provider FYE:** 12/31
**Provider Number:** 675615 MERIDIAN CARE AT GRAYSON SQUARE

**PROVIDER SUMMARY REPORT**
**SNF – INPATIENT – PART A PPS**

**Page:** 3
**Report #:** OD44203
**Report Type:** 210

| | | SERVICES FOR PERIOD 01/01/14 - 09/30/14 | SERVICES FOR PERIOD 10/01/14 - 12/31/14 | SERVICES FOR PERIOD No Data Requested | SERVICES FOR PERIOD 01/01/15 - 12/31/15 |
|---|---|---|---|---|---|
| | | UNITS | UNITS | UNITS | UNITS |
| 0022 | RHA | 27 | 0 | 0 | 0 |
| | RHB | 5 | 23 | 0 | 0 |
| | RHC | 24 | 0 | 0 | 0 |
| | RMA | 7 | 0 | 0 | 0 |
| | RMB | 0 | 49 | 0 | 0 |
| | RUA | 199 | 29 | 0 | 0 |
| | RUB | 219 | 0 | 0 | 0 |
| | RUC | 87 | 0 | 0 | 0 |
| | RVA | 113 | 0 | 0 | 0 |
| | RVB | 147 | 0 | 0 | 29 |
| | RVC | 77 | 0 | 0 | 0 |
| **TOTAL** | | **1,001** | **101** | **0** | **29** |

29

# PROVIDER STATISTICAL AND REIMBURSEMENT SYSTEM

**Program ID:** REDESIGN
**Paid Dates:** 08/01/07 THRU 03/24/15
**Report Run Date:** 03/22/15
**Provider FYE:** 12/31
**Provider Number:** 675615 MERIDIAN CARE AT GRAYSON SQUARE

**PROVIDER SUMMARY REPORT**
**SNF – INPATIENT – PART B COST REIMBURSED**

**Page:** 1
**Report #:** OD44203
**Report Type:** 220

| | SERVICES FOR PERIOD 01/01/14 - 09/30/14 | | SERVICES FOR PERIOD 10/01/14 - 12/31/14 | | SERVICES FOR PERIOD No Data Requested | | SERVICES FOR PERIOD 01/01/15 - 12/31/15 | |
|---|---|---|---|---|---|---|---|---|

## STATISTIC SECTION

| | | | | |
|---|---|---|---|---|
| CLAIMS | 29 | 16 | | 4 |

## CHARGE SECTION

| REV CODE | DESCRIPTION | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES |
|---|---|---|---|---|---|---|---|---|---|
| 0424 | PHYS THERP/EVAL | 0 | $0.00 | 0 | $0.00 | | | 0 | $0.00 |
| 0430 | OCCUPATION THER | 0 | $0.00 | 0 | $0.00 | | | 0 | $0.00 |
| 0434 | OCCUP THERP/EVAL | 0 | $0.00 | 0 | $0.00 | | | 0 | $0.00 |
| 0440 | SPEECH PATHOL | 0 | $0.00 | 0 | $0.00 | | | 0 | $0.00 |
| | TOTAL COVERED CHARGES | 0 | $0.00 | 0 | $0.00 | | | 0 | $0.00 |

## REIMBURSEMENT SECTION

| | | | | |
|---|---|---|---|---|
| GROSS REIMBURSEMENT | $0.00 | $0.00 | | $0.00 |
| LESS | | | | |
| CASH DEDUCTIBLE | $0.00 | $0.00 | | $0.00 |
| BLOOD DEDUCTIBLE | $0.00 | $0.00 | | $0.00 |
| COINSURANCE | $0.00 | $0.00 | | $0.00 |
| NET MSP PAYMENTS | $0.00 | $0.00 | | $0.00 |
| SEQUESTRATION | $0.00 | $0.00 | $0.00 | $0.00 |
| REBILLING ADJUSTMENT | $0.00 | $0.00 | | $0.00 |
| NET REIMBURSEMENT | $0.00 | $0.00 | | $0.00 |

## ADDITIONAL INFORMATION SECTION

| | | | | |
|---|---|---|---|---|
| CLAIM INTEREST PAYMENTS | $0.00 | $0.00 | | $0.00 |

PROVIDER STATISTICAL AND REIMBURSEMENT SYSTEM

**Program ID:** REDESIGN
**Paid Dates:** 08/01/07  THRU  03/24/15
**Report Run Date:** 03/22/15
**Provider FYE:** 12/31
**Provider Number:** 675615  MERIDIAN CARE AT GRAYSON SQUARE

**PROVIDER SUMMARY REPORT**
**SNF – INPATIENT – FEE REIMBURSED**
**THESE ITEMS ARE NOT TO BE INCLUDED ON THE MEDICARE COST REPORT**

**Page:** 1
**Report #:** OD44203
**Report Type:** 225

| | | SERVICES FOR PERIOD 01/01/14 - 09/30/14 | | SERVICES FOR PERIOD 10/01/14 - 12/31/14 | | SERVICES FOR PERIOD No Data Requested | | SERVICES FOR PERIOD 01/01/15 - 12/31/15 |
|---|---|---|---|---|---|---|---|---|

## STATISTIC SECTION

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| CLAIMS | | | 32 | | 20 | | | 5 |

## CHARGE SECTION

| REV CODE | DESCRIPTION | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES |
|---|---|---|---|---|---|---|---|---|---|
| 0420 | PHYSICAL THERP | 292 | $9,115.74 | 347 | $11,089.36 | | | 62 | $1,978.34 |
| 0424 | PHYS THERP/EVAL | 11 | $801.68 | 10 | $730.00 | | | 1 | $72.70 |
| 0430 | OCCUPATION THER | 447 | $14,401.82 | 283 | $9,156.13 | | | 52 | $1,717.90 |
| 0434 | OCCUP THERP/EVAL | 9 | $733.77 | 6 | $489.18 | | | 1 | $81.57 |
| 0440 | SPEECH PATHOL | 357 | $19,473.35 | 3 | $264.24 | | | 3 | $249.88 |
| 0444 | SPEECH PATH/EVAL | 6 | $1,015.94 | 0 | $0.00 | | | 0 | $0.00 |
| | TOTAL COVERED CHARGES | 1,122 | $45,542.30 | 649 | $21,728.91 | | | 119 | $4,100.39 |

## REIMBURSEMENT SECTION

| | | | | | | |
|---|---|---|---|---|---|---|
| GROSS REIMBURSEMENT | | $40,431.44 | | $18,392.69 | | $3,470.69 |
| LESS | | | | | | |
| CASH DEDUCTIBLE | | $0.00 | | $0.00 | | $0.00 |
| BLOOD DEDUCTIBLE | | $0.00 | | $0.00 | | $0.00 |
| COINSURANCE | | $8,086.34 | | $3,678.87 | | $694.12 |
| NET MSP PAYMENTS | | $0.00 | | $0.00 | | $0.00 |
| SEQUESTRATION | | $648.23 | | $295.22 | $0.00 | $55.64 |
| REBILLING ADJUSTMENT | | $0.00 | | $0.00 | | $0.00 |
| NET REIMBURSEMENT | | $31,696.87 | | $14,418.60 | | $2,720.93 |

## ADDITIONAL INFORMATION SECTION

| | | | | | | |
|---|---|---|---|---|---|---|
| CLAIM INTEREST PAYMENTS | | $0.00 | | $0.00 | | $0.00 |
| DEVICE CREDIT | | $0.00 | | $0.00 | | $0.00 |

31

PROVIDER STATISTICAL AND REIMBURSEMENT SYSTEM

REPORT COVER PAGE FOR REQUEST: YLKX826-S-2352617

| Provider#-Report Type | Total # of Pages | Provider#-Report Type | Total # of Pages | Provider#-Report Type | Total # of Pages | Provider#-Report Type | Total # of Pages |
|---|---|---|---|---|---|---|---|
| 675796-210 | 3 | 675796-220 | 1 | 675796-222 | 1 | 675796-225 | 2 |
| 675796-230 | 1 | 675796-235 | 1 | | | | |

# PROVIDER STATISTICAL AND REIMBURSEMENT SYSTEM

**Program ID:** REDESIGN
**Paid Dates:** 08/01/07 THRU 03/30/15
**Report Run Date:** 03/28/15
**Provider FYE:** 12/31
**Provider Number:** 675796  RJ Meridian Care of Hebbronville Ltd

**PROVIDER SUMMARY REPORT**
**SNF – INPATIENT – PART A PPS**

**Page:** 1
**Report #:** OD44203
**Report Type:** 210

| | SERVICES FOR PERIOD 01/01/14 – 09/30/14 | SERVICES FOR PERIOD 10/01/14 - 12/31/14 | SERVICES FOR PERIOD 01/01/15 - 12/31/15 | SERVICES FOR PERIOD No Data Requested |
|---|---|---|---|---|

## STATISTIC SECTION

| | | | | |
|---|---|---|---|---|
| DISCHARGES | 23 | 3 | 9 | |
| MEDICARE DAYS | 1,121 | 445 | 411 | |
| CLAIMS | 67 | 25 | 27 | |

## CHARGE SECTION

**\*\*\* ACCOMMODATION CHARGES \*\*\***

| REV CODE | DESCRIPTION | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES |
|---|---|---|---|---|---|---|---|---|---|
| 0120 | ROOM-BOARD/SEMI | 1,121 | $196,175.00 | 445 | $122,375.00 | 411 | $113,025.00 | | |
| | *TOTAL ACCOMMODATIONS* | 1,121 | $196,175.00 | 445 | $122,375.00 | 411 | $113,025.00 | | |

**\*\*\* ANCILLARY CHARGES \*\*\***

| REV CODE | DESCRIPTION | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES |
|---|---|---|---|---|---|---|---|---|---|
| 0250 | PHARMACY | 46 | $134,522.49 | 17 | $29,256.90 | 18 | $55,799.13 | | |
| 0270 | MED-SUR SUPPLIES | 32 | $2,156.87 | 12 | $816.38 | 5 | $301.02 | | |
| 0274 | PROSTH/ORTH DEV | 228 | $4,822.20 | 79 | $1,674.09 | 149 | $3,933.99 | | |
| 0300 | LABORATORY or (LAB) | 15 | $3,920.43 | 9 | $1,303.03 | 8 | $1,949.25 | | |
| 0320 | DX X-RAY | 1 | $375.00 | 0 | $0.00 | 0 | $0.00 | | |
| 0420 | PHYSICAL THERP | 730 | $116,325.00 | 216 | $42,480.00 | 269 | $38,160.00 | | |
| 0424 | PHYS THERP/EVAL | 30 | $1,350.00 | 9 | $405.00 | 12 | $540.00 | | |
| 0430 | OCCUPATION THER | 660 | $111,555.00 | 212 | $41,265.00 | 236 | $37,170.00 | | |
| 0434 | OCCUP THERP/EVAL | 30 | $1,350.00 | 9 | $405.00 | 12 | $540.00 | | |
| 0440 | SPEECH PATHOL | 353 | $24,030.00 | 138 | $16,515.00 | 120 | $6,615.00 | | |
| 0444 | SPEECH PATH/EVAL | 17 | $1,125.00 | 10 | $630.00 | 8 | $405.00 | | |
| | *TOTAL ANCILLARY* | 2,142 | $401,531.99 | 711 | $134,750.40 | 837 | $145,413.39 | | |
| | **TOTAL COVERED CHARGES** | | $597,706.99 | | $257,125.40 | | $258,438.39 | | |

## REIMBURSEMENT SECTION

33

## PROVIDER STATISTICAL AND REIMBURSEMENT SYSTEM

**Program ID:** REDESIGN
**Paid Dates:** 08/01/07  THRU  03/30/15
**Report Run Date:** 03/28/15
**Provider FYE:** 12/31
**Provider Number:** 675796 RJ Meridian Care of Hebbronville Ltd

**PROVIDER SUMMARY REPORT**
**SNF - INPATIENT - PART A PPS**

**Page:** 2
**Report #:** OD44203
**Report Type:** 210

| | SERVICES FOR PERIOD 01/01/14 - 09/30/14 | SERVICES FOR PERIOD 10/01/14 - 12/31/14 | SERVICES FOR PERIOD 01/01/15 - 12/31/15 | SERVICES FOR PERIOD No Data Requested |
|---|---|---|---|---|
| **PAYMENT** | | | | |
| GROSS REIMBURSEMENT | $478,642.00 | $193,704.42 | $177,503.72 | |
| **LESS** | | | | |
| CASH DEDUCTIBLE | $0.00 | $0.00 | $0.00 | |
| BLOOD DEDUCTIBLE | $0.00 | $0.00 | $0.00 | |
| COINSURANCE | $108,680.00 | $58,216.00 | $37,957.50 | |
| NET MSP PAYMENTS | $0.00 | $0.00 | $0.00 | |
| SEQUESTRATION | $7,399.24 | $2,709.75 | $2,790.90 | |
| NET REIMBURSEMENT | $362,562.76 | $132,778.67 | $136,755.32 | |

### ADDITIONAL INFORMATION SECTION

| | | | | |
|---|---|---|---|---|
| CALCULATED NET REIMB FOR PIP | $0.00 | $0.00 | $0.00 | |
| ACTUAL CLAIM PAYMENTS FOR PIP | $0.00 | $0.00 | $0.00 | |
| CLAIM INTEREST PAYMENTS | $0.00 | $0.00 | $0.00 | |

The following schedule reflects the individual RUG utilization to assist in the completion of Worksheet S-7 of the Medicare Cost Report

| | | UNITS | UNITS | UNITS | UNITS |
|---|---|---|---|---|---|
| 0022 | CA1 | 0 | 0 | 14 | 0 |
| | CB1 | 1 | 0 | 0 | 0 |
| | CC1 | 5 | 0 | 0 | 0 |
| | CD1 | 5 | 0 | 0 | 0 |
| | HD1 | 1 | 0 | 0 | 0 |
| | LB1 | 1 | 0 | 0 | 0 |
| | LD1 | 31 | 8 | 1 | 0 |
| | LE1 | 23 | 0 | 19 | 0 |

PROVIDER STATISTICAL AND REIMBURSEMENT SYSTEM

**Program ID:** REDESIGN
**Paid Dates:** 08/01/07 THRU 03/30/15
**Report Run Date:** 03/28/15
**Provider FYE:** 12/31
**Provider Number:** 675796 RJ Meridian Care of Hebbronville Ltd

**PROVIDER SUMMARY REPORT**
**SNF – INPATIENT – PART A PPS**

**Page:** 3
**Report #:** OD44203
**Report Type:** 210

| | | SERVICES FOR PERIOD<br>01/01/14 - 09/30/14 | SERVICES FOR PERIOD<br>10/01/14 - 12/31/14 | SERVICES FOR PERIOD<br>01/01/15 - 12/31/15 | SERVICES FOR PERIOD<br>No Data Requested |
|---|---|---|---|---|---|
| | | UNITS | UNITS | UNITS | UNITS |
| 0022 | PC1 | 6 | 0 | 0 | 0 |
| | PE1 | 12 | 0 | 0 | 0 |
| | RHB | 32 | 0 | 0 | 0 |
| | RHC | 112 | 25 | 0 | 0 |
| | RMC | 0 | 0 | 41 | 0 |
| | RUA | 212 | 81 | 0 | 0 |
| | RUB | 53 | 30 | 88 | 0 |
| | RUC | 295 | 32 | 48 | 0 |
| | RVA | 57 | 14 | 11 | 0 |
| | RVB | 186 | 92 | 74 | 0 |
| | RVC | 89 | 163 | 115 | 0 |
| TOTAL | | 1,121 | 445 | 411 | 0 |

35

# P R O V I D E R   S T A T I S T I C A L   A N D   R E I M B U R S E M E N T   S Y S T E M

**Program ID:** REDESIGN
**Paid Dates:** 08/01/07 THRU 03/30/15
**Report Run Date:** 03/28/15
**Provider FYE:** 12/31
**Provider Number:** 675796 RJ Meridian Care of Hebbronville Ltd

**PROVIDER SUMMARY REPORT**
**SNF – INPATIENT – PART B COST REIMBURSED**

**Page:** 1
**Report #:** OD44203
**Report Type:** 220

| | SERVICES FOR PERIOD<br>01/01/14 - 09/30/14 | SERVICES FOR PERIOD<br>10/01/14 - 12/31/14 | SERVICES FOR PERIOD<br>01/01/15 - 12/31/15 | SERVICES FOR PERIOD<br>No Data Requested |
|---|---|---|---|---|

## STATISTIC SECTION

| CLAIMS | 87 | 17 | 20 | |
|---|---|---|---|---|

## CHARGE SECTION

| REV CODE | DESCRIPTION | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES |
|---|---|---|---|---|---|---|---|---|---|
| 0420 | PHYSICAL THERP | 0 | $0.00 | 0 | $0.00 | 0 | $0.00 | | |
| 0424 | PHYS THERP/EVAL | 0 | $0.00 | 0 | $0.00 | 0 | $0.00 | | |
| 0430 | OCCUPATION THER | 0 | $0.00 | 0 | $0.00 | 0 | $0.00 | | |
| 0434 | OCCUP THERP/EVAL | 0 | $0.00 | 0 | $0.00 | 0 | $0.00 | | |
| 0440 | SPEECH PATHOL | 0 | $0.00 | 0 | $0.00 | 0 | $0.00 | | |
| 0444 | SPEECH PATH/EVAL | 0 | $0.00 | 0 | $0.00 | 0 | $0.00 | | |
| | *TOTAL COVERED CHARGES* | **0** | **$0.00** | **0** | **$0.00** | **0** | **$0.00** | | |

## REIMBURSEMENT SECTION

| | | | |
|---|---|---|---|
| GROSS REIMBURSEMENT | $0.00 | $0.00 | $0.00 |
| LESS | | | |
| CASH DEDUCTIBLE | $0.00 | $0.00 | $0.00 |
| BLOOD DEDUCTIBLE | $0.00 | $0.00 | $0.00 |
| COINSURANCE | $0.00 | $0.00 | $0.00 |
| NET MSP PAYMENTS | $0.00 | $0.00 | $0.00 |
| SEQUESTRATION | $0.00 | $0.00 | $0.00 | $0.00 |
| REBILLING ADJUSTMENT | $0.00 | $0.00 | $0.00 |
| NET REIMBURSEMENT | **$0.00** | **$0.00** | **$0.00** |

## ADDITIONAL INFORMATION SECTION

| CLAIM INTEREST PAYMENTS | $10.25 | $0.00 | $0.00 |
|---|---|---|---|

# PROVIDER STATISTICAL AND REIMBURSEMENT SYSTEM

**Program ID:** REDESIGN
**Paid Dates:** 08/01/07 THRU 03/30/15
**Report Run Date:** 03/28/15
**Provider FYE:** 12/31
**Provider Number:** 675796 RJ Meridian Care of Hebbronville Ltd

**PROVIDER SUMMARY REPORT**
**SNF – INPATIENT – VACCINE – PART B 100% REASONABLE COST**

**Page:** 1
**Report #:** OD44203
**Report Type:** 222

| | SERVICES FOR PERIOD 01/01/14 - 09/30/14 | | SERVICES FOR PERIOD 10/01/14 - 12/31/14 | | SERVICES FOR PERIOD 01/01/15 - 12/31/15 | | SERVICES FOR PERIOD No Data Requested | |
|---|---|---|---|---|---|---|---|---|

## STATISTIC SECTION

| CLAIMS | 38 | | 0 | | 0 | | |
|---|---|---|---|---|---|---|---|

## CHARGE SECTION

| REV CODE | DESCRIPTION | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES |
|---|---|---|---|---|---|---|---|---|---|
| 0636 | DRUGS/DETAIL CODE | 38 | $2,330.00 | 0 | $0.00 | 0 | $0.00 | | |
| | *TOTAL COVERED CHARGES* | 38 | $2,330.00 | 0 | $0.00 | 0 | $0.00 | | |

## REIMBURSEMENT SECTION

| | | | | |
|---|---|---|---|---|
| GROSS REIMBURSEMENT | $1,677.60 | $0.00 | $0.00 | |
| LESS | | | | |
| CASH DEDUCTIBLE | $0.00 | $0.00 | $0.00 | |
| BLOOD DEDUCTIBLE | $0.00 | $0.00 | $0.00 | |
| COINSURANCE | $0.00 | $0.00 | $0.00 | |
| NET MSP PAYMENTS | $0.00 | $0.00 | $0.00 | |
| SEQUESTRATION | $33.50 | $0.00 | $0.00 | $0.00 |
| REBILLING ADJUSTMENT | $0.00 | $0.00 | $0.00 | |
| NET REIMBURSEMENT | $1,644.10 | $0.00 | $0.00 | |

## ADDITIONAL INFORMATION SECTION

| CLAIM INTEREST PAYMENTS | $0.00 | $0.00 | $0.00 | |
|---|---|---|---|---|

PROVIDER STATISTICAL AND REIMBURSEMENT SYSTEM

**Program ID:** REDESIGN
**Paid Dates:** 08/01/07 THRU 03/30/15
**Report Run Date:** 03/28/15
**Provider FYE:** 12/31
**Provider Number:** 675796 RJ Meridian Care of Hebbronville Ltd

**PROVIDER SUMMARY REPORT**
**SNF - INPATIENT – FEE REIMBURSED**
**THESE ITEMS ARE NOT TO BE INCLUDED ON THE MEDICARE COST REPORT**

**Page:** 1
**Report #:** OD44203
**Report Type:** 225

| | | SERVICES FOR PERIOD 01/01/14 - 09/30/14 | | SERVICES FOR PERIOD 10/01/14 - 12/31/14 | | SERVICES FOR PERIOD 01/01/15 - 12/31/15 | | SERVICES FOR PERIOD No Data Requested |
|---|---|---|---|---|---|---|---|---|

**STATISTIC SECTION**

| CLAIMS | | 302 | | 71 | | 55 | | |
|---|---|---|---|---|---|---|---|---|

**CHARGE SECTION**

| REV CODE | DESCRIPTION | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES |
|---|---|---|---|---|---|---|---|---|---|
| 0274 | PROSTH/ORTH DEV | 17,469 | $123,173.37 | 5,586 | $39,465.90 | 3,414 | $24,197.58 | | |
| 0420 | PHYSICAL THERP | 2,148 | $67,781.10 | 254 | $8,113.59 | 219 | $7,083.95 | | |
| 0424 | PHYS THERP/EVAL | 26 | $1,898.00 | 1 | $73.00 | 6 | $436.20 | | |
| 0430 | OCCUPATION THER | 1,962 | $61,710.78 | 312 | $9,948.25 | 186 | $5,938.62 | | |
| 0434 | OCCUP THERP/EVAL | 24 | $1,956.72 | 3 | $244.59 | 5 | $409.35 | | |
| 0440 | SPEECH PATHOL | 539 | $28,723.59 | 131 | $9,151.07 | 93 | $7,377.87 | | |
| 0444 | SPEECH PATH/EVAL | 13 | $2,409.03 | 4 | $573.24 | 1 | $182.40 | | |
| 0771 | VACCINE ADMIN | 38 | $950.00 | 0 | $0.00 | 0 | $0.00 | | |
| | TOTAL COVERED CHARGES | 22,219 | $288,602.59 | 6,291 | $67,569.64 | 3,924 | $45,625.97 | | |

**REIMBURSEMENT SECTION**

| GROSS REIMBURSEMENT | $263,459.56 | $63,865.56 | $42,977.80 | |
|---|---|---|---|---|
| LESS | | | | |
| CASH DEDUCTIBLE | $634.10 | $0.00 | $502.74 | |
| BLOOD DEDUCTIBLE | $0.00 | $0.00 | $0.00 | |
| COINSURANCE | $52,388.80 | $12,772.83 | $8,494.10 | |
| NET MSP PAYMENTS | $0.00 | $0.00 | $0.00 | |
| SEQUESTRATION | $4,220.62 | $1,024.29 | $679.12 | $0.00 |
| REBILLING ADJUSTMENT | $0.00 | $0.00 | $0.00 | |
| NET REIMBURSEMENT | $206,216.04 | $50,068.44 | $33,301.84 | |

**ADDITIONAL INFORMATION SECTION**

| CLAIM INTEREST PAYMENTS | $0.20 | $0.00 | $0.00 | |
|---|---|---|---|---|

# PROVIDER STATISTICAL AND REIMBURSEMENT SYSTEM

**Program ID:** REDESIGN
**Paid Dates:** 08/01/07  THRU  03/30/15
**Report Run Date:** 03/28/15
**Provider FYE:** 12/31
**Provider Number:** 675796  RJ Meridian Care of Hebbronville Ltd

**PROVIDER SUMMARY REPORT**
**SNF - INPATIENT - FEE REIMBURSED**
**THESE ITEMS ARE NOT TO BE INCLUDED ON THE MEDICARE COST REPORT**

**Page:** 2
**Report #:** OD44203
**Report Type:** 225

| | SERVICES FOR PERIOD 01/01/14 - 09/30/14 | SERVICES FOR PERIOD 10/01/14 - 12/31/14 | SERVICES FOR PERIOD 01/01/15 - 12/31/15 | SERVICES FOR PERIOD No Data Requested |
|---|---|---|---|---|
| DEVICE CREDIT | $0.00 | $0.00 | $0.00 | |

# PROVIDER STATISTICAL AND REIMBURSEMENT SYSTEM

**Program ID:** REDESIGN
**Paid Dates:** 08/01/07 THRU 03/30/15
**Report Run Date:** 03/28/15
**Provider FYE:** 12/31
**Provider Number:** 675796 RJ Meridian Care of Hebbronville Ltd

**PROVIDER SUMMARY REPORT**
**SNF – OUTPATIENT – COST REIMBURSED**

**Page:** 1
**Report #:** OD44203
**Report Type:** 230

| | SERVICES FOR PERIOD 01/01/14 - 09/30/14 | | SERVICES FOR PERIOD 10/01/14 - 12/31/14 | | SERVICES FOR PERIOD 01/01/15 - 12/31/15 | | SERVICES FOR PERIOD No Data Requested | |
|---|---|---|---|---|---|---|---|---|
| **STATISTIC SECTION** | | | | | | | | |
| CLAIMS | 6 | | 0 | | 0 | | | |

**CHARGE SECTION**

| REV CODE   DESCRIPTION | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES |
|---|---|---|---|---|---|---|---|---|
| 0424     PHYS THERP/EVAL | 0 | $0.00 | 0 | $0.00 | 0 | $0.00 | | |
| *TOTAL COVERED CHARGES* | 0 | $0.00 | 0 | $0.00 | 0 | $0.00 | | |

**REIMBURSEMENT SECTION**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GROSS REIMBURSEMENT | | $0.00 | | $0.00 | | $0.00 | | |
| LESS | | | | | | | | |
| CASH DEDUCTIBLE | | $0.00 | | $0.00 | | $0.00 | | |
| BLOOD DEDUCTIBLE | | $0.00 | | $0.00 | | $0.00 | | |
| COINSURANCE | | $0.00 | | $0.00 | | $0.00 | | |
| NET MSP PAYMENTS | | $0.00 | | $0.00 | | $0.00 | | |
| SEQUESTRATION | | $0.00 | | $0.00 | | $0.00 | | $0.00 |
| REBILLING ADJUSTMENT | | $0.00 | | $0.00 | | $0.00 | | |
| NET REIMBURSEMENT | | $0.00 | | $0.00 | | $0.00 | | |

**ADDITIONAL INFORMATION SECTION**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| CLAIM INTEREST PAYMENTS | | $0.00 | | $0.00 | | $0.00 | | |

PROVIDER STATISTICAL AND REIMBURSEMENT SYSTEM

**Program ID:** REDESIGN
**Paid Dates:** 08/01/07 THRU 03/30/15
**Report Run Date:** 03/28/15
**Provider FYE:** 12/31
**Provider Number:** 675796 RJ Meridian Care of Hebbronville Ltd

**PROVIDER SUMMARY REPORT**
**SNF – OUTPATIENT - FEE REIMBURSED**
**THESE ITEMS ARE NOT TO BE INCLUDED ON THE MEDICARE COST REPORT**

**Page:** 1
**Report #:** OD44203
**Report Type:** 235

| | SERVICES FOR PERIOD 01/01/14 – 09/30/14 | | SERVICES FOR PERIOD 10/01/14 - 12/31/14 | | SERVICES FOR PERIOD 01/01/15 - 12/31/15 | | SERVICES FOR PERIOD No Data Requested | |
|---|---|---|---|---|---|---|---|---|

## STATISTIC SECTION

| CLAIMS | 10 | | 0 | | 0 | | | |
|---|---|---|---|---|---|---|---|---|

## CHARGE SECTION

| REV CODE | DESCRIPTION | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES |
|---|---|---|---|---|---|---|---|---|---|
| 0420 | PHYSICAL THERP | 264 | $8,013.54 | 0 | $0.00 | 0 | $0.00 | | |
| 0424 | PHYS THERP/EVAL | 4 | $292.00 | 0 | $0.00 | 0 | $0.00 | | |
| | TOTAL COVERED CHARGES | 268 | $8,305.54 | 0 | $0.00 | 0 | $0.00 | | |

## REIMBURSEMENT SECTION

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GROSS REIMBURSEMENT | $6,866.68 | | $0.00 | | $0.00 | | | |
| LESS | | | | | | | | |
| CASH DEDUCTIBLE | $0.00 | | $0.00 | | $0.00 | | | |
| BLOOD DEDUCTIBLE | $0.00 | | $0.00 | | $0.00 | | | |
| COINSURANCE | $1,373.39 | | $0.00 | | $0.00 | | | |
| NET MSP PAYMENTS | $0.00 | | $0.00 | | $0.00 | | | |
| SEQUESTRATION | $109.94 | | $0.00 | | $0.00 | | $0.00 | |
| REBILLING ADJUSTMENT | $0.00 | | $0.00 | | $0.00 | | | |
| NET REIMBURSEMENT | $5,383.35 | | $0.00 | | $0.00 | | | |

## ADDITIONAL INFORMATION SECTION

| CLAIM INTEREST PAYMENTS | $0.00 | | $0.00 | | $0.00 | | | |
|---|---|---|---|---|---|---|---|---|
| DEVICE CREDIT | $0.00 | | $0.00 | | $0.00 | | | |

PROVIDER STATISTICAL AND REIMBURSEMENT SYSTEM

**REPORT COVER PAGE FOR REQUEST: YLKX826-S-2352619**

| Provider#-Report Type | Total # of Pages | Provider#-Report Type | Total # of Pages | Provider#-Report Type | Total # of Pages | Provider#-Report Type | Total # of Pages |
|---|---|---|---|---|---|---|---|
| 676064-210 | 3 | 676064-220 | 1 | 676064-225 | 1 | 676064-230 | 1 |
| 676064-235 | 1 | | | | | | |

42

# PROVIDER STATISTICAL AND REIMBURSEMENT SYSTEM

**Program ID:** REDESIGN
**Paid Dates:** 08/01/07 THRU 03/30/15
**Report Run Date:** 03/28/15
**Provider FYE:** 12/31
**Provider Number:** 676064 Spanish Meadows of Katy Ltd

**PROVIDER SUMMARY REPORT**
**SNF - INPATIENT - PART A PPS**

**Page:** 1
**Report #:** OD44203
**Report Type:** 210

| | SERVICES FOR PERIOD 01/01/14 - 09/30/14 | SERVICES FOR PERIOD 10/01/14 - 12/31/14 | SERVICES FOR PERIOD 01/01/15 - 12/31/15 | SERVICES FOR PERIOD No Data Requested |
|---|---|---|---|---|

## STATISTIC SECTION

| | | | | |
|---|---|---|---|---|
| DISCHARGES | 102 | 38 | 14 | |
| MEDICARE DAYS | 5,019 | 1,989 | 979 | |
| CLAIMS | 294 | 108 | 60 | |

## CHARGE SECTION

**\*\*\* ACCOMMODATION CHARGES \*\*\***

| REV CODE | DESCRIPTION | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES |
|---|---|---|---|---|---|---|---|---|---|
| 0110 | ROOM-BOARD/PVT | 200 | $70,000.00 | 2 | $850.00 | 6 | $2,300.00 | | |
| 0120 | ROOM-BOARD/SEMI | 4,819 | $1,201,675.00 | 1,987 | $582,975.00 | 973 | $283,225.00 | | |
| | *TOTAL ACCOMMODATIONS* | 5,019 | $1,271,675.00 | 1,989 | $583,825.00 | 979 | $285,525.00 | | |

**\*\*\* ANCILLARY CHARGES \*\*\***

| REV CODE | DESCRIPTION | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES |
|---|---|---|---|---|---|---|---|---|---|
| 0250 | PHARMACY | 301 | $456,496.06 | 127 | $199,374.57 | 59 | $79,771.68 | | |
| 0260 | IV THERAPY | 76 | $121,255.62 | 11 | $12,726.90 | 12 | $18,907.20 | | |
| 0270 | MED-SUR SUPPLIES | 526 | $287,762.54 | 171 | $95,606.07 | 46 | $23,935.47 | | |
| 0274 | PROSTH/ORTH DEV | 0 | $0.00 | 2 | $67.81 | 0 | $0.00 | | |
| 0300 | LABORATORY or (LAB) | 96 | $32,277.70 | 17 | $3,455.73 | 12 | $1,597.81 | | |
| 0320 | DX X-RAY | 174 | $45,149.79 | 71 | $18,474.67 | 30 | $9,197.83 | | |
| 0410 | RESPIRATORY SVC | 417 | $461,460.00 | 143 | $155,018.97 | 43 | $62,460.00 | | |
| 0420 | PHYSICAL THERP | 3,051 | $476,460.08 | 1,164 | $181,845.04 | 542 | $77,265.02 | | |
| 0430 | OCCUPATION THER | 3,078 | $514,215.08 | 1,135 | $185,355.04 | 523 | $81,360.02 | | |
| 0440 | SPEECH PATHOL | 2,208 | $194,715.05 | 816 | $69,795.02 | 463 | $40,500.01 | | |
| 0946 | COMPLX MED EQUIP-ROUT | 264 | $304,879.76 | 108 | $125,376.77 | 48 | $66,522.59 | | |
| | *TOTAL ANCILLARY* | 10,191 | $2,894,671.68 | 3,765 | $1,047,096.59 | 1,778 | $461,517.63 | | |
| | **TOTAL COVERED CHARGES** | | $4,166,346.68 | | $1,630,921.59 | | $747,042.63 | | |

43

# PROVIDER STATISTICAL AND REIMBURSEMENT SYSTEM

**Program ID:** REDESIGN
**Paid Dates:** 08/01/07 THRU 03/30/15
**Report Run Date:** 03/28/15
**Provider FYE:** 12/31
**Provider Number:** 676064 Spanish Meadows of Katy Ltd

**PROVIDER SUMMARY REPORT**
**SNF – INPATIENT – PART A PPS**

**Page:** 2
**Report #:** OD44203
**Report Type:** 210

| | SERVICES FOR PERIOD 01/01/14 – 09/30/14 | SERVICES FOR PERIOD 10/01/14 – 12/31/14 | SERVICES FOR PERIOD 01/01/15 – 12/31/15 | SERVICES FOR PERIOD No Data Requested |
|---|---|---|---|---|
| **REIMBURSEMENT SECTION** | | | | |
| **PAYMENT** | | | | |
| GROSS REIMBURSEMENT | $3,321,638.60 | $1,274,404.79 | $620,313.64 | |
| LESS | | | | |
| CASH DEDUCTIBLE | $0.00 | $0.00 | $0.00 | |
| BLOOD DEDUCTIBLE | $0.00 | $0.00 | $0.00 | |
| COINSURANCE | $559,816.00 | $228,912.00 | $102,532.50 | |
| NET MSP PAYMENTS | $0.00 | $0.00 | $0.00 | |
| SEQUESTRATION | $55,236.41 | $20,909.84 | $10,355.62 | |
| NET REIMBURSEMENT | $2,706,586.19 | $1,024,582.95 | $507,425.52 | |

## ADDITIONAL INFORMATION SECTION

| | | | | |
|---|---|---|---|---|
| CALCULATED NET REIMB FOR PIP | $0.00 | $0.00 | $0.00 | |
| ACTUAL CLAIM PAYMENTS FOR PIP | $0.00 | $0.00 | $0.00 | |
| CLAIM INTEREST PAYMENTS | $38.30 | $0.00 | $0.00 | |

The following schedule reflects the individual RUG utilization to assist in the completion of Worksheet S-7 of the Medicare Cost Report

| | | UNITS | UNITS | UNITS | UNITS |
|---|---|---|---|---|---|
| 0022 | AAA | 1 | 0 | 0 | 0 |
| | CB1 | 5 | 0 | 0 | 0 |
| | CC1 | 28 | 0 | 0 | 0 |
| | CD1 | 0 | 7 | 0 | 0 |
| | ES2 | 88 | 69 | 75 | 0 |
| | ES3 | 439 | 196 | 74 | 0 |

# PROVIDER STATISTICAL AND REIMBURSEMENT SYSTEM

**Program ID:** REDESIGN
**Paid Dates:** 08/01/07 THRU 03/30/15
**Report Run Date:** 03/28/15
**Provider FYE:** 12/31
**Provider Number:** 676064 Spanish Meadows of Katy Ltd

**PROVIDER SUMMARY REPORT**
**SNF – INPATIENT – PART A PPS**

**Page:** 3
**Report #:** OD44203
**Report Type:** 210

| | | SERVICES FOR PERIOD 01/01/14 – 09/30/14 | SERVICES FOR PERIOD 10/01/14 – 12/31/14 | SERVICES FOR PERIOD 01/01/15 - 12/31/15 | SERVICES FOR PERIOD No Data Requested |
|---|---|---|---|---|---|
| | | UNITS | UNITS | UNITS | UNITS |
| 0022 | HD1 | 5 | 14 | 0 | 0 |
| | HE1 | 6 | 0 | 0 | 0 |
| | LB1 | 0 | 0 | 3 | 0 |
| | LC1 | 35 | 3 | 0 | 0 |
| | LD1 | 14 | 0 | 0 | 0 |
| | LE1 | 0 | 41 | 59 | 0 |
| | PB1 | 0 | 1 | 5 | 0 |
| | PC1 | 12 | 0 | 0 | 0 |
| | RHB | 6 | 0 | 0 | 0 |
| | RMB | 5 | 0 | 0 | 0 |
| | RUA | 414 | 353 | 64 | 0 |
| | RUB | 788 | 237 | 157 | 0 |
| | RUC | 330 | 123 | 78 | 0 |
| | RUL | 325 | 35 | 7 | 0 |
| | RUX | 2,292 | 833 | 382 | 0 |
| | RVA | 17 | 6 | 0 | 0 |
| | RVB | 81 | 10 | 6 | 0 |
| | RVC | 34 | 61 | 43 | 0 |
| | RVL | 14 | 0 | 0 | 0 |
| | RVX | 80 | 0 | 26 | 0 |
| *TOTAL* | | **5,019** | **1,989** | **979** | **0** |

# PROVIDER STATISTICAL AND REIMBURSEMENT SYSTEM

**Program ID:** REDESIGN
**Paid Dates:** 08/01/07 THRU 03/30/15
**Report Run Date:** 03/28/15
**Provider FYE:** 12/31
**Provider Number:** 676064 Spanish Meadows of Katy Ltd

**PROVIDER SUMMARY REPORT**
**SNF – INPATIENT – PART B COST REIMBURSED**

**Page:** 1
**Report #:** OD44203
**Report Type:** 220

| | SERVICES FOR PERIOD<br>01/01/14 - 09/30/14 | | SERVICES FOR PERIOD<br>10/01/14 - 12/31/14 | | SERVICES FOR PERIOD<br>01/01/15 - 12/31/15 | | SERVICES FOR PERIOD<br>No Data Requested | |
|---|---|---|---|---|---|---|---|---|

## STATISTIC SECTION

| CLAIMS | 111 | 24 | 37 | |
|---|---|---|---|---|

## CHARGE SECTION

| REV CODE | DESCRIPTION | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES |
|---|---|---|---|---|---|---|---|---|---|
| 0424 | PHYS THERP/EVAL | 0 | $0.00 | 0 | $0.00 | 0 | $0.00 | | |
| 0434 | OCCUP THERP/EVAL | 0 | $0.00 | 0 | $0.00 | 0 | $0.00 | | |
| 0440 | SPEECH PATHOL | 0 | $0.00 | 0 | $0.00 | 0 | $0.00 | | |
| 0444 | SPEECH PATH/EVAL | 0 | $0.00 | 0 | $0.00 | 0 | $0.00 | | |
| | *TOTAL COVERED CHARGES* | **0** | **$0.00** | **0** | **$0.00** | **0** | **$0.00** | | |

## REIMBURSEMENT SECTION

| | | | | |
|---|---|---|---|---|
| GROSS REIMBURSEMENT | $0.00 | $0.00 | $0.00 | |
| LESS | | | | |
| CASH DEDUCTIBLE | $0.00 | $0.00 | $0.00 | |
| BLOOD DEDUCTIBLE | $0.00 | $0.00 | $0.00 | |
| COINSURANCE | $0.00 | $0.00 | $0.00 | |
| NET MSP PAYMENTS | $0.00 | $0.00 | $0.00 | |
| SEQUESTRATION | $0.00 | $0.00 | $0.00 | $0.00 |
| REBILLING ADJUSTMENT | $0.00 | $0.00 | $0.00 | |
| NET REIMBURSEMENT | **$0.00** | **$0.00** | **$0.00** | |

## ADDITIONAL INFORMATION SECTION

| CLAIM INTEREST PAYMENTS | $1.12 | $0.00 | $0.00 | |
|---|---|---|---|---|

P R O V I D E R   S T A T I S T I C A L   A N D   R E I M B U R S E M E N T   S Y S T E M

**Program ID:** REDESIGN
**Paid Dates:** 08/01/07 THRU 03/30/15
**Report Run Date:** 03/28/15
**Provider FYE:** 12/31
**Provider Number:** 676064 Spanish Meadows of Katy Ltd

**PROVIDER SUMMARY REPORT**
**SNF – INPATIENT – FEE REIMBURSED**
**THESE ITEMS ARE NOT TO BE INCLUDED ON THE MEDICARE COST REPORT**

**Page:** 1
**Report #:** OD44203
**Report Type:** 225

| | SERVICES FOR PERIOD 01/01/14 - 09/30/14 | | SERVICES FOR PERIOD 10/01/14 - 12/31/14 | | SERVICES FOR PERIOD 01/01/15 - 12/31/15 | | SERVICES FOR PERIOD No Data Requested | |
|---|---|---|---|---|---|---|---|---|

## STATISTIC SECTION

| CLAIMS | | 112 | | 24 | | 38 | | |
|---|---|---|---|---|---|---|---|---|

## CHARGE SECTION

| REV CODE | DESCRIPTION | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES |
|---|---|---|---|---|---|---|---|---|---|
| 0420 | PHYSICAL THERP | 1,532 | $48,606.38 | 606 | $19,272.48 | 631 | $20,336.03 | | |
| 0424 | PHYS THERP/EVAL | 35 | $2,555.00 | 7 | $511.00 | 11 | $799.70 | | |
| 0430 | OCCUPATION THER | 2,092 | $67,542.08 | 685 | $22,298.86 | 1,095 | $35,414.35 | | |
| 0434 | OCCUP THERP/EVAL | 38 | $3,098.14 | 6 | $489.18 | 11 | $900.57 | | |
| 0440 | SPEECH PATHOL | 566 | $40,427.01 | 83 | $6,752.40 | 229 | $14,424.03 | | |
| 0444 | SPEECH PATH/EVAL | 9 | $1,667.79 | 1 | $185.31 | 5 | $912.00 | | |
| | *TOTAL COVERED CHARGES* | 4,272 | $163,896.40 | 1,388 | $49,509.23 | 1,982 | $72,786.68 | | |

## REIMBURSEMENT SECTION

| GROSS REIMBURSEMENT | | $140,073.00 | | $41,250.78 | | $60,882.04 | | |
|---|---|---|---|---|---|---|---|---|
| LESS | | | | | | | | |
| CASH DEDUCTIBLE | | $0.00 | | $0.00 | | $182.21 | | |
| BLOOD DEDUCTIBLE | | $0.00 | | $0.00 | | $0.00 | | |
| COINSURANCE | | $28,015.15 | | $8,250.43 | | $12,140.55 | | |
| NET MSP PAYMENTS | | $0.00 | | $0.00 | | $0.00 | | |
| SEQUESTRATION | | $2,244.09 | | $661.30 | | $972.00 | | $0.00 |
| REBILLING ADJUSTMENT | | $0.00 | | $0.00 | | $0.00 | | |
| NET REIMBURSEMENT | | $109,813.76 | | $32,339.05 | | $47,587.28 | | |

## ADDITIONAL INFORMATION SECTION

| CLAIM INTEREST PAYMENTS | | $0.00 | | $0.00 | | $0.00 | | |
|---|---|---|---|---|---|---|---|---|
| DEVICE CREDIT | | $0.00 | | $0.00 | | $0.00 | | |

47

# PROVIDER STATISTICAL AND REIMBURSEMENT SYSTEM

**Program ID:** REDESIGN
**Paid Dates:** 08/01/07  THRU  03/30/15
**Report Run Date:** 03/28/15
**Provider FYE:** 12/31
**Provider Number:** 676064 Spanish Meadows of Katy Ltd

**PROVIDER SUMMARY REPORT**
**SNF – OUTPATIENT – COST REIMBURSED**

**Page:** 1
**Report #:** OD44203
**Report Type:** 230

| | SERVICES FOR PERIOD 01/01/14 – 09/30/14 | | SERVICES FOR PERIOD 10/01/14 - 12/31/14 | | SERVICES FOR PERIOD 01/01/15 - 12/31/15 | | SERVICES FOR PERIOD No Data Requested | |
|---|---|---|---|---|---|---|---|---|

## STATISTIC SECTION

| CLAIMS | | 1 | | 2 | | 1 | | |
|---|---|---|---|---|---|---|---|---|

## CHARGE SECTION

| REV CODE | DESCRIPTION | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES |
|---|---|---|---|---|---|---|---|---|---|
| 0424 | PHYS THERP/EVAL | 0 | $0.00 | 0 | $0.00 | 0 | $0.00 | | |
| | *TOTAL COVERED CHARGES* | 0 | $0.00 | 0 | $0.00 | 0 | $0.00 | | |

## REIMBURSEMENT SECTION

| | Period 1 | Period 2 | Period 3 | Period 4 |
|---|---|---|---|---|
| GROSS REIMBURSEMENT | $0.00 | $0.00 | $0.00 | |
| LESS | | | | |
| CASH DEDUCTIBLE | $0.00 | $0.00 | $0.00 | |
| BLOOD DEDUCTIBLE | $0.00 | $0.00 | $0.00 | |
| COINSURANCE | $0.00 | $0.00 | $0.00 | |
| NET MSP PAYMENTS | $0.00 | $0.00 | $0.00 | |
| SEQUESTRATION | $0.00 | $0.00 | $0.00 | $0.00 |
| REBILLING ADJUSTMENT | $0.00 | $0.00 | $0.00 | |
| NET REIMBURSEMENT | $0.00 | $0.00 | $0.00 | |

## ADDITIONAL INFORMATION SECTION

| CLAIM INTEREST PAYMENTS | $0.00 | $0.00 | $0.00 | |
|---|---|---|---|---|

Mar 28, 2015

10:27:31 AM

48

### P R O V I D E R   S T A T I S T I C A L   A N D   R E I M B U R S E M E N T   S Y S T E M

**Program ID:** REDESIGN
**Paid Dates:** 08/01/07 THRU 03/30/15
**Report Run Date:** 03/28/15
**Provider FYE:** 12/31
**Provider Number:** 676064 Spanish Meadows of Katy Ltd

**PROVIDER SUMMARY REPORT**
**SNF – OUTPATIENT – FEE REIMBURSED**
**THESE ITEMS ARE NOT TO BE INCLUDED ON THE MEDICARE COST REPORT**

**Page:** 1
**Report #:** OD44203
**Report Type:** 235

| | SERVICES FOR PERIOD 01/01/14 - 09/30/14 | | SERVICES FOR PERIOD 10/01/14 - 12/31/14 | | SERVICES FOR PERIOD 01/01/15 - 12/31/15 | | SERVICES FOR PERIOD No Data Requested | |
|---|---|---|---|---|---|---|---|---|

#### STATISTIC SECTION

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| CLAIMS | | 2 | | 3 | | 1 | | |

#### CHARGE SECTION

| REV CODE | DESCRIPTION | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES |
|---|---|---|---|---|---|---|---|---|---|
| 0420 | PHYSICAL THERP | 13 | $401.05 | 38 | $1,205.05 | 12 | $371.31 | | |
| 0424 | PHYS THERP/EVAL | 1 | $73.00 | 1 | $73.00 | 0 | $0.00 | | |
| | TOTAL COVERED CHARGES | 14 | $474.05 | 39 | $1,278.05 | 12 | $371.31 | | |

#### REIMBURSEMENT SECTION

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GROSS REIMBURSEMENT | | $416.29 | | $1,093.72 | | $305.21 | | |
| LESS | | | | | | | | |
| CASH DEDUCTIBLE | | $0.00 | | $0.00 | | $0.00 | | |
| BLOOD DEDUCTIBLE | | $0.00 | | $0.00 | | $0.00 | | |
| COINSURANCE | | $83.27 | | $218.79 | | $61.05 | | |
| NET MSP PAYMENTS | | $0.00 | | $0.00 | | $0.00 | | |
| SEQUESTRATION | | $6.66 | | $17.48 | | $4.88 | | $0.00 |
| REBILLING ADJUSTMENT | | $0.00 | | $0.00 | | $0.00 | | |
| NET REIMBURSEMENT | | $326.36 | | $857.45 | | $239.28 | | |

#### ADDITIONAL INFORMATION SECTION

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| CLAIM INTEREST PAYMENTS | | $0.00 | | $0.00 | | $0.00 | | |
| DEVICE CREDIT | | $0.00 | | $0.00 | | $0.00 | | |

P R O V I D E R   S T A T I S T I C A L   A N D   R E I M B U R S E M E N T   S Y S T E M

**REPORT COVER PAGE FOR REQUEST: YLKX826-S-2352618**

| Provider#-Report Type | Total # of Pages | Provider#-Report Type | Total # of Pages | Provider#-Report Type | Total # of Pages | Provider#-Report Type | Total # of Pages |
|---|---|---|---|---|---|---|---|
| 455450-210 | 3 | 455450-220 | 1 | 455450-225 | 1 | | |

# P R O V I D E R   S T A T I S T I C A L   A N D   R E I M B U R S E M E N T   S Y S T E M

**Program ID:** REDESIGN
**Paid Dates:** 08/01/07  THRU  03/30/15
**Report Run Date:** 03/28/15
**Provider FYE:** 12/31
**Provider Number:** 455450  RJ Meridian Care Alta Vista LLC

**PROVIDER SUMMARY REPORT**
**SNF – INPATIENT – PART A PPS**

**Page:** 1
**Report #:** OD44203
**Report Type:** 210

| | SERVICES FOR PERIOD 01/01/14 - 09/30/14 | | SERVICES FOR PERIOD 10/01/14 - 12/31/14 | | SERVICES FOR PERIOD 01/01/15 - 12/31/15 | | SERVICES FOR PERIOD No Data Requested | |
|---|---|---|---|---|---|---|---|---|

## STATISTIC SECTION

| | | | | | | |
|---|---|---|---|---|---|---|
| DISCHARGES | 8 | | 0 | | 1 | |
| MEDICARE DAYS | 391 | | 85 | | 39 | |
| CLAIMS | 26 | | 4 | | 3 | |

## CHARGE SECTION

### *** ACCOMMODATION CHARGES ***

| REV CODE | DESCRIPTION | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES |
|---|---|---|---|---|---|---|---|---|---|
| 0110 | ROOM-BOARD/PVT | 12 | $3,300.00 | 0 | $0.00 | 0 | $0.00 | | |
| 0120 | ROOM-BOARD/SEMI | 379 | $66,325.00 | 85 | $23,375.00 | 39 | $10,725.00 | | |
| | *TOTAL ACCOMMODATIONS* | 391 | $69,625.00 | 85 | $23,375.00 | 39 | $10,725.00 | | |

### *** ANCILLARY CHARGES ***

| REV CODE | DESCRIPTION | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES |
|---|---|---|---|---|---|---|---|---|---|
| 0220 | SPECIAL CHARGES | 0 | $0.00 | 2 | $247.50 | 0 | $0.00 | | |
| 0250 | PHARMACY | 24 | $66,625.32 | 4 | $5,713.20 | 3 | $5,319.33 | | |
| 0270 | MED-SUR SUPPLIES | 22 | $4,399.35 | 8 | $1,250.03 | 2 | $215.08 | | |
| 0300 | LABORATORY or (LAB) | 19 | $3,274.89 | 3 | $581.73 | 1 | $315.24 | | |
| 0320 | DX X-RAY | 5 | $8,325.00 | 0 | $0.00 | 0 | $0.00 | | |
| 0410 | RESPIRATORY SVC | 3 | $69.00 | 0 | $0.00 | 0 | $0.00 | | |
| 0420 | PHYSICAL THERP | 127 | $22,590.00 | 30 | $4,230.00 | 25 | $3,735.00 | | |
| 0424 | PHYS THERP/EVAL | 7 | $495.00 | 0 | $0.00 | 0 | $0.00 | | |
| 0430 | OCCUPATION THER | 127 | $24,885.00 | 20 | $2,340.00 | 23 | $3,510.00 | | |
| 0434 | OCCUP THERP/EVAL | 7 | $360.00 | 0 | $0.00 | 0 | $0.00 | | |
| 0440 | SPEECH PATHOL | 120 | $22,230.00 | 0 | $0.00 | 0 | $0.00 | | |
| 0444 | SPEECH PATH/EVAL | 4 | $225.00 | 0 | $0.00 | 0 | $0.00 | | |
| | *TOTAL ANCILLARY* | 465 | $153,478.56 | 67 | $14,362.46 | 54 | $13,094.65 | | |

# P R O V I D E R   S T A T I S T I C A L   A N D   R E I M B U R S E M E N T   S Y S T E M

**Program ID:** REDESIGN
**Paid Dates:** 08/01/07  THRU  03/30/15
**Report Run Date:** 03/28/15
**Provider FYE:** 12/31
**Provider Number:**  455450  RJ Meridian Care Alta Vista LLC

**PROVIDER SUMMARY REPORT**
**SNF – INPATIENT – PART A PPS**

**Page:** 2
**Report #:** OD44203
**Report Type:** 210

| | SERVICES FOR PERIOD 01/01/14 - 09/30/14 | SERVICES FOR PERIOD 10/01/14 - 12/31/14 | SERVICES FOR PERIOD 01/01/15 - 12/31/15 | SERVICES FOR PERIOD No Data Requested |
|---|---|---|---|---|
| **TOTAL COVERED CHARGES** | $223,103.56 | $37,737.46 | $23,819.65 | |

**REIMBURSEMENT SECTION**
### PAYMENT

| | | | | |
|---|---|---|---|---|
| GROSS REIMBURSEMENT | $161,300.66 | $32,484.11 | $14,509.02 | |
| **LESS** | | | | |
| CASH DEDUCTIBLE | $0.00 | $0.00 | $0.00 | |
| BLOOD DEDUCTIBLE | $0.00 | $0.00 | $0.00 | |
| COINSURANCE | $31,312.00 | $10,336.00 | $4,095.00 | |
| NET MSP PAYMENTS | $0.00 | $0.00 | $0.00 | |
| SEQUESTRATION | $2,599.77 | $442.97 | $208.29 | |
| NET REIMBURSEMENT | $127,388.89 | $21,705.14 | $10,205.73 | |

## ADDITIONAL INFORMATION SECTION

| | | | | |
|---|---|---|---|---|
| CALCULATED NET REIMB FOR PIP | $0.00 | $0.00 | $0.00 | |
| ACTUAL CLAIM PAYMENTS FOR PIP | $0.00 | $0.00 | $0.00 | |
| CLAIM INTEREST PAYMENTS | $0.00 | $0.00 | $0.00 | |

The following schedule reflects the individual RUG utilization to assist in the completion of Worksheet S-7 of the Medicare Cost Report

| | | UNITS | UNITS | UNITS | UNITS |
|---|---|---|---|---|---|
| 0022 | BB1 | 19 | 0 | 0 | 0 |
| | CC1 | 8 | 0 | 0 | 0 |
| | ES1 | 35 | 31 | 0 | 0 |
| | LC1 | 0 | 8 | 0 | 0 |
| | LD1 | 37 | 0 | 0 | 0 |

# PROVIDER STATISTICAL AND REIMBURSEMENT SYSTEM

**Program ID:** REDESIGN
**Paid Dates:** 08/01/07  THRU  03/30/15
**Report Run Date:** 03/28/15
**Provider FYE:** 12/31
**Provider Number:** 455450  RJ Meridian Care Alta Vista LLC

**PROVIDER SUMMARY REPORT**
**SNF – INPATIENT – PART A PPS**

**Page:** 3
**Report #:** OD44203
**Report Type:** 210

| | | SERVICES FOR PERIOD 01/01/14 – 09/30/14 | SERVICES FOR PERIOD 10/01/14 – 12/31/14 | SERVICES FOR PERIOD 01/01/15 – 12/31/15 | SERVICES FOR PERIOD No Data Requested |
|---|---|---|---|---|---|
| | | UNITS | UNITS | UNITS | UNITS |
| 0022 | PA1 | 14 | 0 | 0 | 0 |
| | PC1 | 0 | 0 | 5 | 0 |
| | RHA | 0 | 17 | 0 | 0 |
| | RHB | 0 | 29 | 0 | 0 |
| | RHC | 28 | 0 | 0 | 0 |
| | RMA | 6 | 0 | 0 | 0 |
| | RMB | 0 | 0 | 14 | 0 |
| | RUA | 86 | 0 | 0 | 0 |
| | RUB | 78 | 0 | 0 | 0 |
| | RVA | 34 | 0 | 0 | 0 |
| | RVB | 38 | 0 | 12 | 0 |
| | RVC | 8 | 0 | 8 | 0 |
| TOTAL | | 391 | 85 | 39 | 0 |

53

**P R O V I D E R   S T A T I S T I C A L   A N D   R E I M B U R S E M E N T   S Y S T E M**

**Program ID:** REDESIGN
**Paid Dates:** 08/01/07 THRU 03/30/15
**Report Run Date:** 03/28/15
**Provider FYE:** 12/31
**Provider Number:** 455450 RJ Meridian Care Alta Vista LLC

**PROVIDER SUMMARY REPORT**
**SNF - INPATIENT - PART B COST REIMBURSED**

**Page:** 1
**Report #:** OD44203
**Report Type:** 220

| | SERVICES FOR PERIOD<br>01/01/14 - 09/30/14 | | SERVICES FOR PERIOD<br>10/01/14 - 12/31/14 | | SERVICES FOR PERIOD<br>01/01/15 - 12/31/15 | | SERVICES FOR PERIOD<br>No Data Requested | |
|---|---|---|---|---|---|---|---|---|

### STATISTIC SECTION

| CLAIMS | | 8 | | 20 | | 4 | | |
|---|---|---|---|---|---|---|---|---|

### CHARGE SECTION

| REV CODE | DESCRIPTION | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES |
|---|---|---|---|---|---|---|---|---|---|
| 0424 | PHYS THERP/EVAL | 0 | $0.00 | 0 | $0.00 | 0 | $0.00 | | |
| 0430 | OCCUPATION THER | 0 | $0.00 | 0 | $0.00 | 0 | $0.00 | | |
| 0434 | OCCUP THERP/EVAL | 0 | $0.00 | 0 | $0.00 | 0 | $0.00 | | |
| 0440 | SPEECH PATHOL | 0 | $0.00 | 0 | $0.00 | 0 | $0.00 | | |
| | TOTAL COVERED CHARGES | 0 | $0.00 | 0 | $0.00 | 0 | $0.00 | | |

### REIMBURSEMENT SECTION

| | SERVICES FOR PERIOD 1 | SERVICES FOR PERIOD 2 | SERVICES FOR PERIOD 3 | SERVICES FOR PERIOD 4 |
|---|---|---|---|---|
| GROSS REIMBURSEMENT | $0.00 | $0.00 | $0.00 | |
| LESS | | | | |
| CASH DEDUCTIBLE | $0.00 | $0.00 | $0.00 | |
| BLOOD DEDUCTIBLE | $0.00 | $0.00 | $0.00 | |
| COINSURANCE | $0.00 | $0.00 | $0.00 | |
| NET MSP PAYMENTS | $0.00 | $0.00 | $0.00 | |
| SEQUESTRATION | $0.00 | $0.00 | $0.00 | $0.00 |
| REBILLING ADJUSTMENT | $0.00 | $0.00 | $0.00 | |
| NET REIMBURSEMENT | $0.00 | $0.00 | $0.00 | |

### ADDITIONAL INFORMATION SECTION

| CLAIM INTEREST PAYMENTS | $0.00 | $0.00 | $0.00 | |
|---|---|---|---|---|

## P R O V I D E R   S T A T I S T I C A L   A N D   R E I M B U R S E M E N T   S Y S T E M

**Program ID:** REDESIGN
**Paid Dates:** 08/01/07 THRU 03/30/15
**Report Run Date:** 03/28/15
**Provider FYE:** 12/31
**Provider Number:** 455450 RJ Meridian Care Alta Vista LLC

**PROVIDER SUMMARY REPORT**
**SNF – INPATIENT – FEE REIMBURSED**
**THESE ITEMS ARE NOT TO BE INCLUDED ON THE MEDICARE COST REPORT**

**Page:** 1
**Report #:** OD44203
**Report Type:** 225

|  | SERVICES FOR PERIOD 01/01/14 - 09/30/14 | | SERVICES FOR PERIOD 10/01/14 - 12/31/14 | | SERVICES FOR PERIOD 01/01/15 - 12/31/15 | | SERVICES FOR PERIOD No Data Requested | |
|---|---|---|---|---|---|---|---|---|

### STATISTIC SECTION

| CLAIMS | 10 | 21 | 5 |
|---|---|---|---|

### CHARGE SECTION

| REV CODE | DESCRIPTION | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES |
|---|---|---|---|---|---|---|---|---|---|
| 0420 | PHYSICAL THERP | 263 | $8,088.49 | 310 | $9,709.77 | 52 | $1,654.36 | | |
| 0424 | PHYS THERP/EVAL | 5 | $365.00 | 10 | $730.00 | 0 | $0.00 | | |
| 0430 | OCCUPATION THER | 138 | $4,439.65 | 264 | $8,429.74 | 52 | $1,662.02 | | |
| 0434 | OCCUP THERP/EVAL | 3 | $244.59 | 10 | $815.30 | 0 | $0.00 | | |
| 0440 | SPEECH PATHOL | 142 | $4,546.57 | 1 | $88.08 | 4 | $333.20 | | |
| 0444 | SPEECH PATH/EVAL | 4 | $741.24 | 0 | $0.00 | 0 | $0.00 | | |
| | *TOTAL COVERED CHARGES* | 555 | $18,425.54 | 595 | $19,772.89 | 108 | $3,649.58 | | |

### REIMBURSEMENT SECTION

| GROSS REIMBURSEMENT | $15,954.74 | $16,897.60 | $3,192.65 | |
|---|---|---|---|---|
| LESS | | | | |
| CASH DEDUCTIBLE | $0.00 | $0.00 | $24.48 | |
| BLOOD DEDUCTIBLE | $0.00 | $0.00 | $0.00 | |
| COINSURANCE | $3,190.89 | $3,379.83 | $633.62 | |
| NET MSP PAYMENTS | $0.00 | $0.00 | $0.00 | |
| SEQUESTRATION | $255.72 | $271.36 | $50.73 | $0.00 |
| REBILLING ADJUSTMENT | $0.00 | $0.00 | $0.00 | |
| NET REIMBURSEMENT | $12,508.13 | $13,246.41 | $2,483.82 | |

### ADDITIONAL INFORMATION SECTION

| CLAIM INTEREST PAYMENTS | $0.00 | $0.00 | $0.00 | |
|---|---|---|---|---|
| DEVICE CREDIT | $0.00 | $0.00 | $0.00 | |

PROVIDER STATISTICAL AND REIMBURSEMENT SYSTEM

**REPORT COVER PAGE FOR REQUEST: VIKQ206-S-2345032**

| Provider#-Report Type | Total # of Pages | Provider#-Report Type | Total # of Pages | Provider#-Report Type | Total # of Pages | Provider#-Report Type | Total # of Pages |
|---|---|---|---|---|---|---|---|
| 675171-210 | 3 | 675171-220 | 1 | 675171-225 | 1 | | |

# PROVIDER STATISTICAL AND REIMBURSEMENT SYSTEM

**Program ID:** REDESIGN
**Paid Dates:** 08/01/07 THRU 03/24/15
**Report Run Date:** 03/22/15
**Provider FYE:** 12/31
**Provider Number:** 675171 RJ Meridian Care of San Antonio Ltd

**PROVIDER SUMMARY REPORT**
**SNF – INPATIENT – PART A PPS**

**Page:** 1
**Report #:** OD44203
**Report Type:** 210

| | SERVICES FOR PERIOD 01/01/14 – 09/30/14 | | SERVICES FOR PERIOD 10/01/14 – 12/31/14 | | SERVICES FOR PERIOD No Data Requested | | SERVICES FOR PERIOD 01/01/15 – 12/31/15 | |

## STATISTIC SECTION

| | | | | |
|---|---|---|---|---|
| DISCHARGES | 65 | 21 | | 7 |
| MEDICARE DAYS | 2,826 | 694 | | 385 |
| CLAIMS | 171 | 48 | | 23 |

## CHARGE SECTION

### *** ACCOMMODATION CHARGES ***

| REV CODE | DESCRIPTION | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES |
|---|---|---|---|---|---|---|---|---|---|
| 0110 | ROOM-BOARD/PVT | 471 | $180,975.00 | 85 | $32,275.00 | | | 55 | $22,175.00 |
| 0120 | ROOM-BOARD/SEMI | 2,355 | $640,125.00 | 609 | $184,375.00 | | | 330 | $99,900.00 |
| | *TOTAL ACCOMMODATIONS* | 2,826 | $821,100.00 | 694 | $216,650.00 | | | 385 | $122,075.00 |

### *** ANCILLARY CHARGES ***

| REV CODE | DESCRIPTION | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES |
|---|---|---|---|---|---|---|---|---|---|
| 0250 | PHARMACY | 1,085 | $359,403.26 | 287 | $98,098.47 | | | 171 | $56,632.86 |
| 0260 | IV THERAPY | 73 | $77,074.59 | 15 | $8,555.19 | | | 22 | $8,611.44 |
| 0270 | MED-SUR SUPPLIES | 158 | $154,310.64 | 42 | $31,346.84 | | | 24 | $21,969.02 |
| 0300 | LABORATORY or (LAB) | 509 | $114,275.82 | 138 | $11,410.27 | | | 81 | $7,689.93 |
| 0320 | DX X-RAY | 179 | $174,949.39 | 26 | $32,835.00 | | | 21 | $25,320.00 |
| 0410 | RESPIRATORY SVC | 138 | $586,620.00 | 34 | $148,176.00 | | | 18 | $79,425.00 |
| 0420 | PHYSICAL THERP | 1,651 | $242,055.00 | 419 | $58,950.00 | | | 190 | $27,900.00 |
| 0430 | OCCUPATION THER | 1,227 | $176,985.00 | 338 | $45,450.00 | | | 174 | $23,130.00 |
| 0440 | SPEECH PATHOL | 981 | $77,985.00 | 200 | $11,835.00 | | | 110 | $11,520.00 |
| 0946 | COMPLX MED EQUIP-ROUT | 177 | $232,992.89 | 41 | $41,984.48 | | | 22 | $22,353.67 |
| | *TOTAL ANCILLARY* | 6,178 | $2,196,651.59 | 1,540 | $488,641.25 | | | 833 | $284,551.92 |
| | TOTAL COVERED CHARGES | | $3,017,751.59 | | $705,291.25 | | | | $406,626.92 |

## REIMBURSEMENT SECTION

Mar 22, 2015

12:20:10 PM

57

# PROVIDER STATISTICAL AND REIMBURSEMENT SYSTEM

**Program ID:** REDESIGN
**Paid Dates:** 08/01/07 THRU 03/24/15
**Report Run Date:** 03/22/15
**Provider FYE:** 12/31
**Provider Number:** 675171 RJ Meridian Care of San Antonio Ltd

**PROVIDER SUMMARY REPORT**
**SNF – INPATIENT – PART A PPS**

**Page:** 2
**Report #:** OD44203
**Report Type:** 210

| | SERVICES FOR PERIOD 01/01/14 - 09/30/14 | SERVICES FOR PERIOD 10/01/14 - 12/31/14 | SERVICES FOR PERIOD No Data Requested | SERVICES FOR PERIOD 01/01/15 - 12/31/15 |
|---|---|---|---|---|
| **PAYMENT** | | | | |
| GROSS REIMBURSEMENT | $1,657,588.27 | $380,810.53 | | $206,414.97 |
| **LESS** | | | | |
| CASH DEDUCTIBLE | $0.00 | $0.00 | | $0.00 |
| BLOOD DEDUCTIBLE | $0.00 | $0.00 | | $0.00 |
| COINSURANCE | $288,192.00 | $67,336.00 | | $35,595.00 |
| NET MSP PAYMENTS | $0.00 | $0.00 | | $0.00 |
| SEQUESTRATION | $27,388.01 | $6,269.50 | | $3,416.42 |
| NET REIMBURSEMENT | $1,342,008.26 | $307,205.03 | | $167,403.55 |

### ADDITIONAL INFORMATION SECTION

| | | | | |
|---|---|---|---|---|
| CALCULATED NET REIMB FOR PIP | $0.00 | $0.00 | | $0.00 |
| ACTUAL CLAIM PAYMENTS FOR PIP | $0.00 | $0.00 | | $0.00 |
| CLAIM INTEREST PAYMENTS | $30.86 | $0.00 | | $0.00 |

The following schedule reflects the individual RUG utilization to assist in the completion of Worksheet S-7 of the Medicare Cost Report

| | | UNITS | UNITS | UNITS | UNITS |
|---|---|---|---|---|---|
| **0022** | AAA | 0 | 0 | 0 | 0 |
| | CC1 | 10 | 0 | 0 | 0 |
| | ES2 | 91 | 11 | 0 | 58 |
| | ES3 | 1,246 | 195 | 0 | 81 |
| | HB1 | 0 | 16 | 0 | 6 |
| | HD1 | 1 | 0 | 0 | 0 |
| | LB1 | 5 | 0 | 0 | 0 |
| | LC1 | 8 | 0 | 0 | 0 |

# PROVIDER STATISTICAL AND REIMBURSEMENT SYSTEM

**Program ID:** REDESIGN
**Paid Dates:** 08/01/07  THRU  03/24/15
**Report Run Date:** 03/22/15
**Provider FYE:** 12/31
**Provider Number:** 675171 RJ Meridian Care of San Antonio Ltd

**PROVIDER SUMMARY REPORT**
**SNF – INPATIENT – PART A PPS**

**Page:** 3
**Report #:** OD44203
**Report Type:** 210

| | | SERVICES FOR PERIOD 01/01/14 - 09/30/14 | SERVICES FOR PERIOD 10/01/14 - 12/31/14 | SERVICES FOR PERIOD No Data Requested | SERVICES FOR PERIOD 01/01/15 - 12/31/15 |
|---|---|---|---|---|---|
| | | UNITS | UNITS | UNITS | UNITS |
| 0022 | PA1 | 0 | 5 | 0 | 0 |
| | PD1 | 12 | 0 | 0 | 0 |
| | RHA | 0 | 12 | 0 | 16 |
| | RHB | 19 | 10 | 0 | 4 |
| | RHC | 44 | 0 | 0 | 0 |
| | RHL | 15 | 0 | 0 | 0 |
| | RHX | 21 | 14 | 0 | 0 |
| | RMB | 20 | 30 | 0 | 0 |
| | RMC | 42 | 0 | 0 | 0 |
| | RMX | 0 | 0 | 0 | 10 |
| | RUA | 197 | 94 | 0 | 32 |
| | RUB | 283 | 115 | 0 | 25 |
| | RUC | 57 | 2 | 0 | 0 |
| | RUL | 264 | 24 | 0 | 41 |
| | RUX | 237 | 57 | 0 | 23 |
| | RVA | 90 | 49 | 0 | 36 |
| | RVB | 58 | 21 | 0 | 37 |
| | RVC | 0 | 0 | 0 | 16 |
| | RVL | 87 | 20 | 0 | 0 |
| | RVX | 19 | 19 | 0 | 0 |
| TOTAL | | 2,826 | 694 | 0 | 385 |

# PROVIDER STATISTICAL AND REIMBURSEMENT SYSTEM

**Program ID:** REDESIGN
**Paid Dates:** 08/01/07 THRU 03/24/15
**Report Run Date:** 03/22/15
**Provider FYE:** 12/31
**Provider Number:** 675171 RJ Meridian Care of San Antonio Ltd

**PROVIDER SUMMARY REPORT**
**SNF – INPATIENT – PART B COST REIMBURSED**

**Page:** 1
**Report #:** OD44203
**Report Type:** 220

| | SERVICES FOR PERIOD 01/01/14 - 09/30/14 | | SERVICES FOR PERIOD 10/01/14 - 12/31/14 | | SERVICES FOR PERIOD No Data Requested | | SERVICES FOR PERIOD 01/01/15 - 12/31/15 | |
|---|---|---|---|---|---|---|---|---|

## STATISTIC SECTION

| CLAIMS | | 53 | | 19 | | | | 5 |
|---|---|---|---|---|---|---|---|---|

## CHARGE SECTION

| REV CODE | DESCRIPTION | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES |
|---|---|---|---|---|---|---|---|---|---|
| 0420 | PHYSICAL THERP | 0 | $0.00 | 0 | $0.00 | | | 0 | $0.00 |
| 0424 | PHYS THERP/EVAL | 1 | $0.00 | 0 | $0.00 | | | 0 | $0.00 |
| 0430 | OCCUPATION THER | 0 | $0.00 | 0 | $0.00 | | | 0 | $0.00 |
| 0434 | OCCUP THERP/EVAL | 0 | $0.00 | 0 | $0.00 | | | 0 | $0.00 |
| 0440 | SPEECH PATHOL | 0 | $0.00 | 0 | $0.00 | | | 0 | $0.00 |
| | TOTAL COVERED CHARGES | 1 | $0.00 | 0 | $0.00 | | | 0 | $0.00 |

## REIMBURSEMENT SECTION

| GROSS REIMBURSEMENT | $0.00 | $0.00 | | $0.00 |
|---|---|---|---|---|
| LESS | | | | |
| CASH DEDUCTIBLE | $0.00 | $0.00 | | $0.00 |
| BLOOD DEDUCTIBLE | $0.00 | $0.00 | | $0.00 |
| COINSURANCE | $0.00 | $0.00 | | $0.00 |
| NET MSP PAYMENTS | $0.00 | $0.00 | | $0.00 |
| SEQUESTRATION | $0.00 | $0.00 | $0.00 | $0.00 |
| REBILLING ADJUSTMENT | $0.00 | $0.00 | | $0.00 |
| NET REIMBURSEMENT | $0.00 | $0.00 | | $0.00 |

## ADDITIONAL INFORMATION SECTION

| CLAIM INTEREST PAYMENTS | $0.46 | $0.00 | | $0.00 |
|---|---|---|---|---|

# PROVIDER STATISTICAL AND REIMBURSEMENT SYSTEM

**Program ID:** REDESIGN
**Paid Dates:** 08/01/07 THRU 03/24/15
**Report Run Date:** 03/22/15
**Provider FYE:** 12/31
**Provider Number:** 675171 RJ Meridian Care of San Antonio Ltd

**PROVIDER SUMMARY REPORT**
**SNF – INPATIENT – FEE REIMBURSED**
**THESE ITEMS ARE NOT TO BE INCLUDED ON THE MEDICARE COST REPORT**

**Page:** 1
**Report #:** OD44203
**Report Type:** 225

| | | SERVICES FOR PERIOD 01/01/14 - 09/30/14 | | SERVICES FOR PERIOD 10/01/14 - 12/31/14 | | SERVICES FOR PERIOD No Data Requested | | SERVICES FOR PERIOD 01/01/15 - 12/31/15 |
|---|---|---|---|---|---|---|---|---|

## STATISTIC SECTION

| CLAIMS | | 68 | | 36 | | | | 5 |
|---|---|---|---|---|---|---|---|---|

## CHARGE SECTION

| REV CODE | DESCRIPTION | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES | UNITS | CHARGES |
|---|---|---|---|---|---|---|---|---|---|
| 0420 | PHYSICAL THERP | 975 | $30,171.27 | 329 | $10,412.27 | | | 88 | $2,743.19 |
| 0424 | PHYS THERP/EVAL | 22 | $1,606.00 | 7 | $511.00 | | | 3 | $219.00 |
| 0430 | OCCUPATION THER | 448 | $13,077.29 | 323 | $9,915.38 | | | 12 | $345.84 |
| 0434 | OCCUP THERP/EVAL | 17 | $1,386.01 | 10 | $815.30 | | | 0 | $0.00 |
| 0440 | SPEECH PATHOL | 145 | $12,169.26 | 18 | $1,513.30 | | | 0 | $0.00 |
| *TOTAL COVERED CHARGES* | | 1,607 | $58,409.83 | 687 | $23,167.25 | | | 103 | $3,308.03 |

## REIMBURSEMENT SECTION

| GROSS REIMBURSEMENT | | $51,371.28 | | $19,983.27 | | | | $2,889.27 |
|---|---|---|---|---|---|---|---|---|
| LESS | | | | | | | | |
| CASH DEDUCTIBLE | | $75.08 | | $0.00 | | | | $0.00 |
| BLOOD DEDUCTIBLE | | $0.00 | | $0.00 | | | | $0.00 |
| COINSURANCE | | $10,259.01 | | $3,996.90 | | | | $577.81 |
| NET MSP PAYMENTS | | $0.00 | | $0.00 | | | | $0.00 |
| SEQUESTRATION | | $822.72 | | $320.29 | | $0.00 | | $46.27 |
| REBILLING ADJUSTMENT | | $0.00 | | $0.00 | | | | $0.00 |
| NET REIMBURSEMENT | | $40,214.47 | | $15,666.08 | | | | $2,265.19 |

## ADDITIONAL INFORMATION SECTION

| CLAIM INTEREST PAYMENTS | | $0.00 | | $0.00 | | | | $0.00 |
|---|---|---|---|---|---|---|---|---|
| DEVICE CREDIT | | $0.00 | | $0.00 | | | | $0.00 |

# Exhibit F



1

**Exhibit
F**





# Exhibit G



| Invoice | 17485133 | BILLING MONTH<br>02/01/2015 - 02/28/2015 | BILLING DATE<br>02/28/2015 |
|---|---|---|---|

**Facility ID:** 2007499
Meridian Care of Alice
219 N. King St.
Alice, TX 78332

**Total Due:** **$60,076.77**

**Payment Terms: Net 30 Days**

### Invoice Summary

| | | Qty | Rate | Amount |
|---|---|---|---|---|
| Medicare Part A - Ultra High (NR) | | 247 | $126.51 NR | $31,247.97 |
| Medicare Part A - Very High (NR) | | 168 | $87.86 NR | $14,760.48 |
| Medicare Part A - High (NR) | | 25 | $57.11 NR | $1,427.75 |
| Medicare Part A - Medium (NR) | | 15 | $26.36 NR | $395.40 |
| Medicare Part A - Low (NR) | | | NR | $0.00 |
| Medicare Part A - Non-Rehab (NR) | | 118 Minutes | $1.23 NR | $145.14 |
| Medicare Part A - NotRUG EVAL (NR) | | 326 Minutes | $1.23 NR | $400.98 |
| Medicare Part A - Eval Minutes (NR) | | | NR | $0.00 |
| | **Total** | 781 | | **$48,377.72** |
| Medicare Part B - OT (CPT) | | 196 | CPT | $3,862.01 |
| Medicare Part B - PT (CPT) | | 308 | CPT | $6,306.66 |
| Medicare Part B - ST (CPT) | | 58 | CPT | $1,530.38 |
| | **Total** | 562 | | **$11,699.05** |
| | | | **Total Due:** | **$60,076.77** |

Make Check payable to:     RehabCare
Division of Kindred Healthcare
P.O. Box 277365
Atlanta, GA 30384-7365

**Total Due:** **$60,076.77**

*This invoice is due and payable on or before the 1st day of the calendar month per the payment terms listed above.*

---

**Exhibit
G**

---

RehabCare|7733 Forsyth Blvd|Ste 1700|St. Louis, MO 63105 | 314/863-7422 | 800/677-1238 |Fax 314/863-0769
Page 1 of 14     Run Date: Friday, July 24, 2015

1

0000012



**Meridian Care of Alice**

| DETAIL BY PATIENT | Invoice Number | BILLING MONTH | BILLING DATE |
|---|---|---|---|
| Facility ID: 2007499 | 17485133 | 02/01/2015 - 02/28/2015 | 02/28/2015 |

**Medicare Part A Inpatient**

| Patient Name | Date Range | Rug Level | No. of Days | Price Per RUGS | Total Per Patient |
|---|---|---|---|---|---|
| | 02/10/2015 - 02/28/2015 | Ultra High | 19 | $126.51 | $2,403.69 |
| | 02/10/2015 - 02/27/2015 | Very High | 18 | $87.86 | $1,581.48 |
| | 02/01/2015 - 02/28/2015 | Ultra High | 28 | $126.51 | $3,542.28 |
| | 02/01/2015 - 02/12/2015 | Ultra High | 12 | $126.51 | $1,518.12 |
| | 02/07/2015 - 02/26/2015 | Ultra High | 20 | $126.51 | $2,530.20 |
| | 02/09/2015 - PT OT | NotRUG | 126 Minutes | $1.23 | $154.98 |
| | 02/01/2015 - 02/28/2015 | Ultra High | 28 | $126.51 | $3,542.28 |
| | 02/01/2015 - 02/28/2015 | Very High | 28 | $87.86 | $2,460.08 |
| | 02/01/2015 - 02/28/2015 | Very High | 28 | $87.86 | $2,460.08 |
| | 02/04/2015 - 02/28/2015 | Ultra High | 25 | $126.51 | $3,162.75 |
| | 02/01/2015 - 02/28/2015 | Very High | 28 | $87.86 | $2,460.08 |
| | 02/16/2015 - 02/28/2015 | Very High | 13 | $87.86 | $1,142.18 |
| | 02/17/2015 - 02/28/2015 | Ultra High | 12 | $126.51 | $1,518.12 |
| | 02/01/2015 - 02/28/2015 | Ultra High | 28 | $126.51 | $3,542.28 |
| | 02/01/2015 - 02/13/2015 | Very High | 13 | $87.86 | $1,142.18 |
| | 02/26/2015 - 02/28/2015 | Very High | 3 | $87.86 | $263.58 |
| | 02/25/2015 - 02/26/2015 | NotRUG | 133 Minutes | $1.23 | $163.59 |
| | 02/01/2015 - 02/05/2015 | Very High | 5 | $87.86 | $439.30 |
| | 02/06/2015 - 02/28/2015 | High | 23 | $57.11 | $1,313.53 |
| | 02/03/2015 - 02/23/2015 | Very High | 21 | $87.86 | $1,845.06 |
| | 02/01/2015 - 02/02/2015 | High | 2 | $57.11 | $114.22 |
| | 02/01/2015 - | Very High | 1 | $87.86 | $87.86 |
| | 02/01/2015 - 02/28/2015 | Ultra High | 28 | $126.51 | $3,542.28 |
| | 02/13/2015 - 02/28/2015 | Ultra High | 16 | $126.51 | $2,024.16 |
| | 02/13/2015 - 02/27/2015 | Medium | 15 | $26.36 | $395.40 |
| | 02/19/2015 - 02/28/2015 | Very High | 10 | $87.86 | $878.60 |
| | 02/01/2015 - 02/28/2015 | Ultra High | 28 | $126.51 | $3,542.28 |
| | 02/06/2015 - OT ST | NotRUG | 67 Minutes | $1.23 | $82.41 |
| | 02/06/2015 - OT ST | NotRUG | 118 Minutes | $1.23 | $145.14 |
| | 02/01/2015 - 02/03/2015 | Ultra High | 3 | $126.51 | $379.53 |

| | | Discipline | Minutes | Percentage | Amount |
|---|---|---|---|---|---|
| | | OT | 15089 | 38.30 | $18,528.67 |

RehabCare|7733 Forsyth Blvd|Ste 1700|St. Louis, MO 63105 | 314/863-7422 | 800/677-1238 |Fax 314/863-0769
Page 2 of 14    Run Date: Friday, July 24, 2015

2    Redacted

0000013



**Meridian Care of Alice**

| DETAIL BY PATIENT | Invoice Number | BILLING MONTH | BILLING DATE |
|---|---|---|---|
| Facility ID: 2007499 | 17485133 | 02/01/2015 - 02/28/2015 | 02/28/2015 |

| | | | |
|---|---|---|---|
| PT | 15538 | 39.43 | $19,075.33 |
| ST | 8775 | 22.27 | $10,773.72 |
| | **39402** | **Total** | **$48,377.72** |

**Medicare Part B Inpatient**

| Discipline | Patient Name | Date | CPTCode | No. of Units | Price | Total |
|---|---|---|---|---|---|---|
| OT | | 02/10/2015 | 97003 | 1 | $61.41/47.34 | $61.40 |
| OT | | 02/10/2015 | 97530 | 3 | $18.56 | $55.67 |
| OT | | 02/10/2015 | 97535 | 2 | $18.70 | $37.40 |
| OT | | 02/11/2015 | 97110 | 1 | $17.94 | $17.94 |
| OT | | 02/11/2015 | 97530 | 3 | $25.09/18.56 | $62.21 |
| OT | | 02/12/2015 | 97110 | 1 | $23.36/17.94 | $23.36 |
| OT | | 02/13/2015 | 97112 | 2 | $18.21 | $36.42 |
| OT | | 02/16/2015 | 97530 | 2 | $25.09/18.56 | $43.65 |
| OT | | 02/17/2015 | 97110 | 1 | $17.94 | $17.94 |
| OT | | 02/17/2015 | 97530 | 2 | $18.56 | $37.11 |
| OT | | 02/18/2015 | 97112 | 1 | $18.21 | $18.21 |
| OT | | 02/18/2015 | 97530 | 3 | $25.09/18.56 | $62.21 |
| OT | | 02/19/2015 | 97530 | 2 | $18.56 | $37.11 |
| OT | | 02/20/2015 | 97110 | 2 | $17.94 | $35.87 |
| OT | | 02/20/2015 | 97530 | 2 | $25.09/18.56 | $43.65 |
| OT | | 02/23/2015 | 97110 | 1 | $17.94 | $17.94 |
| OT | | 02/23/2015 | 97530 | 1 | $18.56 | $18.56 |
| OT | | 02/24/2015 | 97110 | 1 | $17.94 | $17.94 |
| OT | | 02/24/2015 | 97112 | 2 | $18.21 | $36.42 |
| OT | | 02/25/2015 | 97110 | 1 | $17.94 | $17.94 |
| OT | | 02/25/2015 | 97530 | 2 | $18.56 | $37.11 |
| OT | | 02/26/2015 | 97110 | 2 | $23.36/17.94 | $41.30 |
| OT | | 02/27/2015 | 97110 | 1 | $23.36/17.94 | $23.36 |
| | | | | **39** | **Total** | **$800.72** |
| OT | | 02/02/2015 | 97530 | 2 | $25.09/18.56 | $43.65 |
| | | | | **2** | **Total** | **$43.65** |
| OT | | 02/02/2015 | 97530 | 2 | $18.56 | $37.11 |
| OT | | 02/03/2015 | 97110 | 2 | $17.94 | $35.87 |
| OT | | 02/03/2015 | 97112 | 2 | $18.21 | $36.42 |



**Meridian Care of Alice**

| DETAIL BY PATIENT | | Invoice Number | BILLING MONTH | BILLING DATE | |
|---|---|---|---|---|---|
| Facility ID: 2007499 | | 17485133 | 02/01/2015 - 02/28/2015 | 02/28/2015 | |
| OT | 02/04/2015 | 97112 | 3 | $18.21 | $54.63 |
| OT | 02/05/2015 | 97110 | 1 | $17.94 | $17.94 |
| OT | 02/05/2015 | 97112 | 3 | $18.21 | $54.63 |
| OT | 02/06/2015 | 97112 | 2 | $18.21 | $36.42 |
| OT | 02/09/2015 | 97530 | 2 | $18.56 | $37.11 |
| OT | 02/11/2015 | 97112 | 2 | $24.13/18.21 | $42.34 |
| OT | 02/12/2015 | 97112 | 1 | $24.13/18.21 | $24.13 |
| OT | 02/13/2015 | 97110 | 2 | $17.94 | $35.87 |
| OT | 02/13/2015 | 97530 | 2 | $25.09/18.56 | $43.65 |
| OT | 02/16/2015 | 97110 | 2 | $23.36/17.94 | $41.30 |
| OT | 02/17/2015 | 97530 | 1 | $25.09/18.56 | $25.09 |
| OT | 02/18/2015 | 97110 | 1 | $17.94 | $17.94 |
| OT | 02/18/2015 | 97530 | 1 | $25.09/18.56 | $25.09 |
| OT | 02/19/2015 | 97110 | 1 | $17.94 | $17.94 |
| OT | 02/19/2015 | 97530 | 1 | $25.09/18.56 | $25.09 |
| OT | 02/20/2015 | 97110 | 1 | $17.94 | $17.94 |
| OT | 02/20/2015 | 97112 | 1 | $18.21 | $18.21 |
| OT | 02/20/2015 | 97530 | 1 | $25.09/18.56 | $25.09 |
| OT | 02/23/2015 | 97110 | 2 | $17.94 | $35.87 |
| OT | 02/23/2015 | 97112 | 1 | $24.13/18.21 | $24.13 |
| OT | 02/25/2015 | 97110 | 1 | $17.94 | $17.94 |
| OT | 02/25/2015 | 97530 | 3 | $25.09/18.56 | $62.21 |
| OT | 02/26/2015 | 97110 | 1 | $23.36/17.94 | $23.36 |
| OT | 02/27/2015 | 97110 | 1 | $23.36/17.94 | $23.36 |
| | | | **43** | **Total** | **$856.68** |
| OT | 02/02/2015 | 97530 | 1 | $18.56 | $18.56 |
| OT | 02/03/2015 | 97112 | 3 | $18.21 | $54.63 |
| OT | 02/04/2015 | 97112 | 3 | $18.21 | $54.63 |
| OT | 02/05/2015 | 97530 | 2 | $18.56 | $37.11 |
| OT | 02/06/2015 | 97112 | 2 | $18.21 | $36.42 |
| OT | 02/09/2015 | 97530 | 2 | $25.09/18.56 | $43.65 |
| OT | 02/10/2015 | 97140 | 2 | $16.69 | $33.37 |
| OT | 02/11/2015 | 97530 | 3 | $25.09/18.56 | $62.21 |
| OT | 02/12/2015 | 97112 | 1 | $18.21 | $18.21 |
| OT | 02/13/2015 | 97112 | 2 | $24.13/18.21 | $42.34 |



**Meridian Care of Alice**

| DETAIL BY PATIENT | | Invoice Number | BILLING MONTH | BILLING DATE | |
|---|---|---|---|---|---|
| Facility ID: 2007499 | | 17485133 | 02/01/2015 - 02/28/2015 | 02/28/2015 | |
| OT | 02/16/2015 | 97110 | 2 | $17.94 | $35.87 |
| OT | 02/16/2015 | 97530 | 2 | $25.09/18.56 | $43.65 |
| OT | 02/17/2015 | 97112 | 2 | $18.21 | $36.42 |
| OT | 02/17/2015 | 97140 | 2 | $16.69 | $33.37 |
| OT | 02/18/2015 | 97530 | 2 | $18.56 | $37.11 |
| | | | **31** | **Total** | **$587.55** |
| OT | 02/02/2015 | 97112 | 1 | $18.21 | $18.21 |
| OT | 02/03/2015 | 97110 | 1 | $17.94 | $17.94 |
| OT | 02/04/2015 | 97530 | 1 | $18.56 | $18.56 |
| OT | 02/04/2015 | 97535 | 3 | $18.70 | $56.11 |
| OT | 02/05/2015 | 97110 | 1 | $17.94 | $17.94 |
| OT | 02/05/2015 | 97112 | 1 | $18.21 | $18.21 |
| OT | 02/06/2015 | 97535 | 2 | $25.12/18.70 | $43.82 |
| OT | 02/09/2015 | 97112 | 1 | $18.21 | $18.21 |
| OT | 02/10/2015 | 97110 | 1 | $17.94 | $17.94 |
| OT | 02/10/2015 | 97530 | 2 | $18.56 | $37.11 |
| OT | 02/11/2015 | 97535 | 1 | $25.12/18.70 | $25.12 |
| OT | 02/12/2015 | 97112 | 1 | $18.21 | $18.21 |
| OT | 02/13/2015 | 97530 | 1 | $18.56 | $18.56 |
| OT | 02/16/2015 | 97535 | 4 | $25.12/18.70 | $81.22 |
| OT | 02/17/2015 | 97530 | 2 | $18.56 | $37.11 |
| OT | 02/18/2015 | 97110 | 1 | $17.94 | $17.94 |
| OT | 02/18/2015 | 97112 | 2 | $18.21 | $36.42 |
| OT | 02/18/2015 | 97530 | 1 | $18.56 | $18.56 |
| | | | **27** | **Total** | **$517.19** |
| OT | 02/02/2015 | 97530 | 1 | $25.09/18.56 | $25.09 |
| | | | **1** | **Total** | **$25.09** |
| OT | 02/03/2015 | 97112 | 2 | $18.21 | $36.42 |
| OT | 02/03/2015 | 97535 | 1 | $18.70 | $18.70 |
| OT | 02/04/2015 | 97112 | 2 | $18.21 | $36.42 |
| OT | 02/05/2015 | 97530 | 1 | $18.56 | $18.56 |
| OT | 02/06/2015 | 97530 | 1 | $25.09/18.56 | $25.09 |
| OT | 02/09/2015 | 97110 | 1 | $17.94 | $17.94 |
| | | | **8** | **Total** | **$153.13** |



**Meridian Care of Alice**

| DETAIL BY PATIENT | | Invoice Number | BILLING MONTH | | BILLING DATE | |
|---|---|---|---|---|---|---|
| Facility ID:  2007499 | | 17485133 | 02/01/2015 - 02/28/2015 | | 02/28/2015 | |
| OT | 02/02/2015 | 97530 | 1 | $18.56 | $18.56 |
| OT | 02/03/2015 | 97110 | 1 | $17.94 | $17.94 |
| OT | 02/03/2015 | 97112 | 1 | $18.21 | $18.21 |
| OT | 02/04/2015 | 97110 | 1 | $17.94 | $17.94 |
| OT | 02/04/2015 | 97112 | 1 | $18.21 | $18.21 |
| OT | 02/04/2015 | 97535 | 2 | $18.70 | $37.40 |
| OT | 02/05/2015 | 97110 | 1 | $17.94 | $17.94 |
| OT | 02/06/2015 | 97110 | 1 | $17.94 | $17.94 |
| OT | 02/06/2015 | 97112 | 1 | $18.21 | $18.21 |
| OT | 02/09/2015 | 97110 | 1 | $17.94 | $17.94 |
| OT | 02/09/2015 | 97112 | 1 | $18.21 | $18.21 |
| OT | 02/10/2015 | 97110 | 1 | $17.94 | $17.94 |
| OT | 02/10/2015 | 97112 | 1 | $18.21 | $18.21 |
| OT | 02/11/2015 | 97112 | 1 | $24.13/18.21 | $24.13 |
| OT | 02/12/2015 | 97112 | 1 | $18.21 | $18.21 |
| OT | 02/13/2015 | 97110 | 1 | $17.94 | $17.94 |
| OT | 02/16/2015 | 97530 | 2 | $18.56 | $37.11 |
| OT | 02/17/2015 | 97112 | 2 | $18.21 | $36.42 |
| OT | 02/18/2015 | 97110 | 1 | $17.94 | $17.94 |
| OT | 02/18/2015 | 97530 | 3 | $18.56 | $55.67 |
| OT | 02/19/2015 | 97110 | 1 | $17.94 | $17.94 |
| OT | 02/19/2015 | 97112 | 3 | $18.21 | $54.63 |
| OT | 02/20/2015 | 97112 | 1 | $18.21 | $18.21 |
| OT | 02/23/2015 | 97110 | 1 | $17.94 | $17.94 |
| OT | 02/23/2015 | 97530 | 1 | $25.09/18.56 | $25.09 |
| OT | 02/24/2015 | 97110 | 1 | $17.94 | $17.94 |
| OT | 02/24/2015 | 97112 | 2 | $18.21 | $36.42 |
| OT | 02/25/2015 | 97535 | 1 | $18.70 | $18.70 |
| OT | 02/27/2015 | 97110 | 1 | $17.94 | $17.94 |
| | | | **37** | **Total** | **$686.88** |
| OT | 02/25/2015 | 97003 | 1 | $61.41/47.34 | $61.40 |
| OT | 02/25/2015 | 97530 | 2 | $18.56 | $37.11 |
| OT | 02/25/2015 | 97535 | 3 | $18.70 | $56.11 |
| OT | 02/26/2015 | 97530 | 1 | $18.56 | $18.56 |
| OT | 02/27/2015 | 97110 | 1 | $17.94 | $17.94 |



**Meridian Care of Alice**

| DETAIL BY PATIENT | | Invoice Number | | BILLING MONTH | | BILLING DATE |
|---|---|---|---|---|---|---|
| Facility ID: 2007499 | | 17485133 | | 02/01/2015 - 02/28/2015 | | 02/28/2015 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | **8** | **Total** | **$191.12** |
| PT | 02/10/2015 | 97001 | 1 | $43.79 | $43.79 |
| PT | 02/10/2015 | 97530 | 4 | $18.56 | $74.23 |
| PT | 02/13/2015 | 97530 | 3 | $25.09/18.56 | $62.21 |
| PT | 02/14/2015 | 97112 | 2 | $24.13/18.21 | $42.34 |
| PT | 02/17/2015 | 97530 | 2 | $25.09/18.56 | $43.65 |
| PT | 02/18/2015 | 97112 | 1 | $18.21 | $18.21 |
| PT | 02/19/2015 | 97530 | 1 | $25.09/18.56 | $25.09 |
| PT | 02/20/2015 | 97112 | 2 | $18.21 | $36.42 |
| PT | 02/21/2015 | 97530 | 1 | $25.09/18.56 | $25.09 |
| PT | 02/22/2015 | 97530 | 2 | $25.09/18.56 | $43.65 |
| PT | 02/23/2015 | 97530 | 1 | $25.09/18.56 | $25.09 |
| PT | 02/24/2015 | 97530 | 1 | $25.09/18.56 | $25.09 |
| PT | 02/25/2015 | 97530 | 2 | $25.09/18.56 | $43.65 |
| | | | **23** | **Total** | **$508.51** |
| PT | 02/02/2015 | 97530 | 3 | $25.09/18.56 | $62.21 |
| PT | 02/03/2015 | 97530 | 4 | $25.09/18.56 | $80.77 |
| PT | 02/04/2015 | 97530 | 4 | $25.09/18.56 | $80.77 |
| PT | 02/05/2015 | 97530 | 1 | $25.09/18.56 | $25.09 |
| PT | 02/06/2015 | 97530 | 2 | $25.09/18.56 | $43.65 |
| PT | 02/09/2015 | 97530 | 4 | $25.09/18.56 | $80.77 |
| | | | **18** | **Total** | **$373.26** |
| PT | 02/02/2015 | 97110 | 1 | $17.94 | $17.94 |
| PT | 02/02/2015 | 97530 | 2 | $25.09/18.56 | $43.65 |
| PT | 02/03/2015 | 97110 | 1 | $17.94 | $17.94 |
| PT | 02/03/2015 | 97112 | 3 | $18.21 | $54.63 |
| PT | 02/04/2015 | 97530 | 2 | $18.56 | $37.11 |
| PT | 02/05/2015 | 97530 | 1 | $25.09/18.56 | $25.09 |
| PT | 02/06/2015 | 97530 | 2 | $18.56 | $37.11 |
| PT | 02/09/2015 | 97112 | 1 | $18.21 | $18.21 |
| PT | 02/10/2015 | 97530 | 3 | $18.56 | $55.67 |
| PT | 02/12/2015 | 97530 | 1 | $18.56 | $18.56 |
| PT | 02/13/2015 | 97110 | 3 | $17.94 | $53.81 |
| PT | 02/14/2015 | 97530 | 2 | $25.09/18.56 | $43.65 |

RehabCare|7733 Forsyth Blvd|Ste 1700|St. Louis, MO 63105 | 314/863-7422 | 800/677-1238 |Fax 314/863-0769
Page 7 of 14    Run Date: Friday, July 24, 2015

7    Redacted

0000018



**Meridian Care of Alice**

| DETAIL BY PATIENT | | Invoice Number | BILLING MONTH | | BILLING DATE |
|---|---|---|---|---|---|
| Facility ID: 2007499 | | 17485133 | 02/01/2015 - 02/28/2015 | | 02/28/2015 |
| PT | 02/17/2015 | 97112 | 2 | $18.21 | $36.42 |
| PT | 02/18/2015 | 97112 | 1 | $18.21 | $18.21 |
| | | | **25** | **Total** | **$478.00** |
| PT | 02/02/2015 | 97112 | 4 | $24.13/18.21 | $78.75 |
| PT | 02/03/2015 | 97530 | 4 | $25.09/18.56 | $80.77 |
| PT | 02/04/2015 | 97530 | 4 | $25.09/18.56 | $80.77 |
| PT | 02/05/2015 | 97112 | 2 | $24.13/18.21 | $42.34 |
| PT | 02/06/2015 | 97112 | 2 | $18.21 | $36.42 |
| PT | 02/09/2015 | 97112 | 2 | $24.13/18.21 | $42.34 |
| PT | 02/10/2015 | 97530 | 2 | $25.09/18.56 | $43.65 |
| PT | 02/12/2015 | 97112 | 2 | $24.13/18.21 | $42.34 |
| PT | 02/13/2015 | 97530 | 2 | $25.09/18.56 | $43.65 |
| PT | 02/14/2015 | 97112 | 2 | $24.13/18.21 | $42.34 |
| PT | 02/17/2015 | 97530 | 1 | $25.09/18.56 | $25.09 |
| PT | 02/18/2015 | 97530 | 1 | $25.09/18.56 | $25.09 |
| | | | **28** | **Total** | **$583.55** |
| PT | 02/02/2015 | 97112 | 4 | $18.21 | $72.83 |
| PT | 02/03/2015 | 97112 | 4 | $18.21 | $72.83 |
| PT | 02/03/2015 | 97530 | 4 | $25.09/18.56 | $80.77 |
| PT | 02/04/2015 | 97112 | 4 | $24.13/18.21 | $78.75 |
| PT | 02/05/2015 | 97112 | 4 | $18.21 | $72.83 |
| PT | 02/05/2015 | 97530 | 1 | $25.09/18.56 | $25.09 |
| PT | 02/06/2015 | 97112 | 4 | $24.13/18.21 | $78.75 |
| PT | 02/09/2015 | 97112 | 4 | $24.13/18.21 | $78.75 |
| PT | 02/10/2015 | 97112 | 4 | $24.13/18.21 | $78.75 |
| PT | 02/12/2015 | 97530 | 1 | $25.09/18.56 | $25.09 |
| PT | 02/13/2015 | 97530 | 2 | $25.09/18.56 | $43.65 |
| PT | 02/14/2015 | 97112 | 2 | $24.13/18.21 | $42.34 |
| PT | 02/16/2015 | 97112 | 2 | $18.21 | $36.42 |
| PT | 02/16/2015 | 97530 | 2 | $25.09/18.56 | $43.65 |
| PT | 02/17/2015 | 97112 | 3 | $18.21 | $54.63 |
| PT | 02/17/2015 | 97530 | 1 | $25.09/18.56 | $25.09 |
| PT | 02/18/2015 | 97530 | 4 | $25.09/18.56 | $80.77 |
| PT | 02/19/2015 | 97112 | 4 | $18.21 | $72.83 |



**Meridian Care of Alice**

| DETAIL BY PATIENT | | Invoice Number | BILLING MONTH | BILLING DATE | |
|---|---|---|---|---|---|
| Facility ID: 2007499 | | 17485133 | 02/01/2015 - 02/28/2015 | 02/28/2015 | |
| PT | 02/19/2015 | 97530 | 1 | $25.09/18.56 | $25.09 |
| PT | 02/20/2015 | 97112 | 4 | $24.13/18.21 | $78.75 |
| PT | 02/23/2015 | 97112 | 2 | $18.21 | $36.42 |
| PT | 02/23/2015 | 97530 | 2 | $25.09/18.56 | $43.65 |
| PT | 02/24/2015 | 97112 | 3 | $24.13/18.21 | $60.54 |
| PT | 02/24/2015 | 97116 | 1 | $15.76 | $15.76 |
| PT | 02/25/2015 | 97112 | 3 | $24.13/18.21 | $60.54 |
| PT | 02/25/2015 | 97116 | 1 | $15.76 | $15.76 |
| PT | 02/26/2015 | 97530 | 1 | $25.09/18.56 | $25.09 |
| PT | 02/27/2015 | 97112 | 3 | $24.13/18.21 | $60.54 |
| PT | 02/27/2015 | 97116 | 1 | $15.76 | $15.76 |
| | | | **76** | **Total** | **$1,501.72** |
| PT | 02/03/2015 | 97001 | 1 | $54.52/43.79 | $54.52 |
| PT | 02/03/2015 | 97530 | 4 | $18.56 | $74.23 |
| PT | 02/04/2015 | 97530 | 3 | $25.09/18.56 | $62.21 |
| PT | 02/09/2015 | 97112 | 1 | $24.13/18.21 | $24.13 |
| PT | 02/10/2015 | 97530 | 2 | $25.09/18.56 | $43.65 |
| PT | 02/12/2015 | 97530 | 1 | $25.09/18.56 | $25.09 |
| PT | 02/13/2015 | 97530 | 2 | $25.09/18.56 | $43.65 |
| PT | 02/14/2015 | 97530 | 2 | $25.09/18.56 | $43.65 |
| PT | 02/17/2015 | 97530 | 1 | $25.09/18.56 | $25.09 |
| PT | 02/19/2015 | 97530 | 1 | $25.09/18.56 | $25.09 |
| PT | 02/20/2015 | 97530 | 3 | $25.09/18.56 | $62.21 |
| PT | 02/21/2015 | 97530 | 1 | $25.09/18.56 | $25.09 |
| PT | 02/22/2015 | 97530 | 2 | $25.09/18.56 | $43.65 |
| PT | 02/23/2015 | 97530 | 1 | $25.09/18.56 | $25.09 |
| PT | 02/24/2015 | 97530 | 1 | $25.09/18.56 | $25.09 |
| PT | 02/25/2015 | 97112 | 2 | $24.13/18.21 | $42.34 |
| PT | 02/27/2015 | 97530 | 2 | $25.09/18.56 | $43.65 |
| | | | **30** | **Total** | **$688.43** |
| PT | 02/02/2015 | 97116 | 2 | $15.76 | $31.52 |
| PT | 02/02/2015 | 97530 | 1 | $25.09/18.56 | $25.09 |
| PT | 02/03/2015 | 97530 | 3 | $25.09/18.56 | $62.21 |
| PT | 02/04/2015 | 97116 | 3 | $20.57/15.76 | $52.08 |

 RehabCare

**Meridian Care of Alice**

| DETAIL BY PATIENT | Invoice Number | | BILLING MONTH | | BILLING DATE | |
|---|---|---|---|---|---|---|
| Facility ID: 2007499 | 17485133 | | 02/01/2015 - 02/28/2015 | | 02/28/2015 | |
| PT | 02/05/2015 | 97530 | 1 | $25.09/18.56 | $25.09 | |
| PT | 02/06/2015 | 97112 | 1 | $24.13/18.21 | $24.13 | |
| PT | 02/06/2015 | 97116 | 1 | $15.76 | $15.76 | |
| PT | 02/12/2015 | 97530 | 1 | $25.09/18.56 | $25.09 | |
| PT | 02/13/2015 | 97530 | 2 | $25.09/18.56 | $43.65 | |
| | | | 15 | Total | $304.62 | |
| PT | 02/02/2015 | 97112 | 2 | $24.13/18.21 | $42.34 | |
| PT | 02/03/2015 | 97530 | 2 | $25.09/18.56 | $43.65 | |
| PT | 02/04/2015 | 97530 | 2 | $25.09/18.56 | $43.65 | |
| PT | 02/05/2015 | 97530 | 1 | $25.09/18.56 | $25.09 | |
| PT | 02/06/2015 | 97112 | 2 | $18.21 | $36.42 | |
| PT | 02/09/2015 | 97530 | 2 | $25.09/18.56 | $43.65 | |
| | | | 11 | Total | $234.80 | |
| PT | 02/03/2015 | 97001 | 1 | $54.52/43.79 | $54.52 | |
| | | | 1 | Total | $54.52 | |
| PT | 02/02/2015 | 97530 | 4 | $25.09/18.56 | $80.77 | |
| PT | 02/03/2015 | 97116 | 3 | $15.76 | $47.27 | |
| PT | 02/03/2015 | 97530 | 1 | $25.09/18.56 | $25.09 | |
| PT | 02/04/2015 | 97116 | 2 | $15.76 | $31.52 | |
| PT | 02/04/2015 | 97530 | 2 | $25.09/18.56 | $43.65 | |
| PT | 02/05/2015 | 97116 | 3 | $15.76 | $47.27 | |
| PT | 02/05/2015 | 97530 | 1 | $25.09/18.56 | $25.09 | |
| PT | 02/06/2015 | 97116 | 2 | $15.76 | $31.52 | |
| PT | 02/06/2015 | 97530 | 2 | $25.09/18.56 | $43.65 | |
| PT | 02/09/2015 | 97116 | 3 | $15.76 | $47.27 | |
| PT | 02/09/2015 | 97530 | 1 | $25.09/18.56 | $25.09 | |
| PT | 02/10/2015 | 97112 | 3 | $18.21 | $54.63 | |
| PT | 02/10/2015 | 97116 | 1 | $15.76 | $15.76 | |
| PT | 02/10/2015 | 97530 | 1 | $25.09/18.56 | $25.09 | |
| PT | 02/12/2015 | 97112 | 3 | $24.13/18.21 | $60.54 | |
| PT | 02/12/2015 | 97116 | 1 | $15.76 | $15.76 | |
| PT | 02/13/2015 | 97530 | 2 | $25.09/18.56 | $43.65 | |
| PT | 02/16/2015 | 97112 | 2 | $18.21 | $36.42 | |
| PT | 02/16/2015 | 97116 | 1 | $15.76 | $15.76 | |



**Meridian Care of Alice**

| DETAIL BY PATIENT | | Invoice Number | | BILLING MONTH | | BILLING DATE |
|---|---|---|---|---|---|---|
| Facility ID: 2007499 | | 17485133 | | 02/01/2015 - 02/28/2015 | | 02/28/2015 |
| PT | 02/16/2015 | 97530 | 1 | $25.09/18.56 | | $25.09 |
| PT | 02/17/2015 | 97110 | 1 | $17.94 | | $17.94 |
| PT | 02/17/2015 | 97116 | 2 | $15.76 | | $31.52 |
| PT | 02/17/2015 | 97530 | 2 | $25.09/18.56 | | $43.65 |
| PT | 02/18/2015 | 97116 | 1 | $15.76 | | $15.76 |
| PT | 02/18/2015 | 97530 | 3 | $25.09/18.56 | | $62.21 |
| PT | 02/19/2015 | 97112 | 2 | $24.13/18.21 | | $42.34 |
| PT | 02/19/2015 | 97116 | 1 | $15.76 | | $15.76 |
| PT | 02/20/2015 | 97112 | 2 | $18.21 | | $36.42 |
| PT | 02/20/2015 | 97116 | 1 | $15.76 | | $15.76 |
| PT | 02/20/2015 | 97530 | 1 | $25.09/18.56 | | $25.09 |
| PT | 02/23/2015 | 97112 | 3 | $18.21 | | $54.63 |
| PT | 02/23/2015 | 97116 | 1 | $15.76 | | $15.76 |
| PT | 02/24/2015 | 97112 | 3 | $18.21 | | $54.63 |
| PT | 02/24/2015 | 97116 | 1 | $15.76 | | $15.76 |
| PT | 02/24/2015 | 97530 | 1 | $25.09/18.56 | | $25.09 |
| PT | 02/25/2015 | 97530 | 4 | $25.09/18.56 | | $80.77 |
| PT | 02/26/2015 | 97116 | 2 | $15.76 | | $31.52 |
| PT | 02/26/2015 | 97530 | 2 | $25.09/18.56 | | $43.65 |
| PT | 02/27/2015 | 97116 | 2 | $15.76 | | $31.52 |
| PT | 02/27/2015 | 97530 | 2 | $25.09/18.56 | | $43.65 |
| | | | **76** | **Total** | | **$1,444.32** |
| PT | 02/26/2015 | 97001 | 1 | $54.52/43.79 | | $54.52 |
| PT | 02/26/2015 | 97530 | 2 | $18.56 | | $37.11 |
| PT | 02/27/2015 | 97112 | 1 | $18.21 | | $18.21 |
| PT | 02/27/2015 | 97530 | 1 | $25.09/18.56 | | $25.09 |
| | | | **5** | **Total** | | **$134.93** |
| ST | 02/02/2015 | 97532 | 1 | $19.42 | | $19.42 |
| | | | **1** | **Total** | | **$19.42** |
| ST | 02/02/2015 | 97532 | 1 | $19.42 | | $19.42 |
| ST | 02/03/2015 | 92526 | 1 | $62.47/49.64 | | $62.48 |
| ST | 02/03/2015 | 97532 | 1 | $19.42 | | $19.42 |
| ST | 02/04/2015 | 92526 | 1 | $62.47/49.64 | | $62.48 |
| ST | 02/05/2015 | 97532 | 2 | $19.42 | | $38.84 |



**Meridian Care of Alice**

| DETAIL BY PATIENT | | Invoice Number | BILLING MONTH | | BILLING DATE |
|---|---|---|---|---|---|
| Facility ID: 2007499 | | 17485133 | 02/01/2015 - 02/28/2015 | | 02/28/2015 |
| ST | 02/06/2015 | 92526 | 1 | $62.47/49.64 | $62.48 |
| ST | 02/06/2015 | 97532 | 1 | $19.42 | $19.42 |
| ST | 02/10/2015 | 92526 | 1 | $62.47/49.64 | $62.48 |
| ST | 02/10/2015 | 97532 | 1 | $19.42 | $19.42 |
| ST | 02/11/2015 | 97532 | 4 | $19.42 | $77.68 |
| ST | 02/12/2015 | 92526 | 1 | $62.47/49.64 | $62.48 |
| ST | 02/12/2015 | 97532 | 1 | $19.42 | $19.42 |
| ST | 02/13/2015 | 97532 | 1 | $19.42 | $19.42 |
| ST | 02/16/2015 | 97532 | 2 | $19.42 | $38.84 |
| ST | 02/17/2015 | 92526 | 1 | $62.47/49.64 | $62.48 |
| ST | 02/18/2015 | 92507 | 1 | $57.70/46.72 | $57.70 |
| | | | **21** | **Total** | **$704.46** |
| ST | 02/02/2015 | 97532 | 1 | $19.42 | $19.42 |
| ST | 02/03/2015 | 97532 | 4 | $19.42 | $77.68 |
| ST | 02/04/2015 | 97532 | 4 | $19.42 | $77.68 |
| ST | 02/05/2015 | 97532 | 3 | $19.42 | $58.26 |
| ST | 02/06/2015 | 97532 | 2 | $19.42 | $38.84 |
| ST | 02/10/2015 | 97532 | 4 | $19.42 | $77.68 |
| ST | 02/12/2015 | 97532 | 4 | $19.42 | $77.68 |
| ST | 02/13/2015 | 97532 | 1 | $19.42 | $19.42 |
| ST | 02/16/2015 | 97532 | 1 | $19.42 | $19.42 |
| ST | 02/17/2015 | 97532 | 3 | $19.42 | $58.26 |
| ST | 02/18/2015 | 97532 | 1 | $19.42 | $19.42 |
| | | | **28** | **Total** | **$543.76** |
| ST | 02/25/2015 | 92522 | 1 | $54.38 | $54.38 |
| ST | 02/25/2015 | 92526 | 1 | $49.64 | $49.64 |
| ST | 02/25/2015 | 92610 | 1 | $61.62 | $61.62 |
| ST | 02/25/2015 | 97532 | 3 | $19.42 | $58.26 |
| ST | 02/26/2015 | 97532 | 1 | $19.42 | $19.42 |
| ST | 02/27/2015 | 97532 | 1 | $19.42 | $19.42 |
| | | | **8** | **Total** | **$262.74** |
| | | Medicare Part B Inpatient OT Total | **196** | **Total** | **$3,862.01** |
| | | Medicare Part B Inpatient PT Total | **308** | **Total** | **$6,306.66** |



**Meridian Care of Alice**

| DETAIL BY PATIENT | Invoice Number | BILLING MONTH | BILLING DATE |
|---|---|---|---|
| Facility ID: 2007499 | 17485133 | 02/01/2015 - 02/28/2015 | 02/28/2015 |

|  | **Medicare Part B Inpatient ST Total** | **58** | **Total** | **$1,530.38** |
|---|---|---|---|---|

0000024



**Meridian Care of Alice**

| Breakdown | Invoice Number | BILLING MONTH | BILLING DATE |
|---|---|---|---|
| Facility ID: 2007499 | 17485133 | 02/01/2015 - 02/28/2015 | 02/28/2015 |

| Discipline | Delivered Minutes | % | Amount |
|---|---|---|---|
| OT | 15089 | 38.30 | $18,528.67 |
| PT | 15538 | 39.43 | $19,075.33 |
| ST | 8775 | 22.27 | $10,773.72 |
| **Total** | **39402** | **100** | **$48,377.72** |

RehabCare|7733 Forsyth Blvd|Ste 1700|St. Louis, MO 63105 | 314/863-7422 | 800/677-1238 |Fax 314/863-0769
Page 14 of 14    Run Date: Friday, July 24, 2015

14

**0000025**